JUDGE BRICCETTI

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

# 12 CV 4727

MICHAEL ARCURI, DAVID A. BROWNE,
LANCE MOORE, VANCE SMITH, and
NANCY THOMAS, individually and on
behalf of all others similarly situated,

          Plaintiff,

    v.

THE SCOTTS MIRACLE-GRO COMPANY,
INC., THE SCOTTS COMPANY LLC, THE
HOME DEPOT, INC., and LOWE'S HIW,
INC.

          Defendants.

Civil Action No.

**CLASS ACTION COMPLAINT**



Plaintiffs Michael Arcuri, David A. Browne,  Lance Moore, Vance Smith, and Nancy

Thomas (collectively, "Plaintiffs"), by their attorneys, make the following allegations pursuant to the

investigations of counsel and upon information and belief, except as to the allegations specifically

pertaining to themselves, which are based on personal knowledge:

## NATURE OF THE ACTION

    1.     This is a class action against The Scotts Miracle-Gro Company, Inc., The Scotts

Company LLC (collectively, "Scotts"), The Home Depot, Inc. ("The Home Depot"), and Lowe's

HIW, Inc. ("LHIW") (collectively "Defendants") for selling defective grass seed.  Scotts Turf

Builder EZ Seed ("EZ Seed") contains a pre-mixed formulation of ingredients including a mulch,

grass seed, and fertilizer.  The mulch is "super absorbent."  According to the label, it is supposed

to make EZ Seed grow grass "50% THICKER WITH HALF THE WATER" compared to

"ordinary seed."  But it doesn't work.  The super absorbent mulch competes with the germinating seed for available moisture and actually prevents it from growing.  The design of the EZ Seed product is fundamentally defective.  It does not grow grass.

2.      EZ Seed's defective design was confirmed by its complete failure to grow grass in scientific tests conducted precisely in accordance with the labeled instructions.  Not once.  Not twice.  But four times.  In studies conducted at the NexGen Turf Research, LLC facilities in Albany, Oregon, EZ Seed failed to grow any grass at all.  EZ seed did not just fail to grow grass "50% THICKER WITH HALF THE WATER," as promised on the label.  It failed to grow *any* grass.

3.      The plaintiffs' experiences with EZ Seed confirmed NexGen's findings in real-world conditions.  Plaintiffs Michael Arcuri, David A. Browne, Lance Moore, Vance Smith and Nancy Thomas all purchased EZ Seed, and paid a substantial price premium over comparable grass seed products, in reliance on the labels' promises to grow "50% THICKER" grass "WITH HALF THE WATER," as well as the labels' promises that EZ Seed "GROWS ANYWHERE! GUARANTEED!"  The labels also state "Results may vary."  But that too is false.  Results do not vary.  In NexGen's four scientific tests, and in the real-world experiences of each of the five plaintiffs, the results were always the same: zero grass growth.

4.      The Internet is replete with consumer complaints that describe EZ Seed's failure to grow grass.  For example, one victim wrote:

> We bought Scotts Turf Builder EZ Seed **this past summer with visions of lush green grass filling in the bare spots that had developed in our yard.  We first tried using it on a bare spot in the front where the sun is dappled at best.  We prepped the ground, applied an 1/8 inch layer of the EZ Seed and watered the product until it was dark brown.  Then, we waited and waited and waited.  Did I mention we

waited?  If the product dried out, we watered it.  A few sprigs appeared, but the results were spotty at best.  \*\*[1]

Another victim wrote:

As they say, "If it sounds too good to be true it probably is".  This product grew nothing either in shade or full sun or in between.  Scotts should stick to fertilizer.[2]

Another victim wrote:

This product is a dud!  I followed the directions carefully, but am yet to see a blade of grass.  I am trying to fill some brown patches on my nice lawn, which receives ample sunlight.  However, I am yet to see any results.  ...  Will not buy again.[3]

Another victim wrote:

I also follow directions to a tee!  No results!  Not worth the time and effort - oh and $$$![4]

5.      EZ Seed's design defect renders the product completely worthless.  Nevertheless,

EZ Seed is labeled and sold as a premium product that is supposed to be better than "ordinary

seed," and it commands a substantial price premium over other grass seed products.  For

example, EZ Seed commands an 81% price premium over Pennington Annual Ryegrass at both

Home Depot and Lowe's.

---

[1] See http://www.viewpoints.com/Scotts-Turf-Builder-EZ-Seed-for-Tall-Fescue-Lawns-review-bfba4.

[2] See http://www.amazon.com/Scotts-17401-Turf-Builder-3-75-Pound/product-reviews/B001EWL0H0/ref=cm_cr_pr_btm_link_3?ie=UTF8&showViewpoints=0&pageNumber=3&sortBy=bySubmissionDateDescending.

[3] See http://www.amazon.com/Scotts-17401-Turf-Builder-3-75-Pound/product-reviews/B001EWL0H0/ref=cm_cr_pr_btm_link_4?ie=UTF8&showViewpoints=0&pageNumber=4&sortBy=bySubmissionDateDescending.

[4] See http://www.amazon.com/Scotts-17401-Turf-Builder-3-75-Pound/product-reviews/B001EWL0H0/ref=cm_cr_pr_btm_link_4?ie=UTF8&showViewpoints=0&pageNumber=4&sortBy=bySubmissionDateDescending.

| EZ Seed 10 lb. bag price at both Home Depot and Lowe's websites | $28.94 |
|---|---|
| Pennington Annual Ryegrass 10 lb. bag price at Home Depot website | $15.98 |

Plaintiffs and class members have thus been hit with a costly double-whammy:  a premium purchase price for a worthless product.  Through this lawsuit, Plaintiffs seek to recover, for themselves and all other similarly situated purchasers of EZ Seed in the United States, a full refund of the purchase price.

## THE PARTIES

6.     Plaintiff Michael Arcuri is a citizen of New York, residing in Onondaga County, New York.

7.     Plaintiff David A. Browne is a citizen of California, residing in San Francisco County, California.

8.     Plaintiff Lance Moore is a citizen of New York, residing in Nassau County, New York.

9.     Plaintiff Vance Smith is a citizen of California, residing in Contra Costa County, California.

10.     Plaintiff Nancy Thomas is a citizen of New York, residing in Rockland County, New York.

11.     Defendant The Scotts Miracle-Gro Company, Inc. ("Scotts Miracle-Gro Co.") is a Delaware corporation with a principal place of business at 14111 Scottslawn Road, Marysville, Ohio, 43041.  Scotts is the world's largest marketer of branded consumer lawn and garden products, including a variety of grass seed products.

4

12.     Defendant The Scotts Company LLC ("Scotts, LLC" and together with Scotts Miracle-Gro Co., "Scotts") is an Ohio Limited Liability Company with a principal place of business located at 14111 Scottslawn Road, Marysville, Ohio, 43041.  The Scotts Company LLC is a wholly-owned subsidiary of Scotts Miracle-Gro Company, Inc.

13.     Defendant The Home Depot, Inc. ("The Home Depot") is a Delaware corporation with a principal place of business in Atlanta, Georgia.  The Home Depot is the world's largest home improvement specialty retailer and the fourth largest retailer in the United States.  It has more than 2,200 retail stores in the United States (including Puerto Rico and the U.S. Virgin Islands and the territory of Guam), Canada, Mexico, and China.

14.     Defendant Lowe's HIW, Inc. is a Washington corporation with a principal place of business in Mooresville, North Carolina.  Lowe's is the second largest home improvement retailer in the world and has approximately 1,725 home improvement stores in the United States, Canada and Mexico.  Lowe's HIW, Inc. ("LHIW") operates all of the Lowe's stores in California, among other states.  LHIW is a wholly-owned subsidiary of Lowe's Companies, Inc.

15.     At all relevant times hereto, Scotts, Scotts, LLC, The Home Depot and LHIW acted in concert with, with the knowledge and approval of and/or as the agent of each other, and within the course and scope of the agency, regarding the acts and omissions alleged.

16.     Moreover, at all relevant times hereto, defendants The Home Depot and LHIW affirmatively participated in and/or adopted the false and misleading advertising and marketing claims about Scotts EZ Seed.  Among other things, The Home Depot and LHIW are each responsible for (1) displaying EZ Seed and its false packaging claims on their store shelves and websites, (2) utilizing false and misleading in-store EZ Seed product advertisements, (3) reviewing and approving false and misleading advertising materials for promoting the sale of EZ

Seed, including advertisements that bore the retailers' names, logos and/or trademarks, and (4) selling EZ Seed products to end users.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question).  This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

18.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendants.

19.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants do business throughout this district, and a substantial part of the events giving rise to Plaintiff Thomas's claims took place within this judicial district, including her purchase and use of EZ Seed.

## FACTS COMMON TO ALL COUNTS

### *Scotts EZ Seed*

20.     Defendants claim that EZ Seed is a turf building mixture of grass seed, mulch and fertilizer.  Scotts began selling EZ Seed in 2009, which it describes as a "[r]evolutionary seeding product[] [that] contain[s] a super absorbent growing material that absorbs water and expands to surround seed in a moist, protective layer.  The mix then cares for seeds, infusing them with water and nourishment, so they can build strong roots that survive tough conditions – making it easy for you to grow grass, guaranteed!"

21.     Defendants' EZ Seed packaging, radio and television advertisements, and Internet site are replete with false and misleading statements about the nature, characteristics, and

qualities of EZ Seed.  Among these false claims is that EZ Seed establishes "50% thicker [grass growth] with half the water [versus ordinary grass seed];" it is "WaterSmart;" and it "Grows Anywhere!  Guaranteed!"

### NexGen's Half Water Study Regarding EZ Seed Product Claims

22.     NexGen Turf Research, LLC ("NexGen") recently studied the characteristics and efficacy of EZ Seed versus ordinary grass seed and a competing brand of seed mulch products. NexGen is the largest turfgrass development institution in North America.  It develops cool and warm season cultivars for certification and licensing to turfgrass companies, including Scotts.

23.     NextGen's study relates to the product claims that EZ Seed is "WaterSmart" and produces "50% thicker [grass growth] with half the water [versus ordinary grass seed when each is watered at half the recommended rate.]"

24.     The study was administered by Kenneth Hignight, NexGen's Director of Research.  Mr. Hignight holds three patents for turfgrass development, has released over 100 cultivars, has over 25 Plant Variety Protection certificates, has authored or co-authored 22 articles, and has served on the National Grass Variety Review Board for over 10 years.

25.     Specifically, NexGen examined the ability of EZ Seed to establish grass growth with half the recommended water for ordinary seed.  The study, *Validation of the 1 Step Complete Claim "80% Thicker with Half the Water than Ordinary Seed"* (the "Half Water Study"), included a comparison of EZ Seed to ordinary grass seed at half water levels.

26.     Four simultaneous trials were conducted at a NexGen facility in Albany, Oregon. Each trial was replicated three times.  Trial 1 used a sandy loam soil and compared EZ Seed to three types of Sun and Shade mixtures of ordinary grass seed, two made by Vigoro and one made by Scotts.  Trial 2 used a Woodburn silt loam soil and compared EZ Seed to the same three types of ordinary grass seed used in Trial 1.  Trial 3 used a sandy loam soil and compared EZ Seed to

7

three types of Tall Fescue Blends of ordinary grass seed, two made by Vigoro and one made by

Scotts.  Trial 4 used Woodburn silt loam soil and compared EZ Seed to the same three types of

ordinary grass seed used in Trial 3.

27.     The seed samples that received full water received an average of 1.60 inches per

week, and the half water samples received an average of 0.80 inches per week.

28.     In all four trials, EZ Seed failed to produce any seedlings under half water

conditions throughout the 32-day testing period.  Despite this, every other seed sample, including

the ordinary seed, produced seedlings under half water conditions.

29.     Regarding EZ Seed, the Half Water Study found "The seed mulch product EZ

Seed had no seedlings emerge by day 7 when watered at half the recommended rate for

'ordinary' seed.  ...  Full water rates for EZ Seed resulted in stands comparable to 'ordinary' seed

and [the competing branded product at] half rate of water.  ...  These results are consistent with

earlier research where EZ Seed required increased amounts of water to promote germination and

establishment compared to [a competing product]."

30.     The Half Water Study further found, "By day 10 of the study most products in the

four trials had established at a sufficient level to produce a turfgrass stand.  The exception was

EZ Seed with half the water rate, which showed no emerging seedlings."  The Study offered the

following explanation:  "porous" seed mulch products that "have a high moisture absorbing

capacity" like EZ Seed actually impair grass growth because the mulch "compete[s] with the

seeds for available water."

31.     The Half Water Study concluded that "sufficient water was applied throughout

the study to establish and maintain the 'ordinary' products and the [competing branded product].

Therefore, EZ Seed should be able to produce a thick stand of plants as illustrated on the label

with half the amount of water.  Our results showed that EZ Seed could not establish under the half water rate conditions described in this study."

*False And Misleading Product Claims About EZ Seed*

**A.      EZ Seed's False And Misleading Label**

32.      EZ Seed's packaging label claims it is "WaterSmart" and "Makes The Most Of Every Drop."  More specifically, EZ Seed's packaging label claims it establishes grass "50% thicker with half the water" compared to ordinary grass seed.  According to the label, this claim is based on a 32-day comparison study between EZ Seed and "ordinary seed," with "each watered at half the recommended rate for ordinary seed."  Each of these statements is false and misleading.

33.      EZ Seed's packaging label also claims it, "Grows Anywhere!  Guaranteed!"  and "Grows In Tough Conditions!  Guaranteed!"  The label also represents that EZ Seed is "[t]he revolutionary seeding mix that takes care of the seed for you, so you can grow thick, beautiful grass ANYWHERE!", including "Dry, sunny areas!"; "Dense shade!"; and "Even grows on pavement!"  Moreover, the product label claims, "Scotts premium quality EZ Seed is developed to thrive in virtually every condition -- harsh sun, dense shade, and even spreads to repair wear and tear. ***The result -- thicker, beautiful, long lasting grass!***"  Again, each of these statements is false and misleading.

34.      EZ Seed's package label also includes a false and misleading graphic comparing EZ Seed grass growth to ordinary grass seed growth after 32 days (the "Comparative Packaging Graphic").  The EZ Seed clearly outperforms the ordinary grass seed in the promotional visual on the product packaging below.



35.    In addition, The Home Depot and LHIW prominently display in-store advertising displays for EZ Seed that contain the same false and misleading claims found on the product packaging.

36.    Plaintiffs' experiences demonstrate that these EZ Seed packaging claims and in-store advertisements are false and misleading, see *infra* at ¶¶ 57-80.

37.    Moreover, reliable scientific testing demonstrates the Comparative Packaging Graphic, among other product claims, is false and misleading, see *supra* at ¶¶ 22-31.  In NexGen's Half Water Study, there was no seedling emergence after 32 days when EZ Seed was watered with half the recommended water for ordinary grass seed.  Thus, reliable scientific testing demonstrates that EZ Seed does not produce 50% thicker grass growth with half the

water; it is not "WaterSmart;" and it is not "developed to thrive in virtually every condition" or to "grow anywhere."

38.    Defendants' false and misleading claims are in willful and wanton disregard of the interests of the consuming public, and they constitute a knowing attempt to deceive consumers.

**B.    EZ Seed's False And Misleading Television Commercial**

39.    Scotts is currently airing the EZ Seed Commercial, a thirty-second television advertisement for EZ Seed that makes false, misleading, and malicious claims about the product's efficacy.

40.    The EZ Seed Commercial opens with a dog sitting on a brown, torn apart patch of grass while barking up at two male actors.  One of the actors is holding a bottle of EZ Seed.

41.    The EZ Seed Commercial focuses on Scotts' product, with the actor holding up the bottle of EZ Seed, unscrewing its cap, and stating:  "Scotts EZ Seed uses the finest seed, fertilizer, and natural mulch that absorbs and holds water . . . ."



42.    As the actor states that EZ Seed "absorbs and holds water," the EZ Seed Commercial shows close-up images of EZ Seed being sprinkled over a brown patch of grass to demonstrate the product's purported ability to absorb water.



43.    To show the composition of EZ Seed's mixture, the EZ Seed Commercial zooms into the soil and offers viewers a close-up image of the seeds and mulch mixed together with the fertilizer.



44.     The EZ Seed Commercial then flashes to 21 days later, showing a green and fully established patch of grass at the actors' feet, with the actor saying, "EZ Seed really works."



45.     The EZ Seed Commercial ends with a picture of EZ Seed on a sunny lawn.  A voiceover says, "Get Scotts EZ Seed.  It's guaranteed!"  The "WaterSmart" logo is conspicuous to viewers, as well as the label's claim that the product "Grows Anywhere!  Guaranteed!"



46.     The EZ Seed Commercial is replete with false and misleading claims.  First, the EZ Seed Commercial falsely implies that consumers will obtain a fully established patch of grass with EZ Seed after 21 days.

47.     Second, the EZ Seed Commercial prominently displays the "Grows Anywhere! Guaranteed!" product claim, displays a logo labeled "Scotts Guarantee," and says "Get Scotts EZ Seed.  It's guaranteed!"  However, EZ Seed does not grow anywhere, and it failed to grow on Plaintiffs' lawns.

48.     Third, the EZ Seed Commercial falsely conveys that the superior water absorption and holding capabilities of EZ Seed will result in superior results.  In fact, the water absorption characteristic of EZ Seed is believed to produce inferior results.  In its research, NexGen found that the mulch in super absorbent seed-mulch products like EZ Seed "actually compete[s] with

the germinating seed for available moisture and may impair successful establishment, particularly under droughty conditions."

        **C.**      **False And Misleading Representations On Defendants' Websites**

49.     Scotts advertises on the Internet at http://scotts.com/.  The website contains a list of EZ Seed products, explanations about the benefits of EZ Seed, promotional videos, and product guarantees.

50.     Scotts' website represents that EZ Seed is a "Revolutionary Seeding Product[] Guaranteed to Grow Grass in the Toughest Areas."  This claim is false and misleading.

51.     Scotts' website represents that EZ Seed is a "revolutionary seeding product[] [that] contain[s] a super absorbent growing material that absorbs water and expands to surround seed in a moist, protective layer.  The mix then cares for seeds, infusing them with water and nourishment, so they can build strong roots that survive tough conditions – making it easy for you to grow grass, guaranteed!"  The website also represents that EZ Seed is a "[r]evolutionary seeding mix that guarantees seeding success."  It explains that EZ Seed grows in "[d]ry, sunny areas, dense shade areas, poor soil areas, even spreads to repair wear & tear."  Moreover, the website guarantees that EZ Seed is "Guaranteed to grow anywhere!  Dry, sunny areas, dense shade areas, wear & tear areas -- even grows on pavement."  These claims are also false and misleading.

52.     In an instructional website video called "3 Steps to seeding success with Scotts EZ Seed," Scotts guarantees the product "Grows Anywhere!":



53.    In the same instructional video, Scotts compares EZ Seed to ordinary grass seed.

The result is noticeably fuller and thicker grass with EZ Seed:





54.     The comparative promotional graphics in the website's instructional video are false and misleading.

55.     The websites of Defendants The Home Depot and LHIW also engage in and adopt false and misleading advertising claims about EZ Seed, including that the product "grows anywhere, guaranteed," produces "50% thicker [grass growth] with half the water," is "drought tolerant," and "grows in thick with less water."

56.     Defendants' false and misleading website claims are in willful and wanton disregard of the interests of the consuming public, and constitute a knowing attempt by Defendants to deceive consumers.

**FACTS CONCERNING THE CLASS REPRESENTATIVES**

***Michael Arcuri's EZ Seed Purchase And Use***

57.     On March 30, 2012, Plaintiff Arcuri purchased one 3.75 lb. shake canister of EZ Seed from The Home Depot store in Cicero, New York in order to seed an area of his lawn.  He purchased the product when it was on sale and paid $7.37 for the canister of EZ Seed, excluding sales tax.

58.     Plaintiff Arcuri read the claims on the EZ Seed product packaging carefully and purchased EZ Seed in reliance on those claims.  Specifically, he chose to purchase EZ Seed instead of a less expensive grass seed because only EZ Seed was "GUARANTEED!" to grow anywhere, including in densely shaded areas.  But that was a false guarantee.  Moreover, Plaintiff Arcuri purchased EZ Seed because the label promised that the "revolutionary" seeding mix was "WaterSmart" and that the mixture would grow grass 50% thicker than ordinary grass seed when each was watered at half the recommended rate.  But those promises were also false.

59.     Plaintiff Arcuri paid a tangible increased cost for EZ Seed because of the false claims that he read on the product packaging, on which he also relied.  Ultimately, EZ Seed was worthless (and certainly worth less than its representations suggested), and Plaintiff Arcuri would not have purchased EZ Seed if he had known that the claims on the label were false.  Instead, Plaintiff Arcuri would have purchased a different, less expensive grass seed.

60.     On April 1, 2012, Plaintiff Arcuri seeded his lawn with fresh EZ Seed product, and he carefully followed EZ Seed's directions for use and care on the product package.  However, the EZ Seed did not perform as advertised.  In fact, it did not grow at all.

61.     Plaintiff Arcuri took the following photographs of the area of his lawn that he seeded with EZ Seed.  One photograph was taken on April 1, 2012 when Plaintiff Arcuri applied the EZ Seed.  The other photograph was taken on April 21, 2012 of the same seeded area.  These

pictures show the complete lack of grass growth on Arcuri's lawn.  Moreover, the lack of grass

growth in Plaintiff Arcuri's photographs stands in stark contrast to the noticeably fuller and

thicker grass growth illustrated in Scotts' 21-day advertising pictures as shown in ¶ 53, *supra*.

 

April 1, 2012                    April 21, 2012

### David Browne's EZ Seed Purchase And Use

62.     In or about January 2012, Plaintiff Browne purchased one 3.75 lb. shake canister

of EZ Seed from the Lowe's store in San Francisco, California in order to seed some bare

patches in his heavily shaded backyard lawn.  He paid approximately $15.00 for the canister of

EZ Seed, excluding sales tax.

63.     Plaintiff Browne read the claims on the EZ Seed product packaging carefully and

purchased EZ Seed in reliance on those claims.  Specifically, he chose to purchase EZ Seed

instead of a less expensive grass seed because only EZ Seed was "GUARANTEED!" to grow

anywhere, including in densely shaded areas.  But that was a false guarantee.  Moreover,

Plaintiff Browne purchased EZ Seed because the label promised that the "revolutionary" seeding

mix was "WaterSmart" and that the mixture would grow grass 50% thicker than ordinary grass

seed when each was watered at half the recommended rate.  But those promises were also false.

64.     Plaintiff Browne paid a tangible increased cost for EZ Seed because of the false claims that he read on the product packaging, on which he also relied.  Ultimately, EZ Seed was worthless, and Plaintiff Browne would not have purchased EZ Seed if he had known that the claims on the label were false.  Instead, Plaintiff Browne would have purchased a different, less expensive grass seed—which he ultimately did because of EZ Seed's failure to grow.

65.     Plaintiff Browne seeded his lawn with fresh EZ Seed product within days of making his purchase, and he carefully followed EZ Seed's directions for use and care on the product package.  However, the EZ Seed did not perform as advertised.  In fact, it did not grow at all.

66.     Prior to filing this action, Plaintiff Browne, by and through his counsel, provided defendants Scotts and LIHW with written notice of his claims pursuant to 15 U.S.C. § 2310(e) and California Civil Code § 1782.  Plaintiff Browne also notified those defendants that he was acting on behalf of a class defined as all persons in the United States who purchased EZ Seed, and on behalf of a subclass of persons who purchased EZ Seed in the State of California.

### *Lance Moore's EZ Seed Purchase And Use*

67.     In the spring of 2011, Plaintiff Moore purchased one 10 lb. bag of EZ Seed from The Home Depot store in Elmont, New York in order to seed some bare patches in his lawn.  He paid approximately $29.00 for the bag of EZ Seed, excluding sales tax.

68.     Plaintiff Moore read the claims on the EZ Seed product packaging carefully and purchased EZ Seed in reliance on those claims.  Specifically, he chose to  purchase EZ Seed instead of a less expensive grass seed because only EZ Seed was "GUARANTEED!" to grow anywhere, including in dry, sunny areas and in dense shade (both of which Plaintiff Moore has on his property).  But that was a false guarantee.  Moreover, Plaintiff Moore purchased EZ Seed because the label promised that the "revolutionary" seeding mix was "WaterSmart" and that the

mixture would grow grass 50% thicker than ordinary grass seed when each was watered at half

the recommended rate.  But those promises were also false.

69.     Plaintiff Moore paid a tangible increased cost for EZ Seed because of the false

claims that he read on the product packaging, on which he also relied.  Ultimately, EZ Seed was

worthless (and certainly worth less than its representations suggested), and Plaintiff Moore

would not have purchased EZ Seed if he had known that the claims on the label were false.

Instead, Plaintiff Moore would have purchased a different, less expensive grass seed—which he

ultimately did because of EZ Seed's failure to grow.

70.     Plaintiff Moore seeded his lawn with fresh EZ Seed product within days of

making his purchase, and he carefully followed EZ Seed's directions for use and care on the

product package.  However, the EZ Seed did not grow and perform as advertised.  And plaintiff

Moore's bare patches on his lawn remained bare.

71.     Prior to filing this action Plaintiff Moore, by and through his counsel, provided

defendants Scotts and The Home Depot with written notice of his claims pursuant to 15 U.S.C.

§ 2310(e).  Plaintiff Moore also notified those defendants that he was acting on behalf of a class

defined as all persons in the United States who purchased EZ Seed.

### Vance Smith's EZ Seed Purchase And Use

72.     In or about February 2012, Plaintiff Smith purchased two 6.25 lb. bags of EZ

Seed from The Home Depot store in San Ramon, California in order to seed some bare patches

in his partially shaded front yard lawn.  He paid approximately $15.00 for each bag of EZ Seed,

excluding sales tax.

73.     Plaintiff Smith read the claims on the EZ Seed product packaging carefully and

purchased EZ Seed in reliance on those claims.  Specifically, he chose to purchase EZ Seed

instead of a less expensive grass seed because only EZ Seed was "GUARANTEED!" to grow

anywhere, including in densely shaded areas.  But that was a false guarantee.  Moreover, Plaintiff Smith purchased EZ Seed because the label promised that the "revolutionary" seeding mix was "WaterSmart" and that the mixture would grow grass 50% thicker than ordinary grass seed when each was watered at half the recommended rate.  But those promises were also false.

74.     Plaintiff Smith paid a tangible increased cost for EZ Seed because of the false claims that he read on the product packaging, on which he also relied.  Ultimately, EZ Seed was worthless (and certainly worth less than its representations suggested), and Plaintiff Smith would not have purchased EZ Seed if he had known that the claims on the label were false.  Instead, Plaintiff Smith would have purchased a different, less expensive grass seed.

75.     Plaintiff Smith seeded his lawn with fresh EZ Seed product within days of making his purchase, and he carefully followed EZ Seed's directions for use and care on the product package.  However, the EZ Seed did not perform as advertised.  In fact, it did not grow at all.

76.     Prior to filing this action on June 12, 2012, Plaintiff Smith, by and through his counsel, provided defendant The Home Depot with written notice of his claims pursuant to 15 U.S.C. § 2310(e) and California Civil Code § 1782.  Plaintiff Smith also notified The Home Depot that he was acting on behalf of a class defined as all persons in the United States who purchased EZ Seed, and on behalf of a subclass of persons who purchased EZ Seed in the State of California.

### *Nancy Thomas's EZ Seed Purchase And Use*

77.     In or about August 2011, Plaintiff Thomas purchased one 14.5 lb. bucket and one 10 lb. bag of EZ Seed from retail stores located in Rockland County, New York in order to seed some bare patches in her front yard lawn.  She paid approximately $43.00 for the bucket and approximately $29.00 the bag of EZ Seed, excluding sales tax.

78.     Plaintiff Thomas read the claims on the EZ Seed product packaging carefully and purchased EZ Seed in reliance on those claims.  Specifically, she chose to purchase EZ Seed instead of a less expensive grass seed because only EZ Seed was "GUARANTEED!" to grow anywhere.  But that was a false guarantee.  Moreover, Plaintiff Thomas purchased EZ Seed because the label promised that the "revolutionary" seeding mix was "WaterSmart" and that the mixture would grow grass 50% thicker than ordinary grass seed when each was watered at half the recommended rate.  But those promises were also false.

79.     Plaintiff Thomas paid a tangible increased cost for EZ Seed because of the false claims that she read on the product packaging, on which she also relied.  Ultimately, EZ Seed was worthless (and certainly worth less than its representations suggested), and Plaintiff Thomas would not have purchased EZ Seed if she had known that the claims on the label were false.  Instead, Plaintiff Thomas would have purchased a different, less expensive grass seed.

80.     Plaintiff Thomas seeded her lawn with fresh EZ Seed product within days of making his purchase, and she carefully followed EZ Seed's directions for use and care on the product package.  However, the EZ Seed did not perform as advertised.  In fact, it did not grow at all.

## CLASS REPRESENTATION ALLEGATIONS

81.     Plaintiff seeks to represent a class defined as all persons in the United States who purchased EZ Seed.  Excluded from the Class are persons who made such purchase for the purpose of resale and persons who purchased EZ Seed in Florida, Georgia, Washington, or Illinois.

82.     Plaintiffs Arcuri, Moore and Thomas also seek to represent a subclass of all Class members who purchased EZ Seed in New York (the "New York Subclass").

83.     Plaintiffs Browne and Smith also seek to represent a subclass of Class members who purchased EZ Seed in California (the "California Subclass").

84.     Members of the Class and Subclasses are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and Subclasses number in the tens of thousands.  The precise number of Class Subclass members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class and Subclass members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third party retailers and vendors.

85.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to whether Defendants' labeling, marketing and promotion of EZ Seed is false and misleading.

86.     The claims of the named Plaintiffs are typical of the claims of the Class and Subclasses in that the named Plaintiffs were exposed to and relied on Defendants' false and misleading marketing of EZ Seed and suffered a loss as a result of their EZ Seed purchases.

87.     Plaintiffs are adequate representatives of the Class and Subclasses because their interests do not conflict with the interests of the Class members they seeks to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

88.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class and Subclass members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the

complex and extensive litigation necessary to establish Defendants' liability.  Individualized

litigation increases the delay and expense to all parties and multiplies the burden on the judicial

system presented by the complex legal and factual issues of this case.  Individualized litigation

also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action

device presents far fewer management difficulties and provides the benefits of single

adjudication, economy of scale, and comprehensive supervision by a single court on the issue of

Defendants' liability.  Class treatment of the liability issues will ensure that all claims and

claimants are before this Court for consistent adjudication of the liability issues.

## FEDERAL COUNTS

### COUNT I
**(Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*)**

89.     Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth

herein.

90.     Plaintiffs brings this Count I individually and on behalf of the members of the

Class and Subclasses against all Defendants.

91.     EZ Seed is a consumer product as defined in 15 U.S.C. § 2301(1).

92.     Plaintiffs and the Class and Subclass members are consumers as defined in 15

U.S.C. § 2301(3).

93.     Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4)

and (5).

94.     In connection with the sale of EZ Seed, Defendants issued written warranties as

defined in 15 U.S.C. § 2301(6), by making Express Warranties that EZ Seed: (i) "Grows

Anywhere!  GUARANTEED!"; (ii) "Grows in Tough Conditions!  Guaranteed!;" (iii) is

"WaterSmart;" (iv) produces "50% thicker [grass growth] with half the water [versus ordinary

25

seed];" (v) is a "revolutionary seeding mix that takes care of the seed for you, so you can grow thick, beautiful grass ANYWHERE!", including "Dry, sunny areas!"; "Dense shade!"; and "Even grows on pavement!"; (vi) is a "premium quality" seeding product that "is developed to thrive in virtually every condition -- harsh sun, dense shade, and even spreads to repair wear and tear. ***The result - thicker, beautiful, long lasting grass!***" (collectively, the "Express Warranties" or "Misrepresentations")..

95.     In fact, EZ Seed does not conform to the Express Warranties because each of the Express Warranties is false and misleading.  Additionally, NexGen's studies refute some of these warranties.  For example, EZ Seed warrants that it will produce 50% thicker grass growth compared to ordinary grass seed when watered at half the recommended rate, but NexGen's Half Water Study found that EZ Seed failed to produce any grass seedlings when watered at half the recommended rate for ordinary seed.

96.     By reason of Defendants' breach of warranties, Defendants violated the statutory rights due Plaintiffs and the Class and Subclass members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, thereby damaging Plaintiff and the Class and Subclass members.

97.     Plaintiff and the Class and Subclass members were injured as a direct and proximate result of Defendants' breach because they would not have purchased EZ Seed if they knew the truth about the product, and would not have paid a premium price for worthless defective grass seed.

## STATE LAW COUNTS

## CALIFORNIA

### COUNT II
**(Consumers Legal Remedies Act ("CLRA"), Calif. Civil Code §§ 1750, et. seq.)**

98.     Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

99.     Plaintiffs bring this Count II on behalf of the members of the Class and California Subclass against all Defendants.

100.    CLRA § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  Defendants violated this provision by making the Misrepresentations.

101.    CLRA § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  Defendants violated this provision by making the Misrepresentations.

102.    CLRA § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."  Defendants violated this provision by making the Misrepresentations.

103.    Plaintiffs and the Class and California Subclass members suffered injuries caused by Defendants' Misrepresentations because they would not have purchased EZ Seed if they knew the truth about the product.

104.    On April 23, 2012, prior to the filing of this Complaint, a CLRA notice letter was served on defendants Scotts Miracle-Gro Co., Scotts, LLC and LHIW that complied in all respects with California Civil Code § 1782(a).  On June 12, 2012, also prior to filing this Complaint, a CLRA notice letter was served on defendant The Home Depot that complied in all

respects with California Civil Code § 1782(a) Plaintiffs Browne and Smith, by and through their counsel, sent Defendants their letters *via* certified mail, return receipt requested, advising Defendants they were in violation of the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of § 1770.

105.    Wherefore, Plaintiffs hereby seek all remedies available under the CLRA from defendants Scotts Miracle-Gro Co., Scotts, LLC and LHIW.  However, Plaintiffs presently seek only injunctive relief for these violations of the CLRA against The Home Depot.

## COUNT III
### (Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*)

106.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

107.    Plaintiffs bring this Count III on behalf of the members of the Class and California Subclass against all Defendants.

108.    Defendants are subject to the Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200 *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

109.    Defendants' conduct, described herein, violated the "unlawful" prong of the UCL by violating the CLRA and FAL (see *infra* at Count IV).

110.    Defendants' conduct, described herein, violated the "fraudulent" prong of the UCL by making the Misrepresentations.

111.    Plaintiffs and the Class and California Subclass members suffered lost money or property as a result of Defendants' UCL violations because they would not have purchased EZ Seed if they knew the truth about the product.

## COUNT IV
### (False Advertising Law ("FAL"), Calif. Business & Professions Code § 17500 *et seq.*)

112.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

113.    Plaintiffs bring this Count IV on behalf of the members of the Class and California Subclass against all Defendants.

114.    California's False Advertising Law, Bus. & Prof. Code § 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

115.    Defendants committed acts of false advertising, as defined by §17500, by making the Misrepresentations.

116.    Defendants knew or should have known, through the exercise of reasonable care that the Misrepresentations were untrue and misleading.

117.    Defendants' actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

118.    Plaintiffs and the Class and California Subclass members suffered lost money or property as a result of Defendants' FAL violations because they would not have purchased EZ Seed if they knew the truth about the product.

## COUNT V
### (Breach of Express Warranty, Cal. Com. Code § 2313)

119.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

120.    Plaintiffs bring this Count V individually and on behalf of the members of the Class and California Subclass against all Defendants.

121.    By making the Express Warranties, Defendants, as the designers, manufacturers, marketers, distributors, or sellers expressly warranted that EZ Seed products were fit for their intended purpose of producing thicker, more beautiful grass growth than ordinary seed using less water, even under harsh conditions.

122.    In fact, EZ Seed products are not fit for such purpose because each of the Express Warranties is false and misleading.

123.    Plaintiffs and the Class and California Subclass members were injured as a direct and proximate result of Defendants' breach because they would not have purchased EZ Seed if they knew the truth about the product.

## COUNT VI
### (Breach of Implied Warranty of Merchantability, Cal. Com. Code § 2314)

124.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

125.    Plaintiffs bring this Count VI individually and on behalf of the members of the Class and California Subclass against all Defendants.

126.    Defendants as the designers, manufacturers, marketers, distributors, and/or sellers impliedly warranted that EZ Seed was fit for its intended purpose in that it would produce thicker, more beautiful grass growth than ordinary seed using less water, even under harsh conditions.

127.    Defendants breached the warranty implied in the contract for the sale of the EZ
Seed products in that EZ Seed could not pass without objection in the trade under the contract
description, the goods were not of fair average quality within the description, and the goods were
unfit for their intended and ordinary purpose.  As a result, Plaintiffs and the Class and California
Subclass members did not receive the goods as impliedly warranted by Defendants to be
merchantable.

128.    In reliance upon Defendants' skill and judgment and the implied warranties of
fitness for the purpose, Plaintiffs and the Class and Subclass members purchased EZ Seed for use
as turf building grass seed product.

129.    The EZ Seed products were not altered by Plaintiffs or the Class or California
Subclass members.

130.    The EZ Seed products were defective when they left the exclusive control of
Defendants.

131.    Defendants knew that the EZ Seed products would be purchased and used without
additional testing for efficacy by Plaintiffs and the Class and California Subclass members.

132.    The EZ Seed products were defectively designed and unfit for their intended
purpose, and Plaintiffs and the Class and California Subclass members did not receive the goods
as warranted.

133.    As a direct and proximate cause of Defendants' breach of the implied warranty,
Plaintiffs and the Class and Subclass members have been injured and harmed because they
would not have purchased EZ Seed if they knew the truth about the product.

31

## COUNT VII
### (Unjust Enrichment)

134.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

135.    Plaintiffs bring this Count VII individually and on behalf of the members of the Class and California Subclass against all Defendants.

136.    Plaintiffs and the Class and Subclass members conferred benefits on Defendants by purchasing EZ Seed products.

137.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs and the Class and Subclass members' purchases of EZ Seed products.  Retention of those moneys under these circumstances is unjust and inequitable because of Defendants' Misrepresentations about EZ Seed, which caused injuries to Plaintiffs and the Class and Subclass members because they would not have purchased EZ Seed if they knew the truth about the product.

138.    Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and the Class and Subclass members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the Class and Subclass members for their unjust enrichment, as ordered by the Court.

## NEW YORK

## COUNT VIII
### (Deceptive Acts or Practices, New York Gen. Bus. Law § 349)

139.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

140.    Plaintiffs bring this Count VIII individually and on behalf of the members of the Class and New York Subclass against all Defendants.

32

141.     By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by making the Misrepresentations.

142.     The foregoing deceptive acts and practices were directed at consumers.

143.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and efficacy of EZ Seed products to induce consumers to purchase same.

144.     Plaintiffs Arcuri, Moore and Thomas and members of the Class and New York Subclass were injured because they paid for EZ Seed, which they would not have done had they known the truth about the product.

145.     On behalf of themselves and other members of the Class and New York Subclass, Plaintiffs Arcuri, Moore and Thomas seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT IX
### (Breach of Express Warranty, N.Y. U.C.C. § 2-313)

146.     Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

147.     Plaintiffs bring this Count IX individually and on behalf of the members of the Class and New York Subclass against all Defendants.

148.     Defendants are and were at all relevant times merchants under N.Y. U.C.C. § 2-313.

149.     Defendants, as the designers, manufacturers, marketers, distributors, or sellers expressly warranted that EZ Seed products were fit for their intended purpose by making the Express Warranties.

150.    In fact, EZ Seed products are not fit for such purpose because each of the Express Warranties is false and misleading.

151.    Plaintiffs and the Class and New York Subclass members were injured as a direct and proximate result of Defendants' breach because they would not have purchased EZ Seed if they knew the truth about the product.

## COUNT X
### (Breach of Implied Warranty of Merchantability, N.Y. U.C.C. § 2-314)

152.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

153.    Plaintiffs bring this Count X individually and on behalf of the members of the Class and New York Subclass against all Defendants.

154.    Defendants are and were at all relevant times merchants under N.Y. U.C.C. § 2-313.

155.    Defendants as the designers, manufacturers, marketers, distributors, and/or sellers impliedly warranted that EZ Seed was fit for its intended purpose in that it would produce thicker, more beautiful grass growth than ordinary seed using less water, even under harsh conditions.

156.    Defendants breached the warranty implied in the contract for the sale of the EZ Seed products in that EZ Seed could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose.  As a result, Plaintiffs and the Class and New York Subclass members did not receive the goods as impliedly warranted by Defendants to be merchantable.

157.    In reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose, Plaintiffs and the Class and Subclass members purchased EZ Seed for use as turf building grass seed product.

158.    The EZ Seed products were not altered by Plaintiffs or the Class or New York Subclass members.

159.    The EZ Seed products were not defective when they left the exclusive control of Defendants.

160.    Defendants knew that the EZ Seed products would be purchased and used without additional testing for efficacy by Plaintiffs and the Class and New York Subclass members.

161.    The EZ Seed products were defectively designed and unfit for their intended purpose, and Plaintiffs and the Class and New York Subclass members did not receive the goods as warranted.

162.    As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiffs and the Class and Subclass members have been injured and harmed because they would not have purchased EZ Seed if they knew the truth about the product.

## COUNT XI
### (Breach of Contract/Common Law Warranty)

163.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

164.    Plaintiffs bring this Count XI on behalf of the members of the Class and New York Subclass against all Defendants.

165.    To the extent Defendants' commitment is deemed not to be a warranty under New York's Uniform Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.

166.    Defendants breached this warranty or contract obligation by warranting that EZ Seed products were fit for their intended purpose in that they would produce thicker, more beautiful grass growth than ordinary seed using less water, even under harsh conditions.

167.    As a direct and proximate cause of Defendants' breach of contract or implied warranty, Plaintiffs and the Class and New York Subclass members have been injured and harmed because they would not have purchased EZ Seed if they knew the truth about the product.

## **RELIEF DEMANDED**

168.    WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

A.    For an order certifying the nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Subclasses and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

B.    For an order declaring the Defendants' conduct violates the statutes referenced herein;

C.    For an order finding in favor of Plaintiffs, the nationwide Class, and the Subclasses on all counts asserted herein;

D.    For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

E.    For prejudgment interest on all amounts awarded;

F.    For an order of restitution and all other forms of equitable monetary relief;

G.    For injunctive relief as pleaded or as the Court may deem proper; and

H.    For an order awarding Plaintiffs and the Class and Subclasses their reasonable attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

Dated:  June 15, 2012

Respectfully submitted,

BURSOR & FISHER, P.A.

By:  _Scott A. Bursor_____
        Scott A. Bursor

Scott A. Bursor (SB1141)
Joseph I. Marchese (JM1976)
369 Lexington Ave, 10th Floor
New York, NY 10017-6506
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
           jmarchese@bursor.com

*Attorneys for Plaintiffs*

1    I, Vance Smith, declare as follows:

2        1.    I am a plaintiff in this action and a citizen of the State of California. I have personal

3    knowledge of the facts stated herein and, if called as a witness, I could and would testify

4    competently thereto.

5        2.    The complaint filed in this action is filed in the proper place for trial under

6    California Civil Code Section 1780(d) in that Defendants conduct a substantial amount of business

7    in the Southern District of New York.

8        2.    While living in California, I purchased two 6.25 lb. bags of Scotts EZ Seed for

9    approximately $30.00 from a Home Depot retail store in San Ramon, California. I read the label

10   on the Scotts EZ Seed packaging, and purchased EZ Seed in reliance on the claims that it "Grows

11   Anywhere! GUARANTEED!" including in dense shade, and that the product was "Water Smart"

12   and produced "50% thicker [grass growth] with half the water [versus ordinary seed]." These

13   representations were substantial factors influencing my decision to purchase EZ Seed. I would not

14   have purchased EZ Seed if I had known that the product was not an effective turf builder, that it

15   was not water efficient, and that the representations concerning the purported benefits of the

16   product were false and unsubstantiated.

17       I declare under the penalty of perjury under the laws of the State of California that the

18   foregoing is true and correct, executed on June 13 , 2012 at Danville, California.

19

20

21

22

23                                          VANCE SMITH

24

25

26

27

28