**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Scotts EZ Seed Litigation | Civil Action No. 12-CV-4727 (VB) |
| | **CONSOLIDATED CLASS ACTION COMPLAINT** |

Plaintiffs Michael Arcuri, David A. Browne, Gwen Eskinazi, Stacy D. Lonardo, Lance Moore, Vance Smith, and Nancy Thomas (collectively, "Plaintiffs"), by their attorneys, make the following allegations pursuant to the investigations of counsel and upon information and belief, except as to the allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge:

RECEIVED
AUG 0 9 2012
U.S.D.C. S.D. N.Y.
CASHIERS

## NATURE OF THE ACTION

1.      This is a class action against The Scotts Miracle-Gro Company, Inc., The Scotts Company LLC (collectively, "Scotts"), The Home Depot, Inc. ("Home Depot"), Lowe's Home Centers, Inc. ("LHC") and True Value Company ("True Value," and together with Scotts, Home Depot and LHC, the "Defendants") for selling a defective combination mulch-grass seed product. Scotts Turf Builder EZ Seed ("EZ Seed") contains a pre-mixed formulation of ingredients, including mulch, grass seed, and fertilizer.[1] The mulch is "super absorbent." According to the label, it is supposed to make EZ Seed grow grass "50% THICKER WITH HALF THE WATER" compared to "ordinary seed." But it doesn't work. The super-absorbent mulch competes with the germinating seed for available moisture and actually prevents it from growing. The design of the EZ Seed product is fundamentally defective. It does not grow grass.

---

[1] EZ Seed is sold in numerous varieties including "Dog Spot Repair," Dog Spot Repair for Tall Fescue Lawns," "Ultimate Winter Lawn Mix," "for Tall Fescue Lawns," and "for Bermudagrass Lawns."

2.     EZ Seed's defective design was confirmed by its complete failure to grow grass in scientific tests conducted precisely in accordance with the labeled instructions.  Not once.  Not twice.  But four times.  In studies conducted at the NexGen Turf Research, LLC ("NexGen") facilities in Albany, Oregon, EZ Seed failed to grow any grass at all.  EZ seed did not just fail to grow grass "50% THICKER WITH HALF THE WATER," as promised on the label.  It failed to grow *any* grass at half water rates.

3.     The Plaintiffs' experiences with EZ Seed confirmed NexGen's findings in real-world conditions.  Plaintiffs all purchased EZ Seed, and paid a substantial price premium over comparable grass seed products, in reliance on Defendants' promises that EZ Seed grows grass "50% THICKER WITH HALF THE WATER," as well as their promises that EZ Seed "GROWS ANYWHERE! GUARANTEED!"  EZ Seed product labels also state "Results may vary."  But that too is false.  Results do not vary.  In NexGen's four scientific tests at half water, and in the real-world experiences of each of the seven Plaintiffs, the results were always the same: zero grass growth.

4.     Moreover, Scotts warrants to consumers that they provide a money-back "No Quibble Guarantee" on EZ Seed products with proof of purchase if "for any reason . . . the consumer [is] not satisfied after using th[e] product."  However, Scotts fails to honor its "No Quibble Guarantee" when consumers seek a money-back refund with proof of purchase after learning that EZ Seed does not perform as advertised, promoted and warranted.

5.     The Internet is replete with consumer complaints that describe EZ Seed's failure to grow grass.  For example, one victim wrote:

> We bought Scotts Turf Builder EZ Seed **this past summer with visions of lush green grass filling in the bare spots that had developed in our yard.  We first tried using it on a bare spot in the front where the sun is dappled at best.  We prepped the ground, applied an 1/8 inch layer of the EZ Seed and watered the product until

it was dark brown.  Then, we waited and waited and waited.  Did I mention we
waited?  If the product dried out, we watered it.  A few sprigs appeared, but the
results were spotty at best. **[2]

Another victim wrote:

As they say, "If it sounds too good to be true it probably is".  This product grew
nothing either in shade or full sun or in between.  Scotts should stick to fertilizer.[3]

Another victim wrote:

This product is a dud!  I followed the directions carefully, but am yet to see a
blade of grass.  I am trying to fill some brown patches on my nice lawn, which
receives ample sunlight.  However, I am yet to see any results.  ...  Will not buy
again.[4]

Another victim wrote:

I also follow directions to a tee!  No results!  Not worth the time and effort - oh
and $$$![5]

6.     EZ Seed's design defect renders the product completely worthless.  Nevertheless,

EZ Seed is labeled and sold as a premium product that is supposed to be better than "ordinary

seed," and it commands a substantial price premium over other grass seed products.   For

example, EZ Seed commands an 81% price premium over Pennington Annual Ryegrass at both

Home Depot and Lowe's.

---

[2]  See http://www.viewpoints.com/Scotts-Turf-Builder-EZ-Seed-for-Tall-Fescue-Lawns-
review-bfba4.

[3]  See http://www.amazon.com/Scotts-17401-Turf-Builder-3-75-Pound/product-
reviews/B001EWL0H0/ref=cm_cr_pr_btm_link_3?ie=UTF8&showViewpoints=0&pageNumber
=3&sortBy=bySubmissionDateDescending.

[4]  See http://www.amazon.com/Scotts-17401-Turf-Builder-3-75-Pound/product-
reviews/B001EWL0H0/ref=cm_cr_pr_btm_link_4?ie=UTF8&showViewpoints=0&pageNumber
=4&sortBy=bySubmissionDateDescending.

[5]  See http://www.amazon.com/Scotts-17401-Turf-Builder-3-75-Pound/product-
reviews/B001EWL0H0/ref=cm_cr_pr_btm_link_4?ie=UTF8&showViewpoints=0&pageNumber
=4&sortBy=bySubmissionDateDescending.

| | |
|---|---|
| EZ Seed 10 lb. bag price at both Home Depot and Lowe's websites | $28.94 |
| Pennington Annual Ryegrass 10 lb. bag price at Home Depot website | $15.98 |

Plaintiffs and class members have thus been hit with a costly double-whammy:  a premium purchase price for a worthless product.

7.    Moreover, EZ Seed covers only a fraction of the surface area of ordinary grass seed products.   For example, a ten pound bag of EZ Seed retails for $28.94 and covers 210 square feet.  In contrast, a seven pound bag of Scotts Grass Seed: Sun & Shade Mix costs $24.98 but covers up to 2,800 square feet.  To achieve the same coverage area with EZ Seed would require a consumer to purchase thirteen ten pound bags at a premium of $351.24 over the cost of Scotts Grass Seed: Sun & Shade Mix.

8.    Through this lawsuit, Plaintiffs seek to recover, for themselves and all other similarly situated purchasers of EZ Seed in the United States, a full refund of the purchase price.

## THE PARTIES

9.    Plaintiff Michael Arcuri is a citizen of New York, residing in Onondaga County, New York.

10.    Plaintiff David A. Browne is a citizen of California, residing in San Francisco County, California.

11.    Plaintiff Gwen Eskinazi is a citizen of New York, residing in Rockland County, New York.

12.    Plaintiff Stacy D. Lonardo is a citizen of New York, residing in Monroe County, New York.

13.     Plaintiff Lance Moore is a citizen of New York, residing in Nassau County, New York.

14.     Plaintiff Vance Smith is a citizen of California, residing in Contra Costa County, California.

15.     Plaintiff Nancy Thomas is a citizen of New York, residing in Rockland County, New York.

16.     Defendant The Scotts Miracle-Gro Company, Inc. ("Scotts Miracle-Gro Co.") is a Delaware corporation with a principal place of business at 14111 Scottslawn Road, Marysville, Ohio, 43041.  Scotts is the world's largest marketer of branded consumer lawn and garden products, including a variety of grass seed products.

17.     Defendant The Scotts Company LLC ("Scotts, LLC") is an Ohio Limited Liability Company with a principal place of business located at 14111 Scottslawn Road, Marysville, Ohio, 43041.  The Scotts Company LLC is a wholly-owned subsidiary of Scotts Miracle-Gro Company, Inc.

18.     Defendant Home Depot is a Delaware corporation with a principal place of business in Atlanta, Georgia.  Home Depot is the world's largest home improvement specialty retailer and the fourth largest retailer in the United States.  It has more than 2,200 retail stores in the United States (including Puerto Rico and the U.S. Virgin Islands and the territory of Guam), Canada, Mexico, and China.

19.     Defendant LHC is a North Carolina corporation with a principal place of business in Wilkesboro, North Carolina.  Lowe's is the second-largest home improvement retailer in the world and has approximately 1,725 home improvement stores in the United States, Canada and

Mexico.  LHC operates all of the Lowe's stores in New York, among other states.  LHC is a wholly-owned subsidiary of Lowe's Companies, Inc.

20.     Defendant True Value is a Delaware corporation with a principal place of business in Chicago, Illinois.  True Value is one of the largest retailer-owned hardware cooperatives which operates approximately 4,500 retail stores in the United States.

21.     At all relevant times hereto, Scotts Miracle-Gro Co., Scotts, LLC, Home Depot, LHC and True Value acted in concert with, with the knowledge and approval of and/or as the agent of each other, and within the course and scope of the agency, regarding the acts and omissions alleged.

22.     Moreover, at all relevant times hereto, defendants Home Depot, LHC and True Value affirmatively participated in and/or adopted the false and misleading advertising and marketing claims about Scotts EZ Seed.  Among other things, Home Depot, LHC and True Value are each responsible for (1) displaying EZ Seed and its false packaging claims on their store shelves and websites, (2) utilizing false and misleading in-store EZ Seed product advertisements, displays and/or exhibits, (3) reviewing and approving false and misleading advertising materials for promoting the sale of EZ Seed, including advertisements that bore the retailers' names, logos and/or trademarks, and (4) selling EZ Seed products to end users.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question).  This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

24.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds

$5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendants.

25.     This Court has personal jurisdiction over Defendants because Defendants conduct substantial business within New York, such that Defendants have significant, continuous and pervasive contacts with the State of New York.

26.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants do business throughout this district, and a substantial part of the events giving rise to Plaintiff Thomas's claims took place within this judicial district, including her purchase and use of EZ Seed.

## FACTS COMMON TO ALL COUNTS

### *Scotts EZ Seed*

27.     Defendants claim that EZ Seed is a turf building mixture of grass seed, mulch and fertilizer.  Scotts began selling EZ Seed in 2009, which it describes as a "[r]evolutionary seeding product[] [that] contain[s] a super absorbent growing material that absorbs water and expands to surround seed in a moist, protective layer.  The mix then cares for seeds, infusing them with water and nourishment, so they can build strong roots that survive tough conditions – making it easy for you to grow grass, guaranteed!"

28.     Defendants' EZ Seed packaging, radio and television advertisements, and Internet sites are replete with false and misleading statements about the nature, characteristics, and qualities of EZ Seed.  Among these false claims is that EZ Seed establishes "50% thicker [grass] with half the water [versus ordinary grass seed];" it is "WaterSmart;" and it "Grows Anywhere! Guaranteed!"

29.     Defendants' false statements about EZ Seed's ability to grow anywhere and in a variety of tough conditions also amounts to a false and misleading promise that EZ Seed is an effective, convenient all-in-one seed product for all lawn conditions.

### NexGen's Half Water Study Regarding EZ Seed Product Claims

30.     NexGen recently studied the characteristics and efficacy of EZ Seed versus ordinary grass seed and a competing brand of seed mulch products.     NexGen is the largest turfgrass development institution in North America.  It develops cool and warm season cultivars for certification and licensing to turfgrass companies, including Scotts.

31.     NextGen's study relates to the product claims that EZ Seed is "WaterSmart" and produces grass "50% thicker with half the water [versus ordinary grass seed when each is watered at half the recommended rate.]"

32.     The study was administered by Kenneth Hignight, NexGen's Director of Research.  Mr. Hignight holds three patents for turfgrass development, has released over 100 cultivars, has over 25 Plant Variety Protection certificates, has authored or co-authored 22 articles, and has served on the National Grass Variety Review Board for over 10 years.

33.     Specifically, NexGen examined the ability of EZ Seed to establish grass growth with half the recommended water for ordinary seed.  The study, *Validation of the 1 Step Complete Claim "80% Thicker with Half the Water than Ordinary Seed"* (the "Half Water Study"), included a comparison of EZ Seed to ordinary grass seed at half water levels.

34.     Four simultaneous trials were conducted at a NexGen facility in Albany, Oregon. Each trial was replicated three times.  Trial 1 used a sandy loam soil and compared EZ Seed to three types of Sun and Shade mixtures of ordinary grass seed, two made by Vigoro and one made by Scotts.  Trial 2 used a Woodburn silt loam soil and compared EZ Seed to the same three types of ordinary grass seed used in Trial 1.  Trial 3 used a sandy loam soil and compared EZ Seed to

three types of Tall Fescue Blends of ordinary grass seed, two made by Vigoro and one made by Scotts. Trial 4 used Woodburn silt loam soil and compared EZ Seed to the same three types of ordinary grass seed used in Trial 3.

35. The seed samples that received full water received an average of 1.60 inches per week, and the half water samples received an average of 0.80 inches per week.

36. In all four trials, EZ Seed failed to produce any seedlings under half water conditions throughout the 32-day testing period. Despite this, every other seed sample, including the ordinary seed, produced seedlings under half water conditions.

37. Regarding EZ Seed, the Half Water Study found "The seed mulch product EZ Seed had no seedlings emerge by day 7 when watered at half the recommended rate for 'ordinary' seed. ... Full water rates for EZ Seed resulted in stands comparable to 'ordinary' seed and [the competing branded product at] half rate of water. ... These results are consistent with earlier research where EZ Seed required increased amounts of water to promote germination and establishment compared to [a competing product]."

38. The Half Water Study further found, "By day 10 of the study most products in the four trials had established at a sufficient level to produce a turfgrass stand. The exception was EZ Seed with half the water rate, which showed no emerging seedlings." The Study offered the following explanation: "porous" seed mulch products that "have a high moisture absorbing capacity" like EZ Seed actually impair grass growth because the mulch "compete[s] with the seeds for available water."

39. The Half Water Study concluded that "sufficient water was applied throughout the study to establish and maintain the 'ordinary' products and the [competing branded product]. Therefore, EZ Seed should be able to produce a thick stand of plants as illustrated on the label

with half the amount of water.  Our results showed that EZ Seed could not establish under the half water rate conditions described in this study."

*False And Misleading Product Claims About EZ Seed*

**A.      EZ Seed's False And Misleading Label**

40.      EZ Seed's packaging label claims it is "WaterSmart" and "Makes The Most Of Every Drop."  More specifically, EZ Seed's packaging label claims it establishes grass "50% thicker with half the water" compared to ordinary grass seed.  According to the label, this claim is based on a 32-day comparison study between EZ Seed and "ordinary seed," with "each watered at half the recommended rate for ordinary seed."  Each of these statements is false and misleading.

41.      EZ Seed's packaging label also claims it, "Grows Anywhere!  Guaranteed!"  and "Grows In Tough Conditions!  Guaranteed!"  The label also represents that EZ Seed is "[t]he revolutionary seeding mix that takes care of the seed for you, so you can grow thick, beautiful grass ANYWHERE!", including "Dry, sunny areas!"; "Dense shade!"; and "Even grows on pavement!"  Moreover, the product label claims, "Scotts premium quality EZ Seed is developed to thrive in virtually every condition -- harsh sun, dense shade, and even spreads to repair wear and tear.  *The result -- thicker, beautiful, long lasting grass!*"  Again, each of these statements is false and misleading.

42.      EZ Seed's package label also includes a false and misleading graphic comparing EZ Seed grass growth to ordinary grass seed growth after 32 days (the "Comparative Packaging Graphic").  The EZ Seed clearly outperforms the ordinary grass seed in the promotional visual on the product packaging below.



43.     In addition, Home Depot, LHC and True Value prominently display in-store advertising displays for EZ Seed that contain the same false and misleading claims found on the product packaging.

44.     Plaintiffs' experiences demonstrate that these EZ Seed packaging claims and in-store advertisements are false and misleading, see *infra* at ¶¶ 69-97.

45.     Moreover, reliable scientific testing demonstrates the Comparative Packaging Graphic, among other product claims, is false and misleading, see *supra* at ¶¶ 30-39.   In NexGen's Half Water Study, there was no seedling emergence after 32 days when EZ Seed was watered with half the recommended water for ordinary grass seed.   Thus, reliable scientific testing demonstrates that EZ Seed does not produce 50% thicker grass growth with half the

water; it is not "WaterSmart;" and it is not "developed to thrive in virtually every condition" or to "grow anywhere."

46.     Defendants' false and misleading claims are in willful and wanton disregard of the interests of the consuming public, and they constitute a knowing attempt to deceive consumers.

### B.     EZ Seed's False And Misleading Television Commercial

47.     Scotts is currently airing the EZ Seed Commercial, a thirty-second television advertisement for EZ Seed that makes false and misleading claims about the product's efficacy.

48.     The EZ Seed Commercial opens with a dog sitting on a brown, torn apart patch of grass while barking up at two male actors.  One of the actors is holding a bottle of EZ Seed.

49.     The EZ Seed Commercial focuses on Scotts' product, with the actor holding up the bottle of EZ Seed, unscrewing its cap, and stating:  "Scotts EZ Seed uses the finest seed, fertilizer, and natural mulch that absorbs and holds water . . . ."



50.    As the actor states that EZ Seed "absorbs and holds water," the EZ Seed Commercial shows close-up images of EZ Seed being sprinkled over a brown patch of grass to demonstrate the product's purported ability to absorb water.



51.    To show the composition of EZ Seed's mixture, the EZ Seed Commercial zooms into the soil and offers viewers a close-up image of the seeds and mulch mixed together with the fertilizer.



52.     The EZ Seed Commercial then flashes to 21 days later, showing a green and fully established patch of grass at the actors' feet, with the actor saying, "EZ Seed really works."



53.     The EZ Seed Commercial ends with a picture of EZ Seed on a sunny lawn.  A voiceover says, "Get Scotts EZ Seed.  It's guaranteed!"  The "WaterSmart" logo is conspicuous to viewers, as well as the label's claim that the product "Grows Anywhere!  Guaranteed!"



54.     The EZ Seed Commercial is replete with false and misleading claims.  First, the EZ Seed Commercial falsely implies that consumers will obtain a fully established patch of grass with EZ Seed after 21 days.

55.     Second, the EZ Seed Commercial prominently displays the "Grows Anywhere! Guaranteed!" product claim, displays a logo labeled "Scotts Guarantee," and says "Get Scotts EZ Seed.  It's guaranteed!"  However, EZ Seed does not grow anywhere, and it failed to grow on Plaintiffs' lawns.

56.     Third, the EZ Seed Commercial falsely conveys that the superior water absorption and holding capabilities of EZ Seed will result in superior results.  In fact, the water absorption characteristic of EZ Seed is believed to produce inferior results.  In its research, NexGen found that the mulch in super absorbent seed-mulch products like EZ Seed "actually compete[s] with

the germinating seed for available moisture and may impair successful establishment, particularly under droughty conditions."

        **C.**      **False And Misleading Representations On Defendants' Websites**

      57.    Scotts advertises on the Internet at http://scotts.com/.  The website contains a list of EZ Seed products, explanations about the benefits of EZ Seed, promotional videos, and product guarantees.

      58.    Scotts' website represents that EZ Seed is a "Revolutionary Seeding Product[] Guaranteed to Grow Grass in the Toughest Areas."  This claim is false and misleading.

      59.    Scotts' website represents that EZ Seed is a "revolutionary seeding product[] [that] contain[s] a super absorbent growing material that absorbs water and expands to surround seed in a moist, protective layer.  The mix then cares for seeds, infusing them with water and nourishment, so they can build strong roots that survive tough conditions – making it easy for you to grow grass, guaranteed!"  The website also represents that EZ Seed is a "[r]evolutionary seeding mix that guarantees seeding success."  It explains that EZ Seed grows in "[d]ry, sunny areas, dense shade areas, poor soil areas, even spreads to repair wear & tear."  Moreover, the website guarantees that EZ Seed is "Guaranteed to grow anywhere!  Dry, sunny areas, dense shade areas, wear & tear areas -- even grows on pavement."  These claims are also false and misleading.

60.     In an instructional website video called "3 Steps to seeding success with Scotts EZ Seed," Scotts guarantees the product "Grows Anywhere!":



61.     In the same instructional video, Scotts compares EZ Seed to ordinary grass seed. The result is noticeably fuller and thicker grass with EZ Seed:





62.     The comparative promotional graphics in the website's instructional video are false and misleading.

63.     The websites of Defendants Home Depot, LHC and True Value also engage in and adopt false and misleading advertising claims about EZ Seed, including that the product "grows anywhere, guaranteed," produces "50% thicker [grass] with half the water," is "drought tolerant," "guarantees seeding success, even in the toughest places," and "grows in thick with less water."

64.     Defendants' false and misleading website claims are in willful and wanton disregard of the interests of the consuming public, and constitute a knowing attempt by Defendants to deceive consumers.

**D.      False And Misleading "No-Quibble Guarantee"**

65.     To bolster the sale of EZ Seed, Scotts advertises and promotes a money-back "No Quibble Guarantee" which they fail to honor.

66.     On their website and on every package of EZ Seed, Scotts highlights what it refers to as their "No Quibble Guarantee®."    The terms of the guarantee are unequivocally stated on the product packaging.  They read:

> If for any reason you, the consumer, are not satisfied after using this product, you are entitled to get your money back.  Simply send us the original evidence of purchase and we will mail you a refund check promptly.

67.     Scotts, however, refuses to honor their own return policy, rendering their money-back guarantee illusory.

68.     For example, one reviewer on www.epinions.com posted the following comment in a review titled, "Scotts quibbles over their No-Quibble guarantee:"

> By 08 September 2010 my patience was exhausted and I decided to ask for a refund under the "No-Quibble Guarantee" shown on the package. The required documentation was sent to the address on the package. Result: Huge Quibble from The Scotts Company.  Their basis for not refunding the $54.11 purchase price was due to my lack of providing my street address, according to their response letter of 29 September 2010.  Huh?  No Quibble means no hoop jumping required, and no small type on page 600 full of legalese loopholes to get your refund.  Scotts' quibbling over their "No-Quibble" guarantee indicates I am probably one of thousands that would quibble with The Scotts Company for shamelessly putting EZ in the lab[el] of this seed product.  I found that I can trust Scotts' " No- Quibble Guarantee"  as much as I can my dentist's assurance that the shots in my gums will only hurt a little bit.

## FACTS CONCERNING THE CLASS REPRESENTATIVES

### *Michael Arcuri's EZ Seed Purchase And Use*

69.     On March 30, 2012, Plaintiff Arcuri purchased one 3.75 lb. shake canister of EZ Seed from a Home Depot store in Cicero, New York in order to seed an area of his lawn.  He purchased the product when it was on sale and paid $7.37 for the canister of EZ Seed, excluding sales tax.

70.     Plaintiff Arcuri purchased EZ Seed in reliance Defendants' Misrepresentations, see *infra* at ¶ 115, including those found on the product labeling and in various advertisements and promotional materials.  Specifically, he chose to purchase EZ Seed instead of a less expensive grass seed because only EZ Seed was "GUARANTEED!" to grow anywhere, including in densely shaded areas.  But that was a false guarantee.  Moreover, Plaintiff Arcuri purchased EZ Seed because the label promised that the "revolutionary" seeding mix was "WaterSmart" and that the mixture would grow grass 50% thicker than ordinary grass seed when each was watered at half the recommended rate.  But those promises were also false.

71.     Plaintiff Arcuri paid a tangible increased cost for EZ Seed because of the false claims that he read on the product packaging, on which he also relied.  Ultimately, EZ Seed was worthless (and certainly worth less than its representations suggested), and Plaintiff Arcuri would not have purchased EZ Seed if he had known that the claims on the label were false.  Instead, Plaintiff Arcuri would have purchased a different, less expensive grass seed.

72.     On April 1, 2012, Plaintiff Arcuri seeded his lawn with fresh EZ Seed product, and he carefully followed EZ Seed's directions for use and care on the product package.  However, the EZ Seed did not perform as advertised.  In fact, it did not grow at all.

73.     Plaintiff Arcuri took the following photographs of the area of his lawn that he seeded with EZ Seed.  One photograph was taken on April 1, 2012 when Plaintiff Arcuri applied

the EZ Seed.  The other photograph was taken on April 21, 2012 of the same seeded area.  These

pictures show the complete lack of grass growth on Arcuri's lawn.  Moreover, the lack of grass

growth in Plaintiff Arcuri's photographs stands in stark contrast to the noticeably fuller and

thicker grass growth illustrated in Scotts' 21-day advertising pictures as shown in ¶ 61, *supra*.

 

April 1, 2012      April 21, 2012

### *David Browne's EZ Seed Purchase And Use*

74.     In or about January 2012, Plaintiff Browne purchased one 3.75 lb. shake canister

of EZ Seed from a Lowe's store in San Francisco, California in order to seed some bare patches

in his heavily shaded backyard lawn.  He paid approximately $15.00 for the canister of EZ Seed,

excluding sales tax.

75.     Plaintiff   Browne   purchased   EZ   Seed   in   reliance   on   Defendants'

Misrepresentations, see *infra* at ¶ 115, including those found on the product labeling and in

various advertisements and promotional materials.  Specifically, he chose to purchase EZ Seed

instead of a less expensive grass seed because only EZ Seed was "GUARANTEED!" to grow

anywhere, including in densely shaded areas.  But that was a false guarantee.  Moreover,

Plaintiff Browne purchased EZ Seed because the label promised that the "revolutionary" seeding

mix was "WaterSmart" and that the mixture would grow grass 50% thicker than ordinary grass seed when each was watered at half the recommended rate.  But those promises were also false.

76.      Plaintiff Browne paid a tangible increased cost for EZ Seed because of the false claims that he read on the product packaging, on which he also relied.  Ultimately, EZ Seed was worthless, and Plaintiff Browne would not have purchased EZ Seed if he had known that the claims on the label were false.  Instead, Plaintiff Browne would have purchased a different, less expensive grass seed—which he ultimately did because of EZ Seed's failure to grow.

77.      Plaintiff Browne seeded his lawn with fresh EZ Seed product within days of making his purchase, and he carefully followed EZ Seed's directions for use and care on the product package.  However, the EZ Seed did not perform as advertised.  In fact, it did not grow at all.

78.      Prior to filing this action, Plaintiff Browne, by and through his counsel, provided defendants Scotts and LHC with written notice of his claims pursuant to 15 U.S.C. § 2310(e) and California Civil Code § 1782.  Plaintiff Browne also notified those defendants that he was acting on behalf of a class defined as all persons in the United States who purchased EZ Seed, and on behalf of a subclass of persons who purchased EZ Seed in the State of California.

### Lance Moore's EZ Seed Purchase And Use

79.      In the spring of 2011, Plaintiff Moore purchased one 10 lb. bag of EZ Seed from a Home Depot store in Elmont, New York in order to seed some bare patches in his lawn.  He paid approximately $29.00 for the bag of EZ Seed, excluding sales tax.

80.      Plaintiff  Moore  purchased  EZ  Seed  in  reliance  on  Defendants' Misrepresentations, see *infra* at ¶ 115, including those found on the product labeling and in various advertisements and promotional materials.  Specifically, he chose to  purchase EZ Seed instead of a less expensive grass seed because only EZ Seed was "GUARANTEED!" to grow

anywhere, including in dry, sunny areas and in dense shade (both of which Plaintiff Moore has on his property). But that was a false guarantee. Moreover, Plaintiff Moore purchased EZ Seed because the label promised that the "revolutionary" seeding mix was "WaterSmart" and that the mixture would grow grass 50% thicker than ordinary grass seed when each was watered at half the recommended rate. But those promises were also false.

81.     Plaintiff Moore paid a tangible increased cost for EZ Seed because of the false claims that he read on the product packaging, on which he also relied. Ultimately, EZ Seed was worthless (and certainly worth less than its representations suggested), and Plaintiff Moore would not have purchased EZ Seed if he had known that the claims on the label were false. Instead, Plaintiff Moore would have purchased a different, less expensive grass seed—which he ultimately did because of EZ Seed's failure to grow.

82.     Plaintiff Moore seeded his lawn with fresh EZ Seed product within days of making his purchase, and he carefully followed EZ Seed's directions for use and care on the product package. However, the EZ Seed did not grow and perform as advertised. And plaintiff Moore's bare patches on his lawn remained bare.

83.     Prior to filing this action Plaintiff Moore, by and through his counsel, provided defendants Scotts and Home Depot with written notice of his claims pursuant to 15 U.S.C. § 2310(e). Plaintiff Moore also notified those defendants that he was acting on behalf of a class defined as all persons in the United States who purchased EZ Seed.

### Gwen Eskinazi's EZ Seed Purchase And Use

84.     In the summer of 2011, Plaintiff Eskinazi purchased four 3.75 lb. shake canisters of EZ Seed from a Home Depot store in Rockland County, New York in order to seed bare patches in her lawn. She paid approximately $15.00 for each canister of EZ Seed, excluding sales tax.

85.     Plaintiff Eskinazi purchased EZ Seed in reliance on Defendants' Misrepresentations, see *infra* at ¶ 115, including those found on the product labeling and in various advertisements and promotional materials.  Specifically, she chose to purchase EZ Seed instead of a less expensive grass seed because only EZ Seed was "GUARANTEED!" to grow anywhere.  But that was a false guarantee.  Moreover, Plaintiff Eskinazi purchased EZ Seed because the label promised that the "revolutionary" seeding mix was "WaterSmart" and that the mixture would grow grass 50% thicker than ordinary grass seed when each was watered at half the recommended rate.  But those promises were also false.

86.     Plaintiff Eskinazi paid a tangible increased cost for EZ Seed because of the false claims that she read on the product packaging, on which she also relied.  Ultimately, EZ Seed was worthless (and certainly worth less than its representations suggested), and Plaintiff Eskinazi would not have purchased EZ Seed if she had known that the claims on the label were false.  Instead, Plaintiff Eskinazi would have purchased a different, less expensive grass seed.

87.     Plaintiff Eskinazi seeded her lawn with fresh EZ Seed product within days of making her purchase, and she carefully followed EZ Seed's directions for use and care on the product package.  However, the EZ Seed did not grow and perform as advertised.  And plaintiff Eskinazi's bare patches on her lawn remained bare.

88.     In light of EZ Seed's failure to grow grass, plaintiff Eskinazi sought a money-back refund for the four EZ Seed canisters she had purchased pursuant to the Scotts No-Quibble Guarantee.  However, Scotts refused to honor the No-Quibble Guarantee for two containers of the EZ Seed.

### Stacy Lonardo's EZ Seed Purchase And Use

89.     In 2011, Plaintiff Lonardo purchased one 3.75 lb. shake canister of EZ Seed from a True Value store in Penfield, New York in order to seed bare patches in her lawn.  She paid approximately $17.00 for the canister of EZ Seed, excluding sales tax.

90.     Plaintiff Lonardo purchased EZ Seed in reliance on Defendants' Misrepresentations, see *infra* at ¶ 115, including those found on the product labeling and in various advertisements and promotional materials.  Specifically, she chose to purchase EZ Seed instead of a less expensive grass seed because only EZ Seed was "GUARANTEED!" to grow anywhere.  But that was a false guarantee.  Moreover, Plaintiff Lonardo purchased EZ Seed because the label promised that the "revolutionary" seeding mix was "WaterSmart" and that the mixture would grow grass 50% thicker than ordinary grass seed when each was watered at half the recommended rate.  But those promises were also false.

91.     Plaintiff Lonardo paid a tangible increased cost for EZ Seed because of the false claims that she read on the product packaging, on which she also relied.  Ultimately, EZ Seed was worthless (and certainly worth less than its representations suggested), and Plaintiff Lonardo would not have purchased EZ Seed if she had known that the claims on the label were false. Instead, Plaintiff Lonardo would have purchased a different, less expensive grass seed.

92.     Plaintiff Lonardo seeded her lawn with fresh EZ Seed product within days of making her purchase, and she carefully followed EZ Seed's directions for use and care on the product package.  However, the EZ Seed did not grow and perform as advertised.  And plaintiff Lonardo's bare patches on her lawn remained bare.

### Vance Smith's EZ Seed Purchase And Use

93.     In or about February 2012, Plaintiff Smith purchased two 6.25 lb. bags of EZ Seed from a Home Depot store in San Ramon, California in order to seed some bare patches in

his partially shaded front yard lawn. He paid approximately $15.00 for each bag of EZ Seed, excluding sales tax.

94.    Plaintiff Smith purchased EZ Seed in reliance on Defendants' Misrepresentations, see *infra* at ¶ 115, including those found on the product labeling and in various advertisements and promotional materials. Specifically, he chose to purchase EZ Seed instead of a less expensive grass seed because only EZ Seed was "GUARANTEED!" to grow anywhere, including in densely shaded areas. But that was a false guarantee. Moreover, Plaintiff Smith purchased EZ Seed because the label promised that the "revolutionary" seeding mix was "WaterSmart" and that the mixture would grow grass 50% thicker than ordinary grass seed when each was watered at half the recommended rate. But those promises were also false.

95.    Plaintiff Smith paid a tangible increased cost for EZ Seed because of the false claims that he read on the product packaging, on which he also relied. Ultimately, EZ Seed was worthless (and certainly worth less than its representations suggested), and Plaintiff Smith would not have purchased EZ Seed if he had known that the claims on the label were false. Instead, Plaintiff Smith would have purchased a different, less expensive grass seed.

96.    Plaintiff Smith seeded his lawn with fresh EZ Seed product within days of making his purchase, and he carefully followed EZ Seed's directions for use and care on the product package. However, the EZ Seed did not perform as advertised. In fact, it did not grow at all.

97.    Prior to filing this action on June 12, 2012, Plaintiff Smith, by and through his counsel, provided defendant Home Depot with written notice of his claims pursuant to 15 U.S.C. § 2310(e) and California Civil Code § 1782. Plaintiff Smith also notified Home Depot that he was acting on behalf of a class defined as all persons in the United States who purchased EZ Seed, and on behalf of a subclass of persons who purchased EZ Seed in the State of California.

### Nancy Thomas's EZ Seed Purchase And Use

98.     In or about August 2011, Plaintiff Thomas purchased one 14.5 lb. bucket and one 10 lb. bag of EZ Seed from retail stores located in Rockland County, New York in order to seed some bare patches in her front yard lawn.  She paid approximately $43.00 for the bucket and approximately $29.00 the bag of EZ Seed, excluding sales tax.

99.     Plaintiff Thomas purchased EZ Seed in reliance on Defendants' Misrepresentations, see *infra* at ¶ 115, including those found on the product labeling and in various advertisements and promotional materials.  Specifically, she chose to purchase EZ Seed instead of a less expensive grass seed because only EZ Seed was "GUARANTEED!" to grow anywhere.  But that was a false guarantee.  Moreover, Plaintiff Thomas purchased EZ Seed because the label promised that the "revolutionary" seeding mix was "WaterSmart" and that the mixture would grow grass 50% thicker than ordinary grass seed when each was watered at half the recommended rate.  But those promises were also false.

100.    Plaintiff Thomas paid a tangible increased cost for EZ Seed because of the false claims that she read on the product packaging, on which she also relied.  Ultimately, EZ Seed was worthless (and certainly worth less than its representations suggested), and Plaintiff Thomas would not have purchased EZ Seed if she had known that the claims on the label were false. Instead, Plaintiff Thomas would have purchased a different, less expensive grass seed.

101.    Plaintiff Thomas seeded her lawn with fresh EZ Seed product within days of making his purchase, and she carefully followed EZ Seed's directions for use and care on the product package.  However, the EZ Seed did not perform as advertised.  In fact, it did not grow at all.

## CLASS REPRESENTATION ALLEGATIONS

102.    Plaintiffs seek to represent a class defined as all persons in the United States who purchased EZ Seed.  Excluded from the Class are persons who made such purchase for the purpose of resale and persons who purchased EZ Seed in Florida, Georgia, Washington, or Illinois.

103.    Plaintiffs Arcuri, Eskinazi, Lonardo, Moore and Thomas also seek to represent a subclass of all Class members who purchased EZ Seed in New York (the "New York Subclass").

104.    Plaintiffs Browne and Smith also seek to represent a subclass of Class members who purchased EZ Seed in California (the "California Subclass").

105.    Members of the Class and Subclasses are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and Subclasses number in the tens of thousands.  The precise number of Class Subclass members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class and Subclass members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third party retailers and vendors.

106.    Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to whether Defendants' labeling, marketing and promotion of EZ Seed is false and misleading.

107.    The claims of the named Plaintiffs are typical of the claims of the Class and Subclasses in that the named Plaintiffs were exposed to and relied on Defendants' false and misleading marketing of EZ Seed and suffered a loss as a result of their EZ Seed purchases.

108.    Plaintiffs are adequate representatives of the Class and Subclasses because their interests do not conflict with the interests of the Class members they seeks to represent, they

have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

109.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class and Subclass members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## FEDERAL COUNTS

## COUNT I

**(Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.)**

110.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

111.    Plaintiffs brings this Count I individually and on behalf of the members of the Class and Subclasses against all Defendants.

112.    EZ Seed is a consumer product as defined in 15 U.S.C. § 2301(1).

113.    Plaintiffs and the Class and Subclass members are consumers as defined in 15 U.S.C. § 2301(3).

114.     Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

115.     In connection with the sale of EZ Seed, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6) on the product packaging and in various advertisements and promotional materials by making Express Warranties that EZ Seed:  (i) "Grows Anywhere! GUARANTEED!"; (ii) "Grows in Tough Conditions!  Guaranteed!;" (iii) is "WaterSmart;" (iv) produces "50% thicker [grass] with half the water [versus ordinary seed];" (v) is a "revolutionary seeding mix that takes care of the seed for you, so you can grow thick, beautiful grass ANYWHERE!", including "Dry, sunny areas!"; "Dense shade!"; and "Even grows on pavement!"; (vi) is a "premium quality" seeding product that "is developed to thrive in virtually every condition -- harsh sun, dense shade, and even spreads to repair wear and tear. *The result - thicker, beautiful, long lasting grass!*"  Moreover, Scotts issued an express written warranty that they would honor the "No-Quibble Guarantee" (collectively, the "Express Warranties" or "Misrepresentations").

116.     In fact, EZ Seed does not conform to the Express Warranties because each of the Express Warranties is false and misleading.  Additionally, NexGen's studies refute some of these warranties.  For example, EZ Seed warrants that it will produce 50% thicker grass growth compared to ordinary grass seed when watered at half the recommended rate, but NexGen's Half Water Study found that EZ Seed failed to produce any grass seedlings when watered at half the recommended rate for ordinary seed.

117.     By reason of Defendants' breach of warranties, Defendants violated the statutory rights due Plaintiffs and the Class and Subclass members pursuant to the Magnuson-Moss

Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, thereby damaging Plaintiff and the Class and Subclass members.

118.    Plaintiff and the Class and Subclass members were injured as a direct and proximate result of Defendants' breach because they would not have purchased EZ Seed if they knew the truth about the product, and would not have paid a premium price for worthless defective grass seed.

### STATE LAW COUNTS

### CALIFORNIA

### COUNT II

**(Consumers Legal Remedies Act ("CLRA"), Calif. Civil Code §§ 1750, *et seq.*)**

119.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

120.    Plaintiffs bring this Count II on behalf of the members of the Class and California Subclass against all Defendants.

121.    CLRA § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  Defendants violated this provision by making the Misrepresentations.

122.    CLRA § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  Defendants violated this provision by making the Misrepresentations.

123.    CLRA § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."  Defendants violated this provision by making the Misrepresentations.

124.    CLRA § 1770(a)(14) prohibits "[r]epresenting that a transaction confers or involves rights, remedies, or obligations which it does not have or involve."  Defendants violated this provision by making the Misrepresentation related to the "No-Quibble Guarantee."

125.    CLRA § 1770(a)(16) prohibits "[r]epresenting the subject of a transaction has been supplied in accordance with a previous representation when it has not."  Defendants violated this provision by making the Misrepresentations.

126.    Plaintiffs and the Class and California Subclass members suffered injuries caused by Defendants' Misrepresentations because they would not have purchased EZ Seed if they knew the truth about the product.

127.    On April 23, 2012, prior to the filing of this Complaint, a CLRA notice letter was served on defendants Scotts Miracle-Gro Co., Scotts, LLC and LHC that complied in all respects with California Civil Code § 1782(a).  On June 12, 2012, also prior to filing this Complaint, a CLRA notice letter was served on defendant Home Depot that complied in all respects with California Civil Code § 1782(a).  Plaintiffs Browne and Smith, by and through their counsel, sent Defendants their letters *via* certified mail, return receipt requested, advising Defendants they were in violation of the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of § 1770.

128.    Wherefore, Plaintiffs hereby seek all remedies available under the CLRA from Defendants.

## COUNT III

### (Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*)

129.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

130.    Plaintiffs bring this Count III on behalf of the members of the Class and California Subclass against all Defendants.

131.    Defendants are subject to the Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200 *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

132.    Defendants' conduct, described herein, violated the "unlawful" prong of the UCL by violating the CLRA and FAL (see *infra* at Count IV).

133.    Defendants' conduct, described herein, violated the "fraudulent" prong of the UCL by making the Misrepresentations.

134.    Plaintiffs and the Class and California Subclass members suffered lost money or property as a result of Defendants' UCL violations because they would not have purchased EZ Seed if they knew the truth about the product.

## COUNT IV

**(False Advertising Law ("FAL"), Calif. Business & Professions Code §§ 17500 *et seq.*)**

135.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

136.    Plaintiffs bring this Count IV on behalf of the members of the Class and California Subclass against all Defendants.

137.    California's False Advertising Law, Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading

and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

138.    Defendants committed acts of false advertising, as defined by §17500, by making the Misrepresentations.

139.    Defendants knew or should have known, through the exercise of reasonable care that the Misrepresentations were untrue and misleading.

140.    Defendants' actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

141.    Plaintiffs and the Class and California Subclass members suffered lost money or property as a result of Defendants' FAL violations because they would not have purchased EZ Seed if they knew the truth about the product.

<u>**COUNT V**</u>

**(Breach of Express Warranty, Cal. Com. Code § 2313)**

142.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

143.    Plaintiffs bring this Count V individually and on behalf of the members of the Class and California Subclass against all Defendants.

144.    By making the Express Warranties, Defendants, as the designers, manufacturers, marketers, distributors, or sellers expressly warranted that EZ Seed products were fit for their intended purpose of producing thicker, more beautiful grass growth than ordinary seed using less water, even under harsh conditions.  Scotts also expressly warranted that they would honor their "No-Quibble Guarantee."

145.    In fact, EZ Seed products are not fit for such purpose because each of the Express Warranties is false and misleading.

146.    Plaintiffs and the Class and California Subclass members were injured as a direct and proximate result of Defendants' breach because they would not have purchased EZ Seed if they knew the truth about the product.

## COUNT VI

**(Breach of Implied Warranty of Merchantability, Cal. Com. Code § 2314)**

147.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

148.    Plaintiffs bring this Count VI individually and on behalf of the members of the Class and California Subclass against all Defendants.

149.    Defendants as the designers, manufacturers, marketers, distributors, and/or sellers impliedly warranted that EZ Seed was fit for its intended purpose in that it would produce thicker, more beautiful grass growth than ordinary seed using less water, even under harsh conditions.

150.    Defendants breached the warranty implied in the contract for the sale of the EZ Seed products in that EZ Seed could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose.  As a result, Plaintiffs and the Class and California Subclass members did not receive the goods as impliedly warranted by Defendants to be merchantable.

151.    In reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose, Plaintiffs and the Class and Subclass members purchased EZ Seed for use as turf building grass seed product.

152.    The EZ Seed products were not altered by Plaintiffs or the Class or California Subclass members.

35

153.    The EZ Seed products were defective when they left the exclusive control of Defendants.

154.    Defendants knew that the EZ Seed products would be purchased and used without additional testing for efficacy by Plaintiffs and the Class and California Subclass members.

155.    The EZ Seed products were defectively designed and unfit for their intended purpose, and Plaintiffs and the Class and California Subclass members did not receive the goods as warranted.

156.    As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiffs and the Class and Subclass members have been injured and harmed because they would not have purchased EZ Seed if they knew the truth about the product.

## COUNT VII

### (Unjust Enrichment)

157.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

158.    Plaintiffs bring this Count VII individually and on behalf of the members of the Class and California Subclass against all Defendants.

159.    Plaintiffs and the Class and California Subclass members conferred benefits on Defendants by purchasing EZ Seed products.

160.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs and the Class and California Subclass members' purchases of EZ Seed products. Retention of those moneys under these circumstances is unjust and inequitable because of Defendants' Misrepresentations about EZ Seed, which caused injuries to Plaintiffs and the Class and California Subclass members because they would not have purchased EZ Seed if they knew the truth about the product.

161.    Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and the Class and California Subclass members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the Class and California Subclass members for their unjust enrichment, as ordered by the Court.

## NEW YORK

## COUNT VIII

### (Deceptive Acts or Practices, New York Gen. Bus. Law § 349)

162.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

163.    Plaintiffs bring this Count VIII individually and on behalf of the members of the Class and New York Subclass against all Defendants.

164.    By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by making the Misrepresentations.

165.    The foregoing deceptive acts and practices were directed at consumers.

166.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and efficacy of EZ Seed products to induce consumers to purchase same.

167.    Plaintiffs Arcuri, Eskinazi, Lonardo, Moore and Thomas and members of the Class and New York Subclass were injured because they paid for EZ Seed, which they would not have done had they known the truth about the product.

168.    On behalf of themselves and other members of the Class and New York Subclass, Plaintiffs Arcuri, Eskinazi, Lonardo, Moore and Thomas seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT IX

### (False Advertising, New York Gen. Bus. Law § 350)

169.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

170.    Plaintiffs bring this Count IX individually and on behalf of the member of the Class and New York Subclass against all Defendants.

171.    Based on the foregoing, Defendants have engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law.

172.    Defendants' false, misleading and deceptive statements and representations of fact, including but not limited to the Misrepresentations, were and are directed to consumers.

173.    Defendants' false, misleading and deceptive statements and representations of fact, including but not limited to the Misrepresentations, were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

174.    Defendants' false, misleading and deceptive statements and representations of fact, including but not limited to the Misrepresentations, have resulted in consumer injury or harm to the public interest.

175.    As a result of Defendants' false, misleading and deceptive statements and representations of fact, including but not limited to the Misrepresentations, Plaintiffs have suffered and continue to suffer economic injury.

176.    Plaintiffs and the Class and New York Subclass members suffered an ascertainable loss caused by Defendants' misrepresentations because they paid for EZ Seed, which they would not have done had they known the truth about the product.

177.     On behalf of themselves and other members of the Class and New York Subclass, Plaintiffs seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT X

### (Breach of Express Warranty, N.Y. U.C.C. § 2-313)

178.     Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

179.     Plaintiffs bring this Count X individually and on behalf of the members of the Class and New York Subclass against all Defendants.

180.     Defendants are and were at all relevant times merchants under N.Y. U.C.C. § 2-313.

181.     Defendants, as the designers, manufacturers, marketers, distributors, or sellers expressly warranted that EZ Seed products were fit for their intended purpose by making the Express Warranties.  Scotts also expressly warranted that they would honor their "No Quibble Guarantee."

182.     In fact, EZ Seed products are not fit for such purpose because each of the Express Warranties is false and misleading.

183.     Plaintiffs and the Class and New York Subclass members were injured as a direct and proximate result of Defendants' breach because they would not have purchased EZ Seed if they knew the truth about the product.

## COUNT XI

**(Breach of Implied Warranty of Merchantability, N.Y. U.C.C. § 2-314)**

184.     Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

185.     Plaintiffs bring this Count XI individually and on behalf of the members of the Class and New York Subclass against all Defendants.

186.     Defendants are and were at all relevant times merchants under N.Y. U.C.C. § 2-313.

187.     Defendants as the designers, manufacturers, marketers, distributors, and/or sellers impliedly warranted that EZ Seed was fit for its intended purpose in that it would produce thicker, more beautiful grass growth than ordinary seed using less water, even under harsh conditions.

188.     Defendants breached the warranty implied in the contract for the sale of the EZ Seed products in that EZ Seed could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose.  As a result, Plaintiffs and the Class and New York Subclass members did not receive the goods as impliedly warranted by Defendants to be merchantable.

189.     In reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose, Plaintiffs and the Class and Subclass members purchased EZ Seed for use as turf building grass seed product.

190.     The EZ Seed products were not altered by Plaintiffs or the Class or New York Subclass members.

191.    The EZ Seed products were defective when they left the exclusive control of Defendants.

192.    Defendants knew that the EZ Seed products would be purchased and used without additional testing for efficacy by Plaintiffs and the Class and New York Subclass members.

193.    The EZ Seed products were defectively designed and unfit for their intended purpose, and Plaintiffs and the Class and New York Subclass members did not receive the goods as warranted.

194.    As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiffs and the Class and New York Subclass members have been injured and harmed because they would not have purchased EZ Seed if they knew the truth about the product.

## COUNT XII

### (Breach of Contract/Common Law Warranty)

195.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

196.    Plaintiffs bring this Count XII on behalf of the members of the Class and New York Subclass against all Defendants.

197.    To the extent Defendants' commitment is deemed not to be a warranty under New York's Uniform Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.

198.    Defendants breached this warranty or contract obligation by warranting that EZ Seed products were fit for their intended purpose in that they would produce thicker, more beautiful grass growth than ordinary seed using less water, even under harsh conditions.

199.    As a direct and proximate cause of Defendants' breach of contract or implied warranty, Plaintiffs and the Class and New York Subclass members have been injured and

harmed because they would not have purchased EZ Seed if they knew the truth about the product.

## **RELIEF DEMANDED**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

A.      For an order certifying the nationwide Class, the California Subclass, and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Subclasses and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

B.      For an order declaring the Defendants' conduct violates the statutes referenced herein;

C.      For an order finding in favor of Plaintiffs, the nationwide Class, and the Subclasses on all counts asserted herein;

D.      For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

E.      For prejudgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of equitable monetary relief;

G.      For injunctive relief as pleaded or as the Court may deem proper; and

H.      For an order awarding Plaintiffs and the Class and Subclasses their reasonable attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

Dated: August 9, 2012

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: _____
                Joseph I. Marchese

Scott A. Bursor (SB1141)
Joseph I. Marchese (JM1976)
369 Lexington Ave., 10th Floor
New York, NY 10017-6506
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
              jmarchese@bursor.com

Antonio Vozzolo (AV-8773)
Christopher Marlborough (CM-6107)
369 Lexington Ave., 10th Floor
New York, NY 10017-6506
Telephone:  (212) 983-9330
Facsimile:  (212) 983-9331
Email:  avozzolo@faruqilaw.com
              cmarlborough@faruqilaw.com

*Attorneys for Plaintiffs*

43