UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
                                        :

                                          :

                                          :             **MEMORANDUM DECISION**

IN RE SCOTTS  EZ SEED LITIGATION      :

                                          :             12 CV 4727 (VB)

                                          :

                                          :
----------------------------------------------------------------x

Briccetti, J.:

       Plaintiffs bring this putative class action against Scotts Miracle-Gro Company, Inc.,

Scotts Company LLC (collectively, "Scotts"), Lowe's Home Centers, Inc. ("Lowe's"), and

Home Depot U.S.A., Inc. ("Home Depot").  The crux of plaintiffs' consolidated class action

complaint is that Scotts EZ Seed, a product manufactured by Scotts and sold at Lowe's and

Home Depot stores, does not grow grass as advertised.  Pending before the Court are defendants'

motions to dismiss.  (Docs. #25, 28).[1]  For the following reasons, both motions are GRANTED

in part and DENIED in part.

       The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and the Class Action Fairness

Act ("CAFA"), 28 U.S.C. § 1332(d).[2]

---

[1]      Scotts and Lowe's filed a joint motion to dismiss; Home Depot filed a separate motion.

[2]      The Court finds plaintiffs have adequately – if inartfully – pleaded facts sufficient to
establish subject matter jurisdiction under CAFA.  CAFA grants federal jurisdiction over certain
class actions in which at least $5,000,000 is in controversy.  The seven named plaintiffs each
allege actual damages averaging approximately $29, and plaintiffs claim the number of potential
class members is "in the tens of thousands."  Thus, even if the class included 100,000 members
and each member had a claim equal to the average claim of the named plaintiffs, the amount in
controversy would fall far short of $5,000,000.  Nevertheless, the Second Circuit has noted that
the burden of proving the amount in controversy requirement "is hardly onerous, . . . for we
recognize a rebuttable presumption that the face of the complaint is a good faith representation of
the actual amount in controversy."  Scherer v. Equitable Life Assurance Soc'y of U.S., 347 F.3d

1

**BACKGROUND**

For purposes of deciding the pending motions, the Court accepts all well-pleaded factual

allegations in the complaint as true and draws all reasonable inferences in favor of plaintiffs.

Scotts produces Scotts Turf Builder EZ Seed ("EZ Seed"), a "combination mulch-grass

seed product."  According to its label, EZ Seed grows grass "50% thicker with half the water"

compared to "ordinary seed."  Additionally, EZ Seed's labeling and advertising claim the

product:

- is "WaterSmart";

- "Grows Anywhere!  Guaranteed!";

- "Makes the Most Of Every Drop";

- "Grows in Tough Conditions!  Guaranteed!";

- is "Drought tolerant";

- is "[t]he revolutionary seeding mix that takes care of the seed for you, so you can grow thick, beautiful grass ANYWHERE," including "Dry, sunny areas," "Dense shade," and "Even grows on pavement!"; and

- is a "premium quality" product that "is developed to thrive in virtually every condition – harsh sun, dense shade, and even spreads to repair wear and tear.  The result – thicker, beautiful, long lasting grass!"

EZ Seed's labeling also includes a graphic purporting to illustrate EZ Seed's superior

performance compared to ordinary seed.  The graphic includes two pictures: one of a patch of

grass grown using EZ Seed, and one of a patch of grass grown using ordinary seed.  The pictures

reflect that EZ Seed clearly outperforms ordinary seed.  Above the pictures are the words, "50%

394, 397 (2d Cir. 2003) (internal quotation marks omitted).  Accordingly, "'[E]ven where [the] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted.'"  Id. (quoting Zacharia v. Harbor Island Spa, Inc., 684 F.2d 199, 202 (2d Cir. 1982)).

THICKER WITH HALF THE WATER[††]."  Below the pictures are the words: "[††]Results 32 days

after planting; each watered at half the recommended rate for ordinary seed.  Results may vary.

*Subject to proper care."

To back up its claims regarding EZ Seed's effectiveness, Scotts offers purchasers of EZ

Seed a "No Quibble Guarantee," which provides:

> If for any reason you, the consumer, are not satisfied after using this product, you
> are entitled to get your money back.  Simply send us the original evidence of
> purchase and we will mail you a refund check promptly.

Home Depot and Lowe's "prominently display in-store advertising displays for EZ Seed"

that contain the same statements as those made by Scotts.  Additionally, Home Depot and

Lowe's "review[ed] and approv[ed] false and misleading advertising materials for promoting the

sale of EZ Seed, including advertisements that bore the retailers' names, logos and/or

trademarks."  Plaintiffs do not allege Home Depot or Lowe's was involved in the production,

testing, or labeling of EZ Seed.

Contrary to defendants' representations concerning EZ seed's grass-growing prowess,

plaintiffs allege EZ Seed does not grow grass when used as directed.  Each of the seven named

plaintiffs – all of whom reside in either New York or California – alleges he or she purchased EZ

Seed and used the product as directed, but it failed to grow any grass.  Additionally, plaintiffs

each claim he or she relied on defendants' representations concerning EZ Seed's effectiveness in

choosing to purchase EZ Seed.  Plaintiffs further allege that thousands of other EZ Seed

purchasers throughout the country were similarly misled by defendants' statements and,

consequently, bought ineffective seed.

In support of their claims, plaintiffs cite several studies conducted by NexGen – "the

largest turfgrass development institution in North America" – which suggest EZ Seed fails to

3

grow any grass when given half the amount of water recommended for ordinary seed over a thirty-two day period.  According to the studies, EZ Seed's failure to perform as advertized is the result of a "design defect."

Additionally, one plaintiff, Gwen Eskinazi, sought a refund pursuant to the "No Quibble Guarantee."  Although Eskinazi purchased four canisters of EZ Seed, Scotts only refunded the purchase price of two canisters.

Based on the foregoing, plaintiffs bring claims under (1) the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(1), et seq.; (2) the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq.; (3) the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.; (4) the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq.; (5) Sections 2313 (breach of express warranty) and 2314 (breach of implied warranty of merchantability) of the California Commercial Code; (6) Sections 349 (deceptive acts or practices) and 350 (false advertising) of the New York General Business Law; and (7) Sections 2-313 (breach of express warranty) and 2-314 (breach of implied warranty of merchantability) of the New York Commercial Code.  Plaintiffs also bring common law claims for unjust enrichment, breach of contract, and breach of warranty.

## DISCUSSION

I.   Legal Standard

 "The function of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984) (internal quotation marks omitted).  In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the complaint under the "two-pronged approach"

suggested by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, plaintiffs'

legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements," are not entitled to the assumption of truth and are thus not

sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161

(2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should

assume their veracity and then determine whether they plausibly give rise to an entitlement to

relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

    To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard

of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544,

564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully."  Id.

II.    Magnuson-Moss Warranty Act (Count I)

    Under the Magnuson-Moss Warranty Act ("MMWA"), "a consumer who is damaged by

the failure of a supplier, warrantor, or service contractor to comply with . . . a written

warranty . . . may bring suit for damages and other legal and equitable relief."  15 U.S.C. § 2310.

A "written warranty" under the MMWA is defined, in relevant part, as:

> (A) any written affirmation of fact or written promise made in connection with the
> sale of a consumer product by a supplier to a buyer which relates to the nature of
> the material or workmanship and affirms or promises that such material or
> workmanship is defect free or will meet a specified level of performance over a
> specified period of time, or
>
> (B) any undertaking in writing in connection with the sale by a supplier of a

consumer product <u>to refund, repair, replace, or take other remedial action with
respect to such product in the event that such product fails to meet the
specifications set forth in the undertaking,</u>

which written affirmation, promise, or undertaking becomes part of the basis of
the bargain between a supplier and a buyer for purposes other than resale of such
product.

15 U.S.C. § 2301(6) (emphasis added).

Plaintiffs claim the various statements made in EZ Seed's labeling and advertising are
written warranties under the MMWA because they promise EZ Seed "will meet a specific level
of performance over a specified period of time."  Plaintiffs also allege the No Quibble Guaranty
is actionable under the MMWA because it constitutes an undertaking "to refund . . . [a] product
in the event that such product fails to meet the specifications set forth in the undertaking."  <u>Id</u>.

Defendants contend plaintiffs have failed to state a claim under the MMWA because (1)
none of the alleged statements cited by plaintiffs specifies a period of time during which EZ Seed
will meet a specific level of performance; and (2) plaintiff Eskinazi has failed to allege she
provided Scotts with proof of her purchase of EZ Seed as required by the No Quibble Guaranty.

A.      Statements in Labeling and Advertising

Certain statements in EZ Seed's labeling and advertising arguably promise that EZ Seed
will "meet a specific level of performance"; for example, the claim that EZ Seed grows grass
"50% thicker with half the water."  <u>See</u> <u>Kelley v. Microsoft Corp.</u>, 2007 WL 2600841, at *3
(W.D. Wash. Sept. 10, 2007) (claim that computer was "Windows Vista Capable" promised
"specific level of performance").  However, plaintiffs have failed to allege that any of the
defendants promised EZ Seed would achieve a specific level of performance <u>over a specific
period of time</u>.

As the Federal Trade Commission explained in its regulatory interpretation of the

6

relevant provisions of the MMWA:

> Certain representations, such as energy efficiency ratings for electrical appliances, care labeling of wearing apparel, and other product information disclosures may be express warranties under the Uniform Commercial Code. However, these disclosures alone are not written warranties under this Act. Section 101(6) provides that a written affirmation of fact or a written promise of a specified level of performance must relate to a specified period of time in order to be considered a "written warranty." A product information disclosure without a specified time period to which the disclosure relates is therefore not a written warranty.

16 C.F.R. § 700.3 (footnote omitted).

Skelton v. General Motors Corp., 660 F.2d 311 (7th Cir. 1981) is also instructive. In Skelton, the Seventh Circuit affirmed the district court's finding that an advertisement claiming certain General Motors cars contained "THM transmissions" or "transmissions of similar quality and performance" was not a written warranty under the MMWA because the advertisement did not "affirm that the transmission would meet a specified level of performance over a specified period of time." 660 F.2d at 316 n.7. The court acknowledged that, under the district court's reading of the MMWA's definition of "written warranty," a representation that a "transmission would perform like a THM 350 transmission for the life of the transmission" would constitute a written warranty under the act, while the same representation without the words, "for the life of the transmission," would not. In response to this seemingly-arbitrary distinction, the Seventh Circuit explained: "a certain amount of arbitrariness is inevitable whenever a bright line must be drawn. And the need for a clearly circumscribed definition in the statutory scheme before us is apparent since, to comply with the [MMWA]'s obligations, manufacturers and suppliers must know in advance exactly which representations are subject to those obligations." Id.

Following Skelton, courts have found promises are written warranties under the MMWA only if the promise clearly states the specific time period over which the promised performance

7

is to occur.  Compare Hairston v. S. Beach Beverage Co., Inc., 2012 WL 1893818, at *6 (C.D.

Cal. May 18, 2012) (even if representations that beverage was "all natural with vitamins" and

had a particular flavor "could somehow be construed as promises or guarantees, they clearly do

not 'specify a level of performance over a specified period of time'"); Kelley v. Microsoft Corp.,

2007 WL 2600841, at *5 (representation that computer was "Windows Vista Capable" not

written warranty because promise contained no temporal element); with Kelleher v. Marvin

Lumber & Cedar Co., 891 A.2d 477, 503-04 (N.H. 2005) (promise that "all exterior wood [in the

windows] is deep treated in a dry vac process with a pesticide and water repellant solution to

permanently protect against rot and decay" constitutes written warranty under MMWA because

promised performance is "permanent").

   Here, none of the representations allegedly made by defendants includes the requisite

temporal element to be actionable under the MMWA.

   The only alleged representation that comes close to promising a certain level of

performance over a specific period of time is the statement on EZ Seed's label that EZ Seed

grows grass "50% thicker with half the water" compared to ordinary seed.  Plaintiffs argue this

statement is a written warranty under the MMWA because directly below the words, "50%

thicker with half the water," are images purporting to show EZ Seed having grown significantly

more grass than ordinary seed "32 days after planting."  Thus, plaintiffs argue defendants

promise that EZ Seed grows 50% thicker with half the water in 32 days.  However, the words,

"Results 32 days after planting," are immediately followed by the words: "each watered at half

the recommended rate for ordinary seed.  Results may vary." (emphasis added).  Thus, rather

than promising that EZ Seed will reach a certain level of performance in 32 days, the label

expressly cautions purchasers that they might not experience the promised result in 32 days.  The

Court finds this equivocal representation is not a promise that EZ Seed "will meet a specified

level of performance over a specified period of time" for purposes of the MMWA.  To find

otherwise would require too strained a reading of the unambiguous language of the statute.  See

15 U.S.C. § 2301(6).  Therefore, plaintiffs have failed to state a claim under the MMWA based

on defendants' representation that EZ Seed grows grass "50% thicker with half the water."

      B.     The No Quibble Guaranty

Plaintiffs also assert a MMWA claim based on the No Quibble Guaranty.  For purposes

of the pending motions, Scotts – the only defendant that allegedly offered the guaranty –

concedes that "its No Quibble Guaranty may constitute a warranty under [the MMWA]."

(Scotts' & Lowe's Br. at 8) (citing 15 U.S.C. § 2301(6)(B)).  However, Scotts contends plaintiffs

have failed to state a claim because plaintiff Eskinazi – the only plaintiff who allegedly sought a

refund pursuant to the No Quibble Guaranty – does not allege she submitted proof of purchase

when she requested a refund.  In the alternative, Scotts contends the claim should be dismissed

because it is "implausible" that Scotts would have refunded Eskinazi the cost of some, but not

all, of the seed she purchased.

Scotts' arguments are unavailing.  In the complaint, Eskinazi alleges she "sought a

money-back refund for the four EZ Seed canisters she had purchased pursuant to the Scotts No-

Quibble Guarantee.  However, Scotts refused to honor the No-Quibble Guarantee for two

containers of the EZ Seed."  These factual allegations are sufficient to allow the Court to draw

the reasonable inference that Eskinazi properly requested a refund pursuant to the No Quibble

Guarantee, and Scotts failed to honor her request.  See Ashcroft v. Iqbal, 556 U.S. at 678.  The

Court finds it entirely plausible that the manufacturer of a product would offer a money-back

guarantee, but then subsequently fail to honor that guarantee in full or in part.

9

The cases cited by Scotts on this point are inapposite.  For example, in <u>Asp v. Toshiba</u> <u>Am. Consumer Products, LLC</u>, 616 F. Supp. 2d 721, 731 (S.D. Ohio 2008), the court found plaintiff failed to state an express warranty claim because plaintiff <u>admitted in his complaint</u> he failed to fulfill a requirement of the warranty at issue.  Here, plaintiffs make no similar admission.  Scotts also cites <u>Cambridge Eng'g, Inc. v. Robertshaw Controls Co.</u>, 966 F. Supp. 1509, 1524 (E.D. Mo. 1997), in which the court found the plaintiff had "failed to prove that it complied with a necessary condition precedent to its breach of warranty claim."  However, the court made that finding after conducting a bench trial – not at the pleadings stage, where the Court must not engage in factfinding.

In sum, plaintiffs have stated a claim under the MMWA against Scotts based on the No Quibble Guaranty, and Scotts' motion to dismiss that claim is denied.  However, because the complaint alleges only Scotts offered the No Quibble Guaranty – and plaintiff Eskinazi sought a refund only from Scotts, not the other defendants – plaintiffs MMWA claims against Lowe's and Home Depot are dismissed in their entirety.

III.   <u>State Law Claims</u>

A.   <u>Choice of Law</u>

Although the putative class in this case is comprised of residents of forty-six states, the consolidated class action complaint brings state law claims under only New York and California law, the states in which the named plaintiffs reside.  Plaintiffs do not contest defendants' contention that each named plaintiff can only assert claims under the laws of the state in which he or she purchased EZ Seed.  (Pls.' Opp'n to Home Depot's Mot. to Dismiss at 23 n.10).

B.   <u>Express Warranty Under the UCC (Counts V and X)</u>

The Uniform Commercial Code's express warranty provision, as adopted by both

10

California and New York, provides that "[a]ny affirmation of fact or promise made by the seller

to the buyer which relates to the goods and becomes part of the basis of the bargain creates an

express warranty that the goods shall conform to the affirmation or promise."  Cal. Com. Code §

2313(a); N.Y. U.C.C. Law § 2-313(a).  However, "an affirmation merely of the value of the

goods or a statement purporting to be merely the seller's opinion or commendation of the goods

does not create a warranty."  Cal. Com. Code § 2313(c)(2); N.Y. U.C.C. Law § 2-313(c)(2); see

also Oestreicher v. Alienware Corp., 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) aff'd, 322 F.

App'x 489 (9th Cir. 2009) ("generalized and vague statements of product superiority such as

'superb, uncompromising quality' and 'faster, more powerful, and more innovative than

competing machines' are non-actionable puffery"); Anunziato v. eMachines, Inc., 402 F. Supp.

2d 1133, 1139 (C.D. Cal. 2005) ("Generalized, vague, and unspecified assertions constitute

'mere puffery' upon which a reasonable consumer could not rely, and hence are not

actionable."); Independent Order of Foresters v. Donaldson, Lufkin & Jenrette Inc., 919 F. Supp.

149, 152 (S.D.N.Y. 1996) ("opinions, puffery and other similar language [are] not actionable as a

breach of warranty"); Nigro v. Lee, 63 A.D.3d 1490, 1492 (3d Dep't 2009) (advertisement

describing car as "gorgeous" was "generalized expression [of] the seller's opinion of the car and

constitutes no more than 'puffery,' which should not have been relied upon as an inducement to

purchase the vehicle" (internal quotation marks omitted)).

　　　　Here, the Court finds most of defendants' alleged representations concerning EZ Seed are

merely the "seller's opinion or commendation of the goods" and thus cannot create a warranty.

Cal. Com. Code § 2313(c)(2); N.Y. U.C.C. Law § 2-313(c)(2).  Specifically, defendants'

representations that EZ Seed is "WaterSmart"; "Drought tolerant"; "Grows Anywhere!

Guaranteed!"; "Makes the Most Of Every Drop"; and "Grows in Tough Conditions!

11

Guaranteed!" are non-actionable puffery.  See Oestreicher v. Alienware Corp., 544 F. Supp. 2d

at 973; Independent Order of Foresters v. Donaldson, Lufkin & Jenrette Inc., 919 F. Supp. at

152.  All of these statements are generalized or vague, and thus "should not have been relied

upon as an inducement to purchase" EZ Seed.  Nigro v. Lee, 63 A.D.3d at 1492; see Anunziato

v. eMachines, Inc., 402 F. Supp. 2d at 1139.

       In contrast to these non-actionable representations, the Court finds the following

statements could be express warranties under the UCC: (1) EZ Seed grows grass "50% thicker

with half the water" compared to "ordinary seed," and (2) EZ Seed is "developed to thrive in

virtually every condition – harsh sun, dense shade, and even spreads to repair wear and tear."

These statements promise that EZ Seed will perform in specific, measurable ways; namely, that

it grows thicker grass with less water than normal grass seed, and is versatile enough to grow in

both sunny and shady areas.[3]  Therefore, plaintiffs have stated express warranty claims based on

these statements under California and New York law.  Plaintiffs have also stated an express

warranty claim based on the No Quibble Guarantee for the same reasons they have stated such a

claim under the MMWA.

       However, as with plaintiffs' MMWA claims, plaintiffs have stated express warranty

claims only against Scotts – not Home Depot or Lowe's.  According to the complaint, all of the

statements that could be express warranties under the UCC appear on EZ Seed's labeling, and

---

[3]     For the same reasons, the representation that EZ Seed is "[t]he revolutionary seeding mix
that takes care of the seed for you, so you can grow thick, beautiful grass ANYWHERE," 
including "Dry, sunny areas," "Dense shade," and "Even grows on pavement!" is also actionable
to the extent it promises EZ Seed grows grass in both sunny and shady areas.  However, 
defendants' representations that EZ Seed is "revolutionary" and "takes care of the seed for you, 
so you can grow thick, beautiful grass ANYWHERE," are either too vague to be actionable or
are "so exaggerated as to preclude reliance by consumers."  Cook, Perkiss & Liehe, Inc. v. N. 
Cal. Collection Serv. Inc., 911 F.2d 242, 246 (9th Cir. 1990) (quotation marks omitted).

plaintiffs do not allege Home Depot or Lowe's were involved in the packaging or labeling of EZ Seed.  Further, Plaintiffs have failed to allege sufficiently that Home Depot or Lowe's independently made the same promises when selling EZ Seed to plaintiffs – as opposed to merely passively displaying the promises made by Scotts on EZ Seed's labeling – or that specific statements made by Home Depot or Lowe's were otherwise "part of the basis" of plaintiffs' bargain.  Cal. Com. Code § 2313(a); N.Y. U.C.C. Law § 2-313(a); see also In re Hydroxycut Mktg. & Sales Practices Litig., 801 F. Supp. 2d 993, 1008 (S.D. Cal. 2011) ("Because . . . Plaintiffs have not specifically alleged which representations they saw, heard, or read, Plaintiffs have not sufficiently pled which affirmations or promises formed the 'basis of their bargain.'").  Therefore, plaintiffs have failed to state a claim for breach of express warranty against Home Depot or Lowe's.

C.      Breach of Implied Warranty of Merchantability (Counts VI and XI)

1.      Claims Against Scotts

Under both New York and California Law, "[v]ertical privity is a prerequisite . . . for recovery on a theory of breach of implied warranties of fitness and merchantability."  All West Elecs., Inc. v. M-B-W, Inc., 64 Cal. App. 4th 717, 724 (Cal. Ct. App. 1998); Freidman v. Gen. Motors Corp., 2009 WL 454252, at *2 (S.D.N.Y. Feb. 23, 2009) ("to obtain relief on breach of implied warranty claims, plaintiffs must demonstrate privity with defendants").  "[C]ourts have expressed a policy against holding manufacturers liable to end-consumers under a theory of implied warranty where the parties are not in privity."  In re NVIDIA GPU Litig., 2009 WL 4020104, *6 (N.D. Cal. Nov. 19, 2009).[4]

---

[4]      The rationale for requiring privity with respect to claims based on implied warranties but not express warranties, has been expressed as follows:

Plaintiffs do not contend they were in privity with Scotts (i.e., they do not claim they purchased EZ Seed directly from Scotts rather than a retailer).  Instead, plaintiffs contend their allegations "satisfy two well-settled exemptions to the privity requirement."  (Pls.' Opp'n to Scotts's & Lowe's Mot. to Dismiss at 14).

First, plaintiffs assert that privity is not required when plaintiffs rely "on the manufacturer's written representations in labels or advertising materials." Sanders v. City of Fresno, 65 Fed. R. Serv. 3d 960 (E.D. Cal. 2006) (emphasis added).  However, this exception to the privity requirement applies only to claims based on express warranties, not claims based on implied warranties.  Burr v. Sherwin Williams Co., 268 P.2d 1041, 1049 (Cal. 1954); Lexow & Jenkins, P.C. v. Hertz Commercial Leasing Corp., 122 A.D.2d 25, 26 (2d Dep't 1986) ("It is now settled that no implied warranty will extend from a manufacturer to a remote purchaser not in privity with the manufacturer where only economic loss and not personal injury is alleged.").  Therefore, plaintiffs cannot state an implied warranty claim against Scotts on this theory.

Second, plaintiffs contend the privity rule does not apply because Lowe's and Home Depot acted as Scotts's agent.  However, the facts alleged in the complaint fail to support such a claim.  Plaintiffs have failed to allege any conduct on the part of Scotts that could give rise to a

---

Privity is generally not required for liability on an express warranty because it is deemed fair to impose responsibility on one who makes affirmative claims as to the merits of the product, upon which the remote consumer presumably relies. However, where the subject of the action is an implied warranty – i.e., one that is implied in law and did not originate from the manufacturer's own statements or conduct – there is no similar justification for imposing liability on a defendant in favor of every remote purchaser.  Absent an affirmative warranty by the manufacturer, the potential liability based on an obligation imposed by law would be so far reaching that it could not be justified.

Cardinal Health 301, Inc. v. Tyco Electronics Corp., 169 Cal. App. 4th 116, 143-44 (Cal. Ct. App. 2008).

plausible inference that Scotts has an agency relationship with Home Depot or Lowe's.  See Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd., 909 F.2d 698, 702 (2d Cir. 1990) ("An express agency is created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account. . . .  Whether such an agency is formed depends on the actual interaction between the putative principal and agent, not on any perception a third party may have of the relationship." (internal quotation marks and citation omitted)).

Because plaintiffs have not alleged they were in privity with Scotts, or that an exception to the privity requirement is applicable, plaintiffs have failed to state an implied warranty claim against Scotts.

### 2.    Claims Against Home Depot and Lowe's

Home Depot and Lowe's contend plaintiffs have failed to state an implied warranty claim against them because plaintiffs have not alleged EZ Seed "fails its essential purpose."  The Court disagrees.

Under both California and New York law, "[t]he mere manifestation of a defect by itself does not constitute a breach of the implied warranty of merchantability.  Instead, there must be a fundamental defect that renders the product unfit for its ordinary purpose."  Tietsworth v. Sears, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010) (internal quotation marks omitted); See Denny v. Ford Motor Co., 87 N.Y.2d 248, 258 (1995); Cal. Com. Code § 2314; N.Y. U.C.C. Law § 2-314.

The Court finds plaintiffs have sufficiently alleged that EZ Seed is not fit for its ordinary purpose.  By all accounts the purpose of EZ Seed is to grow grass, and each plaintiff alleges he or she used EZ Seed as directed, but did not experience any grass growth.  Accepting this allegation as true, EZ Seed clearly is not "fit for the ordinary purposes for which [it is] used."

15

Cal. Com. Code § 2314(2)(c); N.Y. U.C.C. Law § 2-314(c).  Therefore, plaintiffs have stated an

implied warranty of merchantability claim against Home Depot and Lowe's.

      D.      <u>California Consumer Protection Statutes (Counts II, III, and IV)</u>

The California Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or

fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal.

Bus. & Prof. Code § 17200.  The California False Advertising Law ("FAL") prohibits any

"unfair, deceptive, untrue or misleading advertising."  <u>Id</u>. § 17500.  The California Consumers

Legal Remedies Act ("CLRA") prohibits "unfair methods of competition and unfair or deceptive

acts or practices."  Cal. Civ. Code § 1770.  Claims brought under these statutes "are governed by

the 'reasonable consumer' test."  <u>Williams v. Gerber Products Co.</u>, 552 F.3d 934, 938 (9th Cir.

2008).  "Under the reasonable consumer standard, [plaintiffs] must show that members of the

public are likely to be deceived."  <u>Id</u>. (internal quotation marks omitted).

As with express warranty claims brought pursuant to the California Commercial Code,

"[g]eneralized, vague, and unspecified assertions constitute 'mere puffery' upon which a

reasonable consumer could not rely, and hence are not actionable" under the UCL, FAL, or

CLRA.  <u>Anunziato v. eMachines, Inc.</u>, 402 F.Supp.2d at 1139; <u>see</u> <u>Cook, Perkiss & Liehe, Inc. v.</u>

<u>N. Cal. Collection Serv.</u>, 911 F.2d 242, 245 (9th Cir. 1990).  "While product superiority claims

that are vague or highly subjective often amount to nonactionable puffery, misdescriptions of

specific or absolute characteristics of a product are actionable."  <u>Southland Sod Farms v. Stover</u>

<u>Seed Co.</u>, 108 F.3d 1134, 1145 (9th Cir. 1997) (internal quotation marks omitted).

      1.      <u>Claims Against Scotts</u>

Scotts seeks dismissal of Plaintiffs' UCL, FAL, and CLRA to the extent the alleged

misrepresentations made by Scotts are nonactionable puffery.  For the reasons discussed in

16

connection with plaintiffs' express warranty claims, Scotts' motion is granted with respect to all statements made by Scotts, except for the assertions that (1) EZ Seed grows "50% thicker with half the water" compared to "ordinary seed"; (2) EZ Seed is "developed to thrive in virtually every condition – harsh sun, dense shade, and even spreads to repair wear and tear"; and (3) Scotts will honor the terms of the No Quibble Guarantee.

      2.      <u>Claims Against Home Depot and Lowe's</u>

Because plaintiffs' UCL, FAL, and CLRA claims generally sound in fraud, they are subject to the heightened pleading requirements set forth in Fed. R. Civ. P. 9(b). <u>See</u> <u>In re Ferrero Litig.</u>, 794 F. Supp. 2d 1107, 1114 (S.D. Cal. 2011). Rule 9(b) provides: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

Here, plaintiffs have failed to state a claim against Home Depot or Lowe's under the UCL, FAL, or CLRA because they have not stated with particularity what statements <u>Home Depot</u> or <u>Lowe's</u> allegedly made in violation of the statutes. Instead, plaintiffs' have merely lumped Home Depot and Lowe's together with Scotts by repeatedly attributing allegedly false statements to "defendants," without delineating which defendant made which statement, or which statement or statements each plaintiff actually saw and/or relied upon.

Further, to state a claim under the UCL, FAL, or CLRA, plaintiffs must make "a plausible showing that [the defendant] knew, or by the exercise of reasonable care should have known, of the alleged defect when it made the representations alleged to be deceptive." <u>Kowalsky v. Hewlett-Packard Co.</u>, 2011 WL 3501715, at *4 (N.D. Cal. Aug. 10, 2011) (internal quotation marks omitted). Here, plaintiffs have not sufficiently alleged that Home Depot or

Lowe's knew or should have known that EZ Seed was ineffective.

Plaintiffs' allegations are thus insufficient to state claims against Home Depot or Lowe's under the UCL, FAL, or CLRA.

E.       New York General Business Law (Counts VIII and IX)

New York General Business Law § 349 provides: "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."  Similarly, New York General Business Law § 350 provides: "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

To establish a prima facie case under Section 349, plaintiffs must demonstrate that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."  Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000) (citing Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 25 (1995)).  "Deceptive acts" are defined as acts that are "likely to mislead a reasonable consumer acting reasonably under the circumstances."  Id. at 522.  The same analysis applies to claims brought under Section 350.  Id.; see also Goshen v. Mut. Life Ins. Co. of N.Y., 98 N.Y.2d 314, 324 n.1 (2002) ("The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349.").

The scope of the relevant provisions of New York's General Business Law are broader than California's consumer protection statutes in three important ways.  First, claims brought under Sections 349 and 350 are not subject to the heightened pleading requirements set forth in Rule 9.  See Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005).  Second, to state a claim under Section 349 or 350, plaintiffs need not allege they relied on

defendants' misrepresentations.  See Koch v. Acker, Merrall & Condit Co., 18 N.Y.3d 940, 941

(2012).[5]  Third, plaintiffs need not plead that defendants knew or should have known the alleged

statements were false or misleading.  Oswego Laborers' Local 214 Pension Fund v. Marine

Midland Bank, N.A., 85 N.Y.2d 20, 26 (1995).

  For the reasons stated above, plaintiffs' Section 349 and 350 claims based on non-

actionable puffery are dismissed as to all defendants.  See Verizon Directories Corp. v. Yellow

Book USA, Inc., 309 F. Supp. 2d 401, 405 (E.D.N.Y. 2004) ("Puffery is not actionable under

sections 349 and 350.").  However, plaintiffs have stated claims against Scotts based on the three

actionable representations discussed above, as those statements (1) were directed at consumers,

(2) were allegedly misleading in a material way, and (3) caused plaintiffs to be injured.  See

Maurizio v. Goldsmith, 230 F.3d at 521.

  Plaintiffs' Section 349 and 350 claims against Lowe's are dismissed in their entirety

because the only plaintiff who allegedly bought EZ Seed at Lowe's did so in California.

  Finally, the Court finds plaintiffs have stated Section 349 and 350 claims against Home

Depot.  As discussed above – unlike the California consumer protection statutes – Sections 349

and 350 do not require plaintiffs to allege they relied on particular statements made by Home

Depot, or that Home Depot knew, or should have known, that EZ Seed was defective.  Plaintiffs

---

[5] The Second Circuit's decision in Pelman contains language which, by negative inference,
suggests a plaintiff must plead reliance to state a claim under Section 350.  Pelman ex rel.
Pelman v. McDonald's Corp., 396 F.3d at 511 ("Unlike a private action brought under § 350, a
private action brought under § 349 does not require proof of actual reliance.").  However, the
New York Court of Appeals has recently made clear reliance need not be pleaded to state a claim
under either statute.  Koch v. Acker, Merrall & Condit Co., 18 N.Y.3d 940 at 941 ("To the extent
that the Appellate Division order imposed a reliance requirement on General Business Law §§
349 and 350 claims, it was error.  Justifiable reliance by the plaintiff is not an element of the
statutory claim.").

must simply allege that (1) Home Depot made material false representations concerning EZ Seed; (2) those statements were directed at consumers; and (3) plaintiffs were injured.  Plaintiffs have met this low threshold by alleging Home Depot included some or all of the actionable representations in its in-store advertisements and on its website, and the plaintiffs who purchased EZ Seed at Home Depot were injured because the product did not work.  Therefore, Home Depot's motion to dismiss plaintiffs' Section 349 and 350 claims is denied.

      F.    <u>Unjust Enrichment (Count VII)</u>

Defendants seek dismissal of the California plaintiffs' unjust enrichment claim because defendants contend such a claim is not cognizable under California law.  "There is a split of authority in California whether unjust enrichment is a cause of action. One line of cases identifies the elements of an unjust enrichment claim as one where there is (1) the receipt of a benefit, and (2) the unjust retention of the benefit at the expense of another.  The other line of cases identifies unjust enrichment as a 'general principle' and not a cause of action." <u>Cabo Brands, Inc. v. MAS Beverages, Inc.</u>, 2012 WL 2054923, at *4 (C.D. Cal. June 5, 2012) (citations omitted).

The Court need not decide whether unjust enrichment is a cause of action or merely a "general principle" for purposes of deciding the pending motions.  Plaintiffs have clearly alleged that each of the defendants benefited from plaintiffs' purchases of EZ Seed, and allowing defendants to retain that benefit in the event EZ Seed does not grow grass as advertised would be unjust.  Consequently, plaintiffs have either stated a claim for unjust enrichment or defendants' unjust enrichment is a "general principle" relevant to plaintiffs' other surviving claims.

      G.    <u>Common Law Warranty and Contract Claims (Count XII)</u>

In the alternative to their UCC-based breach of warranty claims, plaintiffs assert common

law breach of warranty and breach of contract claims.  Defendants seek to dismiss these claims

on grounds that this dispute clearly arises out of the sale of goods, and thus only the UCC

applies.  The Court declines to dismiss these common law alternatives at the pleadings stage.

See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab.

Litig., 754 F. Supp. 2d 1145, 1186 (C.D. Cal. 2010).

       H.     Plaintiffs' Application to Amend

Finally, in their opposition papers, plaintiffs seek leave to amend their complaint with

respect to any dismissed claims.  However, plaintiffs have not submitted a proposed amended

complaint or otherwise indicated what additional facts they intend to allege.  Accordingly, by

June 21, 2013, plaintiffs may file an amended complaint if all parties consent, or, in lieu of

consent, plaintiffs may file a formal motion to amend accompanied by their proposed amended

complaint.  Fed. R. Civ. P. 15(a)(2).

## CONCLUSION

Defendants' motions to dismiss are GRANTED in part and DENIED in part.

The Clerk is instructed to terminate the motions (Docs. #25, 28).

Dated: May 22, 2013
      White Plains, NY

           SO ORDERED:

           _____
           Vincent L. Briccetti
           United States District Judge

21