UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Scotts EZ Seed Litigation    )    Civil Action No.: 12-CV-4727 (VB)

## DECLARATION OF DAVID A. BROWNE IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL

I, David A. Browne, declare as follows:

1. The statements made in this Declaration are based on my personal knowledge and, if called as a witness, I could and would testify thereto.

2. I am one of the representative plaintiffs in this class action. This Declaration is given in support of my request that the court certify this case as a class action, appoint Plaintiffs as class representatives, and appoint Bursor & Fisher, P.A. and Faruqi & Faruqi, LLP (collectively, "Interim Class Counsel") as class counsel.

3. I am a citizen of California who resides in San Francisco, California.

4. I was deposed by Defendants' counsel on February 27, 2014. In response to questioning, I testified about my understanding of the legal claims and why I decided to serve as a named plaintiff in this case:

> Q: What's your understanding of the particular legal claims that you've made against Scotts and Lowe's and the other defendants in this case?
>
> A: As a [plaintiff] in the case, my understanding is that the product did not work as advertised. I've taken it on myself to bring a class-action suit against Scott[s] because of their express warranty of growing better grass and the false advertising for other people who are not here today.

Browne Dep. at 140:5-13, Marchese Decl. Ex. D.

5. I also testified about the details of my purchase of EZ Seed:

> Q: First, can you just describe to me how it is that you came to purchase EZ Seed?
>
> A: Since I had a bare spot, a dark shaded area in my backyard, it bothered me for some time. And I had been to Lowe's, and I saw the gold EZ Seed canister, and it said on the front "guaranteed to grow in shaded areas," so I purchased it, after reading the other instructions in the container as well.
>
> …
>
> Q: Do you know where the particular Lowe's store you purchased the EZ Seed was located?
>
> A: Yes. It's in San Francisco off of Bayshore.
>
> …
>
> Q: Describe to me what EZ Seed you purchased at Lowe's on the day that we've been discussing.
>
> A: I purchased a 3.75 gold container similar to the one that is here (indicating).
>
> …
>
> Q: Do you remember approximately when you purchased the EZ Seed product at Lowe's?
>
> A: Mid-January 2012.

*Id.* at 69:16-23; 71:24-72:1; 80:13-16; 81:2-4; 158:6-11.

6. I also testified that I relied on the packaging claims at issue when deciding to purchase Scotts EZ Seed:

> Q: To the best of your recollection, can you tell me exactly which advertising claims on the EZ Seed package convinced you to purchase the product?
>
> A: Yes, I can.
>
> Q: Okay. Please do.

2

> A: Okay. On the packaging, it said 50 percent thicker growth grass with less water than ordinary seeds. But the best part of it was it said guaranteed to grow. Guaranteed to grow in shaded, tough conditions.
>
> …
>
> Q: Do you see on the front of the package there's a claim that says "50 percent thicker with half the water," asterisk, asterisk. Do you see that?
>
> A: Double asterisks, yes.
>
> Q: And is that a claim that you considered in making your decision to purchase EZ Seed?
>
> A: That is correct.

*Id.* at 72:14-22; 120:2-9.

7. I also testified about my understanding of the claim "50% thicker with half the water":

> Q: Okay. What was your understanding of what that claim meant when you purchased EZ Seed?
>
> A: That I'd get 50 percent thicker grass than other varietals of grass for – and using less water, 50 percent less water.
>
> …
>
> Q: Okay. So what did you think the benefit that was being claimed was?
>
> A: That I would get 50 percent thicker grass with less watering than ordinary seeds. So that bare spot would be thicker than if I had used another variety of seeds.

*Id.* at 120:10-14; 120:23-121:3.

8. I also testified about my use of EZ Seed and that I followed the directions for use that appeared on the EZ Seed packaging when applying and caring for EZ Seed:

> Q: The back panel of the EZ Seed package includes instructions for watering EZ Seed; correct?
>
> A: Yes.

> Q: And you followed those instructions, is your testimony here today; correct?
>
> A: I followed the instructions on the label, yes.

*Id.* at 177:14-21; 40:17-21; 81:5-25: 82:1-83:5:86:16-20; 88:17-21; 89:12-17; 90:2-13; 91:14-92:1; 129:20-131:4.

    9.    I also testified that the product did not grow grass as advertised:

> Q: Did you see any germination of grass in the EZ Seed that you planted on your shady area?
>
> A: No.
>
> Q: How closely did you look?
>
> A: Well, it's a very small area. I'm standing directly over it, watering it for 30 days. I should have been a pretty good judge if anything grew.
>
> Q: Did you see a single blade of grass?
>
> A: I don't recall a single blade of grass.... No, there was no – there was no grass in that area.

*Id.* at 103:17-104:12.

    10.    I also testified that I was not aware of Scotts' No-Quibble Guarantee until after I had discarded my purchase receipt and container of EZ Seed:

> Q: We also have been talking about the guaranteed statement that was on the package of EZ Seed. Do you remember before you purchased it if you saw the Scotts No Quibble Guarantee on the EZ Seed package?
>
> A: I did not see the [no] quibble guarantee.
>
> …
>
> Q: Do you ever remember reading the Scotts No Quibble Guarantee from your package of EZ Seed, whether it was on the outside label or the inside label, prior to throwing away the product?
>
> A: I do not recall reading that guarantee.
>
> …

> Q: Prior to discarding your container of EZ Seed, were you aware of Scotts' No Quibble Guarantee?
>
> A: No Quibble Guarantee?
>
> Q: Right.
>
> A: I was not aware of that.

*Id.* at 88:4-8; 111:25-112:4; 184:3-7.

11. I also testified about the damages and other relief that I am seeking for myself and on behalf of others:

> Q: So from a monetary perspective – we'll take this step-by-step – you are seeking a refund of the purchase price of the product; correct?
>
> A: Yes.
>
> Q: And that's approximately $15?
>
> A: Correct.
>
> …
>
> Q: What do you believe you're entitled to as a result of the alleged claims against Scotts and the other defendants in this case?
>
> A: There are multiple – multiple things we wish to have. First off, I want my $15 back. Secondly, I want all compensation for all people who have bought this product and it failed to work. I want Scott to do – to reimburse expenses that made us – required us to go to trial to solve this issue. I want advertising corrected, them stop making false representation of a guaranteed product.

*Id.* at 158:6-11; 154:24-155:9.

12. I also testified regarding my responsibilities and the fulfillment of my duties as a class representative:

> Q: What do you consider your responsibilities as a class representative to be?
>
> A: Keep my attorneys honest. To look at the documents, look at the direction, listen to counsel, solve the issues that we have put forth in litigation.

...

…

Q: Do you understand that moving forward in the case, there may be significant additional demands on your time?

A: Whenever, wherever the courts request me to handle the suits as the lead in the class-action suit, I'll be there.

…

Q: If I told you that you could receive a full refund for your purchase of EZ Seed from Scotts and that the directions for use on the EZ Seed product had been changed, would that affect your desire to continue to be involved in this lawsuit?

A: Since I am the plaintiff in a class-action suit for citizens in the state of California . . . I would be ill advised or I'd feel bad to walk away from all the efforts that we have done to bring Scott[s] to – not – bring Scott[s] to the understanding that they're selling a product to the American citizens that is – did not live up to its expressed warranty: Growing grass better, 50 percent thicker, using less water, in shaded areas, and in tough conditions.

*Id.* at 165:25-166:5; 162:12-17; 160:15-161:6.

13. I have consulted with my counsel periodically to review, discuss, and determine the actions to be taken and decisions to be made in pursuit of this case on behalf of all class members. Based on these interactions and my relationship with my counsel, I believe my counsel has fairly and adequately represented the class and will continue to do so.

14. I understand that, as a class representative, I have an obligation to assert and protect the interests of other class members and not act just for my own personal benefit. I do not have any conflict with other class members. I will do my best to protect the interests of other class members and will fairly and adequately represent the class to the best of my ability.

15. It is my understanding that Defendants sold me the same product as it did all other class members who bought Scotts EZ Seed. I therefore request that the court certify a class of all **such** persons in the state of California, excluding persons who purchased for purpose of resale (the "Class").

16. I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Executed on March 28, 2014 at San Francisco, California.

David A. Browne