## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re Scotts EZ Seed Litigation | ) ) ) ) ) ) ) | Civil Action No.: 12-CV-4727 (VB) |

## DECLARATION OF GWEN ESKINAZI IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL

I, Gwen Eskinazi, declare as follows:

1.      The statements made in this Declaration are based on my personal knowledge and, if called as a witness, I could and would testify thereto.

2.      I am one of the representative plaintiffs in this class action.  This Declaration is given in support of my request that the court certify this case as a class action, appoint Plaintiffs as class representatives, and appoint Bursor & Fisher, P.A. and Faruqi & Faruqi, LLP (collectively, "Interim Class Counsel") as class counsel.

3.      I am a citizen of New York who resides in Thiells, New York.

4.      I was deposed by Defendants' counsel on March 24, 2014.  In response to questioning, I testified about why I decided to serve as a named plaintiff in this case:

Q:      Tell me about the circumstances under which you came to be in touch with a lawyer concerning bringing this lawsuit?

A:      I was very frustrated with the [EZ Seed] product, I bought the product, went by the guarantee on the label, saying it grows thicker with 50 percent less water, spent a lot of money on it, very frustrated, I saw something on the Internet about it and I reached out because I had called the company looking for a refund and could not get a full refund.

…

Q:      I am just asking for your belief [why EZ Seed did not work].

A:     The product is defective, it doesn't do what it says, . . . how many people have been buying it and haven't gotten outraged like I have and just said the heck with it, it is not fair to the public.

Eskinazi Dep. at 29:11-22; 150:12-25, Marchese Decl. Ex. E.

5.     I also testified about the details of my purchase in the Spring of 2010 of four 3.75 lb. shake canisters of EZ Seed from a Home Depot in Nanuet, New York:

Q:     Can you tell me on how many occasions did you purchase EZ Seed?

A:     One.

Q:     From where did you purchase it?

A:     Home Depot.

…

Q:     So in 2010 you bought I believe $60 worth of EZ Seed, correct?

A:     Yes, four canisters.

Id. at 21:7-24; 77:23-78:25; 93:10-12.

6.     I also testified that I relied on the packaging claims at issue when deciding to purchase Scotts EZ Seed:

Q:     Can you please identify, based on your recollection, the statements on the [EZ Seed] label that were important to you when purchasing the product in 2010?

A:     Yes; it says "revolutionary seeding mix, grows anywhere guaranteed, 50 percent thicker with half the water, and see how easy it covers, up to 80 square feet.  If you turn it around, it gives you the directions and it says "dry sunny areas, dense shade, survives wear and tear, even grows on pavement.

…

Q:     What were the key elements again of the packaging on the canister the you purchased, key terms?

A:     It is guaranteed to grow grass thicker with half the water, 50 percent thicker with half the water, and it will grow anywhere, sunny, dense[] shade, and it is supposed to be guaranteed for that.

*Id.* at 179:7-19; 183:5-12.

7.      I also testified about my use of EZ Seed in sunny and shady areas on my lawn, and

that I followed the directions for use that appeared on the EZ Seed packaging when applying and

caring for EZ Seed:

> Q:      When you applied EZ Seed, can you walk me through briefly, I know you
> touched on this before, but I want to make sure I have a comprehensive
> understanding for how you applied it, you took it home, put it in your
> garage, sometime shortly thereafter, within a few days, you decided to apply
> it and so you and your husband did what?
>
> A:      We followed the exact directions on the package.
>
> Q:      Which were?
>
> A:      We evened the grass that was thin, we took it all out, raked it all out, we put
> down EZ Seed and we watered it until it got dark brown, as the package
> states.
>
> …
>
> Q:      How deeply did you cover it, do you know?
>
> A:      I'm saying about an eighth-of-an-inch.
>
> Q:      Why are you saying about an eighth-of-an-inch?
>
> A:      Because that's my best recollection of it.

*Id.* at 135:7-23; 138:5-12; 60:16-61:4; 79:2-16; 93:13-20; 97:13-19; 134:17-21; 136:4-7; 136:22-
137:22; 147:3-8.

8.      I also testified that EZ Seed failed to work as advertised and "[d]id not grow a blade

of grass":

> Q:      Your testimony is that in the areas where you applied EZ Seed, nothing
> grew, not a single blade of grass, right?
>
> A:      Nothing.
>
> Q:      At any point, one month, two months, three months, nothing ever grew?

A:     Nothing.

*Id.* at 89:22-90:5; 146:10-16.

9.     I also testified that after requesting my money back and providing Scotts with proof of purchase as required by its No Quibble Guarantee, Scotts refused to give me a full refund for the EZ Seed canisters that I bought:

Q:     When did you discard those canisters?

A:     I called their help line to find out why nothing was taking, none of the spots, and the gentleman I spoke to on the phone told me that apparently it doesn't grow in certain areas, which I could not understand that.

At that time I requested a refund; at that point he told me he could reimburse me for three of the four, he couldn't give me the total money back for the four canisters.

He asked me information about the canisters, the codes on the canisters, I gave him all that information, I answered his questions and in turn they sent me a refund check for $45, not for the full purchase.

He is the one who said it does not grow in certain areas, I was not led to believe that when I purchased that product.

…

I told him exactly what I did with the product, how I used the product, how long we did the work on the product to get it down.

He asked me for information from each canister which we had at the time, I gave him all the information he requested, he told me he was only able to give me three of the four.

So at that point I said, you know what, three is better than nothing, the product was worthless to me.

…

Q:     He didn't explain anything further about why [you couldn't get a full refund]?

A: No, that was their policy, that's all he said, that's all he was allowed to refund me.

...

Q: At the time when you spoke with Scotts, when the representative from Scotts informed you that they would send you a check for $45 for the canisters that you had used, did you object in any way and communicate that was not satisfactory?

A: Yes.

Q: What did you say?

A: I told him I didn't think it was fair, I paid full price and I should get back full price and he told me he couldn't do that.

*Id.* at 140:10-141:8; 142:10-21; 168:21-169:8.

10. I also testified about the damages and relief I am seeking:

Q: Ms. Eskinazi, what damages do you seek in this lawsuit?

A: I would like my full money returned to me, plus it is a class action lawsuit ... and I really believe that the product is misleading and I seriously believe that product should be taken off the market or they should change their claim[s] . . . .

*Id.* at 166:24-167:20.

11. I also testified that I am committed to this case and willing to see it through to trial, if necessary:

Q: How many hours have you spent in connection with this lawsuit thus far?

A: Too much to count.

Q: Have you spent days?

A: Yes.

...

Q:    Do you understand that this case could go to trial?

A:    Yes.

Q:    Are you prepared to continue participating in this case to see this matter through trial if it comes to that?

A:    Yes.

*Id.* 181:6-18.

12.    I have consulted with my counsel periodically to review, discuss, and determine the actions to be taken and decisions to be made in pursuit of this case on behalf of all class members.  Based on these interactions and my relationship with my counsel, I believe my counsel has fairly and adequately represented the class and will continue to do so.

13.    I understand that, as a class representative, I have an obligation to assert and protect the interests of other class members and not act just for my own personal benefit.  I do not have any conflict with other class members.  I will do my best to protect the interests of other class members and will fairly and adequately represent the class to the best of my ability.

14.    It is my understanding that Defendants sold me the same product as it did all other class members who bought Scotts EZ Seed.  I therefore request that the court certify a class of all persons who purchased EZ Seed in the state of New York, excluding persons who purchased for purpose of resale (the "Class").

15.    I declare under penalty of perjury under the laws of the United States and the State of New York that the foregoing is true and correct.  Executed on March 28, 2014 at Thiells, New York.

Gwen Eskinazi

6