**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Scotts EZ Seed Litigation | Civil Action No. 12-cv-4727 (VB) |

**DECLARATION OF LANCE MOORE IN SUPPORT OF PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND
APPOINTMENT OF CLASS COUNSEL**

I, Lance Moore, declare as follows:

1.      The statements made in this Declaration are based on my personal knowledge

and, if called as a witness, I could and would testify thereto.

2.      I am one of the representative plaintiffs in this class action.  This Declaration is

given in support of my request that the court certify this case as a class action, appoint Plaintiffs

as class representatives, and appoint Bursor & Fisher, P.A. and Faruqi & Faruqi, LLP

(collectively, "Interim Class Counsel") as class counsel.

3.      I am a citizen of New York who resides in Floral Park, New York.

4.      I was deposed by Defendants' counsel on January 24, 2014.  In response to

questioning, I testified about my understanding of the legal claims being asserted in this case:

> Q:      What's your understanding of the legal nature of the actual claims that
> you've asserted in this lawsuit are?
>
> A:      The claims are related to false advertising and breach of warranty
> [concerning Scotts EZ Seed].
>
> …
>
> Q:      Why did you elect to sue Scotts for your dissatisfaction with this product?
>
> A:      Because the claims that Scotts makes – because I bought the product
> because of the claims that Scotts made and the product did not perform as
> the claims.  And I believe that there are – there is a class of people out

there similar to me that was harmed because they were similarly induced to purchase the product on those claims.

Moore Dep. at 231:24-232:4; 199:24-200:8, Marchese Decl. Ex. G.

5.    I also testified regarding the details of my purchase of EZ Seed:

Q:    I'd like to switch more specifically to EZ Seed at this point.  First of all, can you tell me how you came to buy EZ Seed for a seeding project?

A:    I purchased it from Home Depot.

Q:    Do you remember which Home Depot?

A:    Yes.

Q:    Which one was that?

A:    In Elmont, New York, E-L-M-O-N-T.

Q:    Thank you.
       Do you remember when that was?

A:    That was in the spring of 2011.

…

Q:    Is the EZ Seed product at issue about which you're suing the 10-pound bag of EZ Seed that you bought?

A:    Yes.
…

Q:    How much did you pay for the EZ Seed bag you bought?

A:    I believe it was approximately $29.

*Id.* at 86:12-23; 237:25-238:4; 240:13-15.

6.    When asked by Defendants' counsel about my alleged damages in this case, I responded that "I believe I am entitled to my refund and all other amounts available under state and federal law."  *Id.* at 214:2-4.

7.    I also testified about my reasons for purchasing Scotts EZ Seed:

Q:     Can you tell me about that trip to Home Depot?

A:     The purpose of my trip was to purchase lawn seeds. So I went to the
       gardening department. The first product I saw was the EZ Seed -- Scotts
       EZ Seed product, because it was on an end cap. It was the first of -- the
       first seed products in the row, in the aisle.
       I saw the label and began reading the product. I specifically bought it
       because I saw the claim that says it grows grass 50 percent thicker with
       half the water of ordinary seeds and also because it was s[ai]d to thrive
       in all conditions: harsh sun, dense shade, and to repair wear and tear, and
       those were the needs of my lawn at the time of that visit.
       And that's why I purchased the product from Home Depot.

*Id.* at 86:24-87:17.

8.     I also testified that I followed the directions for use that appeared on the EZ Seed

packaging when applying EZ Seed:

Q:     Well, you said that you followed the instructions in planting this [EZ
       Seed], and I'm trying to get an idea for what you actually used.

A:     I used the directions.

*Id.* at 132:18-22; 135:10-137:5; 147:25-148:10; 156:15-22.

9.     I also testified that EZ Seed did not work as advertised:

Q:     At any point in your first planting of EZ Seed in any of the three locations
       that we've discussed, did you see grass shoots grow?

A:     No.

Q:     Not a single shoot?

A:     No.

…

Q:     You said you got no growth from the EZ Seed in any of the plots that
       we've been discussing for the second planting; correct?

A:     Correct.

Q:     And I think we talked in detail about the two smaller plots. But in the big
       one did you see even a single blade of grass?

3

A:      No.

...

Q:      In any of your plantings of EZ Seed, did you ever see any sign of any form of germination or growth of – from a grass seed?

A:      No.

*Id.* at 164:25-165:7; 179:12-19; 182:4-7.

10.     I also testified that I relied on the product packaging claims when deciding to

purchase EZ Seed.

Q:      Is it fair to say that it was the claims on the EZ Seed package that convinced you to buy EZ Seed?

A:      It was the claims on the packaging that induced me to buy the product.

...

Q:      The radio commercial didn't induce you to buy EZ Seed; correct?

A:      No.  The radio commercial induced me to seek it out.  The packaging induced me to purchase it.

*Id.* at 88:14-18; 88:25-89:5.

11.     I also testified about why this class action lawsuit is the best method for

addressing the legal issues presented in this case:  "[The refund of my purchase price] wouldn't

take into account the class that I'm looking to represent who have made similar purchases based

on the claims that induced me to buy the product as well, and basically on principle I don't

believe this product works.  And if those claims continue to induce other consumers to purchase

the product as I did, I would like to see those injuries stopped.  And that's why I don't believe

the guarantee is – would have been sufficient."

...

4

Q:     So was it your belief that because you didn't have evidence of purchase the only avenue available to you for vindication, based on your dissatisfaction with the product, was a class action lawsuit?

A:     I wouldn't characterize it like that.  The class action lawsuit, after consulting with my attorneys, for the reason I said, earlier appeared to be – for the reasons that I gave earlier, appeared to be the best way to go forward for my recovery as well as the recovery of the class that I'm seeking to represent and for the elimination of the claims that I believe falsely induced me to buy the product.

*Id.* at 193:23-194:8; 258:7-20.

12.     I also testified regarding fulfillment of my duties as a class representative.

Q:     Now, you understand that in this action you're going to be representing a class of plaintiffs; correct?

A:     I understand that's possible, yeah.

Q:     Is there any reason to think that you're not going to be able to represent the class effectively?

A:     No.

…

Q:     Would you personally be willing to sacrifice that vacation time in order to participate in this lawsuit?

A:     Yes.

*Id.* at 226:15-22; 251:18-21; 228:2-5.

13.     I have consulted with my counsel periodically to review, discuss, and determine the actions to be taken and decisions to be made in pursuit of this case on behalf of all class members. Based on these interactions and my relationship with my counsel, I believe my counsel has fairly and adequately represented the class and will continue to do so.

14.     I understand that, as a class representative, I have an obligation to assert and protect the interests of other class members and not act just for my own personal benefit.  I do

5

not have any conflict with other class members. I will do my best to protect the interests of other class members and will fairly and adequately represent the class to the best of my ability.

15. It is my understanding that Defendants sold me the same product as it did all other class members who bought Scotts EZ Seed. I therefore request that the court certify a class of all persons who purchased Scotts EZ Seed in the state of New York, excluding persons who purchased for purpose of resale.

16. I declare under penalty of perjury under the laws of the United States and the State of New York that the foregoing is true and correct. Executed on March 27, 2014 at Floral Park, New York.

Lance Moore

6