**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Scotts EZ Seed Litigation | ) Civil Action No.: 12-CV-4727 (VB) ) ) ) ) |

**DECLARATION OF VANCE SMITH IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL**

I, Vance Smith, declare as follows:

1.    The statements made in this Declaration are based on my personal knowledge and, if called as a witness, I could and would testify thereto.

2.    I am one of the representative plaintiffs in this class action.  This Declaration is given in support of my request that the court certify this case as a class action, appoint Plaintiffs as class representatives, and appoint Bursor & Fisher, P.A. and Faruqi & Faruqi, LLP (collectively, "Interim Class Counsel") as class counsel.

3.    I am a citizen of California who resides in Danville, California.

4.    I was deposed by Defendants' counsel on February 28, 2014.  In response to questioning, I testified about why I decided to serve as a named plaintiff in this case:

> Q:    Well, I'm talking about at the time that you became involved in the lawsuit, what were some of the other ways that you thought you could recover your money?
>
> A:    Well, at that time, the reason I got involved in this is because I realized that there were, I don't know, maybe thousands, millions of people out there like Vance Smith that used the product and didn't get the results. And I just felt that something needed to be done about this. I mean, the product doesn't work, doesn't grow grass seed. The advertising's misleading, and it just doesn't seem fair that Scotts should be able to do this to the general public and make money off a product that doesn't work.

Smith Dep. at 123:16-124:3, Marchese Decl. Ex. H.

5.    I also testified about the details of my purchase of EZ Seed in San Ramon, California:

Q:    Did there come a time that you purchased EZ Seed?

A:    Yes. In February – in late February 2012.

…

Q:    Please describe for me the trip to purchase EZ Seed, if you would.

A:    I got it at Home Depot. I went to the grass seed section and saw the product. And that's – that's when I looked – looked at it. And it said, again, "guaranteed to grow." But then the other thing that caught my eye, when it says – the water thing. Half the water, and it's 50 percent thicker. And I thought, "Wow. That's fantastic. It's guaranteed to grow, and it's going to be 50 percent thicker." Because as I said, my lawn was getting thin. And I thought, "Wow. That's fantastic."

…

Q:    What exactly did you buy in the way of EZ Seed at Home Depot?

A:    I bought two 6-pound bags of EZ Seed.

Q:    How much did you spend?

A:    I think they were $15 a bag.

*Id.* at 77:5-7; 80:7-18; 82:16-20.

6.    I also testified that I relied on the packaging claims at issue when deciding to purchase Scotts EZ Seed:

Q:    Did you read the packaging before you purchased it?

A:    I did.

Q:    And did you read everything on the package?

A:    Probably not. The part that – that got me the most was guaranteed to grow, the water saving, for half the water, 50 percent thicker grass with using 50 percent of the water, and it would grow in a shaded area. That was

important to me.  The rest of the stuff – I saw that and thought, "This is just what I need."

…

Q:    Do you see the one I skipped over, "dense shade"?  I assume that was one of the claims that induced you to purchase EZ Seed; is that correct?

A:    Yeah.  That and "grows anywhere."

*Id*. at 82:21-83:5; 96:17-20.

7.    I also testified that I followed the directions for use that appeared on the EZ Seed packaging when applying EZ Seed:

Q:    What did you do after you purchased EZ Seed?

A:    I took the product home, looked at it that weekend – I do most of my yard work on the weekend – followed the instructions that were on the package for applying the product and applied the product to several areas of the yard that were bare.  And I did it just like the instructions indicate.

…

Q:    Was it more than one?

A:    Yeah, I don't know.  I really don't – I really don't know.  I followed the directions and put an eighth of an inch of the material down on top of the dirt.  And I watered it until it got dark brown.

…

Q:    How long did you continue your pattern of watering in the morning and the evening?

A:    One month.

*Id.* at 103:13-20; 111:4-9; 119:19-21.

8.    I also testified that the product did not grow any grass when used as directed:

Q:    How closely did you look for grass?

A:    I walked up to the spots and looked at them.  I looked at them pretty close.

3

> Q:   And you saw no sign of germination across any of the bare patches that
>       you planted?
>
> A:   Not one blade.

*Id.* at 120:10-15.

9.   I also testified that I was not aware of Scotts' No-Quibble Guarantee until after I

became involved in this case:

> Q:   At that time, did you notice something on the package called the "Scotts
>       No Quibble Guarantee"?
>
> A:   No.
>
> Q:   Have you ever heard of the Scotts No Quibble Guarantee?
>
> A:   No, not until recently.
>
> …
>
> Q:   Did you do anything to attempt to take advantage of the guarantee?
>
> A:   I did not.
>
> Q:   Why not?
>
> A:   Like I said, I wasn't even aware of the guarantee in the product until – I
>       mean, your guaranteed return thing, until I got into this [lawsuit].

*Id.* at 105:5-10; 122:3-13.

10.   I also testified regarding the monetary damages that I am seeking:

> Q:   So you personally are seeking the refund of the purchase price for your EZ
>       Seed products; is that right?
>
> A:   Yes.
>
> …
>
> Q:   [Y]ou said you spent approximately $30 on your EZ Seed; correct?
>
> A:   Correct.

Q:     And so I would assume that you would believe that you're entitled to a refund of that $30; is that correct?

A:     Yes.  It's – yeah.

*Id.* at 148:21-149:2; 184:17-20.

11.    I also testified regarding fulfillment of my duties as a class representative:

Q:     Do you understand that if this case progresses, you may be called away to testify at trial or perform other functions as the plaintiff in this case?

A:     I do.

Q:     Do you understand that that may take a significant amount of time?

A:     I understand that.

…

Q:     You've testified some today about your understanding of serving as a class representative; is that right?

A:     We talked about it, yes.

Q:     Do you want to be a class representative?

A:     I believe in this – I believe in this case, yes.

Q:     So you want to represent a class if a class is ultimately certified?

A:     In this instance, yes, I do.

*Id.* at 159:6-12; 180:10-19.

12.    I have consulted with my counsel periodically to review, discuss, and determine the actions to be taken and decisions to be made in pursuit of this case on behalf of all class members. Based on these interactions and my relationship with my counsel, I believe my counsel has fairly and adequately represented the class and will continue to do so.

13.    I understand that, as a class representative, I have an obligation to assert and protect the interests of other class members and not act just for my own personal benefit.   I do

5

not have any conflict with other class members. I will do my best to protect the interests of other class members and will fairly and adequately represent the class to the best of my ability.

14.     It is my understanding that Defendants sold me the same product as it did all other class members who bought Scotts EZ Seed. I therefore request that the court certify a class of all persons who purchased Scotts EZ Seed in the state of California, excluding persons who purchased for purpose of resale.

15.     I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Executed on March 28, 2014 at Danville, California.

Vance Smith

6