UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -X
                        :

In re Scotts EZ Seed Litigation        :            12-CV-4727 (VB)

                        :

                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' PROFFERED DAMAGES EXPERT COLIN B. WEIR

HUNTON & WILLIAMS LLP
Shawn Patrick Regan
Joshua S. Paster
200 Park Avenue
New York, NY 10166

- and -

Samuel Danon (*pro hac vice*)
Jason B. Sherry
1111 Brickell Avenue, Suite 2500
Miami, FL 33131

*Counsel for Defendants The Scotts
Miracle-Gro Company, The Scotts
Company LLC, and Lowe's Home
Centers, LLC*

## TABLE OF CONTENTS

Page

INTRODUCTION AND BACKGROUND ..................................................................................1

   I.   Plaintiffs' Allegations.............................................................................................1

   II.   Weir's Damages Report For Plaintiffs. ..................................................................2

      A.  Summary of Weir's Damages Method 1 ("Full Compensatory Damages";
           Weir Decl. ¶¶ 8-12). ............................................................................3

      B.  Summary of Weir's Damage Method 2 ("Disgorgement of Money
           Damages"; Weir Decl. ¶¶ 13-15). ......................................................3

      C.  Summary of Weir's Damages Method 3 ("Price Premium Damages"; Weir
           Decl. ¶¶ 16-20). ...................................................................................4

ARGUMENT ............................................................................................................................5

   I.   Legal Standard. ....................................................................................................5

      A.  Standard for *Daubert* Motions Generally. .........................................................5

      B.  The Court Should Consider a *Daubert* Motion At The Class Certification
          Stage. ....................................................................................................7

   II.   Weir's Opinions Fail *Daubert* and should be excluded. .....................................8

      A.  There is No Causal Connection Between Weir's Measures of Damages And
         the Harm Alleged By Plaintiffs. .........................................................8

      B.  Weir's Full Compensatory Damages and Disgorgement Models Are Not The
         Subject Of Expertise; Weir Merely Restates Facts Received From Others. ..............11

      C.  Weir's Price Premium "Opinions" are Inadmissible Speculation. ..............................13

CONCLUSION..........................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Am. Honda Motor Corp. v. Allen,*
  600 F.3d 813 (7th Cir. 2010) ...................................................................................7

*Andrews v. Metro N. Commuter R. Co.,*
  882 F.2d 705 (2d Cir. 1989)..................................................................................12

*Auto Indus. Supplier ESOP v. Ford Motor Co.,*
  435 F. App'x 430 (6th Cir. 2011) ...........................................................................6

*Boca Raton Community Hosp. v. Tenet Health Care Corp.,*
  582 F.3d 1227 (11th Cir. 2009) ........................................................................8, 10

*Boucher v. U.S. Suzuki Motor Corp.,*
  73 F.3d 18 (2d Cir. 1996)......................................................................................13

*Brazier v. Hasbro, Inc.,*
  2004 U.S. Dist. LEXIS 4064 (S.D.N.Y. Mar. 9, 2004) ........................................15

*Comcast Corp. v. Behrend,*
  133 S. Ct. 1426 (2013)........................................................................................7, 9

*Dandong v. Pinnacle Performance Ltd.,*
  2013 U.S. Dist. LEXIS 150259 (S.D.N.Y. Oct. 17, 2013) .....................................7

*Daubert v. Merrell-Dow Pharms.,*
  509 U.S. 579 (1993)...................................................................................... passim

*Elcock v. Kmart Corp.,*
  233 F.3d 734 (3d Cir. 2000)..................................................................................15

*Gen. Elec. Co. v. Joiner,*
  522 U.S. 136 (1997)..............................................................................................15

*Greenwell v. Boatwright,*
  184 F.3d 492 (6th Cir. 1999) ..................................................................................6

*Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.,*
  2010 U.S. Dist. LEXIS 127869 (S.D.N.Y. 2010) ...........................................14 n.17

*Kumho Tire Co. v. Carmichael,*
  526 U.S. 137 (1999)............................................................................................5, 6

*Mercedes-Benz U.S.A LLC v. Coast Auto. Grp., Ltd.,*
    2006 U.S. Dist. LEXIS 71953 (D.N.J. Sept. 29, 2006) ..........................................................15

*MTX Commc'ns Corp. v. LDDS/WorldCom, Inc.,*
    132 F. Supp. 2d 289 (S.D.N.Y. 2001)........................................................................................6

*Sher v. Raytheon Co.,*
    419 F. App'x 887 (11th Cir. 2011) ............................................................................................7

*SNAPP Sys., Inc. v. Ford Motor Co.,*
    78 Fed. R. Evid. Serv. (Callaghan) 252 (E.D. Mich. 2008)................................................6, 13

*Soldo v. Sandoz Pharms. Corp.,*
    244 F. Supp. 2d 434 (W.D. Pa. 2003) ...............................................................................14 n.17

*Taylor v. Evans,*
    1997 WL 154010 (S.D.N.Y. Apr. 1, 1997)..............................................................................12

*Unger v. Amedisys Inc.,*
    401 F.3d 316 (5th Cir. 2005) .....................................................................................................7

*United States v. Bonds,*
    12 F.3d 540 (6th Cir. 1993) .......................................................................................................6

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011).................................................................................................7, 8 n.11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ............................................................................................................................7

Fed. R. Evid. 702 and 703.......................................................................................................passim

REFRENCE MANUAL SCIENTIFIC EVIDENCE, *Reference Guide on Estimation of Economic
    Damages* 429 (3d ed. National Academy of Sciences 2011)................................................8, 9

Defendants The Scotts Miracle-Gro Company and The Scotts Company LLC (collectively, "Scotts") hereby move for entry of an order excluding the opinions of Colin B. Weir, Plaintiffs' proffered damages expert in this matter.  Mr. Weir's purported expert opinions are inadmissible under Federal Rules of Evidence 702 and 703 and *Daubert v. Merrell-Dow Pharms.*, 509 U.S. 579 (1993).  His opinions are not causally connected to Plaintiffs' theories of liability and harm, he fails to use expertise when asserting that classwide damages are simply all wholesale or retail sales, and he performed no methodology – relying instead on speculation – to establish whether EZ Seed commands a price premium attributable to its 50% Thicker claim, and if so, the amount of the premium.  His opinions, therefore, cannot support class certification.

## INTRODUCTION AND BACKGROUND

### I.   Plaintiffs' Allegations.

Plaintiffs' Complaint alleges that Scotts Turf Builder EZ Seed, an all-in-one seeding product that combines premium grass seed, fertilizer, and a mulch composed of coconut pith fiber, "does not grow grass."  (Consol. Compl. ("CC") ¶ 1, ECF No. 14.)  They allege that "the super-absorbent mulch competes with the germinating seed for available moisture and actually prevents it from growing," and therefore EZ Seed "fail[s] to grow *any* grass at half water rates." (*Id.* ¶ 2 (emphasis in original).)

In their Complaint, Plaintiffs asserted twelve causes of action against Scotts, Home Depot Stores, U.S.A., Lowe's Home Centers, Inc.,[1] and True Value Company.  (*Id.* ¶¶ 110-199.)  Scotts and Lowe's filed a consolidated motion to dismiss in part.  (ECF Nos. 25, 26, 27.)  Home Depot filed a separate motion to dismiss all claims.[2]  (ECF Nos. 28, 29.)  This Court granted the motions in part, dismissing most of the claims that Plaintiffs had challenged as puffery and

---

[1] Lowe's Home Centers, Inc. has since reorganized as Lowe's Home Centers, LLC.
[2] Plaintiffs voluntarily dismissed True Value.  (ECF No. 19.)

substantially narrowing the focus of Plaintiffs' claims to whether EZ Seed grows "'50% Thicker with Half the Water'* compared to ordinary seed... 'each watered at half the recommended rate for ordinary seed. Results may vary.'" (Mem. Decision at 8, ECF No. 46.)

Plaintiffs have now moved to certify two classes against Scotts: (i) "all persons who purchased EZ Seed in the state of New York" and (ii) "all persons who purchased EZ Seed in the state of California."[3] (Pls.' Mem. of L. in Support of Mot. to Certify at 3, ECF No. 82 [hereinafter "Br."].) Each class would implicate nine causes of action that survived Scotts' motion to dismiss.[4]

## II.   Weir's Damages Report For Plaintiffs.

In support of their motion to certify classes, Plaintiffs submitted a declaration by proffered expert Colin B. Weir.[5] (Weir Decl., ECF No. 80, attached as Ex. 2 to the Declaration of Shawn Patrick Regan.[6]) Weir purports to calculate damages allegedly suffered by the proposed classes as a result of EZ Seed's alleged misstatements by using three methods of damages calculations. His first method, which he calls "Full Compensatory Damages," purports to estimate classwide damages by multiplying the average retail price per unit of EZ Seed with the number of packages sold. (Id. ¶¶ 8-12.) Weir's second method, which he calls "Disgorgement of Money Damages," purports to estimate classwide damages by multiplying the average wholesale price of EZ Seed with the number of packages sold. (Id. ¶¶ 13-15.) Weir's

[3] Both proposed classes would exclude those "who purchased for resale." (Br. at 3.)

[4] Breach of express warranty (Counts V, X); violation of state consumer protection acts (Counts II, III, IV, VIII, IX); breach of contract (Count XII); and unjust enrichment (Count VII). (Br. at 3 n.2 (noting motion did not apply to claims brought under Magnusson-Moss Warranty Act, and claims against True Value, Home Depot, or Lowe's).)

[5] Plaintiffs retained Mr. Weir on March 19, 2014 (Ex. 1, Engagement Letter), and filed their motion for class certification on March 31, 2014 (ECF Nos. 72-82).

[6] All exhibits are attached to the Regan Declaration.

third method, which he calls "Price Premium Damages," purports to estimate the "price

premium" of EZ Seed relative to an "alternate product." (*Id.* ¶¶ 16-20.)

### A.  Summary of Weir's Damages Method 1 ("Full Compensatory Damages"; Weir Decl. ¶¶ 8-12).

Weir's "Full Compensatory Damages" model, estimates the average retail price of EZ

Seed in New York and the average retail price of EZ Seed in California, and then multiplies each

number – ████ in New York and ████ in California – by the *wholesale* (not retail)[7] number

of EZ Seed units that Scotts sold to retailers in California or New York, respectively.  (*Id.* ¶¶ 9-

11.)  This "framework" leads to the following calculations:

California: ███████████████████████████████

New York: ████████████████████████████ (*Id.* ¶ 11.)

### B.  Summary of Weir's Damages Method 2 ("Disgorgement of Money Damages"; Weir Decl. ¶¶ 13-15).

Under Weir's "Disgorgement of Money Damages" model seeks to calculate purported

classwide damages by employing the same formula as the Full Compensatory Damages model,

but relies on Scotts' wholesale data to approximate the average wholesale price of EZ Seed.  (*Id.*

¶ 14.)   As above, that average is then multiplied by the wholesale number of EZ Seed units that

Scotts sold to retailers in California and New York.  (*Id.*)   This "framework" leads to the

following calculations:

California: ███████████████████████████

New York: ██████████████████████████ (*Id.*)

---

[7] Thus, Weir's damages models assign damages for units of EZ Seed that are on the shelves of
warehouses and retail stores and have not been sold to any consumer.  In other words, Weir
includes in his "classwide damages" units that have not been purchased by a "person" in New
York or a "person" in California.  (Br. at 3.)  He also includes units that were purchased for
resale, which are expressly excluded from Plaintiffs' class definition.  (*Id.*)

**C.      Summary of Weir's Damages Method 3 ("Price Premium Damages"; Weir Decl. ¶¶ 16-20).**

Weir's "Net Price Premium" method subtracts the average retail price of an "alternate product" from the average price of EZ Seed.  He then takes that number – the difference in average prices between EZ Seed and an "alternate product" – and multiplies it by, once again, the wholesale units that Scotts sold to retailers in California and New York.[8]  In other words, the per-unit "Price Premium" would be calculated with the following formula:

Average Retail Purchase Price Per Unit of EZ Seed
– Average Retail Purchase Price Per Unit of "Alternate Product"
= Net Price Premium Per Unit  [(*Id.* ¶ 16.)]

What this "Net Price Premium Per Unit" measures – or whether a premium even exists – is anyone's guess, since Weir provides no explanation in his Declaration of what this formula purports to measure.  Weir conducted no calculations and does not identify the "alternate product" that he proposes using, the lack of which he blamed on Defendants:  "I do not have an available estimate of the price per unit of an alternate product."[9]  (*Id.* ¶ 19.)

When asked at his deposition what this formula purports to measure, Weir admitted that "[i]t could be that EZ Seed commands other price premiums that are not associated with [the 50% Thicker claim] [or] [i]t could be EZ Seed carries, I don't know what the opposite of

---

[8] Weir declares that the "average price per coverage unit [of EZ Seed] is ▮▮▮▮▮▮▮ in California and ▮▮▮▮▮▮▮▮▮ in New York." (Ex. 2, Weir Decl. ¶ 17.)  He does not use these numbers in any of his calculations or explain their significance.

[9] Weir provides no explanation why Scotts should have this information or why he could not ascertain an alternative product and obtain the price-per-unit from available third-party sources of retail prices.  Indeed, he concedes third-party market data may be available. (Ex. 3, Weir Tr. at 85:5-20.)  For example, homedepot.com provides both a description of a possible alternative product, Pennington One-Step Complete, and its retail price.  *See* http://www.homedepot.com/p/ Pennington-6-25-lb-1-Step-Complete-Seeding-Mix-for-Sun-and-Shade-with-Smart-Seed-Mulch-Fertilizer-118001/202246361 (last visited May 26, 2014).  Indeed, Weir claims to have performed independent research on lowes.com and homedepot.com, and at a Home Depot retail store. (Ex. 3, Weir Tr. at 53:7-16.)

premium is in this case, but some negative connotation associated with some claim." (Ex. 3, Weir. Tr. at 76:11-19.)  He then acknowledged that those premiums "are distinct from and not necessarily tied to the [50% Thicker claim]" that Plaintiffs have challenged in this case.  (*Id.* at 76:20-77:2.)  To measure the premium that allegedly resulted from the 50% Thicker claim, Weir testified that he *could* use hedonic regression, contingent valuation study, or conjoint analysis,[10] but he did not do so.  (*Id.* at 72:3-74:5.)  Nor did he include sample formulas or calculations for any of these three methods in his declaration and, other than mention each as an option, he did not provide any analysis at his deposition.  (*Id* ; *see also* Ex. 2, Weir Decl.)  His nominally performed method, "Net Price Premium," in no way measures if there existed, or the amount of, an artificially inflated price each purchaser paid *as a result* of the 50% Thicker claim being on EZ Seed.  (Ex. 3, Weir Tr. at 76:3-77:2.)

## ARGUMENT

**I.    Legal Standard.**

### A.    Standard for *Daubert* Motions Generally.

The standards for *Daubert* motions are well known.  Rule 702 of the Federal Rules of Evidence, as discussed and interpreted by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), control the admissibility of expert testimony. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

---

[10] Both the contingent valuation study and conjoint analysis derive from consumer surveys.  (Ex. 3, Weir Tr. at 86:2-20.)

In *Daubert*, the Supreme Court held that Rule 702 imposes a "gatekeeping" obligation on the trial courts to ensure expert testimony "is not only relevant, but reliable." 509 U.S. at 589. This "gatekeeping" function applies to scientific testimony and testimony regarding technical or other specialized knowledge. *Kumho*, 526 U.S. at 141.

*Daubert* sets forth five factors the court may consider to determine reliability: (1) whether the expert's technique or theory can be and has been tested, (2) whether the technique or theory has been subjected to peer review and publication, (3) the known or potential rate of error of the technique when applied, (4) the existence and maintenance of standards and controls, and (5) whether the technique or theory is generally accepted in the scientific community. *Daubert*, 509 U.S. at 593-94. The court's inquiry under *Daubert* is flexible. *Id.* at 594. These factors are not a definitive test or checklist but are merely instructive. *Id.* at 593; *Kumho*, 526 U.S. at 150.

As one court has explained:

> Essentially, *Daubert* and *Kumho* require a two-step inquiry that involves an analysis of the "relevance and the reliability" of an expert's opinion. *Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999). The relevance step of the inquiry is designed to ensure that "there is a 'fit' between the testimony and the issue to be resolved by the trial." *Id.* (citing *United States v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993)). The reliability step focuses on the "methodology and principles" that form the basis for the testimony. *Id.* at 556. A trial court must inquire as to whether the methodology underlying the proffered expert testimony is valid and whether the methodology may be properly applied to the facts at issue in a particular case. *Daubert*, 509 U.S. at 592-93.

*SNAPP Sys., Inc. v. Ford Motor Co.*, 78 Fed. R. Evid. Serv. (Callaghan) 252, 255-56 (E.D. Mich. 2008), aff'd sub nom. *Auto Indus. Supplier ESOP v. Ford Motor Co.*, 435 F. App'x 430 (6th Cir. 2011) (citation omitted); *see also MTX Commc'ns Corp. v. LDDS/WorldCom, Inc.*, 132 F. Supp. 2d 289, 291 (S.D.N.Y. 2001).

**B.** **The Court Should Consider a *Daubert* Motion At The Class Certification Stage.**

The Court should determine whether Weir's opinions fit this case and are reliable before according them any weight in its class certification analysis.  While the Second Circuit has not yet directly addressed this issue, other Circuits and courts in this District have increasingly recognized the value in applying *Daubert* at the class certification stage:

> When an expert's report or testimony is critical to class certification ... a district court must conclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on a class certification motion.  That is, the district court must perform a full *Daubert* analysis before certifying the class if the situation warrants it.

*Am. Honda Motor Corp. v. Allen*, 600 F.3d 813, 815-16 (7th Cir. 2010); *see also Sher v. Raytheon Co.*, 419 F. App'x 887, 890 (11th Cir. 2011); *Unger v. Amedisys Inc.*, 401 F.3d 316, 323 n.6 (5th Cir. 2005) ("[i]n many cases, it makes sense to consider the admissibility" of expert testimony at the certification stage, because "[i]n order to consider Plaintiffs' motion for class certification with the appropriate amount of scrutiny, the Court must first determine whether Plaintiffs' expert testimony supporting class certification is reliable"); *Dandong v. Pinnacle Performance Ltd.*, 2013 U.S. Dist. LEXIS 150259, at *41-42 (S.D.N.Y. Oct. 17, 2013) (*Daubert* applies at class-certification stage to determine whether expert opinions are admissible to establish Rule 23 requirements); *accord Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2553-54 (2011) (expressing "doubt" about the correctness of the District Court's conclusion that *Daubert* does not apply at the certification stage).

Applying *Daubert* and precluding Weir's opinions will avoid the error present in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432-33 (2013), in which the Supreme Court stated the Third Circuit "ran afoul of our precedents" by "refusing to entertain arguments against

respondents' damages model that bore on the propriety of class certification."[11]  Here, Plaintiffs

base their request for class certification in part on their assertion that Weir has prepared models

that can reliably calculate damages under three different theories of recovery.  But as explained

below, he has done nothing of the kind.

## II.   Weir's Opinions Fail *Daubert* and should be excluded.

### A.   There is No Causal Connection Between Weir's Measures of Damages And the Harm Alleged By Plaintiffs.

All three of Weir's theories for calculating purported classwide damages should be

precluded for failing to calculate damages arising only from Plaintiffs' liability theory and the

harm allegedly resulting therefrom.

Expert testimony that is not "sufficiently tied to the facts of the case" does not satisfy

*Daubert*'s fit requirement and is inadmissible because it would be unhelpful and confusing to a

jury.  *Daubert*, 509 U.S. at 591.  A damages expert's opinion fails to meet that standard if his or

her calculations are not tied to the specific harm the plaintiffs allege.  *Boca Raton Community*

*Hosp. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1233 (11th Cir. 2009) (affirming exclusion of

expert opinion as failing *Daubert*'s fit requirement where damages model did not match up with

the injury for which the plaintiffs could recover, calculating additional damages for non-

actionable conduct: the "expert opinion on injury and damages did not fit its liability theory …

because, like an oversized coat, the expert opinion covered too much").

The Federal Judicial Center has identified what it calls the "essential elements of a study

of losses …."  (REFERENCE MANUAL ON SCIENTIFIC EVIDENCE, *Reference Guide on Estimation*

---

[11] Indeed, to find a *Daubert* analysis inapplicable at the class-certification stage – contrary to the Supreme Court's strong implication, *Dukes*, 131 S. Ct. at 2553-54 – is tantamount to saying courts may rely on unqualified persons' unreliable and irrelevant opinions in granting class certification.  That cannot be.

*of Economic Damages* 429 (3d ed. National Academy of Sciences 2011) (attached as Ex. 4)); *see also Comcast*, 133 S. Ct. at 1435 (quoting with approval the REFERENCE MANUAL). Per the REFERENCE MANUAL, an estimate of losses must be based on the plaintiffs' legal theory, and must be limited to harm caused by the defendant. (Ex. 4, REFERENCE MANUAL at 432.) The expert's first step "is the translation of the legal theory of the harmful event into an analysis of the economic impact of that event. In most cases, the analysis considers the difference between the plaintiff's economic position if the harmful event had not occurred and the plaintiff's actual economic position." (*Id.*) The "characterization of the harmful event" then "begins with a clear statement of what occurred. The characterization also will include a description of the defendant's proper actions in place of its unlawful actions and a statement about the economic situation absent the wrongdoing, with the defendant's proper actions replacing the unlawful ones (the but-for scenario)." (*Id.*) The "[d]amages measurement then determines the plaintiff's hypothetical value in the but-for scenario. Economic damages are the difference between that value and the actual value that the plaintiff achieved." (*Id.*) Since any "but-for scenario" will differ "from what actually happened only with respect to the harmful act, damages measured in this way isolate the loss of value caused by the harmful act and exclude any change in the plaintiff's value arising from other sources." (*Id.*) Therefore, "a proper construction of the but-for scenario and measurement of the hypothetical but-for plaintiff's value by definition includes in damages only the loss *caused* by the harmful act." (*Id.* (emphasis in original).)

Weir's "methodology" does not conform the REFERENCE MANUAL ON SCIENTIFIC EVIDENCE. His methodologies for estimating damages here lack correlation with the alleged harm or any comparison with the "but for" scenario. His damages models lack causal connections between what they measure and what the Plaintiffs say is their injury; indeed, his

damage numbers are independent of Plaintiffs' own theories of liability and harm. Instead, Weir's models looks at unrelated figures: Scotts' revenue from sales of *all* 16 million EZ Seed units sold *wholesale* to retailers back to 2009, and concomitantly the retail purchase price paid for EZ Seed units. Aside from using wholesale unit figures to approximate the number of retail purchases made during that period, Weir's first two models do not attempt to address the fact that the vast majority of EZ Seed units never resulted in any of the harm alleged by Plaintiffs. Plaintiffs alleged that "*when*" EZ Seed is watered at half the recommended rate, EZ Seed fails to grow grass. (*E.g.*, CC ¶ 45; Br. at 8.) That says nothing about "*when*" EZ Seed is watered at some rate other than half the recommended rate or when EZ Seed grows grass. Weir's first two models, however, provide a full refund to *all* purchasers of EZ Seed, including those for whom the product worked perfectly. (Ex. 2, Weir Decl. ¶¶ 8-15.) Weir's models are also divorced from Plaintiffs' liability theories as they provide a full refund regardless of watering rates, regardless of grass growth, regardless of any consumers whose grass did not grow for some reason other than a defect in EZ Seed (such as a hurricane striking shortly after planting), and regardless of whether consumers received a refund for their purchase.[12] Like in *Boca Raton Community Hospital*, Weir's models are not linked to Plaintiffs' liability theory or to the harm Plaintiffs allege, and they must be excluded.

 Weir's calculation of EZ Seed's "Price Premium" relative to an "alternate product" is similarly defective because it fails to approximate any price premium that was the "result of" the 50% Thicker claim. In this case, Weir did not conduct any economic analyses to determine whether the 50% Thicker claim that appears on EZ Seed *causes* a price premium that is paid by

---

[12] While Weir acknowledges that a consumer who previously received a refund (e.g., from Scotts' money-back No Quibble Guarantee) must be taken into consideration (Ex. 3, Weir Tr. at 109:5-18), none of his models in fact take this into consideration, (*see* Ex. 2, Weir Decl.).

all EZ Seed purchasers. Even if a hedonic regression, contingent valuation study, or conjoint analysis might show a premium, Weir did not propose using any such methods in his declaration, nor did he calculate (in his declaration or at his deposition) any premium. As Weir acknowledged at his deposition, whatever price difference exists between EZ Seed and the "alternate product" Mr. Weir selects (whether positive or negative) is "distinct from and not necessarily tied to the [50% Thicker claim]" that Plaintiffs have challenged in this case.[13] (Ex. 3, Weir Tr. at 76:20-77:2.) To measure that figure (should it even exist), Weir testified that he *could* use hedonic regression, contingent valuation study, or conjoint analysis. (*Id.* at 72:3-74:5.) As discussed below, he has not used any method. (*Id.*)

In addition, Weir never explains how his price-premium theory can provide classwide damages. For example, how can a person who purchased the product, watered it at the recommended rate, and grew grass in a manner that was fully in accord with his or her expectations be "damaged" in the same way and in the same amount as a person who purchased the product, watered at half the rate and either failed to grow grass (for what may be a variety of reasons) or grew grass but was dissatisfied with the result? This failure to explain is reason alone to find that Rule 702 and *Daubert* are not satisfied.

### B. Weir's Full Compensatory Damages and Disgorgement Models Are Not The Subject Of Expertise; Weir Merely Restates Facts Received From Others.

Weir's first two "models" – the Full Compensatory Damages and Disgorgement Models – are not based on any expertise. He simply created an "average" price per EZ Seed unit and

---

[13] Indeed, Mr. Weir makes this clear during his deposition, when he states that even if EZ Seed is less expensive than an alternative product it may still command a price premium for the 50% Thicker claim. (Ex. 3, Weir Tr. at 75:7-13.) It is thus clear that Weir's purported Price Premium model here measures simply the cost difference between two products. This Court or a jury can understand that one product may be more expensive than another without expert testimony.

multiplied that by the total number of EZ Seed units sold to retailers in New York and California. (Ex. 2, Weir Decl. ¶¶ 8-15.[14]) "Expert testimony is [] not admissible when it addresses 'lay matters which a jury is capable of understanding and deciding without the expert's help.'" *Taylor v. Evans*, 1997 WL 154010, at *2 (S.D.N.Y. Apr. 1, 1997) (quoting *Andrews v. Metro N. Commuter R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989))

In his Full Compensatory Damages Model, Weir merely restates the full retail amount of EZ Seed sold in New York and California.[15] (Weir Decl. ¶¶ 8-12.) In his Disgorgement Model, Weir merely restates the full wholesale amount of EZ Seed sold in New York and California. (*Id.* ¶¶ 13-15.) Scotts provided to Plaintiffs (who provided Weir) sales figures both by units and dollars. (*See* Exs. 5 & 6, Scotts' Weekly Sales Data; Ex. 7 Scotts Suppl. Resp. to Interrog. 4; Ex. 8, Scotts' Suppl. Resp. to Interrog. 1; Ex. 9, Scotts' Resp. to Interrog. 4.) With both New York and California, Weir took the sales figures, divided by units, and obtained the average price. (Weir Decl. ¶¶ 8-15.) To then "calculate" purported "damages," he reversed his math and, lo and behold, obtained a total alleged damages figure equivalent to the total sales figures he started with. Indeed, Weir admits in his Declaration that "Defendant's own records already provide the results of this calculation." (*Id.* ¶ 14.) There is no "expertise" in this. Moreover, any person can multiply units sold by average price. An expert would have understood that the number of

---

[14] It is unclear why Weir performed any calculations when in the Full Compensatory Damages model, it appears he opines that classwide damages would be the total amount of retail sales in New York and California, and in the Disgorgement Model, he opines that classwide damages would be the total amount of wholesale sales in New York and California. (Ex. 2, Weir Decl. ¶¶ 8-15; *see also, e.g.*, Ex. 3, Weir Tr. at 118:24-119:12.) The calculations exist almost as to create the imprimatur of expertise where none is necessary or applied.

[15] Weir claims that he disaggregated retail data from the Defendants. (Ex. 3, Weir Tr. at 149:6-9.) But Weir received all sales data on a disaggregated basis; his "expertise" used was simply to type the data into a single spreadsheet. (*See* Exs. 5 & 6, Scotts' Weekly Sales Data; Ex. 7 Scotts Suppl. Resp. to Interrog. 4; Ex. 8, Scotts' Suppl. Resp. to Interrog. 1; Ex. 9, Scotts' Resp. to Interrog. 4; Ex. 10, Home Depot's Suppl. Resp. to Interrog. 1; Ex. 11, Lowe's Suppl. Resp. to Interrog. 1.)

wholesale units sold to retailers does not reflect the number of retail units sold to consumers. Weir took someone else's calculations (in this case, Scotts') and made them his own. He was not in a position to audit those numbers and he is not attesting to their accuracy. Thus, Weir cannot testify as an "expert" on EZ Seed sales or Scotts' profits. *See SNAPP Sys.*, 78 Fed. R. Evid. Serv. at 259 (striking damages report for plaintiff: "Rather, it is the fact that Frazee failed to perform any intellectual analysis or review of the underlying source documents (which SNAPP says are its business records) sufficient to qualify him as an expert."). This Court and a jury are fully capable of understanding the total wholesale and retail sales of EZ Seed without expert testimony.

### C.   Weir's Price Premium "Opinions" are Inadmissible Speculation.

Weir's final "model" for calculating classwide damages – his price premium model – also fails *Daubert*. Weir has not undertaken or demonstrated a reliable methodology to support his theory that the 50% Thicker claim commands a price premium; he instead speculates about what he *would* or *could* do to demonstrate the existence of a premium and its amount, and what the results *might* have been from any consumer survey or hedonic regression. Without having performed any consumer survey or hedonic regression, Weir's opinion that there exists a price premium for the 50% Thicker claim above $0 is based on nothing but speculation.[16] It is clearly not based on expertise.

Speculative opinions are inadmissible. *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996). Indeed, the word "knowledge" in Rule 702 "connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.

---

[16] Weir acknowledged that the result of any one of his three methods could have revealed a premium of $0; *i.e.*, that there is no premium. (Ex. 3, Weir Tr. at 100:10-23.)

Weir's opinions about what the results *might* have been *if* he had performed any survey

or regression are inadmissible.  At his deposition, Weir identified three methods by which he

states he *could* seek to prove the 50% Thicker claim commands a price premium: hedonic

regression, contingent valuation study, and conjoint analysis.  (Ex. 3, Weir Tr. at 72:3-73:3.)  But

he admittedly has not performed any of these three methods.[17]  (*Id.* at 73:4-74:5.)  Instead, Weir

baldly asserts there exists a price premium associated with the 50% Thicker claim.  (*Id.* at 77:7-

25, 132:11-142:13.)  When pressed for how he reached that conclusion, he repeated Plaintiffs'

class certification briefing.  (*Compare id. with* Br. at 18-19.)  But if the conclusion follows from

the briefing, why do Plaintiffs even need an expert?  The answer, of course, is that they do not,

and Weir's speculation on this issue adds nothing.[18]

---

[17] Because Weir did not perform any of these methods, Scotts cannot challenge – and the Court
cannot scrutinize – the methodology as applied, which demonstrates why his opinions are
unreliable.  *See Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*, 2010 U.S. Dist. LEXIS
127869, at *14-15 (S.D.N.Y. 2010) ("The district court 'must scrutinize not only the principles
and methods used by the expert, **but also whether those principles and methods have been
properly applied to the facts of the case.**'") (emphasis added) (quoting Fed. R. Evid. 702 Adv.
Comm. Note); *Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 559 (W.D. Pa. 2003) ("The
hallmark of *Daubert*'s reliability prong is the scientific method - namely the generation of
testable hypotheses that are then subjected to the real world crucible of experimentation,
falsification/validation, and replication.").

[18] Weir claims that he could not undertake any of these three methods because he lacks
discovery.  (Ex. 3, Weir Tr. at 71:4-15.)  Weir, however, concedes that in the past he has used
publicly available third-party information to perform these types of analyses and finds the data
reliable and useful.  (*Id.* at 81:21-82:19.)  Similarly, Weir testified he needed certain descriptive
information to create a consumer survey.  (*Id.* at 92:7-93:5 (stating needed market prices and
product attributes).)  He provided no reason why he could not gather that information from
publicly available sources such as scotts.com, homedepot.com, lowes.com, penningtonseed.com,
or a retail store and perform a survey.  Moreover, this Court granted discovery over "class
certification" issues.  (Ex. 12, July 7, 2013 Hr'g Tr. at 15:14-17 ("So what I want to do is, I want
to do -- I want to give an opportunity for discovery that is relevant to the 'class certification'
issues.  I want to give both sides an opportunity to do that.").)  To the extent Weir complains he
lacks information, Plaintiffs failed to obtain and provide to him the information he needs.
Indeed, Weir testified that he advised Plaintiffs what information he would need.  (Ex. 3, Weir Tr.
at 37:6-15 ("the individuals noted here [Plaintiffs' counsel] asked for my assistance in thinking

Lacking sufficient factual predicate for his "opinion," Weir's opinion is the prototypical "castle made of sand." *Elcock v. Kmart Corp.*, 233 F.3d 734, 755 (3d Cir. 2000); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert."); *Mercedes-Benz U.S.A LLC v. Coast Auto. Grp., Ltd.*, 2006 U.S. Dist. LEXIS 71953, at *36-37 (D.N.J. Sept. 29, 2006) (rejecting expert's opinion that relied on the plaintiff's assertions and assumptions without performing its own independent analysis, finding it speculative); *Brazier v. Hasbro, Inc.*, 2004 U.S. Dist. LEXIS 4064, at *24 (S.D.N.Y. Mar. 9, 2004) ("because his opinion is based on conjecture and speculation rather than facts, Reiner's testimony about Robert's intent is inadmissible under Rule 702 of the Federal Rules of Evidence."). It should be deemed inadmissible under Rule 702 and *Daubert*.

## CONCLUSION

For the foregoing reasons, the Court should exclude Weir's "opinions" and declaration.

---

about what discovery requests to propound to the defendant in the case. And so I spoke with them, considered some issues relating to our conversation and then gave them suggestions ....").)

Dated: May 30, 2014         By:    /s/ Shawn Patrick Regan
      New York, New York

Shawn Patrick Regan
Joshua S. Paster
HUNTON & WILLIAMS LLP
200 Park Avenue
New York, New York  10166
Telephone:  (212) 309-1000
Facsimile: (212) 309-1100
Email:  sregan@hunton.com
Email:  jpaster@hunton.com

- and -

Samuel A. Danon (*pro hac vice*)
Jason B. Sherry
HUNTON & WILLIAMS LLP
1111 Brickell Avenue, Suite 2500
Miami, Florida  33131
Telephone:  (305) 810-2500
Facsimile:  (305) 810-2460
Email:  sdanon@hunton.com
Email:  jsherry@hunton.com

*Counsel for Defendants The Scotts Miracle-Gro Company, The Scotts Company LLC, and Lowe's Home Centers, LLC.*

16

## CERTIFICATE OF SERVICE

I hereby certify that, on May 30, 2014, I served a copy of the foregoing, on all counsel of record at the addresses listed below, by filing same with the Court's CM/ECF system.

/s/Shawn Patrick Regan
Shawn Patrick Regan

TO:

Scott A. Bursor, Esq.
Joseph I. Marchese, Esq.
Neal Deckant
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, New York 10019
Telephone: (212) 989-9113
Email: scott@bursor.com
        jmarchese@bursor.com
        ndeckant@bursor.com

-and –

Antonio Vozzolo, Esq.
Christopher Marlborough, Esq.
Courtney E. MacCarone, Esq.
FARUQI & FARUQI, LLP
369 Lexington Avenue, 10th Floor
New York, New York 10017
Telephone: (212) 983-9330
Email: avozzolo@faruqilaw.com
        cmarlborough@faruqilaw.com
        maccarone@faruqilaw.com

*Attorneys for Plaintiffs*