**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Scotts EZ Seed Litigation | Civil Action No. 12-CV-4727 (VB) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL**

Dated: June 27, 2014

**BURSOR & FISHER, P.A.**

Scott A. Bursor
Joseph I. Marchese
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: scott@bursor.com
jmarchese@bursor.com

**FARUQI & FARUQI, LLP**
Antonio Vozzolo
369 Lexington Ave., 10th Floor
New York, NY 10017-6506
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
Email: avozzolo@faruqilaw.com

*Interim Class Counsel*

## TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION .......... 1

II. PLAINTIFFS' CLAIMS DO NOT REQUIRE INDIVIDUALIZED PROOF .......... 3

III. SCOTTS' ARGUMENTS ON THE MERITS DO NOT DEFEAT CLASS CERTIFICATION .......... 5

A. Scotts' Arguments Concerning The Scientific Bases For Plaintiffs' Claims Will Be Addressed With Classwide Evidence .......... 5

B. Scotts' Arguments Concerning The Meaning Of The Half-Water Claim Will Be Addressed With Classwide Evidence .......... 6

C. Scotts' Arguments Concerning EZ Seed's Directions For Use Will Be Addressed With Classwide Evidence .......... 9

IV. SCOTTS' ARGUMENTS CONCERING DAMAGES DO NOT DEFEAT CLASS CERTIFICATION, ESPECIALLY FOR THE GBL §§ 349-350 CLAIMS, WHICH PROVIDE FOR STATUTORY DAMAGES .......... 10

V. SCOTTS' ARGUMENTS CONCERNING ITS REFUND PROGRAM DO NOT DEFEAT CLASS CERTIFICATION .......... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Algarin v. Maybelline, LLC*,
2014 WL 1883772 (S.D. Cal. May 12, 2014) .......... 12

*Astiana v. Kashi Co.*,
291 F.R.D. 493 (S.D. Cal. 2013) .......... 3, 4

*Brazil v. Dole Packaged Foods, LLC*,
2014 WL 2466559 (N.D. Cal. May 30, 2014) .......... 13

*Bruno v. Quten Research Inst., LLC*,
280 F.R.D. 524 (C.D. Cal. 2011) .......... 3, 4

*Contemporary Mission, Inc. v. Famous Music Corp.*,
557 F.2d 918 (2d Cir. 1977) .......... 11

*Dandong v. Pinnacle Performance Ltd.*,
2013 WL 5658790, (S.D.N.Y. Oct. 17, 2013 .......... 5

*Ebin v. Kangadis Food Inc.*,
297 F.R.D. 561 (S.D.N.Y. 2014) .......... passim

*Forcellati v. Hylands, Inc.*,
2014 WL 1410264, (C.D. Cal. Apr. 9, 2014) .......... passim

*FTC v. Pantron I Corp.*,
33 F.3d 1088 (9th Cir. 1994) .......... 11

*Guido v. L'Oreal, USA, Inc.*,
2013 WL 3353857 (C.D. Cal. July 1, 2013) .......... 3, 4, 14

*In re Cablevision Consumer Litig.*,
2014 WL 1330546, (E.D.N.Y. Mar. 31, 2014) .......... 5

*In re Cliffdale Associates, Inc.*,
1984 WL 565319 .......... 7, 8

*Jay Norris Corp.*,
91 F.T.C. 751 (1978) .......... 7

*Lavie v. Procter & Gamble Co.*,
105 Cal.App.4th 496 (2003) .......... 7, 8

*Mayline Enters., Inc. v. Milea Truck Sales Corp.*,
641 F. Supp. 2d 304 (S.D.N.Y. 2009) .......... 14

*McCrary v. Elations Co., LLC*,
2014 WL 1779243 (C.D. Cal. Jan. 13, 2014)........................................................................10, 11

*McNeilab, Inc. v. American Home Products Corp.*,
501 F. Supp. 517 (S.D.N.Y. 1980) ..........................................................................................8

*R.J. Reynolds Tobacco Co. v. Loew's Theatres, Inc.*,
511 F. Supp. 867 (S.D.N.Y. 1980) ..........................................................................................8

*Rodriguez v. It's Just Lunch, Int'l*,
2014 WL 1921187, (S.D.N.Y. May 14, 2014) .......................................................................14

*Seijas v. Republic of Argentina*,
606 F.3d 53 (2d Cir. 2010) ....................................................................................................11

*The Scotts Company LLC v. Pennington Seed, Inc.*,
14-cv-00248 (E.D. Va. Apr. 4, 2014)......................................................................................10

*Werdebaugh v. Blue Diamond Growers*,
2014 WL 2191901, (N.D. Cal. May 23, 2014).................................................................passim

**Statutes**

GBL § 349...........................................................................................................................3, 13

GBL § 350...........................................................................................................................3, 13

## I. INTRODUCTION

Our opening brief established that each of the seven plaintiffs used EZ Seed as directed, and none grew a blade of grass. Scotts responds that a "countless array of human and natural variables … may affect whether grass grows." Opp. Br. at 2. While that may be true for grass in general, it is not true for EZ Seed. EZ Seed did not grow grass when planted in January in San Francisco.[1] It did not grow in February in Danville, California.[2] It did not grow in April in Syracuse.[3] It did not grow in May or June in Rockland County.[4] It did not grow in the Spring in Nassau County.[5] It did not grow in August in West Nyack.[6] It did not grow in shady areas or in sunny areas.[7] It did not grow in the greenhouse at the NexGen Turf Research facilities in Albany, Oregon.[8] [redacted][9] It did not grow here or there. It did not grow anywhere.

So while a "countless array" of variables may affect whether grass grows, there is no evidence those variables have any effect on EZ Seed. Regardless of the conditions, the results with EZ Seed are always the same. EZ Seed does not grow "50% THICKER WITH HALF THE WATER." It does not grow at all.

Each of the seven plaintiffs, and indeed each of the millions of class members, has a unique story. Some are tall and some are short. Some purchased EZ Seed with a credit card, some paid cash. Some planted it on the East Coast, some on the West Coast. Some in the front

---

[1] Browne Dep. at 81:2-82:6, Marchese Decl. Ex. D.

[2] Smith Dep. at 77:1-7, Marchese Decl. Ex. H.

[3] Arcuri Dep. at 73:3-8, Marchese Reply Decl. Ex. CCC.

[4] Eskinazi Dep. at 134:9-12, Marchese Decl. Ex. E.

[5] Moore Dep. at 23:15-20, Marchese Reply Decl. Ex. DDD.

[6] Thomas Dep. at 65:3-7; 65:18-23, Marchese Decl. Ex. I.

[7] Lonardo Dep. at 154:21-155:7, Marchese Decl. Ex. F.

[8] Marchese Decl. Ex. X (Mr. Hignight's half-water study, 4 plots in 4 different soil conditions).

[9] Marchese Decl. Ex. W ([redacted]).

yard and some in the back. Like millions of snowflakes, no two class members are exactly the same.

But EZ Seed's failures have nothing to do with the weather in San Francisco or Syracuse. Nor were they caused by circumstances unique to any of the named plaintiffs. These failures were caused by the super-absorbent coir mulch comprising 88% of every package of EZ Seed, which prevents germination at half-water levels. While it may be possible to overcome this defect if EZ Seed is heavily soaked multiple times each day, the labels state that EZ Seed grows "50% Thicker With Half The Water."

Each class member's real-world experience with EZ Seed shares common elements. Each purchased a product that promised to "grow[] thicker grass with less water than normal grass seed."[10] That promise was highly material. It appears on the front, back, side and bottom of every package, in two languages, English and Spanish.[11] It addresses an issue Scotts acknowledges to be [redacted] when purchasing grass seed.[12] Each class member paid a price premium – a higher purchase price attributable to this promised benefit.[13] Each received a product comprising 88% super-absorbent coir mulch, a product that Scotts' own witnesses have admitted requires more water, not less. *See* Opening Br. at 4. A product that simply will not grow at half-water levels, as demonstrated by scientific

---

[10] 5/22/13 MTD Mem. Decision at 12, Dkt. 46.

[11] Marchese Reply Decl. Ex. EEE (photographs of the front, back, left, right and bottom surfaces of the 10 lb. bag of EZ Seed, all stating "50% Thicker With Half The Water").

[12] Sass Dep. at 67:10-12, Marchese Decl. Ex. B [redacted]

[13] Scotts' internal documents confirm the existence of a price premium for EZ Seed. *See, e.g.*, Marchese Decl. Ex. AA, at SMG-EZ009018 [redacted]; Marchese Reply Decl. Ex. FFF, at SMG-EZ005488 [redacted] *See also* Weir Dep. at 77:14-25, Marchese Reply Decl. Ex. GGG [redacted]

testing. *See id.* at 7-8. That is why this case is ideally suited for class treatment.

## II. PLAINTIFFS' CLAIMS DO NOT REQUIRE INDIVIDUALIZED PROOF

Scotts argues that "adjudicating the claims here would require highly individualized inquiries … for each absent class member" to determine "under what conditions did he or she plant EZ Seed, and did it grow." Opp. Br. at 2. But our opening brief identified the elements of each claim for which class certification is sought, and demonstrated that each element can be established through common proof. Claim by claim, element by element. Opening Br. at 17-26. Scotts ignores that demonstration. Scotts also ignores basic principles of California law, which hold that "relief under the UCL and FAL is available without individualized proof of deception, reliance and injury, so long as the named plaintiffs demonstrate injury and causation." *Guido v. L'Oreal, USA, Inc.*, 2013 WL 3353857, at *10 (C.D. Cal. July 1, 2013). New York law is similar. *See id.* at *12 (holding "liability under the New York statutes [GBL §§ 349-350] can be established with common proof … [because] whether a reasonable consumer would have been deceived by [the product's] packaging is an objective inquiry that focuses on that packaging").

None of the elements of plaintiffs' claims, under California or New York law, depends upon proof of the conditions under which class members planted EZ Seed, or whether it grew. Indeed, many courts applying California law have held that class members' individual experiences with a product are irrelevant to class certification, particularly for claims of mislabeling. *See, e.g.*, *Werdebaugh v. Blue Diamond Growers*, 2014 WL 2191901, at *16 (N.D. Cal. May 23, 2014) (certifying class of purchasers of mislabeled snack food, stating that each class member's "individual experience with the product is irrelevant where, as here, the injury under the UCL, FAL, and CLRA is established by an objective test"); *Forcellati v. Hylands, Inc.*, 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014) (same, certifying class of purchasers of mislabeled children's cold medicines); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 502 (S.D. Cal. 2013) (same, certifying class of purchasers of mislabeled snack foods); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011) (same, certifying class of purchasers of

mislabeled dietary supplement).

Judge Rakoff reached the same conclusion to certify a class of purchasers of mislabeled olive oil in *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014):

> "[C]ourts have found that predominance exists over claims for breach of express warranties because an 'expressed promise' on the packaging 'has been breached' and therefore 'no individual inquiry' is 'needed to resolve plaintiff's claim.' *Elias v. Ungar's Food Products, Inc.*, 252 F.R.D. 233, 250 (D.N.J. 2008). Here every tin sold to class members had a material, express promise in large letters on the front, back, left, right, and top of the tin that the contents inside were 100% Pure Olive Oil. Marchese Decl. Ex. N (photographs of five surfaces of the tin). The same evidence will determine whether the substance inside conforms to the express warranty."

*Ebin*, 297 F.R.D. at 569.

*Ebin* is squarely on point. *Ebin* involved the same lawyers for the class (Bursor & Fisher, P.A.). The same expert witness on damages (Colin B. Weir). Material representations on every surface of the package – the olive oil tins in *Ebin*, and the EZ Seed packaging here. Marchese Reply Decl. Ex. FFF (photographs of the front, back, left, right and bottom surfaces of the 10 lb. bag of EZ Seed, all stating "50% Thicker With Half The Water"). The same legal claims: GBL § 349 and breach of express warranty, among others. And a defendant pointing to a "countless array" of irrelevant individual details to attempt to defeat class certification. That did not work in *Ebin*. Nor in *Werdebaugh*, *Forcellati*, *Guido*, *Astiana*, *Bruno*, or countless other mislabeling cases in which consumer classes were certified.

Plaintiffs contend that EZ Seed was mislabeled because the statement that it grows "50% Thicker With Half The Water" is both false and misleading. False because the product is not capable of growing grass at half-water levels. And misleading because the product in fact requires more water, not less as the label suggests. Each plaintiff's experience provides an illustrative example demonstrating EZ Seed's failure to grow. <u>But proof of plaintiffs' claims does not depend on whether the grass grew for any individual plaintiff. If it did, this case would be over, and the plaintiffs already would have won.</u> Rather, proof of liability depends on

whether the characteristics of the product conform to the express promise on the label. *See, e.g.*, *Ebin*, 297 F.R.D. at 569 (characterizing the issue as "whether the substance inside conforms to the express warranty" on the outside of the package).

Nor does proof of injury depend on whether the grass grew for a particular plaintiff. As Judge Rakoff explained in *Ebin*, "the injury is the purchase price." *Ebin*, 2013 WL 6504547, at *5 (S.D.N.Y. Dec. 11, 2013) ("The deception is the false and misleading label, and the injury is the purchase price."). This is true under California law as well. *See, e.g.*, *Forcellati*, 2014 WL 1410264, at *3 n.3 ("the relevant economic injury occurred at the point of purchase"). Thus all facts necessary to determine liability, injury and damages occurred before any seed was sown. Plaintiffs' claims will be proven or disproven based on objective scientific evidence concerning the properties of EZ Seed, and an economic analysis of the purchase price. That evidence is common to all class members.[14]

## III. SCOTTS' ARGUMENTS ON THE MERITS DO NOT DEFEAT CLASS CERTIFICATION

Scotts asserts a number of arguments disputing liability on the merits. While it is premature to determine the merits on this motion, Scotts' arguments demonstrate that liability in this case will be proven or disproven with common classwide evidence.

### A. Scotts' Arguments Concerning The Scientific Bases For Plaintiffs' Claims Will Be Addressed With Classwide Evidence

Scotts argues that plaintiffs' theory that EZ Seed's coir mulch obstructs germination "is not supported by science." Opp. Br. at 14. Scotts relies on Dr. Hummel's testing, which purports to show that EZ Seed's coir mulch, though super-absorbent, releases water back to the

[14] Scotts argues the "Named Plaintiffs are subject to unique defenses," Opp. Br. at 33. But that argument is perfunctory, lacking any discussion of the evidence that Scotts contends would support these "unique defenses." This cannot defeat class certification. *See, e.g.*, *In re Cablevision Consumer Litig.*, 2014 WL 1330546, at *9 (E.D.N.Y. Mar. 31, 2014) (rejecting the same argument, stating: "the Court does not find that the defense would threaten to become the focus of the litigation"); *Dandong v. Pinnacle Performance Ltd.*, 2013 WL 5658790, at *5-7 (S.D.N.Y. Oct. 17, 2013) ("[U]nique defenses defeat the typicality requirement only when they threaten to become the focus of litigation.").

seed and soil. *Id.* at 14-15.

None of Dr. Hummel's tests were done in soil. Nor did they involve light irrigation, such as at half-water levels. Instead, Dr. Hummel started with a "saturated sample," placed on a "tension table," a device "which exerts a certain amount of suction … to pull the water out." *Scotts* Trial Tr. at 503:9-504:1, Marchese Reply Decl. Ex. HHH. Dr. Hummel also did a second test in a "pressure plate apparatus, which is just like a big pressure cooker." *Id.* at 504:7-16. As Dr. Hummel explained: "We put the samples in a little cylinder. We soak them up from the bottom up to completely saturate them, and then put the pressure chamber under a certain pressure … and measure the moisture content." *Id.* But in the real world, class members do not use EZ Seed with tension tables or pressure cookers. They plant it in soil. Dr. Hummel's tests do not speak to the issue here – how EZ Seed's coir mulch behaves in soil, at half-water levels.[15]

Scotts' own scientists admitted the coir mulch prevents germination at half-water levels, exactly as plaintiffs allege, and also admitted that the half-water claim is just not true.[16] This evidence further demonstrates that the central issue in the case – whether the half-water claim is false or misleading – will be determined with objective scientific evidence equally applicable to all class members' claims, regardless of where, when or how they sowed the seeds.

### B. Scotts' Arguments Concerning The Meaning Of The Half-Water Claim Will Be Addressed With Classwide Evidence

Citing an asterisk and a fine-print footnote, Scotts argues that "words matter," and that the "[t]he 50% Thicker claim does not say EZ Seed needs less water to grow." Opp. Br.

---

[15] Scotts also cites Judge Spencer's reliance on Dr. Hummel's testing in the Lanham Act case, which did not involve the half-water claim. *See* Opp. Br. at 14-15; Regan Decl. Ex. 29. Plaintiffs' motion to strike references to Judge Spencer's findings as irrelevant and inadmissible hearsay is submitted herewith.

[16] *See, e.g.*, Marchese Decl. Ex. R [redacted] Marchese Decl. Ex. N [redacted]

at 15-16. But this Court already held the half-water claim is a "promise that EZ Seed will perform in specific, measurable ways; namely, that it grows thicker grass with less water than normal grass seed." 5/22/13 MTD Mem. Decision at 12 (Dkt. No. 46). The plain language, "50% Thicker With Half The Water" quite clearly states the product needs less water to grow. Scotts' marketing materials reinforce this obvious message. *See* Marchese Decl. Ex. A, at SMG-EZ020815 [redacted] (underlining added); Marchese Decl. Ex. K, at SMG-EZ004614 [redacted] (underlining added).

Scotts also argues the theory "that consumers miscomprehend the claim to mean EZ Seed 'needs less water to grow' … is not supported by any evidence, and, even if pleaded, is not viable absent consumer survey evidence supporting such a theory, which Plaintiffs do not have." Opp. Br. at 16. But Plaintiffs submitted results from two surveys, both conducted by Scotts, with Plaintiffs' opening brief. One found that [redacted] Marchese Decl. Ex. KK, at SMG-EZ017458 (underlining added). Another found [redacted] Marchese Decl. Ex. LL, at SMG-EZ101781.

A label can be deceptive if it is literally false, misleading, or ambiguous with at least one misleading interpretation. *See, e.g., Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 509 (2003) ("Advertisements as a whole may be completely misleading although every sentence separately considered is literally true."); *Cliffdale Associates*, 103 F.T.C. at 177-78, 1984 WL 565319, at *47 & n.22 ("When a seller's representation conveys more than one meaning to reasonable consumers, one of which is false, the seller is liable for the misleading interpretation."), *citing Jay Norris Corp.*, 91 F.T.C. 751, 836 (1978), *aff'd,*598 F.2d 1244 (2d

Cir. 1979). The half-water claim is literally false, even with the asterisk, because the product in fact [redacted], as demonstrated by Mr. Hignight's and Dr. Kruse's scientific tests.[17] Furthermore, Scotts' own consumer surveys, Marchese Decl. Ex. KK and LL, show that [redacted] That is more than enough to establish the label is deceptive under the reasonable consumer standard. *See, e.g.*, *McNeilab, Inc. v. American Home Products Corp.*, 501 F. Supp. 517, 525, 527 (S.D.N.Y. 1980) (finding that 23% confusion was "ample support" that the challenged advertisement "tends to mislead"); *R.J. Reynolds Tobacco Co. v. Loew's Theatres, Inc.*, 511 F. Supp. 867, 876 (S.D.N.Y. 1980) (a "deception rate" between 20% and 33% is sufficient to warrant preliminary injunctive relief).[18]

If this were a motion for summary judgment, plaintiffs' evidence would already be sufficient to raise a triable issue on whether the half-water claim is false or misleading. But more importantly, the evidence on this point is entirely common to the class. The language was the same on every package. The Scotts' marketing statements and consumer surveys, Marchese Decl. Ex. A, K, KK and LL, demonstrate the meaning of the claim to a reasonable consumer, and that evidence applies equally to the claims of all class members. *See, e.g.*, *Ebin*, 279 F.R.D. at 568 ("The same generalized evidence will be used to establish whether Capatriti's label is false, and if so, whether it was likely to mislead a reasonable consumer acting under the

---

[17] Scotts argues that Dr. Kruse's tests support the half-water claim because "twice-daily watering" was the recommended rate for the EZ Seed Bermudagrass used in that test. Opp. Br. at 10. That is false. Scotts own internal field testing of EZ Seed Bermudagrass states that [redacted] Regan Decl. Ex. 49, at 1. *See also* Nelson Dep. at 63:19-20, Marchese Decl. Ex. L [redacted].

[18] *See also Lavie*, 105 Cal.App.4th at 508 ("'Likely to deceive' … indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."); *In re Cliffdale Associates, Inc.*, 103 F.T.C. 110, 1984 WL 565319, at *62 n.8 and n.26 ("This element of the deception test has been variously described as requiring: a 'substantial segment,' a 'substantial percentage,' 'substantial numbers,' or 'some reasonably significant number.'") (dissenting opinion, internal citations omitted).

circumstances."); *Werdebaugh*, 2014 WL 2191901, at *12 ("Werdebaugh's UCL, FAL, and CLRA claims depend on whether the labels at issue are unlawful, unfair, deceptive, or misleading to *reasonable* consumers.") (italics in original).

### C. Scotts' Arguments Concerning EZ Seed's Directions For Use Will Be Addressed With Classwide Evidence

Faced with its own lawyer's admission that EZ Seed's label instructs users to "grossly overapply" the product, Scotts argues "there is no evidentiary link" between the flawed directions for use (DFUs) and EZ Seed's failure to germinate. Opp. Br. at 16-17. But in his closing argument at the Lanham Act trial, Scotts' lawyer explained that if these directions are followed, "there's going to be problems":

> "MR DANON: Why that is so important is because from the perspective of EZ Seed, an overapplication of EZ Seed at that level, at that amount [an eighth of an inch layer], creates an issue as to how it is going to work and there's going to be problems with it. You heard Mr. Faust talk about that. If you overapply the product, because of its greater absorption ability, because it can absorb so much, it creates this – it grows to a layer that then impacts how it is going to perform. . . . [I]t is not going to work as well."

Marchese Reply Decl. Ex. III at 23:4-13 (underlining added). Mr. Danon's admissions are consistent with Dr. Nelson's internal email stating: [redacted] Marchese Decl. Ex. N. And Mr. Faust's internal email stating: [redacted] Marchese Decl. Ex. R. If this were a summary judgment motion, these admissions alone would be sufficient to raise a triable issue of fact.

Scotts argues that even if the DFUs were flawed, Scotts changed them on a rolling basis beginning in 2011, which would make it difficult to determine which DFUs were on a particular class member's package. Opp. Br. at 17 n.26 ("ascertaining which consumers purchased the original versus the new Directions for Use would be impossible"). But in a new lawsuit that

Scotts filed on April 4, 2014, Scotts admits EZ Seed's new DFUs call for the exact same application rate as the original DFUs:

> "In or around November 2011, Scotts began shipping EZ Seed® with a new set of directions for use ….
>
> Scotts did not intend these new instructions to alter the application rate of the product. In fact, the application rate reflected in the new directions for use was the same rate that Scotts had always recommended by referring to a thin 1/8" layer."

Complaint ¶¶ 21-22, *The Scotts Company LLC v. Pennington Seed, Inc.*, 14-cv-00248 (E.D. Va. Apr. 4, 2014), Marchese Reply Decl. Ex. JJJ. Accordingly, the same common evidence can be used to prove Scotts' liability regardless of which DFUs appear on the package. *See, e.g., McCrary v. Elations Co., LLC*, 2014 WL 1779243, at *9 (C.D. Cal. Jan. 13, 2014) (certifying class of purchasers of dietary supplement despite defendant's label changes, stating: "Defendant did not recall or re-label existing products once the label change was made. … The fact that the allegedly false representation was not on every available product during the class period does not defeat ascertainability.").[19]

## IV. SCOTTS' ARGUMENTS CONCERING DAMAGES DO NOT DEFEAT CLASS CERTIFICATION, ESPECIALLY FOR THE GBL §§ 349-350 CLAIMS, WHICH PROVIDE FOR STATUTORY DAMAGES

Scotts argues that "damages are not measurable on a classwide basis." Opp. Br. at 21. But Scotts does not address any of the authorities cited at pages 24-25 of our opening brief establishing that class certification is appropriate even if there is a need "for separate determination of the damages suffered by the individuals within the class," and approving of full refund, price premium, and disgorgement measures of actual damages as amenable to classwide

---

[19] Scotts' opposition brief states, for the first time, that Scotts has "voluntarily discontinued using the 50% Thicker claim in revised packaging and advertisements." Opp. Br. at 10 n.17. In light of this new development, the class definitions should be narrowed to include only purchasers of EZ Seed "containing the label statement '50% Thicker With Half The Water.'" *See, e.g., Werdebaugh v. Blue Diamond Growers*, 2014 WL 2191901, at *27 (N.D. Cal. May 23, 2014) (certifying class of purchasers of snack food products "containing the label statements 'evaporated cane juice' and/or 'All Natural'"). *See* Marchese Reply Decl. ¶ 2 (revised proposed class definitions).

proof. *See also Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010) ("[I]t it is well established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification.").

Scotts argues that the "full refund" and "full disgorgement" damages models are improper because they fail to include an offset for the value class members received. Opp. Br. at 22. But grass seed that does not grow is worthless.[20] In any event, the burden to prove such an offset, or reduction in damages, would rest with Scotts. *See, e.g.*, *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 926–27 (2d Cir. 1977) ("[U]nder the long-standing New York rule, when the existence of damage is certain, and the only uncertainty is as to its amount, the plaintiff will not be denied a recovery of substantial damages. Moreover, the burden of uncertainty as to the amount of damage is upon the wrongdoer …."); *Ebin*, 2014 WL 737878, at *2 (quoting *Contemporary Mission* in discussing the "bifurcated burden" on proof of damages). To date Scotts has presented no evidence to support any reduction in damages attributable to the value of EZ Seed, which plaintiffs contend is worthless. *See* Eskinazi Decl. ¶ 9 ("[T]he product was worthless to me. … I paid full price and I should get back full price."). Even if Scotts could show the product had some value, "[t]his reduction in allowable damages … is not fatal to class certification." *McCrary*, 2014 WL 1779243, at *15.

Scotts also contends that plaintiffs' price premium damages model is insufficient because

---

[20] Scotts asserts "millions of other people … successfully grew grass and were fully satisfied with EZ Seed." Opp. Br. at 1. But that statement is based on hyperbole and speculation. Scotts presents no evidence that a class member successfully grew a blade of grass with EZ Seed, or was "satisfied" with the product. In any event, courts routinely reject the so-called "satisfied-customers" defense to class certification. *See, e.g.*, *Forcellati v. Hyland's Inc.*, 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014) ("Defendants' argument that any satisfied customers would not be entitled to restitution is without merit. … If Plaintiffs' allegations are proven true, Defendants' representations about the products' effectiveness would constitute false advertising 'even though some consumers may experience positive results.'"), *quoting FTC v. Pantron I Corp.*, 33 F.3d 1088, 1100 (9th Cir. 1994); *id.* at *12 ("Defendants' argument that the products worked for some individual class members … challenges the merits of Plaintiffs' allegation about the uniform inefficacy of the products [and] has no bearing on the Rule 23 predominance inquiry.").

they have not yet proffered a final calculation. Opp. Br. at 24. Mr. Weir forthrightly acknowledged that he does not yet have the data needed to calculate the price premium:

[redacted]

Weir Dep. at 71:4-72:2, Marchese Reply Decl. Ex. GGG. Mr. Weir described three methodologies he has used in the past to make such calculations, including hedonic regression, contingent valuation, and conjoint analysis. *Id.* at 72:3-73:3 [redacted]. *See also Ebin*, 297 F.R.D. at 571-72 (holding Mr. Weir's price premium calculations sufficient to satisfy *Comcast*).

Scotts argues that Mr. Weir's analyses of the price premium are not yet complete, thus plaintiffs have "failed to propose a viable method supported by evidentiary proof." Opp. Br. at 24, *quoting Algarin v. Maybelline, LLC*, 2014 WL 1883772, at *14 (S.D. Cal. May 12, 2014). Judge Koh rejected this same attack on the expert in *Werdebaugh*, who also had not yet completed his regression analysis:

> "Because *Comcast* did not articulate any requirement that a damage calculation be performed at the class certification stage, that Dr. Capps has yet to actually run the regressions and provide results is not fatal to Werdebaugh's reliance on the Regression Model. … [D]iscovery has not yet closed in this case, and Defendants provide no basis to believe that if Plaintiff obtains the discovery outlined in Dr. Capps's report and apparently requested

[21] *See* Stipulation No. 1, Dkt. No. 69 (providing that Home Depot will produce the required data within 60 days after class certification).

> by Plaintiff the regression analysis will be unworkable."

*Werdebaugh*, 2014 WL 2191901, at *25-26 (internal citations and quotation marks omitted).

Here, Scotts sought and received an order bifurcating discovery to prohibit plaintiffs from obtaining the data needed to complete the regression calculation prior to class certification. Dkt. No. 54 (limiting discovery to "all facts concerning (i) plaintiffs' purchase and use of EZ Seed, including EZ Seed packaging and advertisements and (ii) Scotts' No-Quibble Guarantee"). Then defendants objected to plaintiffs' discovery requests seeking data on alternate grass seed products, which Mr. Weir would use to calculate the price premium, on the ground that such data [redacted] *See* Marchese Reply Decl. ¶ 13 and Exs. KKK, at Interrogatory Responses 5 & 6, and LLL, at Document Request Responses 7 & 8.

The bifurcation order cannot be both sword and shield. If these data are not relevant to class certification, as defendants asserted in refusing to produce them, then the regression analyses based on these data cannot be required to be completed prior to class certification. This is the same scenario Judge Koh addressed recently in *Brazil v. Dole Packaged Foods, LLC*, 2014 WL 2466559, at *18 (N.D. Cal. May 30, 2014):

> "Dole cannot use damages discovery as both a sword and a shield. In its [discovery report], Dole claims that it need not produce discovery relevant to damages before class certification because the discovery is not relevant to class certification. Yet, Dole opposes class certification on the basis that Dr. Capps has not performed his regression analysis. According to Brazil, Dr. Capps cannot perform his regression analysis without the discovery Dole refused to produce. … Consequently, the Court cannot credit Dole's arguments that Dr. Capps' analysis is insufficient under *Comcast* when Dole itself contributed to Dr. Capps' failure to complete his regression analysis."

Furthermore, expert testimony on damages is not even necessary for the GBL §§ 349 and 350 claims, which provide for statutory damages:

> "Under N.Y. G.B.L. § 349(h), a plaintiff can recover statutory damages in the amount of $50 upon a finding that the plaintiff has suffered injury. … Therefore no expert testimony demonstrating

> the existence of a measurable impact on [the mislabeled product's] market price is necessary to award relief to the New York class. Moreover, because awarding classwide relief only requires that a fixed amount of statutory damages be granted to each class member, no individualized damages inquiries are necessary for the New York class.

*Guido*, 2014 WL 3343857, at *16. *See also Mayline Enters., Inc. v. Milea Truck Sales Corp.*, 641 F. Supp. 2d 304, 309 (S.D.N.Y. 2009) ("Defendant claims that the [Federal Odometer Act claim] should be dismissed because plaintiff suffered no actual damages. But this is a silly argument; one can never have no damages for violation of a statute that provides for statutory damages.").

## V. SCOTTS' ARGUMENTS CONCERNING ITS REFUND PROGRAM DO NOT DEFEAT CLASS CERTIFICATION

Scotts' superiority arguments rely exclusively on the "no quibble guarantee" refund program. Opp. Br. at 25-29. Those arguments were thoroughly debunked at pages 26-30 of our opening brief.[22] Two new decisions by federal courts granting class certification despite existing refund programs further undermine Scotts' arguments. *See Forcellati*, 2014 WL 1410264, at *12 ("Defendants' refund program does not defeat superiority."); *Rodriguez v. It's Just Lunch, Int'l*, 2014 WL 1921187, at *20 (S.D.N.Y. May 14, 2014) ("The fact that some prospective New York class members may have received credits or refunds does not preclude certification pursuant to Rule 23(b)(3).").

---

[22] Scotts argues the thousands of complaints from EZ Seed customers stating "Did Not Receive Refund Check," Marchese Decl. Ex. CC, "is not a record of consumers who never received a refund" because the check may have been in the mail when they complained. Opp. Br. at 28. Plaintiffs also submitted records showing many consumers complained [redacted] Marchese Decl. Ex. TT. Scotts offers no response to that point. Scotts also fails to respond to the authorities cited at page 28 of our opening brief explaining that a class action is superior to a private remedy because it is the only procedure that can effectuate the full remedial purposes of California's and New York's consumer protection statutes.

Dated: June 27, 2014

Respectfully submitted,

By: */s/ Scott A. Bursor*
Scott A. Bursor

**BURSOR & FISHER, P.A.**
Scott A. Bursor
Joseph I. Marchese
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: scott@bursor.com
jmarchese@bursor.com

**FARUQI & FARUQI LLP**
Antonio Vozzolo
369 Lexington Ave., 10th Floor
New York, NY 10017-6506
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
Email: avozzolo@faruqilaw.com

*Interim Class Counsel*