UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

IN RE SCOTTS EZ SEED LITIGATION

------------------------------------------------------------x

**MEMORANDUM DECISION**

12 CV 4727 (VB)

Briccetti, J.:

Lead plaintiffs Michael Arcuri, David Browne, Gwen Eskinazi, Stacy Lonardo, Lance Moore, Vance Smith, and Nancy Thomas (collectively, "plaintiffs" or "lead plaintiffs") bring this putative consumer class action against defendants The Scotts Miracle-Gro Company, Inc., and The Scotts Company LLC (collectively, "Scotts" or "defendants"). Plaintiffs allege numerous causes of action for false advertising, breach of warranty, and unjust enrichment under New York and California law.[1]

Now pending is plaintiffs' motion for class certification. (Doc. #72). For the following reasons, the motion is GRANTED in part and DENIED in part. Also pending are defendants' motion to exclude the opinions of plaintiffs' damages expert (Doc. #88), and plaintiffs' motions to strike certain evidence offered by defendants (Docs. ##103, 105). Those motions are DENIED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d).

## BACKGROUND

The parties have submitted briefs, and declarations with supporting exhibits, which reflect the following factual background.

Scotts produces and sells Scotts Turf Builder EZ Seed ("EZ Seed"), which combines

[1] Plaintiffs have settled their claims against previous defendant Home Depot U.S.A., Inc. Lowe's Home Centers, Inc. ("Lowe's") remains a defendant, but plaintiffs do not currently seek any relief against Lowe's.

"premium grass seed with an innovative mulch and slow release fertilizer as an all-in-one product." (Faust Decl. ¶ 5). According to Scotts, "[i]n addition to protecting the [grass] seeds and helping to keep moisture in the underlying soil, the mulch in EZ Seed acts as an absorbent growing medium to promote seed germination and seedling establishment." (Id. ¶ 7). EZ Seed comes in six varieties, called "flavors": EZ Seed Sun & Shade, EZ Seed Tall Fescue, EZ Seed Bermudagrass, EZ Seed Dog Spot Repair for Sun & Shade, EZ Seed Dog Spot Repair for Tall Fescue, and EZ Seed Ultimate Winter Lawn Mix. (Sass Decl. ¶ 5). All six flavors are distributed to retailers in California, and all but EZ Seed Bermudagrass and EZ Seed Ultimate Winter Lawn Mix are distributed to retailers in New York. From EZ Seed's launch in January 2009 through the end of 2013, 1,524,812 packages of EZ Seed were sold in California, and 992,338 packages were sold in New York.

According to a previous version of the packaging on all six flavors, EZ Seed grows grass "50% thicker with half the water" compared to "ordinary seed" (the "50% thicker claim").[2] (Marchese Decl. Ex. J). To back up its claims regarding EZ Seed's effectiveness, Scotts offers purchasers of EZ Seed a "No Quibble Guarantee," which provides:

> If for any reason you, the consumer, are not satisfied after using this product, you are entitled to get your money back. Simply send us the original evidence of purchase and we will mail you a refund check promptly.

[2] On the front of the bag, the words "50% thicker with half the water" appeared in large font in the middle of the bag, while the words "versus ordinary seed when watered at half the recommended rates" appeared in small font at the bottom of the bag. (Marchese Decl. Ex. J). The back of the bag includes a graphic purporting to illustrate EZ Seed's superior performance compared to ordinary seed. The graphic includes two pictures: one of a patch of grass grown using EZ Seed, and one of a patch of grass grown using ordinary seed. The pictures reflect that EZ Seed clearly outperforms ordinary seed. Above the pictures are the words, "50% THICKER WITH HALF THE WATER††." Below the pictures are the words: "††Results 32 days after planting; each watered at half the recommended rate for ordinary seed. Results may vary. *Subject to proper care." (Id.)

(Regan Decl. Ex. 12). Additionally, Scotts has discretion to award a "goodwill" refund to individuals who cannot or choose not to comply with the terms of the No Quibble Guarantee. (Taubler Decl. ¶ 12).

The crux of plaintiffs' complaints is that EZ Seed does not grow grass at all or, in the alternative, does not grow grass as advertised by the 50% thicker claim. Plaintiffs now seek the certification of two classes, defined as follows:

> (i) All persons who purchased EZ Seed in the state of California containing the label statement "50% Thicker With Half the Water," excluding persons who purchased for purpose of resale (the "California Class").
>
> (ii) All persons who purchased EZ Seed in the state of New York containing the label statement "50% Thicker With Half the Water," excluding persons who purchased for purpose of resale (the "New York Class").

Plaintiffs Browne and Smith purchased EZ Seed in California and seek to represent the California Class. The California Class brings claims under California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA"), in addition to claims for breach of warranty and unjust enrichment. Plaintiffs Arcuri, Eskinazi, Lonardo, Moore, and Thomas purchased EZ Seed in New York and seek to represent the New York Class. The New York Class brings claims under New York's General Business Law ("GBL"), in addition to claims for breach of warranty and breach of contract.

## DISCUSSION

### I. Legal Standard

To qualify for certification, plaintiffs must demonstrate by a preponderance of the evidence that the putative classes meet the four requirements set forth in Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are

> typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); see Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2548 (2011). Plaintiffs must also demonstrate the proposed classes "satisfy at least one of the requirements listed in Rule 23(b)." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. at 2548.

The Supreme Court has recently cautioned that "Rule 23 does not set forth a mere pleading standard." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. at 2551. Instead, "[t]he party seeking 'class certification must affirmatively demonstrate . . . compliance with the Rule,' and a district court may only certify a class if it 'is satisfied, after a rigorous analysis,' that the requirements of Rule 23 are met." In re Am. Int'l Grp., Inc. Sec. Litig., 689 F.3d 229, 237-38 (2d Cir. 2012) (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. at 2551). "Such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim . . . because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013) (internal quotation marks and citations omitted).

II. Rule 23(a) Factors

A. Numerosity

Rule 23(a)(1) requires a finding that "the class is so numerous that joinder of all members is impracticable." Courts in the Second Circuit have found this requirement met by a class consisting of forty or more members. See Consol. Rail Corp. v. Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).

Defendants do not contest the numerosity requirement. From EZ Seed's launch in January 2009 until the end of 2013, 1,524,812 packages of EZ Seed were sold in California, and

992,338 packages were sold in New York. These numbers suggest far more than 40 individuals comprise each class; therefore, the numerosity requirement is met.

B. Commonality

Rule 23(a)(2) requires a showing of "questions of law or fact common to the class." "Commonality is satisfied where a single issue of law or fact is common to the class." In re IndyMac Mort.-Backed Sec. Litig., 286 F.R.D. 226, 233 (S.D.N.Y. 2012) (citing Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. at 2256 ("[E]ven a single common question will do.") (internal quotation marks and brackets omitted)). However, class certification requires not only "common questions," but "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. at 2551.

To decide whether commonality is satisfied, the Court must identify the theories of liability upon which plaintiff proceeds. Although it is not entirely clear from plaintiffs' briefing, the Court determines they propose two theories of liability. The first theory is that EZ Seed does not grow grass at all and thus is worthless. (Pls.' Reply at 1; see also id. at 11 ("[G]rass seed that does not grow is worthless.")). The second theory is that "EZ Seed was mislabeled because the statement that it grows '50% Thicker With Half the Water' is both false and misleading." (Id. at 4).[3]

A common question with respect to the first theory of liability is whether EZ Seed grows grass. If plaintiffs can prove EZ Seed "does not grow at all" and thus is worthless, plaintiffs will be entitled to relief. See Allen v. Hyland's Inc., 300 F.R.D. 643, 660 (C.D. Cal. 2014) (finding

[3] Plaintiffs appear to advance a third theory of liability—that EZ Seed does not grow grass at half-water levels if used according to the directions on the package. Defendants correctly contend this theory of liability is replete with individualized questions, including whether the consumer watered at half-water rates or followed the instructions exactly. In addition, plaintiffs do not propose a damages model linked to this theory of liability. Therefore, class certification is inappropriate as to this theory.

commonality satisfied where plaintiff argues defendants' product is worthless because if defendants' "products . . . uniformly do not perform as advertised, then the putative class will be entitled to relief under Plaintiffs' warranty and false advertising claims").

A common question with respect to the second theory of liability is whether the 50% thicker claim is false and/or misleading. The answer to this question is common to all class members, and is apt to drive the resolution of this litigation. See, e.g., Ebin v. Kangadis Food Inc., 297 F.R.D. 561, 565 (S.D.N.Y. 2014) (holding a common question in a consumer class action brought under the GBL is whether a product's manufacturer "defrauded purchasers" by making a specific claim on the product's label); Brazil v. Dole Packaged Foods, LLC, 2014 WL 2466559, at *7 (N.D. Cal. May 30, 2014), class decertified in part, 2014 WL 5794873 (N.D. Cal. Nov. 6, 2014) (holding California UCL, FAL, and CLRA claims depend on the common question of "whether the labels at issue are unlawful, unfair, deceptive, or misleading to reasonable consumers").

C. Typicality

Rule 23(a)(3) requires "the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Robinson v. Metro-North Commuter R.R., 267 F.3d 147, 155 (2d Cir. 2001), abrogated on other grounds by Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. at 2551, as recognized in Amara v. Cigna Corp., 2014 WL 7272283 (2d Cir. Dec. 23, 2014). "Minor variations in the fact patterns underlying the individual claims do not preclude a finding of typicality." Id. (internal quotation mark and brackets omitted). Instead, Rule 23(a)(3) requires "only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other

members of the proposed class." Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co., 301 F.R.D. 116, 132 (S.D.N.Y. 2014).

Here, the lead plaintiffs' and absent class members' claims arise from the same course of events, and each class member will make similar legal arguments to prove defendants' liability. Plaintiffs contend EZ Seed was worthless, or, in the alternative, the 50% thicker claim was false and misleading. Each container of EZ Seed contained the same product (with basic "flavor" variations), and each container of EZ Seed bore the 50% thicker claim. Thus, all plaintiffs will marshall the same evidence and arguments in support of their claims.

Defendants argue certain lead plaintiffs are subject to unique defenses that undermine those plaintiffs' typicality. First, defendants contend Thomas is subject to a voluntary payment doctrine defense because she purchased EZ Seed twice. Second, defendants contend Eskinazi is subject to an accord and satisfaction defense because she accepted a refund from Scotts. As an initial matter, the Court is not convinced either defense properly applies.[4] Moreover, it is not entirely clear either defense will be atypical. It is likely many class members purchased EZ Seed twice, and it is almost certain many class members received a partial or full refund under the No

[4] "The voluntary payment doctrine bars recovery of payments voluntarily made with full knowledge of the facts." Dupler v. Costco Wholesale Corp., 249 F.R.D 29, 38 (E.D.N.Y. 2008) (internal quotation marks omitted). Defendants appear to contend that because Thomas bought EZ Seed twice, she must have known the product was defective when she made her second purchase. The Court disagrees Thomas necessarily had "full knowledge of the facts"—i.e., full knowledge EZ Seed was worthless or the 50% thicker claim was false—when making her second purchase.

"Accord and satisfaction is the payment of money (or some other thing of value), usually less than the amount owed or demanded, in exchange for the extinguishment of the debt." New Dance Grp. Studio, Inc. v. St. Paul Fire & Marine Ins. Co., 1995 WL 434314, at *3 (S.D.N.Y. July 24, 1995). "Under New York law, the defendant has the burden of presenting the accord and satisfaction defense." Id. A defendant must clearly manifest his intent that the payment "represents a full satisfaction of the claim." Id. Here, defendants submit no evidence they told Eskinazi her refund represented a full satisfaction of her claim.

Quibble Guarantee. Finally, neither defense "threaten[s] to become the focus of the litigation such that [Thomas or Eskinazi] could not act in the best interest of the absent class members." In re Cablevision Consumer Litig., 2014 WL 1330546, at *9 (E.D.N.Y. Mar. 31, 2014) (internal quotation marks omitted). These potential defenses thus do not disqualify Thomas or Eskinazi from serving as lead plaintiff.

D. Adequacy

Under Rule 23(a)(4), the Court must examine whether named plaintiffs' interests "are antagonistic" to those of the other members of the class. Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000); see also Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625-26 (1997) ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." (internal quotation marks and citations omitted)). Class representatives must have a sufficient interest in the outcome of the case to ensure vigorous advocacy. See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., 229 F.R.D. 395, 413 (S.D.N.Y. 2004). Plaintiffs must also have attorneys who are "qualified, experienced, and generally able to conduct the litigation." In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992) (internal quotation marks omitted).

Lead plaintiffs have each demonstrated their commitment to pursuing these claims by responding to extensive written discovery requests and sitting for lengthy depositions. Further, each lead plaintiff testified he or she understands the requirements of serving as lead plaintiff, and wishes to move forward. Finally, nothing in the record suggests lead plaintiffs' interests are

antagonistic to those of other class members.[5]

Moreover, plaintiffs' counsel are experienced and qualified class action lawyers. Bursor & Fisher, P.A., "has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008." Ebin v. Kangadis Food Inc., 297 F.R.D. at 566. Faruqi & Faruqi, LLP, is a well-established law firm with substantial experience in consumer class action litigation. Additionally, Bursor & Fisher and Faruqi & Faruqi have successfully worked together in the past.

E. Ascertainability

The Second Circuit has recognized a fifth pre-condition to class certification: "[t]he implied requirement of ascertainability." In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 30 (2d Cir. 2006). "To be ascertainable, the class must be readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling." Charron v. Pinnacle Grp. N.Y. LLC, 269 F.R.D. 221, 229 (S.D.N.Y. 2010) (internal quotation marks omitted). "The standard for ascertainability is not demanding and is designed only to prevent the certification of a class whose membership is truly indeterminable." Ebin v. Kangadis Food Inc., 297 F.R.D. at 567.

District judges in this District have expressed conflicting views on whether putative classes are ascertainable when consumers are unlikely to retain receipts or other records of purchase. Compare Ebin v. Kandagis Food Inc., 297 F.R.D. at 567 (finding a class of olive oil

5 Lead plaintiffs are not inadequate representatives simply because they have chosen to litigate their claims rather than avail themselves of Scotts' No Quibble Guarantee refund program. There are reasons a rational purchaser might choose litigation over a refund, including the availability of statutory and/or punitive damages, or the desire to send a message to a company the consumer believes is behaving unlawfully. The Court declines to hold all seven lead plaintiffs inadequate simply because they decided to remedy the alleged wrong inflicted upon them through the judicial system, rather than through a refund program.

purchasers is ascertainable although plaintiffs are unlikely to have retained receipts), with Weiner v. Snapple Beverage Corp., 2010 WL 3119452, at *12-13 (S.D.N.Y. Aug. 5, 2010) (declining to certify a class of Snapple purchasers because plaintiffs "offer no basis to find that putative class members will have retained a receipt, bottle label, or any other concrete documentation of their purchases").

The Court agrees with Judge Rakoff's reasoning in Ebin. Declining to certify classes when consumers are likely to lack proof of purchase "would render class actions against producers almost impossible to bring." Ebin v. Kandagis Food Inc., 297 F.R.D. at 567. "Yet the class action device, at its very core, is designed for cases like this where a large number of consumers have [allegedly] been defrauded but no one consumer has suffered an injury sufficiently large as to justify bringing an individual lawsuit." Id.; see also Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 617 (1997) (holding that facilitating small claims is "[t]he policy at the very core of the class action mechanism"). If proof of purchase was required to satisfy the ascertainability requirement, "there would be no such thing as a consumer class action," especially with respect to low-cost products. Ries v. Ariz. Beverages USA LLC, 287 F.R.D. 523, 535 (N.D. Cal. 2012).

Here, plaintiffs propose classes consisting of New York and California purchasers of EZ Seed packages containing the 50% thicker claim. This is sufficiently specific to satisfy the ascertainability requirement. See, e.g., Forcellati v. Hyland's, Inc., 2014 WL 1410264, at *5 (C.D. Cal. Apr. 9, 2014) (certifying a proposed class of individuals who purchased homeopathic products although "purchasers likely have not retained proof of purchase"); McCrary v. Elations Co., 2014 WL 1779243, at *7-8 (C.D. Cal. Jan. 13, 2014) (finding a proposed class of individuals who purchased an over-the-counter supplement bearing the claim "clinically-proven"

was ascertainable despite the likelihood of lack of proof of purchase).[6]

In sum, plaintiffs have satisfied all four requirements of Rule 23(a), and the additional implied requirement of ascertainability.

III. Rule 23(b)(2)

If Rule 23(a) is satisfied, Rule 23(b)(2) provides for certification when "final injunctive relief . . . is appropriate respecting the class as a whole." Plaintiffs contend certification of a Rule 23(b)(2) class is appropriate because "both the New York and California plaintiffs adamantly testified that one of their primary goals is to prevent Defendant from continuing to make the false and misleading claims at issue." (Pls.' Mem. at 35). However, it appears the 50% thicker claim has already been removed from EZ Seed's packaging (see Defs.' Opp'n at 10 n.17), and it is not clear what additional injunctive relief plaintiffs seek. Thus, certification of a 23(b)(2) class does not appear necessary. See Spagnola v. Chubb Corp., 264 F.R.D. 76, 98 (S.D.N.Y. 2010) (declining to certify a 23(b)(2) class when the challenged "language ha[d] already been eliminated").

IV. Rule 23(b)(3) Factors

If Rule 23(a) is satisfied, a class may be certified under Rule 23(b)(3) if the Court finds "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

---

[6] Additionally, the Second Circuit has instructed that "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule." In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 140 (2d Cir. 2001) (internal quotation marks omitted), overruled on other grounds by In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24 (2d Cir. 2006). Because the Court finds plaintiffs have satisfied all other Rule 23(a) requirements, and the Rule 23(b)(3) requirements (see Section IV, infra), the Court will not reject the proposed classes solely due to ascertainability concerns.

A. Predominance

Rule 23(b)(3) requires only "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." Amgen Inc. v. Conn. Ret. Plans and Trust Funds, 133 S. Ct. 1184, 1191 (2013) (emphasis in original). However, a district court has a "duty to take a close look at whether common questions predominate over individual ones." Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013) (internal quotation marks omitted). "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002).

1. Classwide Evidence

Defendants contend plaintiffs' claims fail the predominance requirement because (i) "there is no common evidence to support any of Plaintiffs' defect theories;" (ii) "the question why anyone failed to grow grass is highly individualized;" and (iii) "[p]laintiff cannot prove a common injury that can be proven by classwide evidence." (Defs.' Opp'n at 13-14). These arguments generally represent a misunderstanding of plaintiffs' two theories of liability in this case—neither of these theories depend on whether an individual was able to grow grass using EZ Seed.

Under plaintiffs' first theory of liability, nobody was able to grow grass using EZ Seed. Plaintiffs will succeed or fail on this theory based on whether they are able to prove EZ Seed is worthless. Defendants' argument that "the products worked for some individual class members goes to the proof of the merits" of plaintiffs' claims. Forcellati v. Hyland's, Inc., 2014 WL

1410264, at *12. Any argument that challenges the merits of plaintiffs' allegations "about the uniform inefficacy of [EZ Seed] has no bearing on the Rule 23 predominance inquiry." Id.; see also Delarosa v. Boiron, Inc., 275 F.R.D. 582, 594 (C.D. Cal. 2011) ("Defendant's arguments that it can present proof that Coldcalm worked for some individual class members goes to the proof of the merits of Plaintiff's claim, not to the common question as to the overall efficacy of the product.").

Under plaintiffs' second theory of liability, they paid an inappropriate premium for EZ Seed based on Scotts' allegedly false 50% thicker claim. Generalized proof will determine whether the 50% thicker claim was false or misleading under both New York and California law. See, e.g., Guido v. L'Oreal, USA, Inc., 284 F.R.D. 468, 482-83 (C.D. Cal. 2012) ((holding, under New York law, "the issue of whether plaintiffs and class members would have purchased [the product] had they known" an allegedly deceptive advertising claim was false "can be established with common proof"); Brazil v. Dole Packaged Foods, LLC, 2014 WL 2466559, at *14 (holding common issues predominate under California law where plaintiffs allege they paid a price premium based on false advertising).

Thus, plaintiffs' theories of liability appear well-suited for class certification. However, plaintiffs bring several different claims for relief, each of which requires slightly different proof. Although Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof," Amgen Inc. v. Conn. Ret. Plans and Trust Funds, 133 S. Ct. at 1196, the predominance requirement is "far more demanding" than Rule 23(a)'s commonality requirement. Amchem Prods., Inc. v. Windsor, 521 U.S. at 624. Because of this high standard, plaintiffs' claims for relief will be analyzed in turn to ensure classwide evidence predominates for each. See, e.g., Guido v. L'Oreal, USA, Inc., 284 F.R.D. at

481.

a. New York GBL Sections 349 and 350

To establish a prima facie case under GBL Section 349, "a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000). Materiality under Section 349 of the GBL is an objective inquiry; a deceptive act is defined as one "likely to mislead a reasonable consumer acting reasonably under the circumstances." Id. The same analysis applies to false advertising claims brought under Section 350. Id.; see also Goshen v. Mut. Life Ins. Co. of N.Y., 98 N.Y.2d 314, 324 n.1 (2002). Additionally, neither Section 349 nor 350 require proof of reliance, see Koch v. Acker, Merrall & Condit Co., 18 N.Y.3d 940, 941 (2012), nor proof that defendants intended to mislead consumers. See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 26 (1995).

Plaintiffs' GBL claims thus depend on generalized evidence. Classwide evidence will be used to establish whether Scotts's labeling of EZ Seed was false, and if so, whether it was likely to mislead a reasonable consumer acting reasonably under the circumstances. Indeed, the Supreme Court has held materiality "is a question common to all members of the class" when, as here, the materiality of an alleged misrepresentation is judged according to an objective standard. Amgen Inc. v. Conn. Ret. Plans and Trust Funds, 133 S. Ct. at 1191 ("The alleged misrepresentations and omissions, whether material or immaterial, would be so equally for all investors composing the class.").

Likewise, classwide evidence will determine whether plaintiffs were injured. Plaintiffs allege they suffered economic harm when they paid for a worthless product, or when they paid a

premium for EZ Seed based on the false 50% thicker claim. See, e.g., Ebin v. Kangadis Food Inc., 297 F.R.D. at 569 (finding a common injury susceptible of classwide proof when plaintiffs received "an inferior product different from that which the consumers purchased"); Guido v. L'Oreal, USA, Inc., 284 F.R.D. at 483 (finding common issues predominate as to injury on plaintiffs' GBL claims because "the issue of whether plaintiffs and class members would have purchased [the product] had they known" advertising was false "can be established with common proof").[7]

b. California UCL, FAL, and CLRA

Claims brought under the UCL, FAL, and CLRA "are governed by the 'reasonable consumer' test." Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008). "Under the reasonable consumer standard, [plaintiffs] must show that members of the public are likely to be deceived." Id. (internal quotation marks omitted). As discussed above, materiality "is a question common to all members of the class" when, as here, the materiality of an alleged misrepresentation is judged according to an objective standard. Amgen Inc. v. Conn. Ret. Plans and Trust Funds, 133 S. Ct. at 1191.

Relief under the UCL and FAL is available without individualized proof of "reliance and injury, so long as the named plaintiffs demonstrate injury and causation." See Guido v. L'Oreal, USA, Inc., 284 F.R.D. at 482. "A presumption, or at least an inference, of reliance arises under

[7] As discussed below (see Section IV.A.2, infra), plaintiffs have proposed suitable damages methodologies for establishing injury on a classwide basis—at least at this early stage of the litigation. Thus, cases in which courts decline to find common questions predominate as to injury because plaintiffs have not proposed suitable damages methodologies are inapposite. See, e.g., Ackerman v. Coca-Cola Co., 2013 WL 7044866, at *20 (holding "[p]roof that each class member paid a premium for vitaminwater over another beverage would not be susceptible to generalized proof" because plaintiffs did not propose a suitable methodology for establishing classwide damages); Weiner v. Snapple Beverage Corp., 2010 WL 3119452, at *6 (holding "plaintiffs have not proposed a suitable [damages] methodology for establishing the critical elements of causation and injury on a class-wide basis").

the UCL and FAL whenever there is a showing that a misrepresentation was material." McCrary v. Elations Co., 2014 WL 1779243, at *14 (internal brackets omitted). Likewise, "[t]he causation required by the CLRA does not make plaintiffs' claims unsuitable for class treatment because causation as to each class member is commonly proved more likely than not by materiality." Guido v. L'Oreal, USA, Inc., 284 F.R.D. at 482 (internal quotation marks and brackets omitted). The objective test for materiality and thus reliance "renders claims under the UCL, FAL, and CLRA ideal for class certification because they will not require the court to investigate class members' individual interaction with the product." Tait v. BSH Home Appliances Corp., 289 F.R.D. 466, 480 (C.D. Cal. 2012) (internal quotation marks).

Thus, plaintiffs' UCL, FAL, and CLRA claims are suitable for class certification.

c. New York Warranty Claims

Plaintiffs bring claims, under New York law, for breach of express warranty under the UCC, and common law breach of warranty.

To state a claim for breach of express warranty, "a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." Goldemberg v. Johnson & Johnson Consumer Cos., 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014).

To state a claim for common law breach of warranty, a plaintiff must show "(1) plaintiff and defendant entered into a contract; (2) containing an express warranty by the defendant with respect to a material fact; (3) which warranty was part of the basis of the bargain; and (4) the express warranty was breached by defendant." Promuto v. Waste Mgmt., Inc., 44 F. Supp. 2d 628, 642 (S.D.N.Y. 1999). Thus, unlike the New York and California statutory claims (Section

IV.A.1.a-b, supra), New York warranty claims require proof of reliance.

New York uses a "basis of the bargain conception of reliance for express [and common law] warranty claims." Weiner v. Snapple Beverage Corp., 2010 WL 3119452, at *11. "In contrast to the reliance required to make out a claim for fraud, the general rule is that a buyer may enforce an express warranty even if it had reason to know that the warranted facts were untrue." Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 186 (2d Cir. 2007); see also CBS Inc. v. Ziff–Davis Publ'g Co., 75 N.Y.2d 496, 503-04 (1990). However, when "a buyer closes on a contract in the full knowledge and acceptance of facts disclosed by the seller which would constitute a breach of warranty under the terms of the contract, the buyer should be foreclosed from later asserting the breach." Galli v. Metz, 973 F.2d 145, 151 (2d Cir. 1992); see also Promuto v. Waste Mgmt., Inc., 44 F. Supp. 2d at 643-46 (exploring the boundaries of New York's "basis of the bargain" conception of reliance).

When, as here, the "basis of the bargain" conception of reliance applies, individual questions predominate because each buyer's knowledge of the truth or falsity of Scotts' advertising claims require evaluation. Class certification is therefore inappropriate for these claims. See, e.g., Weiner v. Snapple Beverage Corp., 2010 WL 3119452, at *11 (declining to certify a class claiming a violation of New York express warranty law because plaintiffs' "reliance on Snapple's 'All-Natural' label cannot be the subject of generalized proof"); Klein v. Robert's Am. Gourmet Food, Inc., 28 A.D.3d 63, 72 (2d Dep't 2006) (reversing lower court's decision that common questions predominated with respect to reliance in a New York express warranty claim).

d. New York Breach of Contract Claim

In New York, a claim for breach of contract requires proof of: "(1) a valid contract;

(2) plaintiff's performance; (3) defendant's failure to perform; and (4) damages resulting from the breach." Macaluso v. U.S. Life. Ins. Co., 2004 WL 1497606, at *3 (S.D.N.Y. July 2, 2004) (citing Furia v. Furia, 116 A.D.2d 694, 695 (2d Dep't 1986)). "[C]laims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such." Steinberg v. Nationwide Mut. Ins. Co., 224 F.R.D. 67, 74 (E.D.N.Y. 2004). Although plaintiffs do not allege defendants breached a "form contract," the representations defendants made to each plaintiff were uniform.

Plaintiffs' claims for breach of contract will depend on whether valid contracts were formed, and whether defendants breached those contracts. These questions predominate over any individual questions, and class certification is therefore appropriate. See, e.g., Seekamp v. It's Huge, Inc., 2012 WL 860364, at *11 (N.D.N.Y. Mar. 13, 2012) (certifying a breach of contract class based on alleged deceptive practices); Taylor v. Am. Bankers Ins. Grp., Inc., 267 A.D.2d 178, 178 (1st Dep't 1999) (affirming certification of a breach of contract claim when "the predominant focus of this litigation is defendants' general practice of offering, in prominent print, ostensibly easily available credit insurance coverage . . . and then rejecting insurance claims").

e. California Express Warranty Claim

To prevail on a breach of express warranty claim under California law, plaintiffs must prove "(1) the seller's statements constitute an affirmation of fact or promise . . .; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." Weinstat v. Dentsply Int'l, Inc., 103 Cal. Rptr. 614, 626 (Cal. Ct. App. 2010) (internal quotation marks omitted). However, plaintiffs "need not establish reliance as an element of [an] express warranty claim, and thus, need not establish reliance on a classwide basis." Karim v. Hewlett-Packard

Co., 2014 WL 555934, at *6 (N.D. Cal. Feb. 10, 2014); see also Weinstat v. Dentsply Int'l, Inc., 103 Cal. Rptr. at 626 (holding "the concept of reliance has been purposefully abandoned" for express warranty claims under the UCC).

Because reliance is not an element of express warranty claims under California law, common questions predominate and class action treatment is appropriate. See, e.g., Brown v. Hain Celestial Grp., 2014 WL 6483216, at *17-18 (N.D. Cal. Nov. 18, 2014) (certifying class claiming violation of California's express warranty law when products were allegedly falsely labeled organic); Wiener v. Dannon Co., 255 F.R.D. 658, 669 (C.D. Cal. 2009) (holding class action is appropriate for California express warranty claims where "material misrepresentations were made to all class members").

f. California Unjust Enrichment Claim

To prevail on a claim for unjust enrichment under California law, plaintiffs must demonstrate defendants' "(1) receipt of a benefit; and (2) unjust retention of the benefit at the expense of another." Cartwright v. Viking Indus., Inc., 2009 WL 2982887, at *13 (E.D. Cal. Sept. 14, 2009). Class certification of unjust enrichment claims is appropriate when, as here, "the crux of plaintiffs' claims is that defendant[s] unjustly retained the benefits of its sale of . . . products to consumers after [they] failed to disclose material facts about the defective nature of those products." Id.

2. Classwide Damages

Defendants further argue "damages are not measurable on a classwide basis" (Defs.' Opp'n at 14), and move to exclude the opinions of plaintiffs' damages expert, Colin B. Weir. To satisfy the predominance requirement, plaintiffs must propose a damages model consistent with their theory (or theories) of liability. Comcast Corp. v. Behrend, 133 S. Ct. at 1432. Plaintiffs'

damages model must measure only damages attributable to plaintiffs' theory of liability; "[i]f the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of 23(b)(3)." Comcast Corp. v. Behrend, 133 S. Ct. at 1433. [8]

Damages are measured by the difference "between what the plaintiff paid and the value of what the plaintiff received." In re POM Wonderful LLC, 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014). Plaintiffs must therefore propose damages models that take into account the value of the product plaintiffs received, and the amount they paid for EZ Seed.

Dr. Weir presents three damages models: (i) full compensatory damages; (ii) disgorgement of money damages; and (iii) price premium damages. (Weir Decl., Doc. #80). Defendants argue these "opinions are not causally connected to Plaintiffs' theories of liability and harm," and, further, Dr. Weir "performed no methodology—relying instead on speculation—to establish whether EZ Seed commands a price premium attributable to its 50% Thicker claim." (Defs.' Mot. to Strike, Doc. #88, at 1). The Court will consider each of Dr. Weir's proposed damages models in turn.

a. Full Compensatory Damages

Dr. Weir first proposes a full compensatory damages model, under which "consumers would receive a full refund for their purchases of EZ Seed." (Weir Decl., Doc. #80). This model rests on the assumption that plaintiffs received no benefit whatsoever from purchasing EZ Seed. See, e.g., Brazil v. Dole Packaged Foods, LLC, 2014 WL 2466559, at *15 (noting a full refund

[8] Defendants move to strike Dr. Weir under Federal Rule of Evidence 702 and Daubert v. Merrell-Dow Pharm., 509 U.S. 579 (1993). The Second Circuit has not yet decided whether Daubert motions are appropriate at the class certification stage; however, Comcast requires the Court ensure that plaintiffs' proposed damages methodologies match plaintiffs' theories of liability. Defendants' motion to exclude Dr. Weir is DENIED; instead, the Court will consider whether each of Dr. Weir's proposed methodologies satisfy Comcast.

model is based on the assumption that consumers received no benefit from the product).

This model matches plaintiffs' first theory of liability—that EZ Seed does not grow grass, and is thus valueless. If plaintiffs prove EZ Seed suffered from a defect that rendered the product completely ineffective, plaintiffs would be entitled to all of their money back. The full compensatory damages model satisfies Comcast because it measures damages properly if EZ Seed is valueless. See, e.g., Allen v. Hyland's Inc., 300 F.R.D. 643, 671 (C.D. Cal. 2014) (holding full restitution theory satisfies Comcast when plaintiffs' theory of liability "is that the products are entirely ineffective"); Ortega v. Natural Balance, Inc., 300 F.R.D. 422, 430 (C.D. Cal. 2014) (same).[9]

Defendants contend the full compensatory damages model cannot measure classwide damages because it fails to account for purchasers who have already received a refund. (Defs.' Opp'n at 22 n.36). However, "[t]he fact that some prospective . . . class members may have received credits or refunds does not preclude certification pursuant to Rule 23(b)(3)." Rodriguez v. It's Just Lunch, Intern., 300 F.R.D. 125, 147 (S.D.N.Y. 2014); see also Seijas v. Republic of Argentina, 606 F.3d 53, 58 (2d Cir. 2010) (noting "that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification").

b. Disgorgement of Money Damages

Dr. Weir's disgorgement model awards plaintiffs the profits "obtained by Scotts from the

[9] Of course, whether plaintiffs are entitled to any damages under this theory depends on their ability to prove EZ Seed does not grow grass at all. If plaintiffs cannot prove EZ Seed was defective for every single customer, plaintiffs cannot recover the full purchase price of EZ Seed. Plaintiffs appear to contend they would be entitled to damages under this theory even if grass grew for some customers. (Pls.' Reply at 11 n.20). This is incorrect as a matter of law and common sense. The cases plaintiffs cite hold that customers experiencing a placebo effect after taking allegedly defective medicine are still entitled to a full refund of the product. See Forcellati v. Hyland's Inc., 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014). Grass cannot grow due to a placebo effect, and thus if EZ Seed worked for some consumers, plaintiffs cannot show the product was worthless.

sale of EZ Seed." (Weir Decl., Doc. #80). Although restitution "may be measured in terms of [defendants'] ill-gotten gains," see Brazil v. Dole Packaged Foods, LLC, 2014 WL 5794873, at *10 (C.D. Cal. Nov. 6, 2014), this model does not match either of plaintiffs' theories of liability. Under their first theory, EZ seed is worthless, and plaintiffs would be entitled to all of their money back. Under their second theory, plaintiffs paid a premium for EZ Seed based on false advertising, and would be entitled to recoup that premium. Because the disgorgement model does not comport with Comcast's requirement that class-wide damages match plaintiffs' legal theories, it is rejected.

c. Price Premium Damages

Dr. Weir's final damages model refunds plaintiffs the price premium EZ Seed commanded due to the 50% thicker claim. Under this approach, Dr. Weir will calculate the "price premium that is attributable only to the 50% thicker with half the water representation." (Regan Decl., Ex. 22). Dr. Weir testified he will isolate the premium associated with the 50% thicker claim using one of three statistical methods: hedonic regression, a contingent valuation study, or a conjoint analysis.

Courts routinely reject price premium methodologies under Comcast when the proposed methodologies do not attempt to isolate the premium due only to the allegedly misleading marketing statement. See, e.g., Brazil v. Dole Packaged Foods, LLC, 2014 WL 2466559, at *16; Werdebaugh v. Blue Diamond Growers, 2014 WL 2191901, at *23 (N.D. Cal. May 23, 2014), class decertified, 2014 WL 7148923 (N.D. Cal. Dec. 15, 2014). These courts correctly point out consumers may pay a higher price for a product for many reasons that have nothing to do with specific advertising claims, including brand loyalty and product quality.

Thus, for plaintiffs' price premium model adequately to match their second theory of

liability—that they were damaged when they paid a premium associated with the 50% thicker claim—Dr. Weir must control for product features other than the 50% thicker claim when calculating the price premium.

Although in his declaration Dr. Weir does not explain that he will isolate the premium associated with the 50% thicker claim, he made clear at his deposition he intends to do so.[10] At deposition, he identified statistical methodologies by which he will be able to isolate the price premium associated with the 50% thicker claim, and described each methodology in detail. This is enough to satisfy Comcast. Compare Brown v. Hain Celestial Grp., 2014 WL 6483216, at *19 (finding proposed model satisfies Comcast because "[plaintiffs' expert] does address the problem of controlling for product aspects other than the [specific advertising claim at issue]. In fact, he proposes three different statistical methods to control for the effects of other product traits."), with Brazil v. Dole Packaged Foods, LLC, 2014 WL 2466559, at *16 (finding proposed price premium model runs afoul of Comcast because plaintiffs' expert "assumed that 100% of the price difference [is] attributable to [defendant's] alleged misrepresentations").[11]

---

[10] Dr. Weir testified: "I have seen enough data that has been produced in this case and understand from representations made by Home Depot and from my general experience that sufficient data will be available to calculate the price premium that is attributable specifically to that claim, the 50 percent thicker with half the water, and not to the Scotts brand name and not to the fact that it is a combination product." (Regan Decl., Ex. 22).

[11] In In re ConAgra Foods, Inc., a district court in the Central District of California struck Dr. Weir's declaration at the class certification stage. 302 F.R.D. 537, 551-53 (C.D. Cal. 2014). There, Dr. Weir proposed to use hedonic regression or a conjoint analysis to determine the price premium associated with a "100% Natural" claim. The court found Dr. Weir:

> provides no damages model at all. Although the methodologies he describes may very well be capable of calculating damages in this action, Weir has made no showing that this is the case. He does not identify any variables he intends to build into his models, nor does he identify any data presently in his possession to which the models can be applied. The court is thus left with only Weir's

Defendants further argue the price premium damages model is inappropriate because Dr. Weir has not yet calculated a price premium associated with the 50% thicker claim, and, therefore, cannot prove such a premium exists at all. However, nothing in Comcast requires an expert to perform his analyses at the class certification stage. See, e.g., Brown v. Hain Celestial Grp., 2014 WL 6483216, at *19 ("The point for Rule 23 purposes is to determine whether there is an acceptable class-wide [damages] approach, not to actually calculate under that approach before liability is established."); Werdebaugh v. Blue Diamond Growers, 2014 WL 2191901, at *25 ("Because Comcast did not articulate any requirement that a damage calculation be performed at the class certification stage, that [plaintiffs' expert] has yet to actually run the regressions and provide results is not fatal." (internal quotation marks omitted)).

Moreover, Dr. Weir has provided enough evidence—at this stage—to satisfy the Court that a price premium associated with the 50% thicker claim exists. Dr. Weir cites three main pieces of evidence: (i) the named plaintiffs' testimony that they would not have bought EZ Seed in the absence of the 50% thicker claim; (ii) Scotts's decision to feature the 50% thicker claim prominently on all of its packaging; and (iii) internal documents suggesting the existence of a premium based on the 50% thicker claim. If, after further discovery, Dr. Weir is unable to prove the existence of a price premium, or isolate a price premium associated with the 50% thicker

---

> assurance that he can build a model to calculate damages. Stated differently, his declaration is so incomplete as to be inadmissible as irrelevant.

Id. at 522 (internal quotation marks omitted). Although ConAgra is not binding on this Court, it does raise concerns. However, the Second Circuit has interpreted Comcast to require only that "courts should examine the proposed damages methodology at the certification stage to ensure that it is consistent with the classwide theory of liability and capable of measurement on a classwide basis." In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 123 n.8 (2d Cir. 2013). Thus, the Court declines to hold an expert, at the class certification stage, must describe his proposed methodologies in the level of detail required by ConAgra.

claim, defendants may move to decertify the class. See Brazil v. Dole Packaged Foods, LLC, 2014 WL 5794873, at *5-7, 11-14 (decertifying class because certain data needed to calculate damages under expert's proposed methodology did not exist after merits-based discovery, and expert's substitute methodology failed Comcast because it did not isolate the premium attributable to the claim at issue).

In sum, plaintiffs' full compensatory damages and price premium damages models satisfy Comcast because they match plaintiffs' theories of liability.[12] However, plaintiffs' disgorgement of money damages model does not match either of their theories of liability, and must be rejected.

B. Superiority

Rule 23(b)(3) requires a class action to be "superior to other available methods for fairly and effectively adjudicating the controversy." The Court must consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

All four factors weigh in favor of class certification. When, as here, "proceeding individually would be prohibitive for class members with small claims . . . the class action device

---

[12] Defendants further contend Dr. Weir errs in using wholesale figures to calculate damages under both the full compensatory damages and price premium damages models. Defendants argue Scotts only owes damages on units sold to consumers, and not on units that remained on retailers' shelves. Defendants' point is well-taken; however, "[a] minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion per se inadmissible." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 267 (2d Cir. 2002). Even if the use of wholesale figures is error, it does not render Dr. Weir's opinions inadmissible.

is frequently superior to individual actions." Seijas v. Republic of Argentina, 606 F.3d at 58. Additionally, there has been no other litigation concerning the controversy already commenced by or against members of the class, and there is no reason why the litigation should not be concentrated in this forum. Finally, any concerns about manageability "rely, almost entirely, on a premise [the Court has] already rejected—namely, that innumerable individualized inquiries will swallow common ones." Haddock v. Nationwide Fin. Servs., Inc., 293 F.R.D. 272, 287 (D. Conn. 2013).

Defendants do not dispute that a class action is superior to individual actions; instead, defendants argue Scotts's No Quibble Guarantee refund program is a superior way to resolve plaintiffs' claims. The Court disagrees.

As an initial matter, the Court is not convinced non-adjudicative forms of redress may even be considered under Rule 23(b)(3)'s superiority analysis. Rule 23(b)(3) directs courts to consider to consider other available methods of adjudication. See In re Aqua Dots Prods. Liab. Litig., 654 F.3d 748, 752 (7th Cir. 2011) ("[T]he advisory committee's notes demonstrate that Rule 23(b)(3) was drafted with the legal understanding of 'adjudication' in mind: the subsection poses the question whether a single suit would handle the dispute better than multiple suits."). Further, each of the considerations laid out in Rule 23(b)(3) reference either "litigation" or a court "action." See Fed. R. Civ. P. 23(b)(3)(A)-(D); see also In re Hannaford Bros. Co. Customer Data Sec. Breach Litig., 293 F.R.D. 21, 34-35 (D. Me. 2013) ("Rule 23(b)(3) does not address superiority as a matter of abstract economic choice analysis, but asks if a class action is superior . . . for adjudicating the controversy. . . . Indeed, all four enumerated factors in this portion of the Rule deal with adjudication." (emphasis in original)).

Even if the No Quibble Guarantee refund program is a proper alternative to consider

under Rule 23(b)(3), it is not superior to a class action. First, "the Rule 23(b)(3) superiority analysis must be consistent with the [legislative] intent in enacting a particular statutory damages provision." Bateman v. Am. Multi-Cinema, Inc., 623 F.3d 708, 716 (9th Cir. 2010). GBL Section 349 provides for statutory, treble, and punitive damages. See Cohen v. Narragansett Bay Ins. Co., 2014 WL 4701167, at *3 (E.D.N.Y. Sept. 23, 2014) (collecting cases). Further, GBL Sections 349 and 350 are meant to act as a "strong deterrent against deceptive business practices and supplement the activities of the Attorney General in the prosecution of consumer fraud complaints." McDonald v. N. Shore Yacht Sales, 513 N.Y.S.2d 590, 594 (Sup. Ct. Nassau Cnty. 1987). Finally, the CLRA "appears to authorize punitive damages to punish or deter offenders, and is consistent with the legislature's intent to allow injured parties to use portions of the CLRA to act as private attorneys general." Walter v. Hughes Comm'ns, Inc., 682 F. Supp. 2d 1031, 1041 (N.D. Cal. 2010). The No Quibble Guarantee cannot effectuate the punitive purposes of these statutes.

Second, the No Quibble Guarantee is not publicized "in a manner similar to that which would be used to notify consumers that a class has been certified." In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig., 276 F.R.D. 336, 347 n.12 (W.D. Mo. 2011). Plaintiffs contend that on certain EZ Seed packages, the No Quibble Guarantee is not immediately visible, and is only uncovered when the consumer peels back an adhesive-sealed flap. Defendants respond the guarantee was printed on the outside of 10- and 20-pound bags of EZ Seed, but do not argue it was readily visible on other size packages. If consumers do not realize the No Quibble Guarantee exists, it cannot be a superior alternative to a class action.

Thus, the Court finds the superiority requirement of 23(b)(3) is satisfied.

V. Plaintiffs' Motions to Strike

Plaintiffs move to strike two pieces of evidence offered by Scotts: factual findings of a federal judge in a previous case involving EZ Seed and records of consumer contacts praising EZ Seed. (Docs. ##103, 105).

On a class certification motion, the court "must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." In re Initial Pub. Offerings Sec. Litig., 471 F.3d at 41. In making that determination, the court must "resolve[] factual disputes relevant to each Rule 23 requirement and find[] that whatever underlying facts are relevant to a particular Rule 23 requirement have been established." Id.

Both pieces of proffered evidence are irrelevant to class certification. The evidence relates to whether plaintiffs will be able to prove EZ Seed grass never grows—a merits-based inquiry that does not overlap with any of the Rule 23 requirements. See, e.g., Forcellati v. Hyland's, Inc., 2014 WL 1410264, at *12 ("Defendants' argument that the products worked for some individual class members goes to the proof of the merits of Plaintiffs' claim." (internal quotation marks and brackets omitted)); Delarosa v. Boiron, Inc., 275 F.R.D. 582, 594 (C.D. Cal. 2011) ("Defendant's arguments that it can present proof that Coldcalm worked for some individual class members goes to the proof of the merits of Plaintiff's claim, not to the common question as to the overall efficacy of the product."). Because the Court did not consider this evidence when determining each Rule 23 requirement has been met, plaintiffs' motions to strike are DENIED as moot.

## CONCLUSION

Plaintiffs' motion for class certification is DENIED with respect to the 23(b)(2) class, and the claims for express and common law breach of warranty under New York law. Plaintiffs may

not use the full disgorgement damages model. Plaintiffs' motion is otherwise GRANTED.

Defendants' motion to exclude the opinions of plaintiffs' damages expert is DENIED.

Plaintiffs' motions to strike certain evidence offered by defendants are DENIED.

The Clerk is instructed to terminate the motions. (Docs. ##72, 88, 103, 105).

All counsel are directed to appear for a status conference on March 2, 2015, at 9:15 a.m. By February 23, 2015, the parties are directed to submit a joint letter addressing all case management issues going forward, including inter alia a proposed schedule for discovery on the merits of plaintiffs' claims.

Dated: January 26, 2015
White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge