UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                     :

In re Scotts EZ Seed Litigation         :            12-CV-4727 (VB)
                                       :
                                       :
                                       :
                                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## <u>MOTION TO DECERTIFY THE CLASS</u>

HUNTON & WILLIAMS LLP
Shawn Patrick Regan
Joshua S. Paster
200 Park Avenue
New York, NY 10166

- and -

Samuel Danon (*pro hac vice*)
Jason B. Sherry
1111 Brickell Avenue, Suite 2500
Miami, FL 33131

Joshua M. Kalb (*pro hac vice*)
600 Peachtree Street NE, Suite 4100
Atlanta, Georgia 30307

Neil K. Gilman (*pro hac vice*)
2200 Pennsylvania Avenue, NW
Washington, DC 20037

*Counsel for Defendants The Scotts
Miracle-Gro Company and The
Scotts Company LLC*

## TABLE OF CONTENTS

Page

I.     INTRODUCTION ...............................................................................................1

II.    FACTS ..............................................................................................................3

    A.   Plaintiffs' Claims About Scotts Turf Builder EZ Seed................................3

    B.   Plaintiffs' Motion for Class Certification and the Court's Certification
       Order ..........................................................................................................4

    C.   Plaintiffs' Post-Certification Injury and Damages Models.........................6

          1.   Dennis's Analysis and Opinions...............................................7

          2.   Sukumar's Analysis and Opinions.............................................8

          3.   Weir's Analysis and Opinions ..................................................9

III.   ARGUMENT...................................................................................................11

    A.   The Court Should Reexamine Whether the Class Meets Each Rule
       23(b)(3) Requirement................................................................................12

    B.   Individual Questions Predominate Because Plaintiffs Cannot Prove
       Premium Price Injury or Damages on a Classwide Basis.......................12

          1.   To Establish the Existence of a "Price Premium," Plaintiffs Must
             Establish the Difference Between the Actual Price and What They
             Would Have Paid "But For" the 50% Thicker Claim...............................13

          2.   Plaintiffs Have No Common Evidence, Expert or Otherwise, on What
             Consumers Would Have Paid But For the 50% Thicker Claim. ...............15

          3.   Plaintiffs' Lack of Common Evidence of Price Premium Injury or
             Damages Precludes Class Adjudication......................................................18

    C.   No Class Can Recover Statutory Damages.............................................21

          1.   Statutory Damages Under GBL §§ 349 and 350 Are Not Available on a
             Classwide Basis. .......................................................................................22

          2.   Plaintiffs Cannot Recover Statutory Damages Under Their Theory that
             EZ Seed Never Grew Grass for Anyone....................................................24

          3.   Because Plaintiffs Cannot Prove Premium Price Injury Through
             Common Evidence, Statutory Damages Are Not a Common Question....25

IV.    CONCLUSION................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Apple, Inc. v. Samsung Elecs. Co.*,
  2014 WL 976898 (N.D. Cal. Mar. 6, 2014) ....................................................14, 19

*Astiana v. Ben & Jerry's Homemade, Inc.*,
  2014 WL 60097 (N.D. Cal. Jan. 7, 2014) .............................................................19

*Belfiore v. Procter & Gamble Co.*,
  311 F.R.D. 29 (E.D.N.Y. 2015) ...........................................................................23

*Brazil v. Dole Packaged Foods, LLC*,
  2014 WL 2466559 (N.D. Cal. May 30, 2014) ("*Brazil I*")................................13, 21

*Brazil v. Dole Packaged Foods, LLC*,
  2014 WL 5794873 (N.D. Cal. Nov. 6, 2014) ("*Brazil II*")........................................6

*Comcast Corp. v. Behrend*,
  133 S.Ct. 1426 (2013) ..................................................................5, 18, 19, 21

*Daugherty v. Am. Honda Motor Co.*,
  144 Cal. App. 4th 824 (2006) ...............................................................................4

*Erie R. Co. v. Tompkins*,
  304 U.S. 64 (1938) ...............................................................................................23

*Goshen v. Mut. Life Ins. Co.*,
  774 N.E.2d 1190 (N.Y. 2001) ..............................................................................24

*Gulino v. Bd. of Educ. of City Sch. Dist. of New York*,
  907 F.2d 492 (S.D.N.Y. 2012) .............................................................................12

*Herron v. Best Buy Stores, LP*,
  2016 U.S. Dist. LEXIS 52486 (E.D. Cal. Apr. 19, 2016).....................................19

*In re Credit Suisse First Boston Corp. (Lantronix, Inc.) Analyst Sec. Litig.*,
  250 F.R.D. 137 (S.D.N.Y. 2008) .........................................................................12

*In re Dial Complete Mktg. & Sales Prac. Litig.*,
  312 F.R.D. 36 (D.N.H. 2015) ..............................................................................20

*In re Initial Public Offering Sec. Litig.*,
  471 F.3d 24 (2d Cir. 2006)....................................................................................12

*In re NJOY, Inc. Consumer Class Action Litig.*,
    120 F. Supp. 3d 1050, 1118-22 (C.D. Cal. 2015) ("*NJOY I*")........................................ passim

*In re NJOY, Inc. Consumer Class Action Litig.*,
    2016 WL 787415 (C.D. Cal. Feb. 2, 2016) ("*NJOY II*").............................................13, 15, 19

*In re POM Wonderful LLC*,
    2014 WL 1225184 (C.D. Cal. Mar. 25, 2014)................................................................13, 17

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) ................................................................................... passim

*Jermyn v. Best Buy Stores, L.P.*,
    276 F.R.D. 167 (S.D.N.Y. 2011) ...........................................................................................12

*Johnson v. Nextel Commc'ns, Inc.*,
    780 F.3d 128 (2d Cir. 2015).................................................................................................20

*McLaughlin v. Am. Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2008).................................................................................................20

*Oscar v. BMW of N. Am., LLC*,
    274 F.R.D. 498 (S.D.N.Y. 2011) ...........................................................................................24

*Parker v. Time Warner Entm't Co.*,
    331 F.3d 13 (2d Cir. 2003)....................................................................................................24

*Ritani, LLC v. Aghjayan*,
    880 F. Supp. 2d 425 (S.D.N.Y. 2012).....................................................................................25

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015).............................................................................................19, 20

*Rodriguez v. It's Just Lunch, Int'l*,
    2010 WL 685009 (S.D.N.Y. Feb. 23, 2010)...........................................................................13

*Saavedra v. Eli Lilly & Co.*,
    2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) ("*Saavedra I*") ..........................................14, 19

*Saavedra v. Eli Lilly & Co.*,
    2015 WL 9916598 (C.D. Cal. July 21, 2015) ("*Saavedra II*")..........................................18, 25

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,
    559 U.S. 393 (2010)..............................................................................................................22

*Sirota v. Solitron Devices, Inc.*,
    673 F.2d 566 (2d Cir. 1982)..................................................................................................12

*Smith v. Armstrong,*
  968 F. Supp. 50 (D. Conn. 1997) ........................................................................12

*Spagnola v. Chubb Corp.,*
  574 F.3d 64 (2d Cir. 2009) ..................................................................................24

*Spitzer v. Applied Card Sys., Inc.,*
  41 A.D.3d 4 (3d Dep't 2007) ................................................................................4

*Werdebaugh v. Blue Diamond Growers,*
  2014 WL 2191901 (N.D. Cal. May 23, 2014) .....................................................21

STATUTES

N.Y. C.P.L.R. § 901(b) ................................................................................................22

N.Y. Gen. Bus. Law § 349 .................................................................................. passim

N.Y. Gen. Bus. Law § 350 .................................................................................. passim

OTHER AUTHORITIES

Fed. R. Civ. P. 23 ...................................................................................................12, 22

Fed. R. Civ. P. 23(b)(2) ..................................................................................................6

Fed. R. Civ. P. 23(b)(3) ................................................................................................23

Fed. R. Civ. P. 23(c)(1)(C) ...........................................................................................12

Defendants The Scotts Miracle-Gro Company and The Scotts Company LLC (collectively, "Scotts") respectfully submit this Memorandum of Law in Support of their Motion to Decertify the Class.

## I.     <u>INTRODUCTION</u>

The Court certified the class based on Plaintiffs' promise that they would be able to prove both injury and damages on a classwide basis.  But they cannot, as the reports and depositions of Plaintiffs' experts have revealed.  Fact and expert discovery have demonstrated that Plaintiffs' claims cannot be adjudicated as a class action, so the Court should decertify the class.  *See In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 414 (S.D.N.Y. 2015) (ECF No. 127) (if Plaintiffs cannot establish price premium injury and damages, "defendants may move to decertify the class").

As the Court explained in its certification opinion, Plaintiffs advance two potentially classwide theories:  (1) EZ Seed is worthless because it is incapable of growing grass, so class members are entitled to a full refund; and (2) the EZ Seed packaging was false and misleading, causing the class members to overpay.  The Court stated that if *any* class member grew grass using EZ Seed, then *no* class member can recover under the first theory.  Discovery has borne out that EZ Seed does grow grass, and Scotts has moved for summary judgment on that basis.

Unsurprisingly, then, the primary issue in this case has been Plaintiffs' second theory.  When they filed their motion for certification, Plaintiffs argued that merits discovery would bear out that the challenged claim—"Grows 50% Thicker with Half the Water* *versus ordinary seed when each was watered at half the recommended rate. Results may vary." (the "50% Thicker claim")—was false or misleading, material, and caused the market price for EZ Seed to be higher than it otherwise would have been, such that every class member overpaid for EZ Seed.  They told the Court that their experts would establish this "but-for" price, and that the but-for price

would be lower than the actual price. And they told the Court that this would prove both injury and damages on a classwide basis.

Plaintiffs have failed to deliver on their promise to the Court. Plaintiffs have proffered reports from three experts on the "price premium" injury and damages purportedly caused by the 50% Thicker claim. Those experts—Michael Dennis, Ramamirtham Sukumar and Colin Weir—said that they attempted to isolate the impact of the 50% Thicker claim on consumers. They utilized a variety of methods: conjoint analysis, contingent valuation, and interpretation of Scotts' internal marketing data (but not the hedonic regression that Weir testified before certification that he would use but now concedes is inappropriate). Ultimately, Dennis and Sukumar opine that if the 50% Thicker claim had not been on the EZ Seed packaging, some class members would not have been willing to pay the market price for which EZ Seed sold with the claim. Weir, using elementary-school arithmetic, then "calculates" the purported classwide damages as the difference between the actual price and what Plaintiffs' other experts claim the class members would have been willing to pay on average for EZ Seed if it did not have the claim on the label.

Even if Dennis' and Sukumar's analyses actually demonstrated what Weir says they do (and they don't, as explained below and in Scotts' *Daubert* motions), they measure the wrong thing. What class members claim to be willing to pay for EZ Seed without the claim is not the measure of a "price premium" under the law. In economic terms, "willingness to pay" addresses only demand-side factors—i.e., the factors that affect the price consumers are willing to pay. It does not measure the factors that affect the price at which Scotts is willing to sell. The price "but for" the 50% Thicker claim is the convergence of the price consumers were willing to pay and the price at which Scotts was willing to sell. Plaintiffs simply have no evidence whatsoever on

the latter issue, and therefore cannot satisfy the Court's requirement that they "isolate a price premium associated with the 50% thicker claim." *EZ Seed*, 304 F.R.D. at 414.

Nor can Plaintiffs use the class as a vehicle for statutory damages under New York's General Business Laws ("GBL") §§ 349 and 350. First, absent class members lack a substantive right to statutory damages under those sections. Second, Plaintiffs must show actual injury to recover statutory damages, and they cannot.

## II.   FACTS

### A.   Plaintiffs' Claims About Scotts Turf Builder EZ Seed

Scotts Turf Builder EZ Seed "combines premium grass seed with an innovative mulch and slow release fertilizer as an all-in-one product." *EZ Seed*, 304 F.R.D. at 403 (citations omitted). EZ Seed's mulch component "acts as an absorbent growing medium to promote seed germination and seedling establishment," "protect[s] the [grass] seeds and help[s] to keep moisture in the underlying soil." *Id.* As a result, the product is able to provide an "all-in-one" seeding option. (Ex 48 ¶¶ 5-11; Ex 1 ¶¶ 9-10.)



The name "EZ Seed" itself was ████████████████████████████████████ (Ex. 1 ¶ 10.) It signaled it was ███████████ (*Id.* (quoting ███████████ ████████████████████████ n internal Scotts documents).) Even EZ Seed's jugs and bags were designed with ease-of-use in mind, with rigid, pourable mouths on the bottles and see-through windows on the bags. (*Id.* ¶ 12.) Of course, EZ Seed prominently featured Scotts' brand name. (*Id.* ¶ 11 (████████████████████████████████ ██████████████████████).)

From EZ Seed's launch in January 2009 through roughly the end of 2013, the product packaging included the statement: "50% Thicker with Half the Water* … *[v]ersus ordinary

seed when each was watered at half the recommended rate. Results may vary."[1] Scotts replaced the 50% Thicker Claim in late 2013 with a claim that EZ Seed "holds up to 6x its weight in water." (Ex. 50 at SMG-EZ0156442; Ex. 39 at 98:4-10.)

Plaintiffs have two classwide theories of liability. First, Plaintiffs allege EZ Seed does not grow grass at all. Second, they allege the 50% Thicker Claim is false and misleading. *See EZ Seed*, 304 F.R.D. at 405 (citing Plaintiffs' "two theories of liability").

In its certification decision, the Court noted that "Plaintiffs appear to advance a third theory of liability—that EZ Seed does not grow grass at half-water levels if used according to the directions on the package." *Id.* at 405 n.3. But the Court expressly held that because "this theory of liability is replete with individualized questions [and] plaintiffs do not propose a damages model linked to this theory of liability ... class certification is inappropriate as to this theory." Despite the Court's unambiguous statement, Plaintiffs appear to continue to rely on this theory, arguing that they can "prove classwide injury through scientific proof that EZ Seed cannot deliver the promised level of performance at half-water levels." (ECF No. 211 at 3 (citing *Spitzer v. Applied Card Sys., Inc.*, 41 A.D.3d 4, 9 (3d Dep't 2007); *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 830 (2006)).)

**B.    Plaintiffs' Motion for Class Certification and the Court's Certification Order**

In March 2014, after limited class discovery but before merits discovery, Plaintiffs moved for certification of two classes:

> (i) All persons who purchased EZ Seed in the state of California containing the label statement "50% Thicker With Half the Water," excluding persons who purchased for purpose of resale (the "California Class").

---

[1] A similar statement appears on the inside flap of the 3.75-pound jug and on the outside of the 10-pound and 20-pound bags of EZ Seed. Both versions contain the qualifying language that the claim is in comparison to ordinary seed also watered at half recommend rates, and "results may vary."

(ii) All persons who purchased EZ Seed in the state of New York containing the label statement "50% Thicker With Half the Water," excluding persons who purchased for purpose of resale (the "New York Class").

*EZ Seed*, 304 F.R.D. at 404.  In an attempt to satisfy the requirements of *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013), Plaintiffs proffered a declaration from Colin Weir.  Weir

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  (Ex. 13 ¶ 16.)

The Court found that Weir's model for "full compensatory damages"—average purchase price per package times number of packages sold—fit Plaintiffs' claim that no class member ever grew grass using EZ Seed.  *EZ Seed*, 304 F.R.D. at 412.  The Court noted, however, that "whether plaintiffs are entitled to any damages under this theory depends on their ability to prove EZ Seed does not grow grass at all.  If plaintiffs cannot prove EZ Seed was defective for *every single customer*, plaintiffs cannot recover the full purchase price of EZ Seed." *Id.* at 412 n.9 (emphasis added).

The Court also considered Weir's proposal for calculating price premium damages.  The Court recognized that "in his declaration Dr. Weir does not explain that he will isolate the premium associated with the 50% thicker claim." *Id.* at 413.  But the Court accepted Weir's testimony as satisfying Plaintiffs' obligation at that early stage:  "[a]t deposition, [Weir] identified statistical methodologies by which he will be able to isolate the price premium associated with the 50% thicker claim, and described each methodology in detail." *Id.*

---

[2] The Court struck Weir's disgorgement model because it did not fit any viable theory of recovery. *EZ Seed*, 304 F.R.D. at 413.

Notably, at his pre-certification deposition, Weir acknowledged that ████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████ (Ex. 15 at 76:12-13.)  Thus, in its certification

opinion the Court specifically warned Plaintiffs that "[i]f, after further discovery, [M]r. Weir is

unable to prove the existence of a price premium, or isolate a price premium associated with the

50% thicker claim, defendants may move to decertify the class." *EZ Seed*, 304 F.R.D. at 414

(citing *Brazil v. Dole Packaged Foods, LLC*, 2014 WL 5794873, at *5-7, 11-14 (N.D. Cal. Nov.

6, 2014) ("*Brazil II*") (decertifying class because plaintiff's damages model did not isolate

premium attributable to the claim at issue)).

Ultimately, for purposes of the California unjust enrichment, California warranty, UCL,

CLRA, and GBL §§ 349 and 350 claims,[3] the Court certified a class of "all persons who

purchased EZ Seed in the States of California or New York containing the label statement '50%

Thicker With Half The Water* *Versus ordinary seed when each was watered at half the

recommended rate.  Results may vary.'"

## C.    Plaintiffs' Post-Certification Injury and Damages Models

Plaintiffs have proffered three experts—Dennis, Sukumar and Weir—to opine on

premium price injury and damages.  As demonstrated in Scotts' *Daubert* motions, the opinions

of each are inadmissible because they are unreliable and not based on sound methodology.  But

even if the opinions were reliable, they would not be sufficient to demonstrate that injury and

damages can be decided on a class basis, as explained further below.

---

[3] The Court did not certify claims under New York law for breach of warranty and breach of contract claims because individual issues predominated.  *In re EZ Seed*, 304 F.R.D. at 410-12.  The Court also denied certification of a Rule 23(b)(2) class.  *Id.* at 416.

1.     Dennis's Analysis and Opinions

Dennis administered a single group of respondents a two-part survey, containing (1) a contingent valuation portion, purportedly to ███████████████████████████████████ ███████████████████████████████████████ and (2) a consumer-perception portion, purportedly to ██████████████████████████████████████████████ █████████████ (Ex. 11 ¶¶ 11-12; *see also* Ex. 12 at 106:12-16.)  Dennis also purportedly ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████ (Ex. 12 at 45:23-46:4.)

To perform his surveys, Dennis created what he terms a ███████████████ modeled on EZ Seed. (Ex. 11 ¶¶ 22-23.)  In efforts to "disguise" EZ Seed, Dennis ███████████████ ██████████████████████ (*Id.*)  Notably, Dennis did not modify the look or style of the EZ Seed packaging or Scotts logo—████████████████████████████████████. (*Id.*) Dennis then provided respondents with ██████████████████████████████████████████ ████████████████████████████████. (Ex. 12 at 80:2-23.)  Following certain pre-testing (Ex. 11 ¶¶ 50-56), Dennis administered his surveys, ███████████████ ██████████████████. (Ex. 11 at Attachment F.)

Dennis asked respondents ███████████████████████████████████████████ ███████████████████████████████████████████████████. (Ex. 11 ¶ 22-23, 25.) He then presented follow-up questions regarding ██████████████████████████████████ ██████████████████. (*Id.* ¶ 25.)  These questions were based on his fictional product with the 50% Thicker claim costing ████████████████████████████████████████ (*id.* ¶ 35)), despite Dennis stating that EZ Seed sold for an average of ███████ with an average advertised price ████████ (*id..* ¶ 34).  Then, for the consumer-perception survey, Dennis asked

7

respondents seven questions about ███████████████████████████

████. (*Id.* ¶ 32.)

    Based on his surveys, Dennis has purported to ████████████████."[4]  (*Id.*

¶ 48.)   Dennis presents the percentage of respondents who were willing to purchase EZ Seed

without the 50% Thicker claim for each given price, from $0 to $15.  (*Id.* ¶ 38.)  Beginning with

that $15 value, Dennis asserts that ████████████████████████████████

███████████████████████████████████████████████████  (*Id.*

¶ 37.)  Nevertheless, Dennis found that ████████████████████████████

███████████████████████████████████. (*Id.* at p.28

(█████████████████████████████████).)  Dennis

did not ask any respondents whether they would, in fact, ███████████ for EZ Seed

with the 50% Thicker claim.[5]  (Ex. 5 ¶ 125.)

    2.   <u>Sukumar's Analysis and Opinions</u>

    Dr. Ramamirtham Sukumar purports to estimate the price premium attributable to the

50% Thicker Claim.  Sukumar utilized a survey methodology known as Adaptive Self-

Explication of Multi-Attribute Preferences ("ASEMAP") as part of a conjoint analysis in an

attempt to determine a price premium, which he defines as ███████████████████

████████████████████████████  (Ex. 18 at 45:9-15.)

    ASEMAP employs four steps to arrive at certain crucial metrics for its analysis. In the

first step, survey takers, referred to as respondents, rate product features on a scale from 1 to 10.

In the second step, respondents rank pre-selected features by their importance. In the third step,

---

[4] Dennis actually calculated "willing to accept" estimates.  (*Infra.*)  For purposes of this motion, except
where noted otherwise, this brief refers to the commonly used term "willing to pay" as incorporating both concepts.

[5] This is important because the survey respondents were "grass seed" purchasers, not EZ Seed purchasers,
or even combination-product purchasers.  (Ex. 5 ¶ 133.)  Thus, it is not clear that any of them would have purchased
EZ Seed at *any* price with *any* claim.

respondents are presented with multiple pairwise comparisons and asked to allocate 100 points between two features to determine their relative importance (*e.g.*, distributing 100 points between product price and packaging). In the fourth step, ASEMAP generates a number of hypothetical grass seed profiles (i.e., grass seed products with different sets of features) and asks respondents how likely they are to purchase those products. These condensed four steps provide the metrics which are used in essentially three equations that purport to produce a price premium for the 50% Thicker Claim. (*See* Ex. 5 ¶¶ 37-39.)  The metrics obtained are then input to three main equations.  (*Id.*)

Through these equations Sukumar purports to calculate his price premium. Sukumar testified that his price premium calculation measures what ██████████████████  (Ex. 18 at 38:9-10.)  Sukumar claims that ████████████████████████████████ ████████████████████████████████.  In fact, Sukumar made a simple math mistake.  With his math corrected, his "analysis" shows a 116% "price premium," meaning that according to his data Scotts would have had to *pay* consumers to take EZ Seed if it did not make the 50% Thicker claim.  (*See* Scotts' Mot. to Strike Sukumar.)

3.    Weir's Analysis and Opinions

In its class certification decision, the Court relied on Weir's representations regarding the availability of different models for measuring a price premium in this case, including hedonic regression.  At his post-certification deposition, Weir admitted that he did not know whether hedonic regression was actually possible:





(Ex. 16 at 195:13-196:22.)  That is a far cry from the impression given to the Court during the original class briefing, that Weir had started but not quite finished his hedonic regression analysis.[6]  (*See, e.g.*, ECF No. 101 at 13 (asserting that ███████████████████████ ████████████████████████████████████████████████████████████████████ ██████████ ).)

Instead, Weir proposed two other ways to calculate a price premium attributable to the 50% Thicker Claim.  Each calculation, Mr. Weir explains, approaches the question of how to calculate class-wide damages by comparing ████████████████████████████████ ███████████████████████████████  (Ex. 14 ¶ 16.)

Weir first claims he can calculate class-wide price premium damages using ███████████ ████████████████  (*Id.* ¶ 27.)  But Weir acknowledges that Scotts never calculated a premium attributable to the 50% Thicker Claim.  (*See id.* ¶ 29 ██████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████  ).)  Instead, Weir points to a ████████████████ for EZ Seed that Scotts calculated ███████████████████████████████████████████

_____

[6] In fact, Weir specifically represented in his first deposition that he would compare EZ Seed to competitor products in order to determine the price premium—he just hadn't collected the relevant competitor data yet:

(Ex. 15 at 92:17-93:7.)  After the Court certified the class based in part on his testimony, he did none of this.

██████████████—that is, compared to the cost a consumer would incur if he or she separately purchased each of the components included in EZ Seed.  (Ex. 43 at SMG-EZ009018.)   He acknowledges the ████████████████████████████████████████████ ████████████ (*See* Ex. 14 ¶ 29 ███████████████████████████████ ████████████████████████████████████████████████████ ████████████).)   He nevertheless speculates that ████████████████████ ████████████████████████████████████████████████████ ██████████████████████ (*Id.*)

Weir then claims he can rely on expert reports he received and "reviewed" from Dennis and Sukumar.  (*Id.* ¶¶ 30, 35.)  Without explanation, he concludes each study ███████████ ████████████████████████████████████████████████████ ███████████████████ (*Id.* ¶¶ 31, 36.)  Weir inputs the price premiums calculated by Dennis and Sukumar, which range between ███████████████ into a proposed class-wide price premium model:

████████████████████████████████████████████████

Using Dennis' and Sukumar's results of ████████████, Mr. Weir then does some multiplication to determine price premium damages between ████████████ in New York and ████████████ in California.  Weir has admittedly done no independent analysis of the "price premium."  (Ex. 16 at 82:7-15 (Weir is █████████████████████████████ ████████████████████████████).)

### III.   ARGUMENT

The Court certified a class of consumers from two states asserting claims under two theories.  The first theory—that EZ Seed never worked at all for anyone—is so baseless that it can be left to Scotts' motion for summary judgment.  With that theory to the side, Plaintiffs'

class claims will only be premised on their second theory: that they paid more for EZ Seed than they would have if the 50% Thicker Claim had never appeared on the packaging. So that second theory is what Scotts addresses here.

**A.      The Court Should Reexamine Whether the Class Meets Each Rule 23(b)(3) Requirement.**

A district court's obligation to conduct a "rigorous analysis" of determining "that each Rule 23 requirement is met," *In re Initial Public Offering Sec. Litig.*, 471 F.3d 24, 27 (2d Cir. 2006) ("*In re IPO*"), does not end with an order certifying a class.   Orders granting class certification "may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). The Court should "decertify a class if it appears that the requirements of Rule 23 are not in fact met."[7]  *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 572 (2d Cir. 1982).   Compelling reasons for decertification can include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."   *Gulino v. Bd. of Educ. of City Sch. Dist. of New York*, 907 F. Supp. 2d 492, 504 (S.D.N.Y. 2012).

**B.      Individual Questions Predominate Because Plaintiffs Cannot Prove Premium Price Injury or Damages on a Classwide Basis.**

The Court recognized that a mismatch between Plaintiffs' legal theories and their injury and damages models might preclude determination of injury and damages on a classwide basis, swamping any trial in individualized issues.   And in fact, Plaintiffs' expert evidence is such a mismatch for their legal theories that they can prove neither price premium injury nor damages on a classwide basis.   Decertification is therefore appropriate.   *EZ Seed*, 304 F.R.D. at 414 ("If,

---

[7] Courts in this circuit are split as to which party bears the burden on a motion to decertify. Compare *In re Credit Suisse First Boston Corp. (Lantronix, Inc.) Analyst Sec. Litig.*, 250 F.R.D. 137, 140 (S.D.N.Y. 2008) ("In order to decide whether or not to decertify this class, the Court must determine whether Plaintiff has carried his burden of demonstrating that each element of Rule 23 is met by a preponderance of the evidence."); *Smith v. Armstrong*, 968 F. Supp. 50, 53 (D. Conn. 1997) ("The burden of persuasion throughout the litigation remains with the party desiring to maintain certification."); with *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 168-69 (S.D.N.Y. 2011) (party seeking decertification bears the burden).

after further discovery, [Plaintiffs are] unable to prove the existence of a price premium, or isolate a price premium ... claim, defendants may move to decertify the class.").

       1.    <u>To Establish the Existence of a "Price Premium," Plaintiffs Must Establish the Difference Between the Actual Price and What They Would Have Paid "But For" the 50% Thicker Claim.</u>

Plaintiffs have adduced no evidence, expert or otherwise, that the price for EZ Seed **but for** the presence of the 50% Thicker claim would have been lower, and as a result, each class member would have paid less absent the allegedly deceptive act.    A "price premium" injury and damages theory is the difference (if any) between the price at which EZ Seed was sold to consumers with the 50% Thicker claim and the price at which EZ Seed would have been sold had Scotts not included the 50% Thicker claim. *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1118-22 (C.D. Cal. 2015) ("*NJOY I*") (price-premium calculated "by taking 'the difference between *the market price actually paid* by consumers and the *true market price* that reflects the impact of the unlawful, unfair, or fraudulent business practices'") (emphasis in original) (citations omitted); *In re NJOY, Inc. Consumer Class Action Litig.*, 2016 WL 787415, at *5-7 (C.D. Cal. Feb. 2, 2016) ("*NJOY II*") (same); *Brazil v. Dole Packaged Foods, LLC*, 2014 WL 2466559, at *15 (N.D. Cal. May 30, 2014) ("*Brazil I*") (mislabeling premium calculated "by taking the difference between the market price actually paid by consumers and the true market price that reflects the impact of the unlawful, unfair, or fraudulent business practices"); *see also In re POM Wonderful LLC*, 2014 WL 1225184, at *5 (C.D. Cal. Mar. 25, 2014); *Rodriguez v. It's Just Lunch, Int'l*, 2010 WL 685009, at *9 (S.D.N.Y. Feb. 23, 2010) ("price premium" injury exists where consumer actually paid a "higher price" than the true market price the consumer would have actually paid "absent deceptive acts").

To calculate a price premium, an expert must analyze the behavior of buyers *and sellers*. (Ex. 1 ¶ 48.)  That is because "the ultimate price of a product is a combination of market demand

and market supply." *Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL 976898, at *11 (N.D. Cal. Mar. 6, 2014) (citing, among others, Sukumar declaration submitted on behalf of party).  A fundamental principle of economics is that prices in a consumer product market █████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████  (Ex. 1 ¶ 48.)

Calculating a price premium attributable to a specific advertising statement on a product requires, as various courts have held and Dr. David explains, determining "but-for" prices of the "entire market" when the claim is not made.  (*Id.*)  To determine the price of the product "but for" the claim, then, an expert must consider both consumers' willingness to pay and Scotts' willingness to sell.  If Scotts was not willing to sell EZ Seed for less without the claim, demand for EZ Seed without the claim may have simply "been lower than it actually was and Scotts would have sold less in the 'but-for' world." (*Id.* ¶ 47.)  In fact, Scotts can—and has—decided *not* to reduce the price of EZ Seed since it removed the 50% Thicker Claim. (*Id.*)

Scotts' "willingness to sell" is known as a "supply-side" consideration, and is essential to calculating any "price premium." *Saavedra v. Eli Lilly & Co.*, 2014 WL 7338930, at *5 (C.D. Cal. Dec. 18, 2014) ("*Saavedra I*") ("The Court has found no case holding that a consumer may recover based on consumers' willingness to pay irrespective of what would happen in a functioning market (i.e. what could be called sellers' willingness to sell)."); *NJOY I*, 120 F. Supp. 3d at 1120 (same).  Supply-side factors include a manufacturer's pricing and labeling strategy, competitors' responses to labeling changes, and the availability of substitutes on the market. (Ex. 1 ¶¶ 47-48 & n.94.)

2.      Plaintiffs Have No Common Evidence, Expert or Otherwise, on What Consumers Would Have Paid But For the 50% Thicker Claim.

Instead of estimating "but-for" prices, Plaintiffs' purported survey experts concede ██

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

(*See* Ex. 16 at 118:2-14; Ex. 12 at 101:4-19; Ex. 18 at 45:9-15.)    This is different than the amount prices would fall in the "but-for" world without the 50% Thicker Claim (regardless of changes in the number of units sold). (*See* Ex. 1 ¶ 47.) Plaintiffs' calculation is insufficient as a matter of law to prove "price premium" injury or damages.

"[R]espondents are asked" in consumer surveys "to make a series of choices between different product combinations of product attributes," which the analyst then uses to "estimate the separate value (or part-worth) that *consumers* attach to each product attribute." *NJOY II*, 2016 WL 787415, at *6 (emphasis added).    But consumer surveys provide models only for "testing what a consumer is willing to pay," not "other factors in a functioning market place." *Id.* The ultimate price of a product "is a *combination* of market demand *and* market supply." *Id.* (emphasis added).

To determine the price but for the 50% Thicker claim, Plaintiffs' experts needed to—but failed to—consider the price at which Scotts would have sold EZ Seed in the absence of the claim. Plaintiffs' experts' methodology ignores the price at which Scotts is willing to sell EZ Seed; they do not purport to identify the market price for EZ Seed absent the 50% Thicker claim. Thus, they don't allow for the comparison between what the class members actually paid and a "true market price."

Plaintiffs' surveys provide no evidence of how Scotts or its competitors would have reacted to the removal of the 50% Thicker Claim. Instead of determining the price "but for" the

presence of the 50% Thicker claim on the EZ Seed packaging, Plaintiffs' experts tried to deduce what class members would have been "willing to pay" for an EZ Seed product that did not include the claim on its packaging. In doing so, they simply aimed at the wrong target. *See NJOY I*, 120 F. Supp. 3d at 1120.

For instance, Weir admitted in his deposition he does not know what Scotts would have been willing to sell EZ Seed for without the claim:



(Ex. 16 at 128:11-24.) That was no fluke: later in the same deposition, in response to a question about what the price of EZ Seed would have been but for the 50% Thicker claim, he admitted,

██████████████████████████████████████████████ (*Id*. at 286:4-9.) But that is the only valid measure of "premium price" damages—or, in fact, premium price injury—available in this case.

Likewise, Dennis's contingent valuation model does not calculate the difference in EZ Seed's market price, with and without the 50% Thicker claim. Indeed, Dennis testified that ██

███████████████████████████████████████████████████████████.

(Ex. 12 at 184:14-21; *see also id.* at 98:5-100:25.) As Dennis ultimately acknowledged, ████

████████████████████████████████████████████████

████████████████████████ (*Id.* at 98:14-17.) There was no obligation for Scotts to change EZ Seed's MSRP due to changes on its label, and, indeed, Scotts did *not* change EZ Seed's price as demand fluctuated. (Ex. 1 ¶¶ 28-33.) Thus, Dennis concededly does not

address the market value of EZ Seed—and what Scotts was willing to sell it for—absent the 50% Thicker claim.

Sukumar's opinions are similarly limited.  At his deposition, he explained that ███████ ███████████████████████████████████████████████  (Ex. 18 at 71:22-23; *see also id.* at 38:7-10 ██████████████████████████████████████ ████████████████████████████  (emphasis added).)  With information only about willingness to pay, he was left unable to even speculate about the price of EZ Seed in the but-for world without the 50% Thicker claim:



(*Id.* at 60:25-61:8.[8])

Plaintiffs' experts' approach might be adequate if the market for EZ Seed were perfectly efficient.  If this case were about a commodity-type good—some product for which perfect substitutes are available, and an extremely efficient market exists—then maybe "willingness to pay" would be a somewhat acceptable proxy for the but-for price, and maybe the MSRP would have reflected every relevant supply-side factor.  But "[i]n an inefficient market ... some information is not reflected in the price of an item."  *POM*, 2014 WL 1225184, at *4 (market for juice not efficient).

---

[8] Sukumar's bald admission that ██████████████████████████████████████ ███████████████████████████████████████████████████████████████████ (*See* Ex. 18 at 93:13-95:7.)  Similarly, Dennis claimed to have considered supply-side factors, but when asked to identify them by *Plaintiffs'* counsel he admitted that ███████████████████ (Ex. 12 at 212:4-214:10.)

A perfectly efficient market does not exist for EZ Seed because it is not a commodity good—it is highly differentiated.  (Ex. 1 ¶ 28.)  That means that the market is not classically efficient, because prices do not necessarily respond to changes in consumer demand.  (*Id.*)  In markets of this type, plaintiffs cannot show a premium price injury by "look[ing] only to the demand side of the market," because "the relationship between price and value is severed." *Saavedra v. Eli Lilly & Co.*, 2015 WL 9916598, at *3  (C.D. Cal. July 21, 2015) ("*Saavedra II*") (denying certification of class of purchasers of prescription drug because relevant market is not efficient).  Because Plaintiffs' experts have failed to consider one half of the factors relevant to determination of the but-for price, they have not calculated a but-for price at all.  Plaintiffs cannot pass off half of a calculation as the whole thing.

3.    Plaintiffs' Lack of Common Evidence of Price Premium Injury or Damages
       Precludes Class Adjudication.

When the Court certified the class, it was on the understanding that Plaintiffs would ultimately come forward with expert evidence of price-premium injury, and a damages model that could satisfy *Comcast*.  They have not.  As a result, this case cannot proceed as a class action.  For instance, in *NJOY* the plaintiffs' expert took the same route as Plaintiffs' experts here:  "Harris's methodology completely ignores the price for which NJOY is willing to sell its products, what other e-cigarette manufacturers say about their products, and the prices at which those entities are willing to sell their products.  This does not suffice under *Comcast*." *NJOY I*, 120 F. Supp. 3d at 1120.  That is because

> A consumer's subjective valuation of the purported [50% Thicker] message, measured by their relative willingness to pay for products with or without the message, is not an accurate indicator of restitutionary damages, because it does not permit the court to calculate the true market price of [EZ Seed] absent the purported misrepresentations.

18

*Id.* at 1122; *NJOY II*, 2016 WL 787415, at \*5-7. So when Sukumar, for instance, says █████████ ████████████████████████████████████████████████ (Ex. 18 at 65:14-15), he is conceding that he has no opinion about the "true market price."

As a result, Plaintiffs have not offered proof of classwide injury or damages: "The [c]ourt has found no case holding that a consumer may recover based on consumers' willingness to pay irrespective of what would happen in a functioning market (i.e. what could be called sellers' willingness to sell)." *NJOY I*, 120 F. Supp. 3d at 1120 (citation omitted); *see also Saavedra I*, 2014 WL 7338930, at \*5 (same); *Apple*, 2014 WL 976898, at \*11[9]; *Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097, at \*12 (N.D. Cal. Jan. 7, 2014) ("Plaintiff has not offered any expert testimony demonstrating that the market price of Ben & Jerry's ice cream with the 'all natural' designation was higher than the market price of Ben & Jerry's without the "all natural" designation. Thus, by definition, there is no evidence showing how much higher the price of one was than the other."); *Herron v. Best Buy Stores, LP*, 2016 U.S. Dist. LEXIS 52486, \*28-29 (E.D. Cal. Apr. 19, 2016) (denying class certification in price-premium case because plaintiffs' injury/damages model did not fit theory of liability); (Ex. 1 ¶¶ 44-51).

Plaintiffs may assert that the Court should disregard any obstacles to calculating damages on a classwide basis because in *Roach v. T.L. Cannon Corp.*, 778 F.3d 401 (2d Cir. 2015), the Second Circuit said that a classwide damages model was not a *sine qua non* of certification. But the Second Circuit never suggested that damages are irrelevant to 23(b)(3) analysis—that would be wrong under *Comcast*—or that in some cases individualized damages could predominate,

---

[9] The court in *Apple* found the expert's survey failed to calculate a proper "price premium" where the "survey measures the market demand for the patented features in a vacuum, without relation to the actual price or value of the devices" and because "his figures do not reflect 'what people would actually pay in the marketplace,'" and therefore the survey "leaves the Court with no way to compare [] willingness to pay metrics—which relate only to demand for the patented feature—to the market price of the infringing devices, which reflects the real-world interaction of supply and demand for infringing and noninfringing devices." *Apple*, 2014 WL 976898, at \*11.

precluding certification. To the contrary, even after *Roach* the Second Circuit has reiterated that damages are a "'factor[] that [the Court] must consider in deciding whether issues susceptible to generalized proof 'outweigh' individual issues.'" *Johnson v. Nextel Commc'ns, Inc.*, 780 F.3d 128, 138 (2d Cir. 2015) (vacating certification order) (quoting *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008)). *See also, e.g., In re Dial Complete Mktg. & Sales Prac. Litig.*, 312 F.R.D. 36, 79-80 (D.N.H. 2015).

Moreover, here the disconnect between Plaintiffs' damages models and their claims does more than preclude calculation of damages on a classwide basis. It precludes determination of *liability* on a classwide basis. Because they cannot show that the class members as a whole (or any of them individually) paid more for EZ Seed than they would have in the "but-for" world, they cannot show that the class members were actually injured without a workable model that fits their claims. Under these facts, trial on a class basis would be inappropriate even in a pre-*Comcast* world—and even more so now.

Plaintiffs might also argue that the Court can simply extrapolate from a Scotts document cited by Weir to assume a price premium based on the 50% Thicker claim. (*See* Ex. 14 ¶¶ 27-29.) As noted above, the Scotts document he cites states: ███████████████████████

██████████████████████████████████████████████████████████████████ █

████████████ (Ex. 43 at SMG-EZ009018 (emphasis added).) The statement relied upon by Mr. Weir is clear that the "premium" has nothing to do with the 50% Thicker Claim.

Weir acknowledges the ███████████████████████████████████

████████████████████ (*See* 14 ¶ 29 ████████

████████████████████████████████████████████████

████████████ ).) Thus, by Weir's own admission, this ████████████████████

███████████████████████████████████████████████████ fails to match Plaintiffs' liability theory:  "for plaintiffs' price premium model adequately to match their second theory of liability—that they were damaged when they paid a premium associated with the 50% thicker claim—Dr. Weir must control for product features other than the 50% thicker claim when calculating the price premium."[10]  *EZ Seed*, 304 F.R.D. at 413.  Indeed, Plaintiffs concede that the proper measure of a price premium is not a comparison between EZ Seed with the 50% Thicker claim and some other grass seed (or in this case, some other grass seed, fertilizer, and mulch sold separately).  (Ex. 44 at 35:22-36:7.)

"Courts routinely reject price premium methodologies under *Comcast* when the proposed methodologies do not attempt to isolate the premium due only to the allegedly misleading marketing statement."  *EZ Seed*, 304 F.R.D. at 413 (citing *Brazil I*, 2014 WL 2466559, at *16; *Werdebaugh v. Blue Diamond Growers*, 2014 WL 2191901, at *23 (N.D. Cal. May 23, 2014), *class decertified*, 2014 WL 7148923 (N.D. Cal. Dec. 15, 2014)).  This theory does not satisfy the Court's stated requirements or *Comcast* because it does not purport to "measure only those damages attributable to" the defendant's conduct.  133 S. Ct. at 1433.

**C.     No Class Can Recover Statutory Damages.**

Plaintiffs have asserted that New York class members can recover statutory damages on a classwide basis.  That is wrong, based on both the Court's first certification decision and the statutes on which Plaintiffs rely.  Even if the Court finds that Plaintiffs' one-sided "willingness to

---

[10] Weir claims that two Scotts employees—Tiffany Peoples and Emily Winters—████████████████████████████ (Ex. 14 ¶ 29.)  That is a willful misreading of their testimony.  Winters testified that the 50% Thicker Claim was ██████████████████████ (Ex. 39 at 72:17-5.)  That is the *opposite* of a price premium attributable to the claim that would be susceptible to isolation.  Likewise, Peoples did not testify that EZ Seed had a price premium attributable to the 50% Thicker Claim; she merely testified that ████████████ (Ex. 37 at 141:23-43:17.)  Just because a product is "premium-priced" does not mean that Plaintiffs have met their burden of proving a premium above the product's price in a but-for world based solely on the 50% Thicker claim.  *Accord EZ Seed*, 304 F.R.D. at 413.

pay" analysis is enough to avoid decertification, it should clarify that absent class members cannot recover statutory damages under GBL §§ 349 and 350.

1.   Statutory Damages Under GBL §§ 349 and 350 Are Not Available on a Classwide Basis.

Class representatives cannot recover statutory damages under §§ 349 or 350 on behalf of absent class members.  Both §§ 349 and 350 include a statutory damages provision permitting the recovery of $50 and $500 per plaintiff, respectively, when the action is brought in the plaintiff's *own name*. *See* N.Y. GBL § 349(h) ("[A]ny person who has been injured by reason of any violation of this section *may bring an action in his own name* to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions.") (emphasis added); N.Y. GBL § 350-e(3) ("Any person who has been injured by reason of any violation of section three hundred fifty or three hundred fifty-a of this article *may bring an action in his or her own name* … to recover his or her actual damages or five hundred dollars, whichever is greater.") (emphasis added).  Whether the Court decertifies the class of New York consumers or not, they cannot recover statutory damages in this action.[11]

The fact that these statutes do not create a substantive right to classwide recovery of statutory damages is unaffected by the Supreme Court's holding in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.,* 559 U.S. 393 (2010). *Shady Grove* holds that Rule 23 permits class actions for statutory damages under New York law, regardless of CPLR § 901(b)'s proscription on recovery of statutory damages in class actions unless expressly authorized by statute. *Id.* at 399-400. But *Shady Grove* does not address the text or intent of GBL §§ 349 and 350—and thus does not address whether, as a substantive matter, absent class members have any

---

[11] Scotts provides a more comprehensive discussion as to why statutory damages are unavailable in a class action under GBL 349/350 in its concomitantly filed summary-judgment motion, which it incorporates here by reference.

*right* to statutory damages under those provisions.  They do not, and Scotts addresses this issue in greater detail in its motion for summary judgment.

Judge Weinstein of the Eastern District recently analyzed class claims for § 349 statutory damages through the prism of Rule 23(b)(3) superiority, and held that certification is improper. In *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29 (E.D.N.Y. 2015), a plaintiff alleged that bathroom wipes marketed as "flushable" were, in fact, not; he sought statutory damages under GBL § 349.  *Id.* at 38-39.  Judge Weinstein held that a class action would not be a superior method of adjudication because

> federal certification would undermine the substantive state law's policy: to prevent catastrophic and unfair judgments against defendants—a result to be avoided if possible. A different damage recovery for this plaintiff and his class in federal court (to which the case was removed) than would have been afforded in state court (where plaintiff originally filed his action) would also contravene *Erie*, which is designed to prevent forum shopping.

*Id.* at 39 (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

*Belfiore* recognizes the reality of the situation:  Plaintiffs are asking for half a billion dollars in statutory damages when each has shown, at best, *de minimis* injury (and more likely no injury at all).  In *Belfiore*, the court held that "the statutory damages could be excessive and in violation of state policy."  *Id.* at 73.  Here, where Plaintiffs seek $550 per class member rather than $50 (as in *Belfiore*, *id.* at 38), there is no "could"—the statutory damages would be wildly punitive and in direct contravention of the very statutes on which Plaintiffs rely.  Hijacking state statutes for a use that the state expressly rejected cannot be "superior" within the meaning of Rule 23(b)(3).[12]

---

[12] The Second Circuit has expressed concerns that statutory damages can violate due process when used in class actions.  The combination of a "statutory scheme that imposes minimum statutory damages awards on a per-consumer basis," which was designed "to encourage the filing of individual lawsuits as a means of private enforcement of consumer protection laws," with class actions "may expand the potential statutory damages so far beyond the actual damages suffered that the statutory damages come to resemble punitive damages—yet ones that

2.   Plaintiffs Cannot Recover Statutory Damages Under Their Theory that EZ Seed Never Grew Grass for Anyone.

As the Court explained, "plaintiffs' first theory of liability [is that] nobody was able to grow grass using EZ Seed. Plaintiffs will succeed or fail on this theory based on whether they are able to prove EZ Seed is worthless." *EZ Seed*, 304 F.R.D. at 408. That is a warranty claim, plain and simple. The Court has already held that the New York members of the class cannot assert breach of warranty or breach of contract claims on a classwide basis. *Id.* at 410-11. Thus, the New York class members cannot recover under Plaintiffs' first theory *even if the Court declines to certify the class*.

Moreover, even if the New York class members could assert that kind of a warranty claim on a classwide basis, that would not entitle them to statutory damages on a classwide basis. Not every breach of warranty gives rise to a claim under GLB §§ 349 and 350—more is required. "[A]lthough a monetary loss is a sufficient injury to satisfy the [actual damages] requirement under § 349, that loss must be independent of the loss caused by the alleged breach of contract." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). The same is true for GBL § 350. *See Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 512 (S.D.N.Y. 2011) (other than § 350's reliance requirement, standard for recovery under § 350 the same as the standard under § 349) (citing *Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190, 1195 n.1 (N.Y. 2001)). Under this theory, as the Court has noted, Plaintiffs are asserting that the product does not work. That is nothing more than a breach of contract claim, and does not give rise to an independent claim for violation of GBL §§ 349 and 350. Accordingly, Plaintiffs' first theory of recovery will not support a claim for classwide statutory damages.

---

are awarded as a matter of strict liability, rather than for the egregious conduct typically necessary to support a punitive damages award." *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 22 (2d Cir. 2003).

3.    Because Plaintiffs Cannot Prove Premium Price Injury Through Common
      Evidence, Statutory Damages Are Not a Common Question.

Finally, Plaintiffs may argue that they can recover statutory damages under their price premium theory, or that their statutory damages claims salvage their certification by creating common issues of liability and damages. Not so.

To obtain statutory damages under GBL §§ 349 and 350, Plaintiff must demonstrate actual injuries. *See Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 449 (S.D.N.Y. 2012). But as explained above, they have no methodology for proving a "price premium" on a classwide basis. Without common evidence of an actual injury, the fact that statutory damages could be calculated on a classwide basis is irrelevant. "The fact that Plaintiffs no longer need to quantify th[eir] subjective injury in order to prove their requested statutory minimum damages does not change the fact that Plaintiffs fail to establish that causation and injury will be provable on a classwide basis." *Saavedra II*, 2015 WL 9916598, at *3 (denying certification of GBL §§ 349 & 350 claims because plaintiffs lacked workable premium pricing model).

## IV.    CONCLUSION

For the foregoing reasons, Scotts respectfully requests that the Court decertify the class.

Dated: June 30, 2016    By: /s/  Shawn Patrick Regan_____
   New York, New York     Shawn Patrick Regan
              Joshua S. Paster
              HUNTON & WILLIAMS LLP
              200 Park Avenue
              New York, New York 10166
              Telephone:  (212) 309-1000
              Facsimile: (212) 309-1100
              Email:  sregan@hunton.com
              Email:  jpaster@hunton.com

              - and -

              Samuel A. Danon (*pro hac vice*)
              Jason B. Sherry
              HUNTON & WILLIAMS LLP
              1111 Brickell Avenue, Suite 2500
              Miami, Florida  33131
              Telephone:  (305) 810-2500
              Facsimile:  (305) 810-2460
              Email:  sdanon@hunton.com
              Email:  jsherry@hunton.com

              - and -

              Joshua M. Kalb (*pro hac vice*)
              HUNTON & WILLIAMS LLP
              600 Peachtree Street NE, Suite 4100
              Atlanta, Georgia 30307
              Telephone:  (404) 888-4000
              Facsimile:  (404) 602-9077
              Email:  jkalb@hunton.com

              -and-

              Neil K. Gilman (*pro hac vice*)
              HUNTON & WILLIAMS LLP
              2200 Pennsylvania Avenue, NW
              Washington, DC  20037
              Telephone:     (202) 955-1674
              Facsimile:     (202) 862-3629
              Email:  ngilman@hunton.com

              *Counsel for Defendants The Scotts Miracle-Gro Company and The Scotts Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2016 I served a copy of the foregoing, on all counsel of

record at the addresses listed below, by email and FTP site.

/s/ Shawn Patrick Regan
Shawn Patrick Regan

Scott A. Bursor, Esq.
Joseph L. Marchese, Esq.
Neal Deckant, Esq.
Yitzchak Kopel, Esq.
Bursor & Fisher, P.A.
888 Seventh Avenue
New York, NY 10019
Telephone:  (212) 989-9113
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
        jmarchese@bursor.com
        ndeckant@bursor.com
        ykopel@bursor.com

Adam Richard Gonnelli, Esq.
Nadeem Faruqi, Esq.
Faruqi & Faruqi, LLP
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone:  (212) 983-9330
Fax: (212) 983-9331
Email:  agonnelli@faruqilaw.com
        nfaruqi@faruqilaw.com

Timothy Peters, Esq.
Faruqi & Faruqi, LLP
101 Greenwood Avenue, Suite 600
Jenkintown, PA  19046
Telephone: (215) 277-5770
Fax: (215) 277-5771
Email:  tpeters@faruqilaw.com

Antonio Vozzolo, Esq.
Vozzolo LLC
Email: avozzolo@vozzolo.com