**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Scotts EZ Seed Litigation | Civil Action No. 12-CV-4727 (VB) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**SUMMARY JUDGMENT ON COUNTS VIII AND IX**

Dated:  June 30, 2016

**BURSOR & FISHER, P.A.**
Scott A. Bursor
Joseph I. Marchese
888 Seventh Ave
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
          jmarchese@bursor.com


**FARUQI & FARUQI, LLP**
Nadeem Faruqi
Timothy J. Peter
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone:  (212) 983-9330
Facsimile:  (212) 983-9331
Email:  nfaruqi@faruqilaw.com
          tpeter@faruqilaw.com

*Class Counsel*

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ................................................................................................ 1

II.   THE SUMMARY JUDGMENT STANDARD........................................................ 2

III.  THE HALF-WATER CLAIM WAS DIRECTED AT CONSUMERS ........................... 4

IV.   CONSUMERS UNDERSTAND THE HALF-WATER CLAIM TO
      MEAN THAT EZ SEED REQUIRES LESS WATER THAN
      ORDINARY SEED, BUT SCOTTS ADMITS IT REQUIRES MORE
      WATER ...................................................................................................... 5

      A.   Consumers Understand The Half-Water Claim To Mean That EZ
           Seed Requires Less Water Than Ordinary Seed ....................................... 5

      B.   Scotts Admits EZ Seed Requires More Water Than Ordinary Seed ................. 7

      C.   The Half-Water Claim Is Misleading ................................................... 9

V.    THE PHOTOGRAPHS ON EZ SEED'S PACKAGING WERE FAKED ..................... 11

VI.   THE HALF-WATER CLAIM IS LITERALLY FALSE ................................. 12

      A.   The Literal Meaning Of The Half-Water Claim ..................................... 13

           1.   What Does "50% Thicker" Mean? ....................................... 13

           2.   What Does "Ordinary Seed" Mean? .......................................... 14

           3.   What Does The "Recommended Rate For Ordinary Seed"
                Mean?................................................................................ 14

           4.   What Does "Subject To Proper Care" Mean?............................. 17

      B.   The Half-Water Claim Is False ........................................................ 18

VII.  THE HALF-WATER CLAIM CAUSED INJURY TO THE PLAINTIFFS ................. 21

VIII. PLAINTIFFS ARE ENTITLED TO STATUTORY DAMAGES ................................. 28

CONCLUSION.................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ............................................................................................. 3

*Brown v. Eli Lilly & Co.*,
654 F.3d 347 (2d Cir. 2011) ............................................................................... 3

*Business Trends Analysts, Inc. v. The Freedonia Group, Inc.*,
887 F.2d 399 (2d Cir. 1989) ............................................................................. 21

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................................ 3

*Dawson v. Cnty. of Westchester*,
373 F.3d 265 (2d Cir. 2004) ............................................................................... 3

*Ebin v. Kangadis  Food Inc.*,
2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) ................................................. 21

*Geanacopoulos v. Philip Morris USA Inc.*,
2016 WL 757536 (Mass. Super. Ct. Feb. 24, 2016) ...................................... 22

*In re Scotts EZ Seed Litig.*,
304 F.R.D 397 (S.D.N.Y. 2015). ............................................................ 1, 5, 9, 25

*Kim v. BMW Of Manhattan, Inc.*,
819 N.Y.S.2d 848 (N.Y. Sup. Ct. Dec. 22, 2005) ........................................... 21

*Maurizio v. Goldsmith*,
230 F.3d 518 (2d Cir. 2000) ............................................................................... 1

*Nagle v. Marron*,
663 F.3d 100 (2d Cir. 2011) ............................................................................... 3

*Procter & Gamble Co. v. Ultreo, Inc.*,
574 F. Supp. 2d 339 (S.D.N.Y. 2008) ........................................................... 5, 10

*Psihoyos v. John Wiley & Sons, Inc.*,
2012 WL 5506121 (S.D.N.Y. Nov. 7, 2012)............................................... 21, 29

*Sabre v. First Dominion Capital, LLC*,
2001 WL 1590544 (S.D.N.Y. Dec. 12, 2001) .................................................... 7

*Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*,
   391 F.3d 77 (2d Cir. 2004) ................................................................................ 4

*Shady Grove Orthopedic Assocs. v. Allstate Ins.*,
   559 U.S. 393 (2010) ........................................................................................ 29

*Wilson v. Nw. Mut. Ins. Co.*,
   625 F.3d 54 (2d Cir. 2010) ................................................................................ 3

*Yurman Design, Inc. v. PAJ, Inc.*,
   262 F.3d 101 (2d Cir. 2001) ............................................................................ 29

*Zalaski v. City of Bridgeport Police Dep't*,
   613 F.3d 336 (2d Cir. 2010) .............................................................................. 3

## STATUTES

GBL § 349.................................................................................................... passim

GBL § 349(h) ................................................................................... 1, 28, 29, 30

GBL § 350 ............................................................................................. 1, 4, 5, 9

GBL § 350E-3 .................................................................................. 28, 29, 30

## RULES

Fed. R. Civ. P. 56(a) ...................................................................................... 17

Fed. R. Civ. P. 56(c) ........................................................................................ 3

## I.        INTRODUCTION

Defendants Scotts Miracle-Grow Company, Inc. and The Scotts Company LLC

(collectively, "Scotts") represented EZ Seed would grow 50% thicker than ordinary seed with

half the water.  This representation (the "Half-Water Claim," sometimes also referred to as the

"50% Thicker Claim") appeared on every package of EZ Seed, which stated:

> 50% THICKER WITH HALF THE WATER††
>
> ††Results 32 days after planting; each watered at half the
> recommended rate for ordinary seed.
>
> Results may vary.
>
> *Subject to proper care.

Plaintiffs Arcuri, Eskinazi, Lonardo, Moore and Thomas (the "New York Plaintiffs")

allege the Half-Water Claim is both false and misleading.  On January 26, 2015 this Court

granted their motion to represent a certified class of EZ Seed purchasers in New York (the "New

York Class").  *See In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. Jan 26, 2015).  They

now move for summary judgment on Count VIII (New York's GBL § 349) and Count IX (GBL

§ 350), and seek entry of judgment for statutory damages pursuant to §§ 349(h) and 350-E(3).

To establish their claims under GBL § 349, plaintiffs "must demonstrate that (1) the

defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material

way, and (3) the plaintiff has been injured as a result."  *In re Scotts EZ Seed Litig.*, 304 F.R.D. at

409, quoting *Maurizio v. Goldsmith,* 230 F.3d 518, 521 (2d Cir. 2000).  The GBL § 350 claim

has the same three elements.  *See Maurizio*, 230 F.3d at 522 ("The standard for recovery under

General Business Law § 350, while specific to false advertising, is otherwise identical to section

349.").  Plaintiffs' proof of each of these three elements is uncontroverted.

1

Regarding the first element, Scotts' Director of Marketing for the grass seed business, Tiffany Peoples, admitted the Half-Water Claim was ███████████████████ SOF ¶ 40;[1] *see also* Part III, below.

Regarding the second element, uncontroverted evidence, including a consumer survey commissioned by Scotts itself, █████████████████████████████████ ████████████████████████████████████████. But Scotts admits EZ Seed requires <u>more</u> water than ordinary seed. *See* Part IV, below. The Half-Water Claim is also literally false because the photographs adorning the package to illustrate EZ Seed's superior performance at Half-Water Levels were faked, and because uncontroverted scientific evidence, including at least three field trials, confirms that EZ Seed does not grow 50% thicker than ordinary seed when both are watered at half the recommended rate for ordinary seed, subject to proper care. *See* Parts V and VI, below.

Regarding the third element, uncontroverted evidence confirms that Plaintiffs were injured as a result of the deception because they relied on the Half-Water Claim in purchasing EZ Seed, which did not perform as promised, and also because they paid a price premium attributable to this false and misleading claim. This is confirmed by the admission of Scotts' Director of Marketing, Ms. Peoples, █████████████████████████ █████████████████████████████████████████ ████████ *See* Part VII, below.

## II.   THE SUMMARY JUDGMENT STANDARD

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine dispute as to any material

---

[1] Plaintiffs' Local Rule 56.1 Statement of Material Facts is referenced herein as "SOF."

fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing

law ....  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot

preclude summary judgment.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence upon which a

reasonable jury could return a verdict for the non-moving party.  *See id.* The Court "is not to

resolve disputed issues of fact but to assess whether there are any factual issues to be tried."

*Wilson v. Nw. Mut. Ins. Co.,* 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted).  It is the moving

party's burden to establish the absence of any genuine issue of material fact.  *Zalaski v. City of*

*Bridgeport Police Dep't,* 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party submits evidence that is "merely colorable," summary judgment

may be granted.  *Anderson*, 477 U.S. at 249-50.  The non-moving party "must do more than

simply show that there is some metaphysical doubt as to the material facts, and may not rely on

conclusory allegations or unsubstantiated speculation."  *Brown v. Eli Lilly & Co.,* 654 F.3d 347,

358 (2d Cir. 2011) (citations and internal quotation marks omitted).  The mere existence of a

scintilla of evidence in support of the non-moving party's position is likewise insufficient to

preclude summary judgment; there must be evidence on which the jury could reasonably find for

it.  *Dawson v. Cnty. of Westchester,* 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court resolves all ambiguities and draws all permissible

factual inferences in favor of the non-moving party.  *Nagle v. Marron,* 663 F.3d 100, 105 (2d

Cir. 2011).  If there is any evidence from which a reasonable inference could be drawn in favor

of the opposing party on the issue on which summary judgment is sought, summary judgment is

improper.  *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 83 (2d Cir. 2004).

## III.    THE HALF-WATER CLAIM WAS DIRECTED AT CONSUMERS

The first element of the GBL §§ 349 and 350 claims requires proof that the defendant's deceptive acts were directed at consumers.  In April 2008, Scotts' market research confirmed that ██████████████████████████████████████████████ SOF ¶ 1.  As Scotts' Vice President of Marketing, John Sass, explained, ████████████████████████████████████████████ ████████████████████████████████████████ *Id.* ¶ 2.

The Half-Water Claim appeared prominently on every surface EZ Seed's packaging, front, back, left side, right side, and bottom.  Marchese Decl. Ex. F (10 lb. bag).  It appeared in large bold lettering on the front-center of the package.  *Id.*  It appeared in multiple languages, English and Spanish.  *Id.* ("50% mas denso con la mitad de agua").  It also appeared in photographs, which depicted EZ Seed's superior performance at half-water levels.  *Id.*  These photographs appeared on 3 of 5 surfaces (left, right and back) of the 10 lb. bag.

Scotts' Director of Marketing for Grass Seed, Tiffany Peoples, testified that the Half-Water Claim was ████████████████████ SOF ¶ 40.  Emily Winters, who followed Ms. Peoples as Scotts' Director of Marketing for Grass Seed, ██████████████████████████ ███████████████████ SOF ¶ 755 ("███████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████

Seven of seven plaintiffs in this action testified that the Half-Water Claim was an important factor in their purchase of EZ Seed, and that they would not have purchased EZ Seed in the absence of that claim.  SOF ¶¶ 774-823.

4

All of this evidence is uncontroverted, and there is no genuine issue of material fact with respect to this element of the GBL §§ 349 and 350 claims.

## IV.   CONSUMERS UNDERSTAND THE HALF-WATER CLAIM TO MEAN THAT EZ SEED REQUIRES <u>LESS</u> WATER THAN ORDINARY SEED, BUT SCOTTS ADMITS IT REQUIRES <u>MORE</u> WATER

From a common sense perspective, the phrase "50% Thicker With Half The Water" is a promise that EZ Seed "grows thicker grass with less water than normal grass seed." *In re Scotts EZ Seed Litig.*, 2013 WL 2303727, at *7 (S.D.N.Y. May 22, 2013).  That is how this Court understood and described the Half-Water Claim in its order denying Scotts' motion to dismiss this action.  *See id.*  But the pertinent question is "what does the person to whom the advertisement is addressed find to be the message?"  *Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 339, 345 (S.D.N.Y. 2008).  Here, uncontroverted evidence confirms that a substantial majority of consumers understand the Half-Water Claim to mean that EZ Seed requires <u>less</u> water than ordinary seed, which is false and misleading because EZ Seed in fact requires <u>more</u> water than ordinary seed.

### A.   Consumers Understand The Half-Water Claim To Mean That EZ Seed Requires <u>Less</u> Water Than Ordinary Seed

██████████████████████████████████, *see* SOF ¶¶ 37-39, ████████████████

████████████████████████████████████, *id.* ¶ 43.  Smith-Dahmer

█████████████████████████████████████████████████████████

█████████████████.  *Id.* ¶ 45.  The survey asked "████████████████████

█████████████████████████  *Id.* ¶ 46.

███████████████████████████████████████████████████████████

█████████████████████████████  *Id.* ¶ 47.  ███████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████ *Id.* ¶ 48. ████

███████████████████████████████ *Id.* ¶ 49.  When you put those figures together, █████

███████████████████████████████████████████████████

███████████████████████. *Id.* ¶ 50.

Plaintiffs also engaged a survey expert, Dr. J. Michael Dennis, to conduct a consumer

perception survey to measure purchasers' understanding and expectations about the "50%

Thicker With Half The Water**" claim and its "**" footnote.  SOF ¶ 52.  Dr. Dennis surveyed

███████████████████████████████████████████████████

████. *Id.* ███████████████████████████████████████

██████████████████████████████████ *Id.* ¶ 53.  Dr. Dennis's

findings with regard to purchasers' expectations are summarized in the following table:

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

Marchese Decl. Ex. II, Dennis Decl. at 32.

The results of the Smith-Dahmer survey and Dr. Dennis's survey are highly corroborative.  *See id*. ¶ 42 ███████████████████████████████ █████████████████████████████████████████ ).  These findings are also uncontroverted, since Scotts' experts failed to conduct any survey, failed to review or consider the Smith-Dahmer survey, and failed to review or consider any evidence concerning purchasers' understanding of the Half-Water Claim.  SOF ¶¶ 60-72. [2]

### B.    Scotts Admits EZ Seed Requires <u>More</u> Water Than Ordinary Seed

Each of the consumer expectations found by Dr. Dennis and by the Smith-Dahmer survey is contradicted by Scotts' admissions that EZ Seed requires more water than ordinary seed, not less.   Scotts has made this admission at least three times.

<u>First</u>, Scotts' Director of Turfgrass Research, Dr. Eric Nelson, ███████████████ ██████████████████████████████████████████████████ ██████  SOF ¶ 758.  When Dr. Nelson made that admission, he was speaking as Scotts' Rule 30(b)(6) designee.  *See, e.g.*, *Sabre v. First Dominion Capital, LLC*, 2001 WL 1590544, at *1 (S.D.N.Y. Dec. 12, 2001) ("A 30(b)(6) witness testifies as a representative of the entity, his answers bind the entity and he is responsible for providing all the relevant information known or reasonably available to the entity.").

<u>Second</u>, Scotts Vice President of Marketing, John Sass, ████████████████████ █████████████████████████████████ █ ███████████████████████████ ████████████████

---

[2] Plaintiffs have submitted herewith a *Daubert* motion to preclude Scotts from offering any expert testimony on consumers' understanding of the "50% Thicker" claim.



Marchese Decl. Ex. D, Sass Dep. at 210:10-211:16.

Third and perhaps most conclusively, Scotts revised EZ Seed's directions for use to state

that EZ Seed should be watered until it is ███████████████████████████

███████  SOF ¶ 27.



Marchese Decl. Ex. T.  Scotts recommends watering ordinary seed "as needed to keep the soil

surface moist."  SOF ¶ 80 (quoting Scotts' website).  By definition "moist" means slightly wet,

damp or humid.  "Saturated" means holding the maximum amount of water that can be absorbed.

Watering "until EZ Seed is completely saturated" requires more water than would be required

merely to keep the seed and soil surface "moist."

**C.      The Half-Water Claim Is Misleading**

To prove the Half-Water Claim misleading under GBL §§349-350 requires a showing

that "it was likely to mislead a reasonable consumer acting reasonably under the circumstances."

*In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409.  The testimony of each of the individual plaintiffs

establishes that each acted reasonably and was misled.  *See* SOF ¶¶ 774-823.  ████████████

███████████████████████████████████████████████████████████████

████████████████████████████████. *See, e.g.*, *Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d at 345 (stating the "success of a plaintiff's implied falsity claim usually turns on the persuasiveness of a consumer survey that shows that a substantial percentage of consumers are taking away the message that the plaintiff contends the advertising is conveying." (internal quotation marks omitted); *id.* ("Cases have held that 20% constitutes a substantial percentage of consumers."); *see also id.* at 346 ("The federal standards applicable to false advertising claims are substantially similar to the standards applicable to claims under the New York deceptive trade practices statute.").

The myriad ways that the Half-Water Claim is misleading, based on uncontroverted evidence of consumers' understanding of its meaning, and uncontroverted admissions by Scotts, are summarized in the table below.





## V.   THE PHOTOGRAPHS ON EZ SEED'S PACKAGING WERE FAKED

These photographs purporting to show EZ Seed's superior performance at half-water

levels appeared on each of the packages sold to the Plaintiffs:



SOF ¶ 12.  These same photographs appeared not just once, but on 3 of 5 surfaces (left, right and

back) of the 10 lb. bag.  SOF ¶ 13; Marchese Decl. Ex. J.  These photographs are fakes.



First, the photograph on the left is captioned, in large type, "Scotts® EZ Seed™." ▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. SOF ¶ 18. ▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉. SOF ¶¶ 223-225, 681.

Second, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉. SOF ¶¶ 227-230, 685.

Third, these plots were not irrigated with "half the recommended rate for ordinary seed."

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ SOF ¶¶ 243-682. ▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

SOF ¶ 246.  It was not half the water.  Not even close.

Fourth, while the photo includes a caption stating "subject to proper care," ▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉ SOF ¶¶ 236-241, 684.  These were ▉▉▉▉▉▉▉▉▉▉▉▉ that

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ See Marchese Decl. Ex.

OO, 1/18/16 Karcher Report ¶ 2; see also SOF ¶¶ 236-241, 684.  This was not "proper care."  It

was sabotage.

What these photos depict is a different seed mix (not EZ Seed) watered at more than full

rates compared to ordinary seed thrown on top of the soil and denied proper care.  These

photographs were a ruse.

## VI.    THE HALF-WATER CLAIM IS LITERALLY FALSE

The common sense message of the Half-Water Claim, as understood by the vast majority

of purchasers, is that EZ Seed requires less water than ordinary seed.  That is false and

misleading for all the reasons stated above.  But if we drill down to the fine-print footnotes and literal meaning of the text, the claim is just plain false.

### A.   The Literal Meaning Of The Half-Water Claim

The full text of the claim, as it appeared on every package of EZ Seed sold to class members, is:

> 50% THICKER WITH HALF THE WATER††
>
> ††Results 32 days after planting; each watered at half the recommended rate for ordinary seed.
>
> Results may vary.
>
> *Subject to proper care.

SOF ¶¶ 12-17.

As the Court observed during the pre-motion conference, "That's a lot of information packed into those 15 words or so."  6/10/16 Hearing Tr. at 12:14-15.  But each of the key phrases has a precise scientific meaning which is established by uncontroverted evidence.

### 1.   What Does "50% Thicker" Mean?



. SOF ¶¶ 73-77.  This is typically measured in one of two ways.

SOF ¶ 76.

SOF ¶ 77.  This latter method was pioneered and published by Dr. Douglas Karcher, a turfgrass scientist retained by Plaintiffs to give expert testimony in the case, and is now a standard technique in this field.  SOF ¶ 77.

. *See* SOF ¶ 77.

"50% Thicker" is simply a matter of math.  The grass in an area with 30 seedlings is 50% thicker than the same area with only 20 seedlings.  Grass that has grown to 30% green cover is 50% Thicker than grass that has grown to only 20% green cover.

**2.     What Does "Ordinary Seed" Mean?**

███████████████████████████████████████████████████████████████████

SOF ¶ 78.

**3.     What Does The "Recommended Rate For Ordinary Seed" Mean?**

Scotts recommends watering ordinary seed ██████████████████████████████

████████████████   SOF ¶¶ 80-81.  This is an industry standard recommendation that is widely accepted by turfgrass scientists.  SOF ¶ 82.

████████████████████████████████████████████████████

████████████   SOF ¶¶ 88-91.  ████████████████████████████████████

███████████████████████████████████████  *Id.*  ████████████████

███████████████████████████████████████████████████████

████████████████████████.  SOF ¶ 91.

Scotts, however, did not measure or estimate ET for its field trials of EZ Seed.  Instead ████████████████████████████████████████████████████████.  SOF ¶ 88 (testimony of Mike Faust, manager of Scotts' research facility in Gervais, Oregon).  But, as Dr. Karcher explains, ███████████████████████████████████████████

████████████   *See* Marchese Decl. Ex. YY, 6/30/16 Karcher Decl. ¶ 21 ████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

At first blush this seems like a disputed issue of fact that would preclude summary judgment.  Scotts' scientists say ████████████ is a good proxy for the recommended rate and the

14

Plaintiffs' retained expert, Dr. Karcher, ███████████████.  On the surface, this looks like a battle of experts.  A gray area.  But in reality it's black-and-white.

It is undisputed that the recommended rate is ████████████████████ SOF ¶ 82. The amount of water needed to do that is not a matter of judgment.  It is determined based on weather data and a mathematical formula.  Indeed, the United States Department of Agriculture publishes weather data and formulas for calculating ET for this very purpose.  This is illustrated by one of the publications Scotts' counsel introduced during Dr.  Karcher's deposition:





Marchese Decl. Ex. TT, Karcher Dep. at 276:19-278:22.  *See also* SOF ¶¶ 93-101.



Marchese Decl. Ex. TT, Karcher Dep. at 281:19-282:17.  *See also* SOF ¶¶ 93-101.

This government-sponsored publication notes that the "standardized computation procedure" for calculating reference ET using the Penman-Monteith equation "has been adopted by the research community, most manufacturers of weather stations, and the public weather networks."   SOF ¶ 99; Marchese Decl. Ex. AAA, at 4; Marchese Decl. Ex. TT, Karcher Dep. at 283:9-15.  Private companies that manufacture and sell turfgrass irrigation systems similarly compile and distribute weather data and formulas for ET-based irrigation of turfgrass.  Rain Master Control Systems, which sells turfgrass irrigation equipment, "has compiled evapotranspiration data for every ZIP code in the United States."  SOF ¶ 102.   As Dr. Karcher explains:

███████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████   Marchese Decl. Ex. TT, Karcher Dep. at 286:18-287:1.

So again, the amount of water needed to "keep the soil surface moist" is not a matter of judgment.  It cannot be the subject of a "genuine dispute" in terms for Fed. R. Civ. P. 56 (a).  It is an amount that turfgrass professionals, university scientists, the American Society of Civil Engineers, and the United States Department of Agriculture all agree should be calculated from weather data and a standardized formula.  *See* SOF ¶¶ 93-101.

### 4.   What Does "Subject To Proper Care" Mean?

The * footnote to the Half-Water Claim states "subject to proper care."  SOF ¶ 17.  Dr. Nelson testified at his deposition ████████████████████████████████████ ██████████████████████████████████.  SOF ¶ 105.

Proper care for EZ Seed and ordinary seed differs in three important respects.  <u>First</u>, ordinary seed must be ████████████████████████████████.  SOF ¶ 107.  ██ ████████████████████  SOF ¶162.  <u>Second</u>, proper care for establishing new turfgrass from ordinary seed requires the use of a ███████████.  SOF ¶ 106.  Because EZ Seed contains

17

fertilizer, it does not require additional starter fertilizer.  SOF ¶ 3.  <u>Third</u>, proper care for ordinary

seed requires the application of a ███████████████████████████████████████

███████████████████████████████████████.  SOF ¶ 108.  Because EZ

Seed contains coir mulch, it does not require additional straw mulch.  SOF ¶ 3.

**B.      The Half-Water Claim Is False**

Six categories of uncontroverted evidence establish that EZ Seed does not grow 50%

thicker than ordinary seed when both are watered at half the recommended rate for ordinary seed,

subject to proper care.

<u>First</u>, scientific testing by three research teams at three testing sites confirms the falsity of

the Half-Water Claim.

1.      In September 2009 the head of Scotts' lawn seed research group,

Dr. Eric Nelson, commissioned a study by Dr. Jason K. Kruse of the University of

Florida ███████████████████████████████████████

███████████████████████████████ SOF ¶ 114.  According to

Dr. Kruse, at this irrigation level EZ Seed grew to ████████████████████

████████████████████████████.  *See* SOF ¶ 115;

Marchese Decl. Ex. TT, Karcher Dep. at 297:1-25.

2.      In October 2010 the half-water study conducted by Kenneth W.

Hignight at NexGen's facility in Oregon showed that EZ Seed ████████████████

███████████████████████████████████████

███████████████████████████████.  SOF ¶¶ 116-

123.

3.      In September 2015 Dr. Douglas E. Karcher conducted a study at

the University of Arkansas, which showed ████████████████████████

18

██████████████████████████████████████████████████████

████   SOF ¶¶ 124-131.

Second, even if one were to accept Mr. Faust's ████████████████████████████

████████████████   Mr. Faust admitted in an internal email ███████████████████████

████████████████████████████████████████████████████████████████

SOF ¶¶ 109-112.  Moreover, Scotts has never tested ██████████████████████████

██████████████████████████   *See* SOF ¶¶ 132-733.

Third, Scotts has never tested EZ Seed at half-water levels.  Scotts produced reports of 18

studies, each of which was thoroughly analyzed in ¶¶ 132-685 of the Plaintiffs' Local Rule 56.1

Statement of Facts, submitted herewith.  Many of those studies ████████████████████████

████████   *See* SOF ¶ 681.  In many of those studies, ██████████████████████████

████████████████████████████████████████   Marchese Decl. Ex. OO, Karcher Report at

15; *see also* SOF ¶ 683.  Where it was measured, ████████████████████████████████

████████████████████████████████████████████.  *See* SOF ¶ 682.

Fourth, Scotts never tested EZ Seed against ordinary seed "subject to proper care."  SOF

¶ 684.  In each of Scotts 18 trials, the ordinary seed was sabotaged by "████████████████████

████████████████████████████████████████████████████████████████

████████████████   Marchese Decl. Ex. OO, Karcher Report ¶ 2; *see also* SOF ¶ 684.  These

included ██████████████████████████████████████████.  *See id*.

Fifth, Dr. Hopkins' test, conducted for purposes of this litigation, also failed to test EZ

Seed at half-water levels.  The most obvious failure is that t████████████████████████████████

████████████; instead Dr. Hopkins █████████████████████████████████████████

████████████   *See* SOF ¶ 688 █████████████████████████████████████████████,

19

███████████████████████████████████ Marchese Decl. Ex. Y, Hopkins Report. ¶ 176

(explaining that Dr. Hopkins began his tests "████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████). He did not plant these components

in the earth; instead he planted them in ████████████████████████████████

████████████████████████. SOF ¶¶ 689-690. He did not water them at half-

water levels; instead he ████████████████████████████████████████

█████████████████████████████████████████ SOF ¶¶ 691-

727. ███████████████████████████████████████████

███████████████████████████████████████████████████████

████████ Marchese Decl. Ex. YY, 6/30/16 Karcher Decl. ¶ 20. Dr. Hopkins' bizarre saturation

study cannot raise a triable issue of fact because it says nothing about EZ Seed's performance at

half-water levels.[3]

Sixth, by changing the watering directions on EZ Seed's label to require that EZ Seed be

watered until it is "completely saturated and no more water is being absorbed," SOF ¶ 27, Scotts

effectively conceded the falsity of the Half-Water Claim. There is no way the coir mulch can be

"completely saturated" with half the recommended rate of water for ordinary seed. As a matter

of physics, this is indisputable. Consider again Mr. Sass's testimony:

████  ██████████████████████████████

████  ████████████

████

████  ███████████████████████████████
      ██████████████████████████

---

[3] Plaintiffs have submitted herewith a *Daubert* motion to preclude Dr. Hopkins from offering any
expert testimony concerning EZ Seed's performance at half-water levels.

■    ■■■■■■■.

Marchese Decl. Ex. D, Sass Dep. at 210:23-211:16.

## VII.    THE HALF-WATER CLAIM CAUSED INJURY TO THE PLAINTIFFS

The third element of the GBL §§ 349 and 350 claims requires proof that the plaintiff has been injured as a result of the deceptive act.  Plaintiffs Arcuri, Eskinazi, Lonardo, Moore and Thomas have established their individual injuries through testimony that they would not have bought EZ Seed in the absence of the Half-Water Claim, that they used the product as directed, and that it did not grow grass.  SOF ¶¶ 774-823.  *See also Ebin v. Kangadis  Food Inc.*, 2013 WL 6504547, at *5 (S.D.N.Y. Dec. 11, 2013) (Rakoff, J.) ("The deception is the false and misleading label, and the injury is the purchase price.").

Plaintiffs also were injured by paying a price premium for EZ Seed attributable to the Half-Water Claim.  The question of the amount of the price premium solely attributable to the Half-Water Claim is a difficult one, requiring expert analysis controlling for all other product features and market conditions.  But this motion does not present that difficult question.

Plaintiffs do not seek actual damages on this motion.  They seek only statutory damages, which the Second Circuit describes as "an automatic measure of recovery to plaintiffs regardless of injury or profits."  *Business Trends Analysts, Inc. v. The Freedonia Group, Inc.*, 887 F.2d 399, 406 (2d Cir. 1989).  Statutory damages are designed precisely for the situations in which "proof of damages … is difficult or impossible."  *Id.*; *see also Psihoyos v. John Wiley & Sons, Inc.*, 2012 WL 5506121, at *3 (S.D.N.Y. Nov. 7, 2012) (Oetken, J.) ("[S]tatutory damages are designed precisely for instances where actual harm is difficult or impossible to calculate."); *Kim v. BMW Of Manhattan, Inc.*, 819 N.Y.S.2d 848, at *3 (N.Y. Sup. Ct. Dec. 22, 2005) (granting summary judgment for plaintiff on GBL § 349 claim and awarding $50 statutory damages, where

21

plaintiffs "have not alleged pecuniary damages"). So the burden on plaintiffs to prove injury in support of this motion is quite low. And it is easily met with uncontroverted evidence that EZ Seed was priced at a premium, and that at least some portion of that premium was attributable to the Half-Water Claim.

First, from a common sense perspective, Scotts would not have emphasized this claim so prominently unless it had some value. Scotts emphasized the Half-Water Claim on the front, back, left, right and bottom of every 10 lb. bag of EZ Seed. SOF ¶ 11. The top is a ziploc seal which cannot accommodate any words or graphics. Scotts put it on 5 of 5 surfaces on the bag. *Id*. Its on the front center in large-type bold capital letters, in both English and Spanish. SOF ¶ 9 ("50% mas denso con la mitad de agua"). Its also depicted photographically, not once, but three times, on the left, right and back of the bag. SOF ¶¶ 12-13. Scotts' heavy emphasis on the claim supports a "common sense inference" that it had value. *See, e.g.*, *Geanacopoulos v. Philip Morris USA Inc.*, 2016 WL 757536, at * 15 (Mass. Super. Ct. Feb. 24, 2016) ("I find that the Marlboro Lights cigarettes sold during the class period were less safe to the smoker than the Marlboro lights reasonable purchasers thought they were purchasing. I find that a diminution in value is a common sense inference.").

But here we need not rely on this common sense inference alone. Uncontroverted evidence shows that Scotts knew this was an important claim that consumers valued. *See* SOF



¶ 1 ██████████████████████████████████████████ ██████████████); *id.* ¶ 2 ██████████████████████████ █████████████████████████████████████ Moreover, Scotts' Director of Marketing for Grass Seed, Tiffany Peoples, testified that Scotts ████████████████ ██████████████████████████████████ SOF ¶ 829. This evidence

confirms that both sides of the transaction, the buyer and the seller, assigned at least some value to the Half-Water Claim.

Also undisputed is the fact that EZ Seed was a premium priced product.  Several of Scotts' witnesses and internal documents refer to the price premium for EZ Seed.  SOF ¶¶ 824-827.  But Scotts contends the mere fact that EZ Seed was premium-priced does not mean that the premium can be attributed to the Half-Water Claim.  As a matter of logic, this point is well taken.  As a matter of common sense, if the product is premium priced, it seems likely that at least some portion of the premium is attributable to the claim featured so prominently on every surface of the package, and which both the buyer and seller are known to value.  But again we need not rely on common sense alone, since Ms. Peoples, who set the price for EZ Seed, *see* SOF ¶ 824, addressed this matter directly in her deposition testimony:





Marchese Decl. Ex. CC, Peoples Dep. at 141:8-143:11; SOF ¶¶ 832-833.

So at least these four facts are undisputed:

[1]    The Half-Water Claim appears on every surface of the 10 lb. bag.  SOF ¶ 11.

[2]    The Half-Water Claim addresses the ██████████ ███████████████████ SOF ¶ 2.

[3]    EZ Seed was ██████████  SOF ¶¶ 824-827.

[4]    The Half-Water Claim contributed to Ms. People's decision to price EZ Seed at a premium.  SOF ¶¶ 828-834.

These four facts alone are sufficient to support a finding of injury based on the existence of a price premium attributable to the Half-Water Claim.

Scotts' retained experts do not contest any of these facts.  Nor do they express any opinion on the existence of a price premium attributable to the Half-Water Claim.  Each of them has carefully tip-toed to avoid addressing this issue directly.  *See* SOF ¶¶ 835-841.  Their uncomfortable tip-toe dance was best illustrated during the deposition of Scotts' main economic expert, Dr. Jesse David, who repeatedly disavowed any attempt to address the question:



Marchese Decl. Ex. DD, David Dep. at 76:2-22; SOF ¶ 835.



Marchese Decl. Ex. DD, David Dep. at 106:9-18; SOF ¶ 835.

Marchese Decl. Ex. DD, David Dep. at 112:17-113:3; SOF ¶ 835

As this Court pointed out in its class certification order, any methodology for determining a price premium in this case "must control for product features other than the 50% thicker claim when calculating the price premium." *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 413. This is exactly what Dr. David did not do. Instead, he did something very different: he compared EZ Seed with the Half-Water Claim to the later version that included the additional claim "Holds Up to 6X Its Weight In Water" (the "6X Claim"). *See* SOF ¶ 839.



Marchese Decl. Ex. DD, David Dep. at 106:3-6.

Marchese Decl. Ex. DD, David Dep. at 287:6-13; SOF ¶ 839

This is why Dr. David repeatedly denied that he had made any attempt to determine the price premium attributable to the Half-Water Claim ███████████████████  He simply did not do the assignment.  That is why he cannot, consistent with *Comcast* or *Daubert*, offer any opinion on the existence or amount of the price premium solely attributable to the Half-Water Claim.[4]

One aspect of Dr. David's analysis merits a special rebuke: his purported before-and-after pricing comparison.  This analysis is set forth in Exhibit 2 to Dr. David's report, which is reproduced here:



This is the analysis that Mr. Danón referenced at the pre-motion conference where he stated

"That [50% Thicker Claim] was removed and the product has continued to sell in more volumes

_____

[4] Plaintiffs have submitted herewith a *Daubert* motion to preclude Scotts from offering any expert testimony on the existence or amount of the price premium attributable to the 50% Thicker claim.

at a higher price." Marchese Decl. Ex. IIII, 6/10/16 Hearing Tr. at 41:25-42:1.  On the surface,

this argument sounds sensible.  *See id.* at 18:6 ("That sounds sensible to me.").  The only

problem is that Scotts' before-and-after analysis is false in every respect.

 <u>First</u>, the premise is false.  ████████████████████████████████

████████████████  But that claim was still in use.  ████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████. *See* SOF ¶¶ 28-33.



Marchese Decl. Ex. W (photo taken November 2015 at Home Depot location in Hawthorne,

New York).  So the before-and-after analysis fails at the first step.  There is no after.

 <u>Second</u>, what actually happened in 2013 was not the removal of the 50% Thicker Claim,

which continues in use to this day.  ██████████████████████████████████████

██████████████████████████████████████████. SOF ¶¶ 34-36.  So

where Dr. David marked the post-January 2014 time period as ████████████████ an accurate

description would have marked it ████████████████████████████

<u>Third</u>, the product did not "sell in more volumes" in the post-January 2014 time-period, as Mr. Danón stated.  *See* Marchese Decl. Ex. IIII, 6/10/16 Hearing Tr. at 41:25-42:1.   In fact,

██████████████████████████████████████████. Marchese Decl. Ex.

JJJJ, 6/30/16 Weir Decl. ¶ 21; *see also* Marchese Decl. Ex. DD, David Dep. at 268:23-269:6 ██

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████

<u>Fourth</u>, as a matter of coincidence, ████████████████████████

██. SOF ¶¶ 846-849.

Dr. David's before-and-after analysis did not control for any of these variables.  Thus he

admitted at his deposition ███████████████████████████████████

████████████████████████████

██     ███████████████████████████

        ██████████████████████████

        ██████████████████████████

        ████████████

██     ██████████████████████████

Marchese Decl. Ex. DD, David Dep. at 239:6-13; SOF ¶¶ 842-849.

## VIII.   PLAINTIFFS ARE ENTITLED TO STATUTORY DAMAGES

GBL § 349(h) provides for statutory damages of $50 per violation and GBL § 350E-3 provides for statutory damages of $500 per violation.  During the pre-motion conference the Court expressed a concern that awarding these amounts of statutory damages "just seems outlandish" because the amounts are much greater than the profits Scotts made on the fraudulent sales.  Marchese Decl. Ex. IIII, 6/10/16 Hearing Tr. at 23:11-12.  Respectfully, the law is quite clear on this point.  GBL §§ 349(h) and 350E-3 do not contain any limitation on the award of

28

statutory damages based on the defendants' profits, or the proportionality of statutory damages to actual damages.

> The Second Circuit has explained that "statutory damages are not meant to be merely compensatory or restitutionary," meaning that … a verdict should not be reversed solely because it "bears little relationship" to the plaintiff's actual damages. *Yurman Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 113 (2d Cir. 2001). … [S]tatutory damages are by definition a substitute for unproven and unprovable damages. It therefore makes no sense to consider the disparity between actual harm and an award of statutory damages when statutory damages are designed precisely for instances where actual harm is difficult or impossible to calculate.

*Psihoyos*, 2012 WL 5506121, at *3 (internal quotations and citations omitted).

The text of GBL §§ 349(h) and 350E-3 state the amount of statutory damages available. The Supreme Court of the United States has ruled these damages are available in class actions in federal court. *Shady Grove Orthopedic Assocs. v. Allstate Ins.*, 559 U.S. 393, 416 (2010). The Second Circuit has held there is no requirement for proportionality between actual and statutory damages. *Yurman Design, Inc.,* 262 F.3d at 113-14. We trust the Court will set aside its initial skepticism and apply the law consistent with these authorities.

The award of statutory damage may seem like a harsh sanction, but it is well deserved. On September 10, 2012, the Scotts Miracle-Gro Company pleaded guilty and was convicted of 11 criminal counts of falsifying documents submitted to government authorities, distributing misbranded products, and related crimes. SOF ¶ 747. As punishment for those crimes, Scotts was fined $4 million. SOF ¶ 751. Undeterred, Scotts committed essentially the same fraud again in this very case, when it submitted falsified documents to the California Department of Food and Agriculture (CDFA). SOF ¶¶ 734-746. ██████████████████████

████████████████████████. *See* SOF ¶ 735. ██████████████████████. SOF ¶ 736

████████████████████████████ SOF ¶ 737. ██████████████

29

██████████. SOF ¶¶ 738-739.  When Scotts submitted these falsified documents to the CDFA it repeated the same criminal conduct for which it was convicted in *United States v. The Scotts Miracle-Gro Company*, Case No. 2:12-cr-00024-JLG (S.D. Ohio).

The fraud Scotts committed here was more far-reaching and more egregious.  Scotts knew the Half-Water Claim was false, but was intent on making that claim anyway.  Scotts put fake photographs on the product.  *See supra* Part V.  Scotts conducted ██ trials that were rigged to make them appear to support the claim.  ██████████████████████.  *See* SOF ¶ 681.  ███████████████████████  ████████████████████ ████████████████████████  *See* SOF ¶¶ 132-680.  These could not have been innocent mistakes.  Professional turfgrass scientists like Dr. Nelson and Mr. Faust cannot make these errors ██ times in a row.  They know better.  This was a massive scam that defrauded nearly a million EZ Seed purchasers in New York.  Our Legislature imposed the statutory damages remedies in GBL §§ 349(h) and 350E-3 to punish and deter exactly this type of conduct.  If the sanction is harsh, then so be it.  The Scotts Miracle-Gro Company is a convicted criminal, and now a recidivist.  Justice here requires a strong remedy.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their motion for summary judgment on Counts VIII and IX and respectfully request entry of judgment in the total amount of $550 apiece for statutory damages on their individual claims, and for $550 multiplied by the 992,358 units sold in New York, SOF ¶ 852, for statutory damages of $545,785,900 on the New York Class claims.

30

Dated:  June 30, 2016

Respectfully submitted,


By:      /s/ Scott A. Bursor
           Scott A. Bursor

**BURSOR & FISHER, P.A.**
Scott A. Bursor
Joseph I. Marchese
888 Seventh Ave
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
           jmarchese@bursor.com

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
Timothy J. Peter
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone:  (212) 983-9330
Facsimile:  (212) 983-9331
Email:  nfaruqi@faruqilaw.com
           tpeter@faruqilaw.com

*Class Counsel*

31