**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re Scotts EZ Seed Litigation | Civil Action No. 12-CV-4727 (VB) |
|---|---|

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO PRECLUDE BRYAN HOPKINS FROM OFFERING EXPERT TESTIMONY

Dated: June 30, 2016

**BURSOR & FISHER, P.A.**
Scott A. Bursor
Joseph I. Marchese
888 Seventh Ave
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: scott@bursor.com
jmarchese@bursor.com

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
Timothy Peter
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
Email: nfaruqi@faruqilaw.com
tpeter@faruqilaw.com

*Class Counsel*

# TABLE OF CONTENTS

PAGE(S)

I. INTRODUCTION ....................................................................................................1

II. THE LEGAL STANDARD FOR THE ADMISSIBILITY OF EXPERT TESTIMONY .......1

III. DR. HOPKINS' REPORT DOES NOT COMPLY WITH RULE 26 ..................................2

IV. DR. HOPKINS IS NOT QUALIFIED AS AN EXPERT IN TURFGRASS SCIENCE .......3

V. DR. HOPKINS CANNOT OPINE ON THE PERFORMANCE OF EZ SEED AT HALF-WATER LEVELS BECAUSE [REDACTED] [REDACTED] 4

A. Dr. Hopkins [REDACTED] ....................................................5

B. Dr. Hopkins [REDACTED] [REDACTED] ....................................................6

C. Dr. Hopkins [REDACTED] .........6

1. The Recommended Rate of Water for Ordinary Seed .....................................7

2. [REDACTED] ..7

3. Dr. Hopkins' "Saturation Approach" ....................................................8

4. Dr. Hopkins' Water Loss Method ....................................................9

5. Dr. Hopkins' Tests Cannot Be Replicated ....................................................10

VI. DR. HOPKINS CANNOT OPINE ON ANY OF THE SCOTTS' OR KENNETH HIGNIGHT'S TESTING BECAUSE HE DID NOT REVIEW THOSE TESTS.............11

VII. CONCLUSION ....................................................................................................12

## TABLE OF AUTHORITIES

**PAGE(S)**

### CASES

*Ascher v. Target Corp.*,
522 F. Supp. 2d 452 (E.D.N.Y. 2007) ..... 4

*Baker v. Urban Outfitters, Inc.*,
254 F.Supp.2d 346 (S.D.N.Y. 2003) ..... 2, 3

*Barban v. Rheem Textile Systems, Inc.*,
2005 U.S. Dist. LEXIS 5996 (E.D.N.Y. Feb. 11, 2005) ..... 4

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ..... 1, 2

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) ..... 2, 10, 11

*Kass v. W. Bend Co.*,
2004 WL 2475606 (E.D.N.Y. Nov. 4, 2004) ..... 2

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) ..... 2

*Lava Trading, Inc. v. Hardford Fire Ins. Co.*,
2005 U.S. Dist. LEXIS 4566 (S.D.N.Y. Feb. 14, 2005) ..... 10

*Raskin v. Wyatt Co.*,
125 F.3d 55 (2d Cir. 1997) ..... 1, 4

*Russo v. Keough's Turn of the River Hardware, LLC*,
2012 WL 4466626 (S.D.N.Y. Sept. 25, 2012) ..... 6

*Trumps v. Toastmaster, Inc.*,
969 F. Supp. 247 (S.D.N.Y. 1997) ..... 3, 4

*Zenith Elecs. Corp.*,
395 F.3d 416 (7th Cir. 2005) ..... 10

### RULES

Fed. R. Civ. P. 26 ..... 3

Fed. R. Civ. P. 26(a)(2)(B)(v) ..... 2

Fed. R. Evid. 702 ..... 1, 3, 5

## I. INTRODUCTION

Defendants retained Dr. Bryan Hopkins, a [redacted] for the following reasons" (a) to evaluate whether EZ Seed is capable of growing grass; (b) to opine on the validity of EZ Seed's Half-Water Claim, and (c) to comment on Dr. Karcher's EZ Seed establishment trial and on his analysis of trials conducted by Scotts and Kenneth Hignight.

Dr. Hopkins is not qualified to offer expert testimony as a Turfgrass Scientist in this matter. Moreoever, Dr. Hopkins' testing methodologies are irrelevant and unreliable to assist with illuminating the facts and issues at hand. Dr. Hopkins' studies [redacted] as [redacted]. Moreoever, he [redacted] EZ Seed. [redacted] Finally, Dr. Hopkins failed to review any of Scotts' or Kenneth Hignight's underlying test reports before offering criticism of an analysis of those tests performed by Plaintiffs' expert, Dr. Douglas Karcher. For the reasons set forth herein, the Court should preclude the expert testimony from Defendants' expert, Dr. Hopkins.

## II. THE LEGAL STANDARD FOR THE ADMISSIBILITY OF EXPERT TESTIMONY

Rule 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's testimony (1) is based on sufficient facts or data; (2) is the product of reliable principles and methods; and (3) has reliably applied the principles and methods to the facts of the case. *See* Fed. R. Evid. 702. Under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993), trial courts serve as gatekeepers for expert testimony. It is appropriate for district courts to decide questions regarding the admissibility of expert testimony on summary judgment. *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997).

"Rule 702 requires a trial court to make an initial determination as to whether the proposed witness qualifies as an expert. If this threshold requirement is met, then a court must inquire into whether the scientific, technical or other specialized testimony provided by that expert is both relevant and reliable." *Baker v. Urban Outfitters, Inc.*, 254 F.Supp.2d 346, 352-53 (S.D.N.Y. 2003).

The Court must ensure any and all scientific testimony or evidence admitted is not only relevant, but reliable. *See Kass v. W. Bend Co.*, 2004 WL 2475606, at *4 (E.D.N.Y. Nov. 4, 2004). "In *Daubert*, the Supreme Court articulated four factors pertinent to determining the reliability of an expert's reasoning or methodology: (1) whether the theory or technique relied on has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community." *Id.* However, these factors do not constitute a definitive checklist or test and the admissibility of expert testimony depends on the particular circumstances of the case. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 150 (1999).

The proponent of expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d at 353. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Id.* (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

## III. DR. HOPKINS' REPORT DOES NOT COMPLY WITH RULE 26

Rule 26(a)(2)(B) requires that an expert report contain "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition." Fed. R.

Civ. P. 26(a)(2)(B)(v). Dr. Hopkins conceded that his expert report does not include this required list. Marchese Decl. Ex. Z, Hopkins Dep. at 92:15-93:2 ([redacted]); *see generally* Marchese Decl. Ex. Y, Hopkins Report. Thus, his expert report should be stricken for failure to comply with Rule 26's requirement for expert witnesses who must provide written reports.

## IV. DR. HOPKINS IS NOT QUALIFIED AS AN EXPERT IN TURFGRASS SCIENCE

Rule 702 requires a court to make an initial determination as to the qualification of an expert. *Baker*, 254 F. Supp. 2d at 352-53. Dr. Hopkins does not possess the requisite knowledge, skills, training, expertise, or experience to testify as a Turfgrass Science expert in this matter.

Dr. Hopkins' expert report contains basic errors regarding Turfgrass Science that expose his limited knowledge, training, work experience, and research activity in the Turfgrass Science field. Marchese Declaration Ex. YY, Declaration of Douglas E. Karcher, Ph.D., dated June 30, 2016 ("Karcher Decl.") ¶ 4. For example, at Paragraph 12 of his report, Dr. Hopkins [redacted]. *See id.* In addition, [redacted] *See id.* ¶ 5. These are glaring errors of basic turfgrass physiology that would cause a Ph.D. candidate to fail his or her doctoral exam. *See id.* ¶ 6. Standing alone, these errors demonstrate Dr. Hopkins' insufficient knowledge, skills, training and expertise to qualify as a Turfgrass Science expert in this case.

In fact, Dr. Hopkins admitted that he is a [redacted]. Marchese Decl. Ex. Z, Hopkins Dep. at 31:6-19. But this case is not about potatoes. It is about a combination grass seed product. *See Trumps v. Toastmaster, Inc.*, 969 F. Supp. 247,

252 (S.D.N.Y. 1997) (holding that plaintiff's expert was unqualified to testify regarding electrical engineering because the proffered expert was a mechanical engineer).

Notably, Dr. Hopkins has [redacted] Marchese Decl. Ex. Z, Hopkins Dep. at 47:14-17. However, he has been awarded many research grants and awards from various potato commissions and research agencies. *Id*. at 45:18-46:5. Furthermore, the majority of Dr. Hopkins' experience as set forth in his resume does not relate to turfgrass research. *Id*. at Hopkins Dep. at 52:7-10; Marchese Decl. Ex.Y; Hopkins Report at Appendix. *See Ascher v. Target Corp.*, 522 F. Supp. 2d 452, 459 (E.D.N.Y. 2007) (finding expert was not qualified to testify about safety in retail environment because of the lack of training or expertise in that area in his resume or expert report).

Prior to this case, Dr. Hopkins has never been retained as an expert in a litigation regarding a grass seed product or a combination grass seed product. Marchese Decl. Ex. Z, Hopkins Dep. at 56:13-18. Nor has Dr. Hopkins has conducted research trials for a grass seed product or a combination grass seed product in any litigation. *Id*. at 56:19-23. He has, however, served as an expert in a prior litigation as a potato specialist. *Id*. at 30:4-31:9. *See Barban v. Rheem Textile Systems, Inc*., 2005 U.S. Dist. LEXIS 5996, at *4 (E.D.N.Y. Feb. 11, 2005) (precluding expert testimony regarding laundry machines where the expert never provided testimony, conducted research, or designed safety features specific to the dry cleaning industry).

## V. DR. HOPKINS CANNOT OPINE ON THE PERFORMANCE OF EZ SEED AT HALF-WATER LEVELS BECAUSE [redacted]

Dr. Hopkins' testimony should be held inadmissible because he cannot offer any opinions that are relevant to EZ Seed's performance pursuant to the Half-Water Claim. This is because [redacted]

[redacted]. Dr. Hopkins' testimony should also be held inadmissible because he used unreliable, untested and unaccepted methodologies for establishing grass from seed, which he also failed to apply reliably to the issues of this case. *See* Fed. R. Evid. 702.

**A. Dr. Hopkins Did Not Test The EZ Seed Product**

Dr. Hopkins' Report [redacted]. SOF ¶ 686. Instead of testing EZ Seed as packaged and sold, Dr. Hopkins [redacted]. SOF ¶ 688. Dr. Hopkins' study is irrelevant because it [redacted]

Dr. Hopkins' tests of his application of the seed, mulch, and fertilizer components of EZ Seed [redacted] Marchese Decl. Ex. YY, Karcher Decl. ¶ 11. Dr. Hopkins does not expressly state that [redacted]. Marchese Decl. Ex. Y, *see generally* Hopkins Report; Ex. YY, Karcher Decl. ¶ 11. If Dr. Hopkins [redacted], then that likely would allow the seed in his research pots to establish much more favorably than if he had simply tested EZ Seed. *Id.* If Dr. Hopkins did mix the separate ingredients together, he does not state his method for doing so. *See id.* Moreover, it would be difficult, if not impossible, for Dr. Hopkins to replicate, in his own mixture, the uniformity of the mixture found in containers of EZ Seed sold in stores. *See id.* This deviation from testing EZ Seed as sold likely would allow the seed in his research pots to establish more favorably than if he had simply tested EZ Seed. *See id.* [redacted]). Furthermore, because

Dr. Hopkins [REDACTED] [REDACTED], any conclusions that Dr. Hopkins may attempt to draw regarding the performance of EZ seed based on his tests would therefore be "speculative at best." *Russo v. Keough's Turn of the River Hardware, LLC,* 2012 WL 4466626, at *4 (S.D.N.Y. Sept. 25, 2012).

**B. Dr. Hopkins Did Not Plant The Test Materials On The Earth; Instead He Planted His Seed Trials In 3-Inch Pots**

Dr. Hopkins did not plant these test materials into the earth like a typical homeowner would. SOF ¶ 689. Instead, Dr. Hopkins [REDACTED] [REDACTED] [REDACTED]. SOF ¶ 689-90. [REDACTED] [REDACTED] nor does it replicate a consumer's use of the EZ Seed product.

[REDACTED]

Marchese Decl., Ex. Z, Hopkins Dep. at 200:15-22.

Dr. Hopkins' decision to [REDACTED] rendered his study unreliable for testing the Half-Water Claim. *See supra.*

**C. Dr. Hopkins Did Not Test At [REDACTED]**

Dr. Hopkins' failure to [REDACTED] renders his methodologies unreliable and inadmissible.

**1. The Recommended Rate of Water for Ordinary Seed**

EZ Seed's label specified that the Half-Water Claim was based on watering at "half the recommended rate for ordinary seed." SOF ¶ 10. Scotts recommends watering ordinary seed "as needed to keep the soil surface moist." SOF ¶ 80. Scotts also recommends watering new grass so that it is kept "moist but not soggy wet." SOF ¶ 81. Scotts' recommendation that ordinary seed be watered "as needed to keep the soil surface moist … but not soggy wet" is an industry standard. SOF ¶ 82. [REDACTED]. SOF ¶ 83. [REDACTED] SOF ¶ 84, [REDACTED] SOF ¶ 85.

**2. Every Test Pot Was Initially Completely Saturated From The Bottom Up**

Dr. Hopkins used the same method of initial irrigation for all of his test pots. [REDACTED] SOF ¶ 692

Dr. Hopkins had no basis for [REDACTED], either in fact or in science. The watering instructions on every package of EZ Seed sold to Plaintiffs shows water being applied from above. SOF ¶ 697. [REDACTED] SOF ¶ 698. [REDACTED] Marchese Decl. Ex. YY, Karcher Decl. ¶¶ 14, 23.

In addition, the watering instructions on every package of EZ Seed sold to Plaintiffs instruct users to "Water until dark brown." SOF ¶ 699. Dr. Hopkins admitted that [REDACTED]. SOF ¶ 702. Despite this, Dr. Hopkins watered [REDACTED]. SOF ¶ 700.

The watering instructions on every package of EZ Seed sold to Plaintiffs do not instruct users to water EZ Seed to saturation. SOF ¶ 701. In fact, Hopkins wrote that he conducted the initial saturation from the bottom up because [redacted] Marchese Decl. Ex. YY, Karcher Decl. ¶ 15. But that is not true. *See id.* The EZ Seed label with the directions for watering that Hopkins purports to rely on instructs watering only "until EZ Seed is completely saturated and no more water is being absorbed." *See id.* It says nothing of saturating the soil. *See id.* To make matters worse, Dr. Hopkins [redacted] SOF ¶ 693.

Watering to the point of saturation exceeds the recommended rate of watering for ordinary seed. SOF ¶ 707. In fact, turfgrass scientists state that when establishing grass from ordinary seed, saturating the soil should be avoided. Marchese Decl. Ex. YY, Karcher Decl. 17. [redacted]). Moreover, watering ordinary seed to saturation is not an appropriate approach because it deviates from the science-based recommendation of "keeping the soil surface moist."

Therefore, Dr. Hopkins' [redacted] exceeds the recommended rate of watering ordinary seed. Marchese Decl. Ex. YY, Karcher Decl. ¶¶ 20, 21. Dr. Hopkins' reasoning and methodology for the initial watering of his test pots are unfounded, unreliable and inadmissible. And [redacted], it contaminates Dr. Hopkins' entire study.

### 3. Dr. Hopkins' "Saturation Approach"

Dr. Hopkins used two different irrigation methods following his initial irrigation of the test pots: (1) the [redacted] and (2) a [redacted] SOF ¶¶ 703-727. For his [redacted] Dr. Hopkins irrigated the test materials in the pots

[redacted] SOF ¶ 703. More specifically, [redacted] SOF ¶ 706. Dr. Hopkins conceded [redacted]. SOF ¶ 705. He also admitted that [redacted]. Marchese Decl. Ex. Z, Hopkins Dep. at 266:23-267:2. Dr. Hopkins' [redacted]. SOF ¶ 709. It has [redacted]. SOF ¶ 710. [redacted]. SOF ¶ 711. Most importantly, Dr. Hopkins testified that [redacted]ter. SOF ¶¶ 707-708. Therefore, Dr. Hopkins' "saturation approach" is totally unreliable.

**4. <u>Dr. Hopkins' Water Loss Method</u>**

Dr. Hopkins' water loss method dictated that [redacted] SOF ¶ 714. This method also suffers from several flaws, which renders the trials unreliable.

First, the water loss method, when done properly, [redacted] Marchese Decl. Ex. YY, Karcher Decl. ¶ 31. However, Dr. Hopkins' [redacted]

[redacted]. *Id.* ¶¶ 32, 33.

Second, Dr. Hopkins does not cite any authority on turfgrass science that supports the water loss method, nor are there any authority on turfgrass irrigation that recommends Dr. Hopkin's water loss method. SOF ¶ 720; *see generally* Marchese Decl. Ex. Y, Hopkins Report; Marchese Decl. Ex.YY; Karcher Decl. ¶ 37. In fact, Dr. Hopkins admitted [redacted]. SOF ¶ 721; Marchese Decl. Ex. Z, Hopkins Dep. at 271:11-16 [redacted]). The Court is not required to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Therefore, Dr. Hopkins' testimony regarding the performance of EZ Seed at half water levels based data resulting from the water loss method must be precluded.

**5. <u>Dr. Hopkins' Tests Cannot Be Replicated</u>**

Dr. Hopkins' testing fail under *Daubert* because his tests cannot be replicated. *Daubert* requires an expert's opinion to derive from sufficient data, utilizes reliable principles and methodologies and can be reproduced by independent testing. *See e.g., Lava Trading, Inc. v. Hardford Fire Ins. Co.*, 2005 U.S. Dist. LEXIS 4566, at *50 (S.D.N.Y. Feb. 14, 2005) (quoting *Zenith Elecs. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005) (Easterbrook, J.) ("An expert must offer good reason to think that his approach produces an accurate estimate using professional methods, and that estimate must be testable. Someone else using the same data and methods must be able to replicate the result."). Dr. Hopkins reported data of testing [redacted], and he did not clearly state his methodology for such a test. Marchese Decl. Ex. YY, Karcher Decl. ¶ 11. Moreover, by Dr. Hopkins' own admission, the [redacted]

[REDACTED] is [REDACTED] and thus cannot be replicated. Marchese Decl. Ex. Z, Hopkins Dep. at 257:25-258:2; *id*. at 266:19-22. Moreover, Dr. Hopkins [REDACTED] [REDACTED]. SOF ¶ 693; Marchese Decl., Ex. Z, Hopkins Dep. at 250:18-251:13 [REDACTED] [REDACTED] [REDACTED]). Without this information, Dr. Hopkins' tests cannot be replicated, and therefore the results from his tests cannot be relied upon for his testimony regarding EZ Seed's performance at half-water levels.

## VI. DR. HOPKINS CANNOT OPINE ON ANY OF THE SCOTTS' OR KENNETH HIGNIGHT'S TESTING BECAUSE HE DID NOT REVIEW THOSE TESTS

Dr. Hopkins was retained, in part, to respond to Dr. Karcher's expert report that was submitted in this case. Marchese Decl. Ex. Y, Hopkins Report ¶ 8. But Dr. Hopkins' criticisms of the expert report, including Dr. Karcher's analysis of trials conducted by Scotts and Mr. Hignight are unfounded because [REDACTED]. In fact, Dr. Hopkins testified that he [REDACTED] [REDACTED]

[REDACTED]

Marchese Decl., Ex. Z, Hopkins Dep. at 26:16-19.

[REDACTED]

Marchese Decl., Ex. Z, Hopkins Dep. at 126:15-127:12.



Marchese Decl. Ex. Z, Hopkins Dep. at 129:3-8.



Marchese Decl., Ex. Z, Hopkins Dep. at 129:21-130:6.



Marchese Decl., Ex. Z, Hopkins Dep. at 132:5-8.

Ultimately, Dr. Hopkins never received or reviewed the studies prior to criticizing Karcher's analysis of either Scotts' trials or Mr. Hignight's trials, and therefore his opinions concerning those studies should be precluded.

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court preclude Dr. Hopkins from providing expert testimony in this matter.

Dated: June 30, 2016

Respectfully submitted,

By: */s/ Scott A. Bursor*
Scott A. Bursor

**BURSOR & FISHER, P.A.**
Scott A. Bursor
Joseph I. Marchese
888 Seventh Ave
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: scott@bursor.com
jmarchese@bursor.com

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
Timothy Peter
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
Email: nfaruqi@faruqilaw.com
tpeter@faruqilaw.com

*Class Counsel*