**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re Scotts EZ Seed Litigation

Civil Action No. 12-cv-4727 (VB)

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE**
**PROFERRED EXPERT DOUGLAS E. KARCHER, PH.D.**

Dated:  September 1, 2016

**BURSOR & FISHER, P.A.**
Scott A. Bursor
Joseph I. Marchese
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
            jmarchese@bursor.com


**FARUQI & FARUQI, LLP**
Nadeem Faruqi
Timothy J. Peter
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone:  (212) 983-9330
Facsimile:   (212) 983-9331
Email:  nfaruqi@faruqilaw.com
            tpeter@faruqilaw.com

*Class Counsel*

# TABLE OF CONTENTS

**PAGE(s)**

INTRODUCTION ........................................................................................................1

THE FACTS .............................................................................................................2

    A.    The Half Water Claim Is Subject To Proper Care ..................................2

    B.    Dr. Karcher's Test Of The Half Water Claim.........................................2

    C.    Dr. Karcher's Analysis And Critiques Of Scotts' Trials .......................5

    D.    Dr. Karcher's Analysis Of Kenneth Highnight's Trial ..........................6

LEGAL STANDARD.................................................................................................7

ARGUMENT .............................................................................................................9

I.      KARCHER'S TRIAL AND OPINIONS ARE RELIABLE ...........................9

    A.    The Tested EZ Seed Was Viable ...........................................................9

    B.    Karcher's Testing Of EZ Seed Sun & Shade Was Appropriate ...........10

    C.    Karcher Did Not Introduce Any Confounding Variables .....................12

        1.    Karcher Properly Applied Equivalent Rates Of Actual Live Seed...........12

        2.    Karcher Reliably Applied Proper Care To The Test Treatments .............13

II.    KARCHER'S TRIAL AND OPINIONS ARE RELEVANT TO THE HALF WATER CLAIM...................................................................................15

    A.    Reference Evapotranspiration (ETo) Is A Generally Accepted Watering Methodology For Growing Grass From Seed.......................................15

    B.    Karcher Compared Ordinary Seed And EZ Seed When Both Were Subject To Proper Care ......................................................................17

    C.    Applying A "Deep And Thorough Initial Watering" Would Render Karcher's Study Of The Half Water Claim Invalid................................18

III.   KARCHER'S CRITIQUES OF SCOTTS' TRIALS ARE RELIABLE ........................19

IV.   KARCHER'S TRIAL AND OPINIONS ARE NOT UNFAIRLY PREJUDICIAL.........21

CONCLUSION........................................................................................................23

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Ali v. Connick*,
  2016 WL 3002403 (E.D.N.Y. May 23, 2016) ........................................................................ 15

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
  137 F. Supp. 2d 147 (E.D.N.Y. 2001) ................................................................................... 7

*Borawick v. Shay*,
  68 F.3d 597 (2d Cir. 1995)....................................................................................................... 8

*Burke v. TransAm Trucking, Inc.*,
  617 F. Supp. 2d 327 (M.D. Pa. 2009) ............................................................................. 19, 20

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993).............................................................................................................. 7, 8

*George v. Celotex Corp.*,
  914 F.2d 26 (2d Cir. 1990)..................................................................................................... 22

*Highland Capital Mgmt., L.P. v. Schneider*,
  551 F. Supp. 2d 173 (S.D.N.Y. 2008).................................................................................... 22

*In re Fosamax Prod. Liab. Litig.*,
  645 F. Supp. 2d 164 (S.D.N.Y. 2009).................................................................................... 19

*In re Pfizer Inc. Sec. Litig.*,
  819 F.3d 642 (2d Cir. 2016)................................................................................... 8, 9, 10, 12

*In re Zyprexa Prod. Liab. Litig.*,
  489 F. Supp. 2d 230 (E.D.N.Y. 2007) ............................................................................... 8, 22

*Kumho Tire v. Carmichael*,
  526 U.S. 137 (1999)............................................................................................................. 7, 8

*Lippe v. Bairnco Corp.*,
  2002 WL 15630 (S.D.N.Y. Jan. 7, 2002) .............................................................................. 21

*Perry v. Ethan Allen, Inc.*,
  115 F.3d 143 (2d Cir.1997).................................................................................................... 22

*Raskin v. Wyatt Co.*,
  125 F.3d 55 (2nd Cir. 1997)............................................................................................... 8, 21

*United States v. Quattrone*,
  441 F.3d 153 (2d Cir. 2006)................................................................................................... 22

*United States v. Williams*,
  506 F.3d 151 (2d Cir. 2007)..................................................................................................... 7

*Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*,
    571 F.3d 206 (2nd Cir. 2009)..................................................................................................... 8

**RULES**

Fed. R. Evid. 403 ........................................................................................................ 21, 22

Fed. R. Evid. 702 ...................................................................................................... 7, 8, 21

## INTRODUCTION

Scotts' primary criticism of Dr. Karcher's study is that "the EZ Seed Sun and Shade 'flavor' [he] used is not sold in Arkansas precisely because the species in the mix are poorly adapted to the climate."  Scotts' Br. at 15.  But this is false.  Dr. Karcher's grass seed trial tested a 10 pound bag of EZ Seed Sun and Shade (SKU 17528).  Sales records show that Scotts distributed the same SKU 17528 of EZ Seed Sun & Shade into Arkansas for sale.  In fact, Scotts' wholesale invoice records show that Scotts distributed ████████ of this same SKU to Arkansas in 2014 and 2015.  Scotts' wholesale records also show distribution of numerous other SKUs for different size packages of Sun and Shade that were distributed to Arkansas.  And retail sales data from Walmart show sales of EZ Seed Sun and Shade in Arkansas.

Next, Scotts posits that "Dr. Karcher's experimental design failed to account for the possibility of non-viable seed."  Scotts' Br. at 10.  But the EZ Seed that Dr. Karcher tested was viable.  The seed analysis label on the tested EZ Seed showed that a germination test had been conducted on that seed lot.  Moreover, in April 2016, Dr. Karcher confirmed the continued viability of the EZ Seed from his trials by conducting his own seed viability test, which showed near 100% turf coverage.

Dr. Karcher's qualifications are not contested by Scotts.  His testimony is relevant because Dr. Karcher conducted his own trial to test the validity of EZ Seed's Half Water Claim, a central issue in this case.  Dr. Karcher also analyzed and opined on 19 other grass seed trials that tested the Half Water Claim – one by Kenneth Hignight and 18 commissioned by Scotts.  Dr. Karcher's analysis and testing of the Half Water Claim was performed using generally accepted methods for irrigating and establishing turfgrass from seed.  The methods that he used are supported by peer-reviewed academic publications and were reliably applied to the facts of this case.

1

## THE FACTS

**A.      The Half Water Claim Is Subject To Proper Care**

EZ Seed represented that it would grow 50% Thicker With Half The Water (the "Half

Water Claim"):

> 50% THICKER WITH HALF THE WATER††
> ††Results 32 days after planting; each watered at half the recommended rate for ordinary seed.
> Results may vary.
> *Subject to proper care.

As Dr. Nelson testified, 

. SOF ¶ 105.[1]  It is undisputed that proper

care for EZ Seed is different than that for ordinary seed.  Because EZ Seed already contains

mulch and fertilizer, proper care does not require the additional application of either.  *See Id.* ¶ 3.

Instead, proper care for EZ Seed simply requires

Marchese Decl. Ex. WW,

5/29/14 Faust Decl. ¶ 10; SOF ¶ 162.  In contrast, proper care for ordinary seed requires

SOF ¶¶ 106-108; *see*

*also* Marchese Decl. Ex. WW, 5/29/14 Faust Decl. ¶ 9

).

**B.      Dr. Karcher's Test Of The Half Water Claim**

From August 24 through September 25, 2015, Dr. Karcher conducted a 32-day field

experiment in Fayetteville, Arkansas to determine the relative establishment characteristics of EZ

Seed and ordinary grass seed when each was watered at half the recommended rate for ordinary

seed.  *Id.* ¶ 124.  Karcher's objective was

---

[1] Plaintiffs' Local Rule 56.1 Statement is referenced herein as "SOF."

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████ 8/31/16 Declaration of Douglas E. Karcher, Ph.D. ("8/31/16 Karcher Decl.") ¶ 15.

Karcher's trial was designed ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ Marchese Decl. Ex. OO, Karcher Report at 9.

An ordinary seed control treatment ██████████████████████████████

██████████████████████████████████████████████

████████████████████████████████ SOF ¶ 125.  To ensure that

experimental conditions were favorable, Karcher ████████████████████

████████████████████ Marchese Decl. Ex. TT, Karcher Dep. at 198:11-14 ████

██████████████████████████████████████████████

██████████████████████ ).  Proper care includes the application of ████████████

████████████████████████████████████████████

████████ . SOF ¶ 126.  As Karcher explained, these steps for proper care are ████████

████████████████████████████████████████████████████████

Marchese Decl. Ex. TT, Karcher Dep. at 181:7-9.

To determine the amount of water that would be recommended for the ordinary seed

control treatment, ██████████████████████████████████████████

████████████████████████████████ SOF ¶ 127. ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████ Marchese Decl. Ex. OO, Karcher Report at 14; *see also* SOF ¶ 91. ████████████

3

█████████████████████████████████████████████████

██████████ *Id.* █████████████████████████████████████████s.  Marchese Decl. TT,

Karcher Dep. at 280:15-281:8; SOF ¶ 100.  Reference ET "is computed using a meteorological

model known as the Penman-Monteith Equation."  SOF ¶ 96.  "[T]he scientific community …

has developed a standardized computation procedure for estimating reference ET that is based on

the Penman-Monteith Equation."  *Id.* ¶ 98.  "This standardized computation procedure has been

adopted by the research community, most manufacturers of weather stations and the public

weather networks that disseminate reference ET data."  *Id.* ¶ 99.  The American Society of Civil

Engineers recommends that irrigation decisions be based on reference ET.  *Id.* ¶ 100.  As does

the United States Department of Agriculture.  *Id.* ¶ 101.  Accordingly, ████████████████

█████████████████████████████████████████████████

████ *Id.* ¶ 104.

    Using ETo, the ordinary seed control treatment was watered to replace ████████████

████████████████████████████████████████████

████████████████ *Id.* ¶ 128.  In addition to the ordinary seed control, █████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████ *Id.* ¶ 129.  The ordinary seed control treatment ███████████

███████████████████ *Id.* ¶ 130.  The EZ Seed watered at half levels ██████████████████

█████████████████████████████████████████████████

████████████ *Id.* ¶ 131.

### C.    Dr. Karcher's Analysis And Critiques Of Scotts' Trials

In addition to performing his own trial, Karcher also reviewed the 18 studies performed by or on behalf of Scotts.  As Karcher details in his report, throughout these studies

████████████████████████████████████████████████████

████████████████    Marchese Decl. Ex. OO, Karcher Report at 11.  Specifically, there were two main flaws in this regard:  failure to provide proper care to the ordinary seed (i.e., fertilizer, mulch, and raking), and the failure to use proper irrigation practices and apply half water levels.

█████████████████████████████████████████  ████████████

███████████████████████████████████████████████████████

██████████████    8/31/16 Karcher Decl. ¶ 23.  This is a well-accepted practice in the scientific turfgrass community.  SOF ¶ 99; *see also* 8/31/16  Karcher Decl. ¶ 23 ████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████).

Based on his review, Karcher identified the following issues:

- ██████████████████████████████████████
  SOF ¶ 681.

- ██████████████████████████████████████. *Id.* ¶
  682.

- ████████████. *Id.* ¶ 682; *see also* Marchese Decl. Ex. OO,
  Karcher Report at 17-35.

- ████████████████████████████████████████
  ███████████████████████████████████
  ███████████████████    SOF ¶ 683.

- ████████████████████████████████████████
  ██████████████████. *Id.* ¶ 684.



5

- ██████████████████████████████████████████
██████. *Id.* ¶ 685.

**D.     Dr. Karcher's Analysis Of Kenneth Hignight's Trial**

In addition to analyzing Scotts' trials, Dr. Karcher also analyzed a study conducted by Kenneth Hignight of EZ Seed Tall Fescue and Sun & Shade flavors that tested the Half Water Claim.  *Id.* ¶ 117.  Dr. Hignight's study tested EZ Seed in 16 simultaneous trials utilizing 4 plots in 4 different soil conditions that were watered to keep the soil moist (but not saturated).  *Id.* ¶¶ 118-19.  The irrigation volume was precisely measured when applied to keep the control treatments moist.  *Id.* ¶ 119.  Thus, an accurate irrigation volume representing half the water was applied to the other treatments.  *Id.*

████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

Marchese Decl. Ex. OO, Karcher Report at 40; SOF ¶ 121.  This was not due to the test conditions.  The ███████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████  *Id.*; SOF ¶ 122.

Based on his analysis, Karcher concludes that ██████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████  *Id.*  According to Karcher, █████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████" *Id.* at 41.

## LEGAL STANDARD

Admissibility of expert testimony is governed by Federal Rule of Evidence 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 requires a district court to ensure that scientific or technical evidence is both relevant and reliable. *Kumho Tire v. Carmichael*, 526 U.S. 137 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). The reliability of the proposed testimony depends on its scientific validity. *Daubert*, 509 U.S. at 590 n.9. "In assessing the reliability of a proffered expert's testimony, a district court's inquiry under *Daubert* must focus, not on the substance of the expert's conclusions, but on whether those conclusions were generated by a reliable methodology." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 137 F. Supp. 2d 147, 162 (E.D.N.Y. 2001). In addition to the factors set forth in Rule 702, a district court may also consider the following factors in assessing methodology:

> (1) whether a theory or technique has been or can be tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the technique's known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community.

*United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (internal quotation omitted).

The Second Circuit has "emphasize[d] the need for flexibility in assessing whether evidence is admissible. Rather than using rigid 'safeguards' for determining whether testimony should be admitted, the Court's approach is to permit the trial judge to weigh the various

considerations pertinent to the issue in question." *Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir. 1995). Ultimately, the Court's primary objective is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

Since "Rule 702 embodies a liberal standard of admissibility for expert opinions … the assumption the court starts with is that a well qualified expert's testimony is admissible." *In re Zyprexa Prod. Liab. Litig.*, 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007) (internal citations omitted). Lesser criticisms or other contentions that assumptions are "unfounded" go to the weight and not the admissibility of the testimony. *See Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 213-14 (2nd Cir. 2009) (citation and internal quotation marks omitted). As do disputes as to the validity of the underlying data. *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2nd Cir. 1997) ("[D]isputes as to the validity of the underlying data go to the weight of the evidence, and are for the fact-finder to resolve."). Similarly, where an expert's testimony lies within "the range where experts might reasonably differ," it is for the jury, not the trial court, to "decide among the conflicting views of different experts." *Kumho Tire*, 526 U.S. at 153. In such instances, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence," and "are the appropriate safeguards where the basis of scientific testimony meets the standards of Rule 702." *Daubert*, 509 U.S. at 596.

As the Second Circuit recently noted, "[w]hen faced with expert testimony that contains both reliable and unreliable opinions, district courts often exclude only the unreliable testimony." *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 665 (2d Cir. 2016). As the Second Circuit emphasized, "when the unreliable portion of an opinion can easily be distinguished from

testimony that could help the jury, it may be an abuse of discretion to throw the good out with the bad." *Id.*

## ARGUMENT

## I.    KARCHER'S TRIAL AND OPINIONS ARE RELIABLE

Scotts asserts that Karcher's trial is inadmissible because he "failed to follow basic scientific method, rendering his results unreliable and irrelevant." Scotts' Br. at 9. Specifically, Scotts maintains that Karcher's trial is invalid due to a "systemic failure of controls." *Id.* That is meritless.

### A.    The Tested EZ Seed Was Viable

Scotts argues that "Dr. Karcher's experimental design failed to account for the possibility of non-viable seed." *Id.* at 10. That is wrong.

First, ███████████████████████████████████████████████ ███████████████████████████████████████████████████████ 8/31/16 Karcher Decl. ¶ 12. ███████████████████████████████████ ██████████████████, thereby confirming that the tested EZ Seed was viable. *Id.*

Second, Karcher has since confirmed that the EZ Seed he tested was viable by conducting his own viability study. In April 2016 the ██████████████████████████ ███████████████████████████████████████████████████ ██████████████████ *Id.* ¶ 13, Ex. A. After 17 days of watering, ██████████████ ███████████████████████████████████████████████████████ ██████████████████████████████████████ *Id.,* Ex. A. Accordingly, the ████████████████████████████████████████████████ ███████████████████████████████████ *Id.* ¶ 14.

**B.**   **Karcher's Testing Of EZ Seed Sun & Shade Was Appropriate**

Karcher tested the Sun & Shade variety of EZ Seed for three reasons.  First, it was the most similar to the EZ Seed products sold to each of the seven named plaintiffs, and is sold in New York and California.  8/31/16 Karcher Decl. ¶ 4.  Second, the two other varieties of EZ Seed – EZ Seed Bermudagrass and EZ Seed Tall Fescue – had already been tested by Kenneth Hignight and Dr. Kruse.  *Id.* ███████████████████████

████████████████████████████████████████████

███████████████.  *Id.* ¶¶ 4, 25.  Third, EZ Seed Sun & Shade ███████████████

███████████████████████████████████   *Id.* ¶ 4.

Despite this, Scotts argues that "Karcher's choice of EZ Seed is highly questionable [because] … the EZ Seed Sun and Shade 'flavor' Dr. Karcher used is not sold in Arkansas precisely because the species in the mix are poorly adapted to the climate."  Scotts' Br. at 15. That is demonstrably false.  █████████████████████████

███████████.  9/1/16 Declaration of Colin B. Weir ("9/1/16 Weir Decl.") ¶ 141 ██

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

█████████████████.  ████████████████████

████████████.  *Id.* ¶ 142.

Nonetheless, Scotts contends that "when Dr. Karcher elected to test a product that comprises predominantly cool season turfgrasses, against a seed mix that was largely tall fescue and ideally suited to Arkansas, he biased his test against EZ Seed, and created a confounding variable that makes his results scientifically unreliable."  Scotts' Br. at 14.  But there was no

bias.  Both the EZ Seed and ordinary seed Karcher tested were "Sun & Shade" mixes.  8/31/16

Karcher Decl. ¶ 3.  Indeed, ██████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

███████ *Id.* ¶ 6; *see also* Marchese Decl. TT, Karcher Dep. at 161:3-4.  That is because each

seed species in the tested EZ Seed ████████████████████████████████████████████

████████████████████████████ *Id.* ¶ 7 ████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

██████████████████████████); *see also* Marchese Decl. TT, Karcher Dep. at 146:22-148:11.

In deciding to test EZ Seed Sun & Shade, Karcher █████████████████████████████

████████████████ and found that █████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

████████████ *Id.* ¶¶ 8-9.  Thus, at best, this criticism speaks to the weight of the evidence, not its

admissibility.

Scotts further argues that because Karcher "tested EZ Seed comprising predominantly

Kentucky bluegrass, creeping red fescue, and perennial ryegrass to 'ordinary seed' comprising

predominantly Tall Fescue," he "cannot isolate whether the difference in performance was

attributable to the different species planted, or the difference between the EZ Seed product and

the ordinary seed."  Scotts' Br. at 13.  That is wrong.  As Karcher explains, the differences in

grass seed species between the EZ Seed Sun & Shade product and the ordinary seed ████ ██████

██████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

8/31/16 Karcher Decl. ¶ 10.

Finally, Scotts attempts to prevent Karcher from opining "that his trial disproves the 50% Thicker claim" for EZ Seed Bermudagrass and Tall Fescue because he never tested those products.  Scotts' Br. at 13 n.7.  That is easily refuted.  As part of his work, Karcher analyzed and opined on testing of EZ Seed Tall Fescue performed by Kenneth Hignight and testing of EZ Seed Bermudagrass by Dr. Kruse.  8/31/16 Karcher Decl. ¶ 4.  In those tests, ████████████

████████████████████████████████████████████████████████████████████████

*Id.*  Thus, Karcher has sufficient data to develop an opinion that EZ Seed's failure to grow when watered at half water levels is due to EZ Seed containing 88% coir mulch.  *See also* Marchese Decl. Ex. TT, Karcher Dep. at 307:22-309:11, 309:19-310:5.

### C.      Karcher Did Not Introduce Any Confounding Variables

Scotts further contends that Karcher "also made numerous other decisions in his experimental design that introduced confounding variables, rendering his test unreliable." Scotts' Br. at 15.  Each critique is unfounded and unsupported by admissible evidence.

### 1.      Karcher Properly Applied Equivalent Rates Of Actual Live Seed

Scotts argues that "[b]y varying the species mix being tested, but planting the same weight of pure live seed, Dr. Karcher introduced significant differences in the number of grass seeds being planted."  *Id*. at 15.  That is meritless.  ████████████████████

████████████████████████████████████████████████████████████████████████

████████████████ 8/31/16 Karcher Decl. ¶ 17.  Indeed, it is ████████████████

████████████████████████████████████████████████████████████████████████

████████ Marchese Decl. Ex. TT, Karcher Dep. at 175:12-17; *see also* 8/31/16 Karcher Decl. ¶ 17.

Here, Karcher ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

*Id*. at 173:21-25; *see also* 8/31/16 Karcher Decl. ¶ 17 ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████).  In any event, Karcher explains that in his study, ████████████

████████████████████████████████████████████████████████

████████ 8/31/16 Karcher Decl. ¶17.  Thus, this criticism also goes to the weight of the

evidence, not its admissibility.

>   **2.     Karcher Reliably Applied Proper Care To The Test Treatments**

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████

*Id*. ¶ 15.

Scotts critiques Karcher's use of straw mulch in his testing of the ordinary seed because

the "relative performance of straw vs. the coir mulch in EZ Seed could be a factor in the

performance of the product."  Scotts' Br. at 16.  Specifically, Scotts argues that the impact of

mulching the ordinary seed "cannot be isolated, because it was not controlled for in Dr.

Karcher's experimental design."  *Id.*  This is baseless and contrary to Dr. Karcher's testimony.

The application of mulch is ████████████████████████████

████████████ SOF ¶ 108; *see also* Marchese Decl. Ex. OO, Karcher Report at 13

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████).  Moreover, Karcher ████████████████████

████████████████████████████████████████████████████

13

██████████████████████████████████████████. Marchese Decl. Ex. TT, Karcher

Dep. at 211:11-21; *see also* 8/31/16 Karcher Decl. ¶¶ 10,16.

Scotts also complains that Karcher "applied a different fertilizer to the ordinary seed than

is used in EZ Seed" and "raked the ordinary seed into the soil, but not the EZ Seed.  This

difference in treatment creates an additional variable not reflected in the claim, which could have

an impact on the performance of the products."  Scotts' Br. at 16.  This is also baseless and

contrary to Dr. Karcher's testimony.  Because EZ Seed ████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████ *Id.* ¶¶ 106-

107; *see also* Marchese Decl. Ex. WW, 5/29/14 Faust Decl. ¶ 9 ████████████████

████████████████████████████████████████████████████

██████████████████████████).[2]  And Karcher specifically disagreed

with the proposition that ████████████████████████████████████████████

████████████████████████████████████████████████ Marchese

Decl. Ex. TT, Karcher Dep. at 211:11-21.  Rather, Karcher blamed the difference in product

performance at half water rates ████████████████.  *Id.* at 212:24-213:14 █████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████).

In addition, the studies performed by Kruse and Hignight further confirm that Karcher's

decision to rake and use fertilizer did not bias the test in favor of the ordinary seed.  As Karcher

explains, ████████████████████████████████████████████████

---

[2] ████████████████████████████████████████████████████████████
████████████████████.  Marchese Decl. Ex. OO, Karcher Report at 39.

14



8/31/16 Karcher Decl. ¶ 16; *see also* Marchese Decl. Ex. TT, Karcher Dep. at 300:14-301:15.  Accordingly, this criticism is baseless.[3]

## II.   KARCHER'S TRIAL AND OPINIONS ARE RELEVANT TO THE HALF WATER CLAIM

### A.   Reference Evapotranspiration (ETo) Is A Generally Accepted Watering Methodology For Growing Grass From Seed

Scotts criticizes Karcher's use of ETo because it "is grossly inappropriate for the conditions of his trial, does not reliably represent keeping the soil moist, and therefore cannot be considered the 'recommended rate' of water."  Scotts' Br. at 17.  Scotts' critique is baseless, and it is contradicted by its own witnesses and relevant academic authority.

As Michael Faust, the manager of Scotts' research facility in Gervais, Oregon testified,

SOF ¶ 88.

*Id.* ¶ 89.  As Karcher explained,

*Id.* ¶ 91.  Use of ETo to establish irrigation regimes

8/31/16 Karcher Decl. ¶¶ 20-21

---

[3] In support of its argument, Scotts relies on the testimony of Dr. Gunasekara.  However, since Gunasekara has not been offered as an expert witness in this case, his testimony on this point is inadmissible.  *See Ali v. Connick*, 2016 WL 3002403, at *9 (E.D.N.Y. May 23, 2016) ("However, as a non-expert witness, his testimony cannot rely upon 'scientific, technical, or other specialized knowledge' gained outside of his personal consultation with Plaintiff. … Dr. Lawler thus cannot testify as to the general theory of the science and medicine behind DTI exams and its relationship with traumatic brain injury.  To allow a non-expert to provide such expert testimony would subvert the disclosure requirements of Rule 26.") (internal citations omitted).

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████); *see also* Marchese Decl. Ex. TT, Karcher Dep. at 104:12-105:1.

The appropriateness of Karcher's ETo watering methodology was recently confirmed in a

peer-reviewed article in *Agronomy Journal* that summarized a study where ██████████████

████████████████████████████████████████████████

and the ██████████████████████████████████████████

████████████ 8/31/16 Karcher Decl. ¶ 21.  Because Karcher's method is peer-reviewed and

generally accepted in the turfgrass science community, Scotts' motion to exclude his testimony

lacks merit.

Nonetheless, Scotts asserts that "in bare-soil environments, the evaporation increases

dramatically to exceed the evaporation and transpiration in a crop covered environment.  Indeed,

actual ET for bare soil is more than 20% higher than ETo because of the lack of crop cover."

Scotts' Br. at 18.  But this is wrong with respect to Karcher's study.  As Karcher explains, ████

████████████████████████████████████████████

████████████████████████████████████ 8/31/16 Karcher Decl.

¶ 18.  Scotts' argument "████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

16

██████████████████████████████████████████████████████ *Id.* ¶ 19.[4]  Moreover, "██████

███████████████████████████████████████████████████████

███████████ *Id.* ¶ 18.  Finally, ███████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████ *Id.*

Regardless, the adequacy of Karcher's use of ETo is confirmed by his ordinary seed

control, █████████████████████████████████████ *Id.* ¶ 22.

████████████████████████████████████████████████████████████

███████████████████████████████████████████████ *Id.*

**B.    Karcher Compared Ordinary Seed And EZ Seed When Both
Were Subject To Proper Care**

Scotts argues that Karcher failed to test EZ Seed against ordinary seed because he

"compared EZ Seed to ordinary seed, plus mulch and fertilizer.  In other words, Dr. Karcher did

not test the claim at issue."  Scotts' Br. at 17 (emphasis removed).  According to Scotts, "Dr.

Karcher should have tested the 50% Thicker Claim as stated, without applying additional

products to ordinary seed to help retain moisture, and he should not have imposed his personal

perspective on proper care."  *Id.* at 20.  That is wrong, █████████████████████████

██████ *See* Marchese Decl. Ex. OO, Karcher Report at 39 (████████████████████████

████████████████████████████████████████████████████████).

As Dr. Nelson testified, ██████████████████████████████████████████

████████████████████████████████████ SOF ¶ 105.  Since EZ Seed is a

---

[4] In a footnote, Scotts asserts that "applications [of mulch] conducive to establishing grass seed
plantings will reduce water loss less than the complete vegetative cover assumed by ETo."
Scotts' Br. at 18 n.9.  As stated above, that is wrong under the circumstances here.  Moreover,
the sole purported support for this proposition is a declaration from Scotts' expert witness, Dr.
Hopkins, which does not cite any outside authority whatsoever.  *See* Regan Decl. Ex. 103.
Therefore, Scotts' critique is also insufficient to exclude Karcher's testimony because it is based
only on the *ipse dixit* of its expert.

combination product that incorporates both fertilizer and mulch, proper care for EZ Seed consists of only ██████████████████████████████████████████████████████████

██████████████████████████ Marchese Decl. Ex. WW, 5/29/14 Faust Decl. ¶ 10.  In contrast,

██████████████████████████████████████████████████, SOF ¶ 106; ████████████████

██████████████████████████ *id.* ¶ 107; ████████████████████████, *id.* ¶

108.  *See also* Marchese Decl. Ex. WW, 5/29/14 Faust Decl. ¶ 9.  Indeed, ██████████████

████████████████████████████████████████████████████████████████████████

████████████████████████ 8/31/16 Karcher Decl. ¶ 15.

In Karcher's opinion, any difference in performance between EZ Seed and ordinary seed

████████████████████████████████████████████

            ████████████████████████████████████████████

            ██████████████████████████████████████████████

            ████████████████████████████████████████

            ████████████████████████████████████████

            ████████████████

                ██

            ██████████████████████

Marchese Decl. Ex. TT, Karcher Dep. at 211:11-21.  ██████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ 8/31/16 Karcher Decl. ¶ 16.

Under those conditions, EZ Seed also failed to substantiate the Half Water Claim.  *Id.*

### C.   Applying A "Deep And Thorough Initial Watering" Would Render Karcher's Study Of The Half Water Claim Invalid

Scotts complains that Karcher failed to follow EZ Seed's revised watering directions,

which demand a "deep and thorough initial watering."  Scotts' Br. at 21.  But that criticism is

misplaced.  As he testified, Karcher did not provide a ████████████████████████████

████████████████████████████████████████████████████████████████████████████

18



Marchese Decl. Ex. TT, Karcher Dep. at 184:22-25. *Id.* at 188:12-22.  Given this objective, 8/31/16 Karcher Decl. ¶ 24. Moreover, as Dr. Kruse's trial demonstrates, *Id.* ¶ 25 ).  Notably, Scotts does not even address the watering rate Karcher calculated and actually applied.

Whether Scotts' criticism on this point is valid is for the jury to decide.  *See In re Fosamax Prod. Liab. Litig.*, 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009) ("As long as an expert's scientific testimony rests upon good grounds, based on what is known, it should be tested by the adversary process-competing expert testimony and active cross examination-rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies.") (internal quotations and citation omitted); *Burke v. TransAm Trucking, Inc.*, 617 F. Supp. 2d 327, 335 (M.D. Pa. 2009) ("Defendants' arguments and criticisms of Dr. Ziejewski's methodology and inputs used went more to the weight of the evidence, rather than to his ability to testify as an expert in this case.  Mere weakness in the factual basis of an opinion bears on the weight of the evidence, not its admissibility.  …  Those arguments are more appropriate for the jury.") (internal citation omitted).

## III.   KARCHER'S CRITIQUES OF SCOTTS' TRIALS ARE RELIABLE

Scotts again argues that Karcher's use of ETo is improper, this time with respect to Karcher's critiques of Scott's trials.  Specifically, Scotts contends that "ETo still underestimates

the actual ET of bare soil plantings by at least 20%, meaning Dr. Karcher's ET calculations for all the Scotts trials grossly understate the actual ET, and therefore, grossly overstate the percentage of ET applied by Scotts." Scotts' Br. at 22. As already discussed above, that is incorrect. ███████████████████████████████████████

███████████████████████████████████████████████ 8/31/16 Karcher Decl. ¶¶ 18-21.

 Moreover, for the Scotts trials, ███████████████████████████████████████

████████████████ *Id.* ¶ 23. That is because ████████████████████████████

████████████████ *Id.* ¶ 27. As a result, ████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████ *Id.*; *see also* Marchese Decl. Ex. TT, Karcher Dep. at 291:3-292:17.

 Scotts further complains that since ETo data from RainMaster.com "are completely divorced from the actual conditions experienced during the Scotts trials," Scotts' Br. at 23, these are "data no reasonable scientist would rely on to reach a reliable scientific conclusion about ET for a particular location at a particular time." *Id.* at 22-23. According to Scotts, Karcher "assumes, without further inquiry, that the 30 year average ETo data from Rainmaster.com accurately reflects the actual ET or water loss of Scotts' test plots down to hundredths of an inch." *Id.* at 23. This is wrong, and Scotts fails to point to any evidence to support its position. In contrast, as Karcher testified, ████████████████████████████████████████

████████████████████████████ Marchese Decl. Ex. TT, Karcher Dep. at 289:8-24; *see also* 8/31/16 Karcher Decl. ¶ 26. Rain Master Control Systems, which sells turfgrass irrigation equipment, "has compiled evapotranspiration data for every ZIP code in the United States." SOF ¶ 102. As Dr. Karcher explains: ████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████ Marchese Decl. Ex. TT, Karcher Dep. at

286:18-287:1.  *See Lippe v. Bairnco Corp.*, 2002 WL 15630, at *2 (S.D.N.Y. Jan. 7, 2002) ("An

expert may properly testify as to the customs and standards of an industry ... how a party's

conduct measured up against such standards," and "alternatives of conduct based on his

knowledge of a particular industry or field.") (citation and internal quotation marks omitted).

Notably, Karcher also ██████████████████████

████████████ ████████ 8/31/16 Karcher Decl. ¶ 26; Marchese Decl. Ex. TT, Karcher Dep.

at 289:1-4.  Since criticisms of an expert's assumptions and "disputes as to the validity of the

underlying data go to the weight of the evidence," they "are for the fact-finder to resolve."

*Raskin*, 125 F.3d at 66.

## IV.   KARCHER'S TRIAL AND OPINIONS ARE NOT UNFAIRLY PREJUDICIAL

For the reasons stated above, Dr. Karcher meets the requirements of Rule 702 and

*Daubert*.  Dr. Karcher is qualified to opine regarding the falsity of the 50% Thicker claim and

the validity of Scotts' 18 trials.  As detailed above, in conducting his trial and forming his

opinions on Scotts' studies and Mr. Hignight's study, Dr. Karcher relied on his experience as a

turfgrass scientist and methods commonly used by experts in the field of turfgrass science.

Marchese Decl. Ex. OO, Karcher Report at 3; 8/31/16 Karcher Decl. ¶ 1.  Dr. Karcher's opinions

are reliable, and his methodology is plainly set forth in his expert report and supported by

numerous authorities on turfgrass science.  Furthermore, his testimony relates directly to the

central issues in the case and will "help the trier of fact to understand the evidence or determine a

fact in the case."  Fed. R. Evid. 702.

Recognizing that all of its criticisms of Karcher's trial and opinions speak to their weight

rather than admissibility, Scotts urges the Court to exclude Karcher's trial under Fed. R. Evid.

403.  Scotts' Br. at 24-25.  However, for purposes of Rule 403, "[e]vidence is prejudicial only

when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006); *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176-77 (S.D.N.Y. 2008) (same).  To justify excluding otherwise relevant and reliable evidence under the Rule 403, "the prejudice must be unfair in the sense that it could unduly inflame the passion of the jury, confuse the issues before the jury, or inappropriately lead the jury to convict on the basis of conduct not at issue in the trial." *Quattrone*, 441 F.3d at 186.  Further, any unfair prejudice must substantially outweigh the evidence's probative value.  *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 151 (2d Cir.1997) ("As the terms of the Rule indicate, for relevant evidence to be excluded on this basis, the imbalance must be substantial, and the prejudice must be unfair.").  As the Second Circuit has cautioned, prohibiting the use of evidence on this basis "is an extraordinary remedy that must be used sparingly."  *George v. Celotex Corp.*, 914 F.2d 26, 31 (2d Cir. 1990) (citation omitted).  Scotts has not met this standard.

Here, Scotts argues that "Dr. Karcher's trial reflecting very poor grass growth on the part of EZ Seed <u>could</u> be highly prejudicial to a jury."  Scotts' Br. at 24 (emphasis added).  In support, Scotts contends that based on its criticisms, the "results of Karcher's [trial] are not probative as to the truth or falsity of the 50% Thicker claim." *Id*. at 24-25.  But Scotts' criticisms are meritless.  As already discussed, Karcher's trial and opinions are based on reliable methodologies and data and are therefore probative of EZ Seed's ability to grow grass 50% thicker with half the water compared to ordinary seed.  Since Karcher's testimony speaks directly to the truth or falsity of the Half Water Claim – a central issue in this case – it will undoubtedly assist the fact finder in determining the merits of Scotts' testing and should be admitted.  *See In re Zyprexa Prods. Liability Litig.*, 489 F. Supp. 2d at 283 ("Freely admitted is expert testimony that is likely to substantially assist the average person in understanding the case

– even if it simply explains facts and evidence already in the record.").  Finally, any "prejudice" that Scotts complains of is best addressed through cross-examination and introduction of competing admissible evidence, not by excluding Karcher's study and testimony.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Scotts' motion to exclude Dr. Karcher's testimony in its entirety.

Dated:  September 1, 2016               Respectfully submitted,


By:       */s/ Scott A. Bursor*
               Scott A. Bursor

**BURSOR & FISHER, P.A.**
Scott A. Bursor
Joseph I. Marchese
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
          jmarchese@bursor.com


**FARUQI & FARUQI, LLP**
Nadeem Faruqi
Timothy J. Peter
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone:  (212) 983-9330
Facsimile:   (212) 983-9331
Email:  nfaruqi@faruqilaw.com
          tpeter@faruqilaw.com

*Class Counsel*

24