UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
                                  :
In re Scotts EZ Seed Litigation   :    12-CV-4727 (VB)
                                  :
                                  :
                                  :
                                  :
                                  :
---------------------------------X


**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE
PLAINTIFFS' PROFFERED EXPERT J. MICHAEL DENNIS**

                         HUNTON & WILLIAMS LLP
                         Shawn Patrick Regan
                         Joshua S. Paster
                         200 Park Avenue
                         New York, NY 10166

                         - and -

                         Samuel Danon (*pro hac vice*)
                         1111 Brickell Avenue, Suite 2500
                         Miami, FL 33131

                         Joshua M. Kalb (*pro hac vice*)
                         600 Peachtree Street NE, Suite 4100
                         Atlanta, Georgia 30307

                         Neil K. Gilman (*pro hac vice*)
                         2200 Pennsylvania Avenue, NW
                         Washington, DC  20037

                         *Counsel for Defendants The Scotts*
                         *Miracle-Gro Company and The*
                         *Scotts Company LLC*

# **TABLE OF CONTENTS**

                                     **Page**

I. Dennis's survey universe is over inclusive and did not represent the class............ 1

II. Dennis's CVM survey should be excluded. ......................................................... 2

  A. CVM surveys generally, and as applied by Dennis, are unreliable for the purposes Plaintiffs are trying to use Dennis's survey. ................................. 2

  B. Plaintiffs' contention that no control group exists for CVM is wrong. ...... 4

  C. Plaintiffs' claim that Dennis considered "supply-side" factors is belied by Dennis's own testimony. ............................................................................ 5

  D. Plaintiffs and Dennis recognize the need for a "don't know" option in CVM and fail to explain not including it in the "key 'referendum' question." ..................................................................................................... 6

  E. Dennis's CVM survey was biased. ............................................................ 7

  F. Dennis assumes, but does not measure, respondents' changed willingness to pay for EZ Seed without the 50% Thicker claim. .................................... 8

III. Dennis's consumer-perception survey should be excluded. .................................. 8

  A. Dennis's explanation for his failure to include Scotts' intended meaning as response options in his consumer-perception survey is nonsensical. ...... 8

  B. Dennis's explanation for his failure to include EZ Seed's watering directions when asking questions about those directions is nonsensical. ... 9

IV. It is not a proper form of expert testimony for Dennis to regurgitate other evidence. ........................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Home Prods. Corp. v. Johnson & Johnson*,
  654 F. Supp. 568 (S.D.N.Y. 1987) ............................................................................................. 9

*In re Commitment of Simons*,
  821 N.E.2d 1184 (Ill. 2004) ........................................................................................................ 3

*Duran v. U.S. Bank Nat. Assn.*,
  59 Cal. 4th 1 (Cal. 2014) ............................................................................................................ 2

*Geanacopoulos v. Philip Morris USA, Inc.*,
  2016 Mass. Super. LEXIS 11 (Mass. Super. 2016) ................................................................ 1, 3

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ................................................................................................................ 4, 7

*Israel v. Spring Indus., Inc.*,
  2006 WL 3196956 (E.D.N.Y. Nov. 3, 2006) ..................................................................... 4, 6, 7

*J.T. Colby & Co., Inc. v. Apple, Inc.*,
  2013 WL 1903883 (S.D.N.Y. May 8, 2013) .............................................................................. 1

*Morritt v. Stryker Corp.*,
  2011 WL 3876960 (E.D.N.Y. 2011) .......................................................................................... 6

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*,
  7 F. Supp. 3d 955 (N.D. Cal. 2014) ........................................................................................... 3

*People v. Jones*,
  306 P.3d 1136 (Cal. 2013) .......................................................................................................... 3

*Price v. Philip Morris, Inc.*,
  848 N.E.2d 1 (Ill. 2005) .............................................................................................................. 3

*Procter & Gamble Co. v. Ultreo, Inc.*,
  574 F. Supp. 2d 339 (S.D.N.Y. 2008) .................................................................................... 4, 5

*In re Reserve Fund Sec. & Derivative Litig.*,
  2012 WL 12356742 (S.D.N.Y. Sept. 10, 2012) ....................................................................... 10

*Schering Corp. v. Pfizer Inc.*,
  189 F.3d 218 (2d Cir. 1999) ....................................................................................................... 2

*Senne v. K.C. Royals Baseball Corp.*,
  2016 WL 3940761 (N.D. Cal. July 21, 2016) ........................................................... 3

*Simon Prop. Grp. L.P. v. mySimon, Inc.*,
  104 F. Supp. 2d 1033 (S.D. Ind. 2000) ................................................................... 1

*Starter Corp. v. Converse, Inc.*,
  170 F.3d 286 (2d Cir. 1999) ..................................................................................... 1

*Tiffany & Co. v. Costco Wholesale Corp.*,
  127 F. Supp. 3d 241 (S.D.N.Y. 2015) ..................................................................... 2

*Victoria's Secret Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*,
  2009 WL 959775 (S.D.N.Y. Apr. 8, 2009) ............................................................. 4

Plaintiffs proffer J. Michael Dennis to support their assertion that the 50% Thicker claim commanded a price premium and was misleading. Plaintiffs' and Dennis's responses ("Opp'n") to Scotts' motion to strike Dennis ("Mot.") ignore many of the flaws Scotts highlighted, and rely solely on unsupported statements to oppose others. But an expert's *ipse dixit* and "own word" are insufficient to support "expert" opinions under *Daubert*. Plaintiffs and Dennis acknowledge the flaws but contend they go only to the weight of his opinions; however,

> [t]he court need not and should not respond reflexively to every criticism by saying it merely "goes to the weight" of the survey rather than to its admissibility. If the flaws in the proposed survey are too great, the court may find that the probative value of the survey is substantially outweighed by the prejudice, waste of time, and confusion it will cause at trial.

*Simon Prop. Grp. L.P. v. mySimon, Inc.*, 104 F. Supp. 2d 1033, 1039 (S.D. Ind. 2000) (citing *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 297 (2d Cir. 1999)); *J.T. Colby & Co., Inc. v. Apple, Inc.*, 2013 WL 1903883, at *19 (S.D.N.Y. May 8, 2013) (where survey and methodology are too flawed, expert inadmissible under Rule 702 and 403).

**I.      Dennis's survey universe is over inclusive and did not represent the class.**

Plaintiffs and Dennis agree that survey respondents must be representative of class members. (Opp'n at 14.) They assert that Dennis's universe—comprised both of ordinary-seed and combination-seed users—was representative of the class.[1] (*Id.*) It is not—ordinary seed users do not represent the class.[2] (Mot. at 6-8.) Even Dennis recognizes ▮▮▮▮▮ (Ex. 12 at 44:15-23 ▮▮▮▮▮).) Plaintiffs seek to justify inclusion of ordinary grass-seed users in Dennis's universe on the ground that both ordinary seed and combination products are sold in the same area of stores

---

[1] Dennis's screening question asked ▮▮▮▮▮ (Mot. at 6-8; Ex. 11 at Attachment F.)

[2] This is a mistake Dennis has made before. *E.g., Geanacopoulos v. Philip Morris USA, Inc.*, 2016 Mass. Super. LEXIS 11, at *49-58 (Mass. Super. 2016) (rejecting Dennis's survey, *inter alia*, because Dennis's "sample population was not the certified class, or a reasonable facsimile thereof.").

(whether in-person or online).  (Opp'n at 14.)  Such a superficial argument should be rejected out of hand.  This argument ignores Dennis' admission █████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████ (*See* Ex. 168 ¶¶ 3-9.)

Plaintiffs and Dennis also contradict one another.  Plaintiffs assert it would have been improper to include class members in Dennis's survey because of self-interest bias, quoting that "[a] sample that includes even a small number of interested parties can produce biased results." (Opp'n at 14 & n.4 (quoting *Duran v. U.S. Bank Nat. Assn.*, 59 Cal. 4th 1, 43, (Cal. 2014).)  Yet Dennis testified that ████████████████████████████████████ (Ex. 12 at 141:5-10

████████████████████████████████████████████████████████████████

████████████████████████).)  Dennis has zero evidence for this belief, and as discussed it is impossible to determine from Dennis' records because he never asked the question.  (*See supra* n.1.)  But he apparently believed it important to say this to defend his survey against the very argument Scotts is making.  The bottom line is that because Dennis included both grass-seed and combination-product purchasers and refused to distinguish among them, his survey is worthless.  (*See* Ex. 168 ¶¶ 3-9.)

II.     **Dennis's CVM survey should be excluded.**

   A.   ***CVM surveys generally, and as applied by Dennis, are unreliable for the purposes Plaintiffs are trying to use Dennis's survey.***

Plaintiffs argue that CVM is reliable because the 1993 NOAA Panel report states that it "provides an adequately reliable benchmark to begin such arguments.  It contains information

---

[3] Plaintiffs' case law is distinguishable.  *See Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 228 (2d Cir. 1999) (simply holding that a survey recounting person's mental impressions is not inadmissible hearsay); *Tiffany & Co. v. Costco Wholesale Corp.*, 127 F. Supp. 3d 241, 250 (S.D.N.Y. 2015) ("Dr. Winer asserts that Dr. Jacoby should have focused his survey only on those who had a 'present purchase interest in buying a diamond ring,' rather than on Costco customers who would consider purchasing an expensive diamond ring from Costco."). *Tiffany* would be analogous here if Dr. Jacoby had included customers who were considering purchasing a gold ring or a necklace, not a diamond ring, since diamond rings were at issue.



that judges and juries will wish to use, in combination with other evidence, including the testimony of expert witnesses." (Opp'n at 2 (quoting Ex. 59 at 44).) Plaintiffs, however, ignore that the NOAA cabins CVM's usefulness to public/environmental goods, and acknowledges CVM's many flaws. (Mot. at 12.) Plaintiffs also ignore the more recent CVM critiques Scotts presents (*id.* at 11-14)—such as by Dr. Hausman (Ex. 60)—which explain why CVM "does not provide a good basis for … accurate damage assessments in judicial proceedings." (*Id.* at 44.)

Plaintiffs also seek to bolster the reliability of Dennis's CVM here because he had other surveys admitted in California and Illinois state court. (Opp'n at 4-6.) First, neither the Illinois nor California cases ruled on the admissibility of CVM itself. *Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 89 (Ill. 2005) ("no challenge to the general acceptance of [Dennis's] survey methods was enunciated for the record"); (Pl. Ex. PPPP at 11 (not addressing the admissibility of CVM generally, and lacking any indication that CVM itself was challenged)). And while Plaintiffs cite the *Price* dissent, the *Price* concurrence opined that the plaintiffs, relying on Dennis, did not prove damages. *Price*, 848 N.E.2d at 58. Second, California and Illinois are *Frye* states, addressing admissibility under a different legal standard. *In re Commitment of Simons*, 821 N.E.2d 1184, 1188 (Ill. 2004); *People v. Jones*, 306 P.3d 1136, 1161 (Cal. 2013). Third, assuming *arguendo* those other surveys would meet federal admissibility standards in those cases, that does not mean Dennis's survey here was performed properly (it was not).[4]

Finally, Plaintiffs argue that CVM is not designed to mimic the marketplace. (Opp'n at 16.) But that is precisely Scotts' point; CVM's failure to replicate the marketplace renders it

---

[4] Plaintiffs state Dennis's "expert testimony has never been found unreliable or excluded in any case for any reason." (Opp'n at 3.) This simply is not true. *Senne v. K.C. Royals Baseball Corp.*, 2016 WL 3940761, at \*59 (N.D. Cal. July 21, 2016) ("the Motion to Exclude is GRANTED as to the Dr. Dennis's declaration and testimony"); *see also O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 7 F. Supp. 3d 955, 976 (N.D. Cal. 2014) ("Based on these flaws in Dr. Dennis's survey, the Court finds that it does not provide credible evidence…."); *Geanacopoulos*, 2016 Mass. Super. LEXIS 11, at \*49-58.

(and Dennis's survey) unreliable to establish the critical issue: what would have happened in the marketplace.  (Mot. at 14-16.)  As described in Scotts' Motion, Dennis's CVM is entirely unrealistic.  (*Id.*)  Plaintiffs seemingly agree; they and Dennis state CVM is not designed to replicate an actual shopping experience.  (Opp'n at 16.)  And even if Dennis had properly performed his CVM (and he did not), his results are not valid for Plaintiffs' intended purpose, which is to prove a "price premium."  (*See* Scotts Decert. Reply.)

> B.  ***Plaintiffs' contention that no control group exists for CVM is wrong.***

Plaintiffs and Dennis assert that "[t]here is no such thing as a 'control group' in CVM, and Dennis contends ███████████████████████████████████ (Opp'n at 15.)  Simply put, they are wrong.  There exist innumerable examples of CVM studies utilizing a control group.[5]  (*See, e.g.*, Ex. 160 § 2.2; Ex. 161 at 17; Ex. 162 at 23; Ex. 163 at 350, 363; Ex. 164 at 1-3.)[6]  Indeed, it is rather curious that, as an "expert" in CVM, Dennis is wholly unaware of the many CVM surveys incorporating control groups.  Indeed, a control group is *necessary* in a CVM analysis.  (Ex. 53 (REFERENCE GUIDE) at 398-99 ("Without the control group, it is not possible to determine how much of the [experimental response] is attributable to

---

[5] Plaintiffs cite a single case (Opp'n at 15-16) for the proposition that lack of a control goes to weight not admissibility: *Victoria's Secret Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*, 2009 WL 959775, at *11 n.9 (S.D.N.Y. Apr. 8, 2009).  That case and ruling were made in the context of a bench trial, where "there is negligible, if any, risk of prejudice resulting from confusion of the trier of fact by admitting survey evidence, even if the probative value is low."  *Id.*  Plaintiffs do not address the weight of authority that holds a survey's lack of a control group to be a "fatal" flaw.  (Mot. at 16-18, 23.)  Plaintiffs also fail to address *their* own authority, cited in *their* "*Daubert*" motions, which holds surveys must contain a control group to be admissible.  *Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 339, 351-52 (S.D.N.Y. 2008) (agreeing that "without a control, one cannot rely on the results of the study for any purpose").

[6] Plaintiffs also argue that no control was necessary for Dennis's consumer-perception survey.  (Opp'n at 22.)  Plaintiffs' entire basis for their argument is Dennis's own say so.  (*Id.*)  This is insufficient under *Daubert* to rebut case law and scientific literature.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[t]he Court is not required to 'admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert'"); *Israel v. Spring Indus., Inc.*, 2006 WL 3196956, at *2 (E.D.N.Y. Nov. 3, 2006) ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'").  Plaintiffs further seek to bolster this argument by citing to the Smith-Dahmer study.  (Opp'n at 22.)  But it does not prove Plaintiffs' point; Scotts (and Smith-Dahmer itself) recognize the Smith-Dahmer study is flawed and does not satisfy a *Daubert* standard.  (*See* Scotts' Opp'n to Consumer Perception *Daubert* at 7.)

respondents' preexisting beliefs or other background noise (e.g., respondents who misunderstand the question or misstate their responses).... The ability to evaluate the effect of the wording of a particular question makes the control group design particularly useful in assessing responses to closed-ended questions ....").) Absent a control group, Dennis's surveys are meaningless and should be stricken. *Procter & Gamble*, 574 F. Supp. 2d at 351-52; (Mot. at 16-18, 23; Ex. 168 ¶¶ 10-12).

### C. Plaintiffs' claim that Dennis considered "supply-side" factors is belied by Dennis's own testimony.

Plaintiffs argue that Dennis considered certain supply-side factors in "designing and interpreting the results of his survey." (Opp'n at 10-13.) Their explanations contradict Dennis's earlier testimony,[7] and other arguments in their opposition.

First, Plaintiffs ignore that CVM, by definition, measures only subjective willingness to pay (*i.e.*, demand side) (Mot. at 8-11). In fact, Dennis testified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[8] (Ex. 12 at 184:14-21; *see also id.* at 98:5-100:25.) Second, Plaintiffs' "explanations" demonstrate that Dennis did not consider supply-side factors in setting his CVM price points. He chose ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, (Ex. 11 ¶ 35), and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[7] Dennis's newly minted position ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Opp'n at 11; 9/1 Dennis Decl. ¶¶ 18-21.)  This contradicts directly Dennis's deposition testimony, where he testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 12 at 23:13-25:21.)

[8] Plaintiffs assert that wholesale and retail prices of EZ Seed fluctuated. (Opp'n at 12.) Plaintiffs' argument is based on a mischaracterization of data from Scotts. (*See* Scotts' Opp'n to Mot to Strike Peoples & Winters.) Moreover, wholesale pricing is irrelevant to Dennis's survey (and this litigation) because Dennis asked consumers about the market price. (Ex. 11 ¶ 35.) Plaintiffs then seek to mislead the Court with respect to market price by pointing to data from *retailers*, that retailers' prices fluctuated (Opp'n at 12 (citing 9/1 Weir Declaration).) But the retailer price fluctuations prove precisely why Plaintiffs' price-premium theory collapses. Scotts sets an MSRP, but it is then up to retailers to charge whatever they choose. Scotts was not willing to change (or lower) its MSRP absent the 50% Thicker claim. (Ex. 38 ¶¶ 4-5; Ex. 40 ¶¶ 4-5.) And evidence demonstrates that the average retail price *increased* after Scotts removed the 50% Thicker claim. (Ex. 1 ¶¶ 28-33.)

████████████████████████████████ (Opp'n at 13). That is not taking supply-side factors into account, but rather merely is rounding up the MSRP. Third, Dennis's *post-hoc* explanation that

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████ (9/1

Dennis Decl. ¶ 20.) Notably absent from this explanation is reliance on "supply side factors" like Scotts' willingness to sell. Finally, even if the Court credits Dennis's new and contradictory testimony, nothing in his model or calculations account for the supply-side impact on the price of EZ Seed without the 50% Thicker claim, which he testified he did not consider.[9] (Ex. 12 at 184:14-21; see also id. at 98:5-100:25.)

### D. *Plaintiffs and Dennis recognize the need for a "don't know" option in CVM and fail to explain not including it in the "key 'referendum' question."*

Plaintiffs and Dennis acknowledge the need for a "don't know" option in CVM, and in numerous questions Dennis included such a response option. (Opp'n at 17.) But Dennis did not include such a response option in his "key 'referendum' question." (*Id.*) His sole explanation

---

[9] Seven-months after his deposition, Dennis speculates for the first ██████████████████ ████████████████████████████████████████████████████████████ (Ex. 12 at 184:14-21; see also id. at 98:5-100:25)— ████████████████████████████████████ ██████████████ (Opp'n at 10-11; 9/1 Dennis Decl. ¶ 17.) Dennis's new "opinion" is inadmissible. First, Dennis cites not a single fact to support his bald speculation (9/1 Dennis Decl. ¶ 17). *Israel*, 2006 WL 3196956, at *2 ("expert opinions are inadmissible if based on speculative assumptions") (citations omitted). Second, this new opinion, addressing a gap in his original opinion, submitted after the deadline to provide expert testimony, is inadmissible. *Morritt v. Stryker Corp.*, 2011 WL 3876960, *6-8 (E.D.N.Y. 2011) (excluding expert affidavit in opposition to summary judgment motion on ground it was "unquestionably designed to fill a significant and logical gap in his expert report" and was produced "only after defendants raised [the] deficiency in their motion ... constitute[d] a clear violation of Rule 26") (internal quotations omitted). Third, Dennis's new speculation is contradicted by real-world data demonstrating that when Scotts removed the claim the MSRP *increased*, and that Scotts set identical MSRPs for EZ Seed with and without the claim when both were on the market simultaneously. (*See* Scotts' Opp'n Mot Strike Winters Peoples; Ex. 1 ¶¶ 28-33.) Finally, as a "survey expert," Dennis possesses no expertise to opine on Scotts' pricing decisions. (Ex. 12 at 14:7-11 ███████████████████████████████ ██████████); Ex. 11 ¶ 3 ████████████████████████████████████████████████████████████.)

(Ex. 59 at 34 ("A 'no-answer' option should be explicitly allowed in addition to the 'yes' and 'no' vote options on the main valuation (referendum) question."))▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (Opp'n at 17.)  In other words, Dennis has offered no basis for ignoring a fundamental survey principle by deciding not to include a "don't know" option in his "key 'referendum' question."  This is insufficient under *Daubert*.  *Joiner*, 522 U.S. at 146; *Israel*, 2006 WL 3196956, at *2.  Dennis's survey should be excluded.  (Mot. at 17-18.)

      E.    *Dennis's CVM survey was biased.*

Plaintiffs do not respond at all to the fact that Dennis's survey created demand artifacts. (*See generally* Opp'n; Mot. at 18-19;.)  Rather, Plaintiffs argue only there was no *focalism* bias in Dennis's survey because Dennis ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ and they state there is no other way to do CVM.  (Opp'n at 17-18.)  Putting aside for the moment that Plaintiffs' argument with respect to focalism bias rests on Dennis's own *ipse dixit*, their argument further demonstrates why CVM fails at its intended purpose.  In the actual market, regardless of whether Scotts emphasized the 50% Thicker claim, the claim was one of many on a product that was one of many products on the shelves of a store all fighting for consumer attention.  Making the claim the sole point of differentiation between only two available products forced respondents to focus on the claim, biasing the survey.  (Mot. at 19.)

Plaintiffs acknowledge that "[s]tarting point bias is a known risk for CV," and acknowledge that Dennis's survey contained such bias, but contend the degree of bias "was not statistically significant."  (Opp'n at 19-20.)  Dennis's own data and pretests demonstrate his survey *design* suffered from such bias, and his lack of a control prevents the Court from evaluating how much (if not all) of his "premium" is the result of such bias.  (Mot at 19-20.)

    **F.**    ***Dennis assumes, but does not measure, respondents' changed willingness to pay for EZ Seed without the 50% Thicker claim.***

Dennis never tested respondents' willingness to pay ▓▓ (or any price for that matter) for EZ Seed *with* the 50% Thicker claim. (Ex. 11 at Attachment F.) Instead, his test allegedly measured ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ But without knowing the price the respondents would pay for EZ Seed *with* the claim, Dennis cannot reliably conclude the amount less that they would pay for the product without the claim. (Ex. 168 ¶¶ 13-14.) For example: Consumer A would be willing to pay $13 for EZ Seed with the claim and $12 for EZ Seed without, and Consumer B would pay $12 for either one. Because Dennis's survey captures only the difference between willingness to pay for the product without the claim and an ***assumed*** payment of ▓▓ for the product with the claim, he would "determine" the same ▓▓ premium for both consumers, despite theoretical premiums of ▓▓ for Consumer A and ▓▓ for Consumer B. Without a baseline showing what each respondent would pay for EZ Seed *with* the claim, there is no way to know if the price they would pay for the product *without* the claim is any different. (Mot. at 19-20; Ex. 5 ¶¶ 125-30; Ex. 168 ¶¶ 13-14.) So he has no idea whether, when respondents say they would only pay $12 for EZ Seed without the claim, this represents a "premium" over the price they would pay with the claim. The failure to ask the right question compounds his previous failure to survey a representative universe of respondents. (*See supra*.) Dennis's refusal to ask respondents if they had previously purchased EZ Seed or an equivalent combination product, in combination with his failure to ask, in the survey, if they would have purchased the product with the claim for $15, invalidates his entire survey. (Ex. 168 ¶¶ 13-14.)

**III.**    **Dennis's consumer-perception survey should be excluded.**

    **A.**    ***Dennis's explanation for his failure to include Scotts' intended meaning as response options in his consumer-perception survey is nonsensical.***

Dennis's consumer-perception survey did not include comprehensive response options, including Scotts' intended meaning, biasing the study. (Mot. at 21.) Plaintiffs do not address Dennis's failure to include response options, like a "same" option—that the 50% Thicker claim means one should water EZ Seed the *same* amount as ordinary seed (Mot. at 23-24), but argue that Dennis need not have included Scotts' intended meaning because Scotts intended the claim to mean what it says. (Opp'n at 19-20.) That does not explain why Dennis did not include that plain meaning as a response option.[10] This failure guaranteed no respondents could answer that they perceived or expected the 50% Thicker claim to mean exactly what Scotts intended. This precluded respondents from agreeing with Scotts, and alone precludes admission of the survey. (Mot. at 21; Ex. 168 ¶¶ 15-18); *Am. Home Prods. Corp. v. Johnson & Johnson*, 654 F. Supp. 568, 581 (S.D.N.Y. 1987) ("the most serious shortcoming of Question 14 is that its list of choices is incomplete, inexplicably omitting to include, as one of its options, the literal meaning of the advertisement!"). Plaintiffs do not even attempt to distinguish *American Home*.

      **B.**    *Dennis's explanation for his failure to include EZ Seed's watering directions when asking questions about those directions is nonsensical.*



Dennis's consumer-perception questions asked specifically about ▆▆▆▆ ▆▆▆▆ but failed to provide those directions to respondents. (Mot. at 22-23.) Plaintiffs argue that it was proper for Dennis not to provide those directions to respondents because named Plaintiffs testified ▆▆▆▆ ▆▆▆▆. (Opp'n at 21-22.) But this is no answer; Dennis asked questions ▆▆▆▆ ▆▆▆▆ and the class Plaintiffs seek to

---

[10] Plaintiffs state former Scotts' employee Tiffany Peoples testified that th▆▆▆▆ (Opp'n at 21 n.5.) Plaintiffs omit the remainder of Ms. Peoples's testimony: ▆▆▆▆ (Ex. 37 at 91:15-92:7.)

represent include consumers who received both versions of EZ Seed's directions.

Plaintiffs' argument also begs the question why Dennis did not provide respondents with EZ Seed's original directions for use. Consumers in the market had EZ Seed's directions, and evidence indicates that ███████████████████████████████████ ███████ (*See* Ex. 62 at SMG-EZ0164380.) Of course, Plaintiffs' argument inherently concedes that the version of EZ Seed's directions consumers received informed their perceptions/expectations of the 50% Thicker claim. Plaintiffs' express delineation between the two EZ Seed directions means Dennis's survey is, at best, relevant for only a portion of the class.

### IV.     It is not a proper form of expert testimony for Dennis to regurgitate other evidence.

Finally, Plaintiffs contend that Dennis's last report section is not "regurgitating" other testimony and evidence because the materials "influenced" him. (Opp'n at 24.) First, a plain reading of his report contradicts this new contention. In his report, Dennis asserts that █████ ████████████████████████████████████████████████████████████████ ████████████████████ (Ex. 11 ¶¶ 58-64.) Indeed, the lack of citation in Plaintiffs' opposition to Dennis's report, deposition, or new declaration as to how these materials "influenced" him is telling. And neither Plaintiffs nor Dennis explain what "expertise" he brings to bear when reading to the jury other materials in the record that may or may not be admissible. (*See* Opp'n at 24.) Such "testimony" is inadmissible. (Mot at 24-25); *In re Reserve Fund Sec. & Derivative Litig.*, 2012 WL 12356742, at *3 (S.D.N.Y. Sept. 10, 2012) (excluding expert's summary of other evidence because it would "bring no specialized knowledge that might assist the jury.").

| | |
|---|---|
| Dated:  October 20, 2016<br>New York, New York | By:  /s/ Shawn Patrick Regan<br>Shawn Patrick Regan<br>Joshua S. Paster<br>HUNTON & WILLIAMS LLP<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 309-1000<br>Facsimile: (212) 309-1100<br>Email: sregan@hunton.com<br>Email: jpaster@hunton.com<br><br>- and -<br><br>Samuel A. Danon (*pro hac vice*)<br>HUNTON & WILLIAMS LLP<br>1111 Brickell Avenue, Suite 2500<br>Miami, Florida  33131<br>Telephone: (305) 810-2500<br>Facsimile: (305) 810-2460<br>Email: sdanon@hunton.com<br><br>- and -<br><br>Joshua M. Kalb (*pro hac vice*)<br>HUNTON & WILLIAMS LLP<br>600 Peachtree Street NE, Suite 4100<br>Atlanta, Georgia 30307<br>Telephone: (404) 888-4000<br>Facsimile: (404) 602-9077<br>Email: jkalb@hunton.com<br><br>-and-<br><br>Neil K. Gilman (*pro hac vice*)<br>HUNTON & WILLIAMS LLP<br>2200 Pennsylvania Avenue, NW<br>Washington, DC  20037<br>Telephone:    (202) 955-1674<br>Facsimile:    (202) 862-3629<br>Email: ngilman@hunton.com<br><br>*Counsel for Defendants The Scotts Miracle-Gro Company and The Scotts Company LLC* |

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 20, 2016 I served a copy of the foregoing, on all counsel of record at the addresses listed below, by FTP site.

                                                            /s/ Shawn Patrick Regan
                                                              Shawn Patrick Regan

Scott A. Bursor, Esq.
Joseph L. Marchese, Esq.
Neal Deckant, Esq.
Yitzchak Kopel, Esq.
Bursor & Fisher, P.A.
888 Seventh Avenue
New York, NY 10019
Telephone:  (212) 989-9113
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
         jmarchese@bursor.com
         ndeckant@bursor.com
         ykopel@bursor.com

Adam Richard Gonnelli, Esq.
Nadeem Faruqi, Esq.
Faruqi & Faruqi, LLP
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone:  (212) 983-9330
Fax: (212) 983-9331
Email:  agonnelli@faruqilaw.com
         nfaruqi@faruqilaw.com

Timothy Peters, Esq.
Faruqi & Faruqi, LLP
101 Greenwood Avenue, Suite 600
Jenkintown, PA  19046
Telephone: (215) 277-5770
Fax: (215) 277-5771
Email:  tpeters@faruqilaw.com

Antonio Vozzolo, Esq.
Vozzolo LLC
Email: avozzolo@vozzolo.com