UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                    :

In re Scotts EZ Seed Litigation        :             12-CV-4727 (VB) (PED)

                                      :

                                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'<br>MOTION FOR SUMMARY JUDGMENT

HUNTON & WILLIAMS LLP
Shawn Patrick Regan
Joshua S. Paster
200 Park Avenue
New York, NY 10166

- and -

Samuel Danon (*pro hac vice*)
Jason B. Sherry
1111 Brickell Avenue, Suite 2500
Miami, FL 33131

Joshua M. Kalb (*pro hac vice*)
600 Peachtree Street NE, Suite 4100
Atlanta, Georgia 30307

Neil K. Gilman (*pro hac vice*)
2200 Pennsylvania Avenue, NW
Washington, DC 20037

*Counsel for Defendants The Scotts
Miracle-Gro Company and The
Scotts Company LLC*

## Table of Contents

SUMMARY JUDGMENT STANDARD ........................................................................3

ARGUMENT ...........................................................................................................3

I.   Summary Judgment Is Proper as to Plaintiffs' First Theory of Liability that EZ Seed Is Incapable of Growing Grass "At All" and Is "Worthless." ...................................3

II.  Review and Approval of the 50% Thicker Claim by the CDFA Creates a Safe Harbor That Bars Liability on Plaintiffs' California Claims. ...................................5

III. Statutory Damages Are Not Available in a Class Action Under GBL §§ 349 or 350 ...........................................................................................................7

    A.  Sections 349 and 350 Do Not Permit Recovery of Statutory Damages in a Class Action. ...................................................................................7

    B.  *Shady Grove* Is Inapplicable. ...................................................................9

    C.  Even if *Shady Grove* Were to Apply Here, the Legislature's Bar on Recovery of Statutory Damages in a Class Action Also Would Apply Because It Is "So Intertwined" with the Substantive Law. ...................................11

    D.  If *Shady Grove* Governs the Case, *Shady Grove* Should Be Overruled. ...............12

    E.  Due Process Concerns Prohibit Recovery of Statutory Damages in a Class Action Under Sections 349 and 350. ...................................................13

IV.  Summary Judgment Is Warranted on Plaintiffs' Second Theory of Liability, that the 50% Thicker Claim Is False or Misleading. ...................................................14

    A.  Plaintiffs Have Not Adduced Evidence of a Classwide Injury Resulting from the Allegedly False and Misleading 50% Thicker Claim. ...........................14

        1.  Plaintiffs Present No Evidence of a "Price Premium" Injury. ...................15

            a.  Scotts' Internal Calculation of a Premium over Separately Purchased Seed, Soil, and Fertilizer Does Not Establish Injury. ...........................................................................19

            b.  Empirical Data Disproves Plaintiffs' Price Premium Theory. ...........................................................................20

        2.  Plaintiffs' Claim that Class Members Would Not Have Purchased EZ Seed But For the 50% Thicker Claim Was Not Certified And Cannot Establish Classwide Injury. ...................................................21

B.  Plaintiffs Lack Evidence from Which a Reasonable Juror Could Conclude the 50% Thicker Claim Is False or Misleading. ....................................................23

    1.  Dr. Karcher's Grass Seed Trial ................................................................23

    2.  Jason Kruse Study ....................................................................................25

    3.  The Hignight Grass Seed Trial ................................................................25

    4.  While Plaintiffs Bear the Burden of Proof on Falsity, Scotts' and Other Third Party Trials Substantiate the 50% Thicker Claim. ................27

        a.  Scotts' EZ Seed Claim Book (Pre-Release testing). ......................27

        b.  University of Florida, University of Georgia, and University of California Riverside's Bermudagrass Tests (Pre-Release Testing). ..................................................................27

        c.  Subsequent In-House Testing .......................................................28

        d.  Dr. Bryan G. Hopkins's Study .......................................................28

CONCLUSION ..................................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ackerman v. Coca-Cola Co.*,
2013 WL 7044866 (E.D.N.Y. July 18, 2013) ........................................................ 14

*Algarin v. Maybelline, LLC*,
300 F.R.D. 444 (S.D. Cal. 2014) ................................................................... 16, 19

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ....................................................................................... 3

*Brazil v. Dole Packaged Foods, LLC*,
2014 WL 2466559 (N.D. Cal. May 30, 2014) .................................................... 15

*Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*,
492 U.S. 257 (1989) ...................................................................................... 14

*Burns v. Volkswagen of Am., Inc.*,
118 Misc. 2d. 289 (Sup. Ct. Monroe Co. 1982) ................................................. 8

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
973 P.2d 527 (Cal. 1999) ................................................................................ 5

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ....................................................................................... 3

*Cruz v. Anheuser-Busch, LLC*,
2015 WL 3561536 (C.D. Cal. June 3, 2015) .................................................... 5, 6

*DVL, Inc. v. Gen. Elec. Co.*,
811 F. Supp. 2d 579 (N.D.N.Y. 2010) ............................................................. 26

*Gasperini v. Ctr. for Humanities, Inc.*,
518 U.S. 415 (1996) ..................................................................... 10, 12, 13

*Grimes v. Rave Mot. Pictures, Birmingham, LLC*,
552 F. Supp. 2d 1302 (N.D. Ala. 2008) ............................................................ 14

*Guaranty Trust Co. of N.Y. v. York*,
326 U.S. 99 (1945) ....................................................................................... 12

*Hanna v. Plumer*,
380 U.S. 460 (1965) ................................................................................. 12, 13

*Hyde v. General Motors Corp.*,
    1981 WL 11468 (Sup. Ct., N.Y. Co. 1981) ...........................................................8

*In re NJOY*
    120 F. Supp. 3d 1050, 1118, 1122 (C.D. Cal. 2015) ...............................15, 16, 19

*In re NJOY*,
    2016 WL 787415 (C.D. Cal. Feb. 2, 2016) .....................................................15, 16

*In re POM Wonderful LLC*,
    2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) .........................................................15

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) ............................................................... passim

*Matsushita Elec. Indus. Co. v. Zenith Radio*,
    475 U.S. 574 (1986) .................................................................................................3

*Parker v. Time Warner Entm't Co.*,
    331 F.3d 13 (2d Cir. 2003) ....................................................................................14

*POM Wonderful LLC v. Coca Cola Co.*,
    2013 WL 543361 (C.D. Cal. Feb. 13, 2013) ...........................................................5

*Puello v. Bureau of Cit. & Immigr'n Servs.*,
    511 F.3d 324 (2d Cir. 2007) ....................................................................................8

*Rodriguez v. It's Just Lunch, Int'l*,
    2010 WL 685009 (S.D.N.Y. Feb. 23, 2010) .....................................................15, 22

*Saavedra v. Eli Lilly & Co.*,
    2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) ..........................................16, 17, 18

*Scotts Co., LLC v. Pennington Seed, Inc.*,
    No. 3:12-CV-168 (E.D. Va. Feb. 26, 2014) ..........................................................26

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ........................................................................... passim

*Simmons v. Author Sols., LLC*,
    2015 WL 4002243 (S.D.N.Y. July 1, 2015) ...............................................9, 10, 11

*Small v. Lorillard Tobacco Co.*,
    94 N.Y.2d 43 (1999) .......................................................................................22, 23

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003) .......................................................................................13, 14

*Stutman v. Chern. Bank*,
   95 N.Y.2d 24 (2000) .........................................................................................14

*Tartaglione v. Shaw's Exp., Inc.*,
   790 F. Supp. 438 (S.D.N.Y. 1992) ....................................................................3

*Waters-Pierce Oil Co. v. Texas*,
   212 U.S. 86 (1909)...........................................................................................14

*Weiner v. Snapple Beverage Corp.*,
   2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ...................................................20


**STATUTES**

28 U.S.C. § 2072.....................................................................................................11, 12

Cal. Code. Regs tit. 3 § 2300 *et seq.*........................................................................6

Cal. Code Regs. tit. 3 § 2322 ....................................................................................6

Cal. Food & Agr. Code § 14601 ...............................................................................6

Cal. Food & Agr. Code § 14631 *et seq.*................................................................1, 6

Cal. Food & Agr. Code § 14651 ...............................................................................6

Cal. Food & Agr. Code § 14651.5 ............................................................................6

Cal. Food & Agr. Code § 14653 ...............................................................................6

Cal. Food & Agr. Code § 14671 ...............................................................................6

N.Y. CPLR 901(b) ........................................................................................9, 11, 12

N.Y. Gen. Bus. Laws § 349 ........................................................................... passim

N.Y. Gen. Bus. Laws § 350 ........................................................................... passim

N.Y. Insurance Law § 5106 .....................................................................................11

**OTHER AUTHORITIES**

*Due Process Forgotten: The Problem of Statutory Damages and Class Actions*,
   74 MO. L. REV. 103, 147 (2009) .......................................................................13

Fed. R. Civ. P. 11(c)(2)............................................................................................29

Fed. R. Civ.P. 23 ..............................................................................................9, 10, 11, 13

Fed. R. Civ.P. 26 ..........................................................................................................4, 26

Fed. R. Civ. P. 56(c) ...........................................................................................................3

Fed. R. Evid. 703 ..............................................................................................................25

Defendants The Scotts Miracle-Go Company and The Scotts Company LLC (collectively "Scotts") respectfully submit this Memorandum of Law in Support of Defendants' Motion for Summary Judgment. Summary judgment is warranted on five separate and independent issues.

First, Plaintiffs cannot prove any claims based on their first theory of classwide liability—that EZ Seed does not grow grass "at all" and is "worthless." Plaintiffs lack evidence that "*nobody* was able to grow grass using EZ Seed." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 408 (S.D.N.Y. 2015) [ECF No. 127] (emphasis in original). Overwhelming evidence demonstrates EZ Seed grows grass, including sworn statements from customers who opted out of the certified class and numerous grass seed trials from Scotts and independent third parties. (SMF ¶¶ 1-6; Exs. 26-28; Ex. 9 at p. 40, 77-84; Ex. 78; Ex. 45; Ex. 79, Ex. 80 .[1]) Even Plaintiffs' own grass seed expert admits that EZ Seed is capable of growing grass. (SMF ¶ 7; Ex. 20 at 40:20-41:3.)

Second, Scotts is entitled to summary judgment on each California cause of action, because the 50% Thicker claim falls within a safe harbor. California Food and Agricultural Code §14631 mandates review of efficacy data substantiating claims on fertilizer products prior to sale. The California Department of Food and Agriculture ("CDFA") reviewed Scotts' data substantiating the now-contested 50% Thicker claim, found it "comprehensive," concluded that "several experimental studies" substantiated the 50% Thicker claim, and approved sale of EZ Seed in California with the 50% Thicker claim. (SMF ¶¶ 10-14; Ex. 23 ¶¶ 5-8 & incorporated exhibits 5-8; Ex. 21 ¶ 11.) This precludes Plaintiffs' California state-law claims.

Third, summary judgment is proper for Scotts on the purely legal question whether statutory damages are recoverable in a class action under N.Y. Gen. Bus. Laws §§ 349 and 350.

---

[1] Citations to "SMF" are to Scotts' L.R. 56.1 Statement. All exhibits are attached to the Omnibus Declaration of Shawn Patrick Regan.

When the New York legislature amended sections 349 and 350 to permit private rights of action, it did so on the condition that recovery of statutory damages would be proscribed in a class action. The Supreme Court's decision in *Shady Grove* does not alter this proscription.

Fourth, Plaintiffs cannot prove actual injury based on the alleged falsity of the 50% Thicker claim—a necessary element of each of Plaintiffs' claims. To withstand summary judgment, Plaintiffs must present evidence of a "price premium" attributable to the 50% Thicker claim (*i.e.*, the amount by which EZ Seed was sold to class members above what it would have sold for absent the 50% Thicker claim). The methodologies employed by Plaintiffs' experts speak to only what consumers might be "willing to pay" for EZ Seed with and without the 50% Thicker claim. Plaintiffs' experts fail to address the price at which Scotts would have been willing to sell the product without the claim. Plaintiffs have no evidence from which a reasonable juror could conclude Scotts would have charged less for EZ Seed if it had not made the claim. Indeed, Scotts charged *more* for EZ Seed after it removed the claim (SMF ¶ 21; Ex. 1 ¶¶ 52-57), and Plaintiffs lack evidence from which a reasonable juror could conclude Scotts would have charged less without the claim. (Ex. 38 ¶¶ 4, 5; Ex. 40 ¶¶ 4, 5.)

Finally, summary judgment is warranted in favor of Scotts on the ground Plaintiffs have not adduced evidence from which a reasonable juror could conclude the 50% Thicker claim is false and misleading. Plaintiffs rely upon: (1) a fatally flawed grass seed test conducted by their expert (Ex. 19); (2) a study conducted at the University of Florida, from which the scientist conducting the study concluded "

(Ex. 45); and (3) a faulty, inadmissible grass seed test conducted on behalf of Pennington Seed, Scotts' primary marketplace competitor (Ex. 29). Those studies are insufficient to create a material question of fact, especially in light of the evidence supporting the 50% Thicker claim.

## SUMMARY JUDGMENT STANDARD

Summary judgment is to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). The party opposing summary judgment cannot "rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Although the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party, "if the factual context renders [the non-moving party's] claim implausible . . . [that party] must come forward with more persuasive evidence to support their claim than would otherwise be necessary" to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). An issue of fact is only genuine and material if it cannot reasonably be resolved in favor of either party and may affect the outcome of the suit. *Anderson*, 477 U.S. at 248. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Tartaglione v. Shaw's Exp., Inc.*, 790 F. Supp. 438, 440 (S.D.N.Y. 1992). If the nonmoving party fails to offer "evidence on which the jury could reasonably find for the plaintiff," summary judgment is proper. *Id.*

## ARGUMENT

### I.    Summary Judgment Is Proper as to Plaintiffs' First Theory of Liability that EZ Seed Is Incapable of Growing Grass "At All" and Is "Worthless."

Plaintiffs' "first theory is that EZ Seed does not grow grass at all and thus is worthless." *EZ Seed*, 304 F.R.D. at 405. Summary judgment in favor of Scotts is proper on this theory because Plaintiffs cannot show, as the Court ruled they must, that "EZ Seed was defective for

every single customer," *id.* at 412 n.9, *i.e.*, that "*nobody* was able to grow grass using EZ Seed," *id.* at 408 (emphasis in original).[2]

Numerous consumers responded to the class certification notice by opting out and stating that EZ Seed worked. (*E.g.*, SMF ¶ 1; Ex. 26 ¶¶ 3-10; Ex. 27 ¶¶ 3-9; Ex. 28 ¶¶ 3-11.) Three of those consumers also voluntarily swore declarations that EZ Seed worked.[3] (*Id.*) A variety of turfgrass studies, including those cited by Plaintiffs or conducted by their experts, further contradict any claim that EZ Seed does not grow grass at all.[4] (SMF ¶¶ 8, 9; Ex. 9 at 40; Ex. 19, at 9, Exhibit B; Ex. 29; Ex. 45; Ex. 78; Ex. 80; Ex. 81; Ex. 82; Ex. 83.) Indeed, in a consumer satisfaction survey by Smith-Dahmer Associates, LLC for the 2011 growing season,

(*See* SMF ¶¶ 15, 16; Ex. 25 at 26.)

Insofar as Plaintiffs try to reframe their theory as claiming EZ Seed is incapable of growing grass *when watered at half the recommended rate*, (*see* ECF No. 211), the Court

---

[2] Testimony that the seven named plaintiffs were unable to grow grass with EZ Seed is insufficient to support classwide liability. As the Court has explained, there are any number of reasons that a given consumer might fail to grow grass, the vast majority of which cannot be the basis for liability against Scotts. Thus, the Court stated that "neither of [plaintiffs' two theories of liability] depends on whether an *individual* was able to grow grass using EZ Seed." *EZ Seed*, 304 F.R.D. at 408 (emphasis added). If Plaintiffs' claim is EZ Seed works for some, but not all, consumers, this is an inherently individualized inquiry that cannot be adjudicated classwide.

[3] EZ Seed user Connie Weinman stated, "In all areas that I used EZ Seed, EZ Seed produced grass that grew in thick —fully as advertised. In my experience, EZ Seed is a terrific product that works as advertised." (SMF ¶ 4; Ex. 26 ¶ 10.) Margaret Graham declared that "EZ Seed grew in very well and to my satisfaction. I was very pleased with the EZ Seed product." (SMF ¶ 6; Ex. 27 ¶ 9.) And Beatrice Francis swore, "I was pleasantly surprised how well EZ Seed grew for me, particularly the EZ Seed under the tree. For several years I had attempted to but had been unable to grow grass under the tree. In all areas I used EZ Seed, grass grew in thick and full." (Ex. 28 ¶ 11.) The declarations were produced to Plaintiffs, who elected not to depose any of the individuals.

[4] Plaintiffs' own expert, Dr. Karcher, does not opine that EZ Seed is incapable of growing grass (Ex. 20 at 40:20-25) and, in fact, admits                                                        . (*Id.* at 41:1-3; SMF ¶ 7.) Another study, performed on behalf of one of Scotts' primary competitors, by Mr. Kenneth Hignight, an alleged expert Plaintiffs have not disclosed here under Rule 26 but whose work is cited in Plaintiffs' Complaint and by their disclosed experts, concluded that
(SMF ¶ 9; Ex. 29 at 5, 16                                                                    And, of course, Scotts has presented 18 trials, in every one of which EZ Seed grew grass. (SMF ¶ 8; Ex. 9 at 40; Ex. 19, at 9, Exhibit B; Ex. 29; Ex. 45; Ex. 78; Ex. 80; Ex. 81; Ex. 82; Ex. 83.)

-4-

expressly rejected class certification on that theory of claims.[5]   Ignoring the Court's certification

order is not only improper, it demonstrates that Plaintiffs recognize they cannot support their

liability theory that EZ Seed does not grow "at all."

## II.   Review and Approval of the 50% Thicker Claim by the CDFA Creates a Safe Harbor That Bars Liability on Plaintiffs' California Claims.

Under California law, a safe harbor bars claims based on allegedly false or misleading

labeling where an agency (1) has jurisdiction to regulate the label, (2) is charged specifically

with prohibiting misleading statements on the label and (3) requires pre-approval of label claims

prior to sale.  *See Cruz v. Anheuser-Busch, LLC*, 2015 WL 3561536, *4-6 (C.D. Cal. June 3,

2015); *see also POM Wonderful LLC v. Coca Cola Co.*, 2013 WL 543361 at *5 (C.D. Cal. Feb.

13, 2013) ("If the Legislature has permitted certain conduct or considered a situation and

concluded no action should lie, courts may not override that determination.") (*quoting Cel-Tech*

*Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527 (Cal. 1999)).  In *Cruz*, the court

dismissed a complaint accusing Anheuser-Busch of mislabeling an alcoholic beverage because

the claims were protected by a safe harbor.  The Alcohol and Tobacco Tax and Trade Bureau

("TTB") had been granted jurisdiction over alcoholic beverage labels, had promulgated

regulations to prohibit false or misleading statements on alcoholic beverage labels, and had

implemented those regulations through a mandatory pre-approval process.  Anheuser-Busch had

received pre-approval for the labels in question through the required process.  The *Cruz* court

found a safe harbor applied and precluded the claims.  2015 WL 3561536, at *3-10.

---

[5] *EZ Seed*, 304 F.R.D. at 405 n.3 ("Plaintiffs appear to advance a third theory of liability—that EZ Seed does not grow grass at half-water levels if used according to the directions on the package. Defendants correctly contend this theory of liability is replete with individualized questions, including whether the consumer watered at half-water rates or followed the instructions exactly.  In addition, plaintiffs do not propose a damages model linked to this theory of liability. Therefore, class certification is inappropriate as to this theory.")  Further, each Named Plaintiff testified that they watered according to the label directions, not at a half-water rate, and thus would not even be members of any class that used half-water rates.  (SMF ¶ 22.)

The California Department of Food and Agriculture's ("CDFA") regulatory review process of EZ Seed's label was identical in all material respects to that in *Cruz*. Pursuant to California Food & Agricultural Code § 14601, the California legislature charged the CDFA with registering labels to be used on fertilizer material. That registration process requires distributors of fertilizer-containing products like EZ Seed to obtain pre-approval of all product labels and provide "proof of labeling statements and claims made" including "experimental data, evaluations, or advice furnished by scientists," § 14631. Under Section 14681(a), the legislature empowered CDFA to prohibit fertilizer-product claims that are "false or misleading in any particular way" by penalizing those who fail to comply with the registration process or who sell products with false or misleading labels, including the power to hold administrative hearings, whereby it may issue subpoenas, administer oaths, take testimony, and compel the disclosure of facts. Cal. Food & Agr. Code §§ 14631, 14651, 14651.5, 14653, 14671. Section 14651 and Cal. Code Regs. tit. 3, § 2322 permit the CDFA to enforce these provisions by providing penalties for any "false, misleading or deceptive business practices." As with the TTB in *Cruz*, the CDFA has jurisdiction over the relevant labels, pre-approves the labels, is charged with ensuring the labels are not false, misleading, or deceptive, and is empowered to prosecute and punish violators. Cal. Food & Agr. Code § 14631 *et seq.*; Cal. Code. Regs. tit. 3, § 2300 *et seq.*

Because EZ Seed has a fertilizer component, Scotts was required to submit each EZ Seed label to the CDFA for review and approval. (SMF ¶ 10; Ex. 21 & incorporated exhibits; Ex. 23 & incorporated exhibits.) During the pre-approval process for EZ Seed, the CDFA specifically requested and reviewed data substantiating the 50% Thicker claim. (SMF ¶ 11; Ex. 21 ¶¶ 7-8, 11-14 & incorporated exhibits 3, 4, 7, 8.) CDFA scientists then reviewed data substantiating the contested 50% Thicker claim, and concluded that the data was "comprehensive," with "'several

experimental studies' that substantiated the claim '50% Thicker (grass) with half the water**-** Versus ordinary seed when each were watered at half the recommended rate[.]'" (SMF ¶ 12; Ex. 21 ¶¶ 11, 14.) After review, on April 14, 2010, the CDFA determined the claim to be substantiated. (SMF ¶ 13; Ex. 21 & incorporated exhibit 8 ("The Staff Environmental Scientist has completed the review and found that the efficacy data provided substantiates the [50% Thicker claim].").) When deposed by Plaintiffs in this case, CDFA's senior scientist reaffirmed the CDFA's prior determination that EZ Seed's 50% Thicker claim is not false, deceptive, or misleading. (*See* Ex. 22 at 66:16-25.) For these reasons, a safe harbor applies and summary judgment should be granted against Plaintiffs' California state law claims.

## III.   Statutory Damages Are Not Available in a Class Action Under GBL §§ 349 or 350.

The Court should also grant summary judgment in favor of Scotts against Plaintiffs' claims for class-wide statutory damages under N.Y. Gen. Bus. Law §§ 349 and 350. Sections 349 and 350 limit monetary recovery in a class action to actual (not statutory) damages.

### A.   Sections 349 and 350 Do Not Permit Recovery of Statutory Damages in a Class Action.

When the New York legislature amended sections 349 and 350 to permit private rights of action[6], it did so on the condition that statutory damages would not be recoverable under sections 349 and 350 in a class action. (Ex. 33, 1980 N.Y. Laws 1302-03.) The State Assembly initially passed a bill that would have permitted recovery of statutory damages in class actions. (Ex. 34, 1980 Bill Text N.Y. A.B. 8530.) The Senate refused to pass that bill. (*See, e.g.*, Ex. 30, Letter

---

[6] Prior to 1980, only the New York Attorney General could enforce sections 349 and 350 and could recover only "restitution of any moneys or property" under section 349(b) and "a maximum penalty of $500 under section 350-c. In 1980, section 349 was amended to provide that "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." *Id.* § 349(h) . Section 350 similarly was amended to provide "[a]ny person who has been injured by reason of any violation of [section 350] may bring an action in his or her own name to enjoin such unlawful act or practice, an action to recover his or her actual damages or five hundred dollars, whichever is greater, or both such actions." *Id.* §350-e(3).

from Chairman, Standing Comm. on Consumer Protection, N.Y.S. Senate to Gov. Carey (May 23, 1980), *contained in* Bill Jacket to ch. 346, 1980 N.Y. Laws ("Business interests in this state have been adamant in their opposition to offering a 'private right of action' to consumers in the past because of their fear that a class action for statutory damages would be sought under this section.").) The Senate and Assembly eventually agreed to a compromise permitting private rights of action, on the condition that recovery in class actions thereunder would be limited to actual damages. (*See e.g.*, Ex. 31, Serrano Ltr. (May 29, 1980), *contained in* Bill Jacket to ch. 346, 1980 N.Y. Laws ("[T]his bill differs from a bill passed…earlier this session … which specifically authorized class action suits.… [T]his change does not bar class actions…; rather class actions, for actual damages (not satutory [*sic*] damages) would still lie.… [T]he compromise limits the damages recoverable by the class under a § 349 suit, but importantly does not limit the right of similarly situated plaintiffs to bring a § 349 suit."); Ex. 32 Mem. in Support (June 6, 1980), *contained in* Bill Jacket to ch. 345, 1980 N.Y. Laws ("This bill does not diminish a parties [sic] right to initiate a class action. However, in a class action suit the plaintiffs could recover only actual damages….").)[7] In sum, "New York's Deceptive Practices Act envision[s] class actions for the recovery of actual damages as distinguished from statutory penalties." *Hyde v. General Motors Corp.*, 1981 WL 11468 at *2 (Sup. Ct., N.Y. Co. 1981) (explaining that where suit seeks "actual damages instead of statutory penalties, it is clear that such a representative

---

[7] "In ascertaining the plain meaning of a statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole" and insofar as the language of the statute is ambiguous or unclear, the court is to look to the "legislative history to determine the statute's meaning." *Puello v. Bureau of Cit. & Immigr't'n Servs.*, 511 F.3d 324, 327 (2d Cir. 2007) (Katzmann, J.). At least one court found ambiguity in the 1980 amendments in relevant part and clarity in the legislative history. *See Burns v. Volkswagen of Am., Inc.*, 118 Misc. 2d. 289, 292-93 (Sup. Ct. Monroe Co. 1982) (reviewing legislative history of amendments to sections 349/350 and concluding "numerous items of correspondence to the Governor's office concerning the amendments" provide "[a]uthority for this interpretation" that "class actions for actual damages rather than the $50 minimum or the punitive treble damages can be maintained").

action may be brought").[8]

### B.    *Shady Grove* Is Inapplicable.

The issue here is distinct from, and does not implicate, the holding of *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), because it does not hinge on the operation of CPLR § 901(b) as the basis for concluding statutory damages are unavailable in this federal-court class action. Rather, statutory damages are barred here because in affirmatively amending *the substantive law* (GBL §§ 349 and 350) to add private rights of action under each, the legislature sought to allow for recovery, in a class action, of actual damages but not statutory damages. *Cf. Shady Grove*, 559 U.S. at 401 ("We need not decide whether a state law that limits the remedies available in an existing class action would conflict with Rule 23; that is not what § 901(b) does…. Unlike a law that sets a ceiling on damages (or puts other remedies out of each) in properly filed class actions, § 901(b) says nothing about what remedies a court may award; it prevents the class actions it covers from coming into existence at all."); *accord id.* at n.4 ("[W]e express no view as to whether state laws that set a ceiling on damages recoverable in a single suit [] are preempted…. § 901(b) does conflict because it addresses not the remedy, but the procedural right to maintain a class action."); *Simmons v. Author Sols., LLC*, 2015 WL 4002243, at *6 n.10 (S.D.N.Y. July 1, 2015) (enforcing Colorado CCPA's prohibition on monetary damages in class actions because "*Shady Grove* explicitly does not apply here," where the state law limited the remedies available in an existing class action) (quoting *Shady Grove*, 559 U.S. at 401).

---

[8] That sections 349 and 350 permit recovery of only actual damages, not statutory damages, in a class action is further demonstrated by the fact that in recent years the legislature has considered, but refused to enact, amendments that would authorize recovery of statutory damages in such class actions. (*See, e.g.*, Ex 35, 2015 Bill Text N.Y. A.B. 1161 (proposing to add subsection 349-F: "Any consumer entitled to bring an action under this article may, if the unlawful act or practice has caused damage to other consumers similarly situated, bring an action on behalf of himself or herself and such other consumers to recover damages or obtain other relief as provided for in this article."); Ex. 36, 2015 Bill Text N.Y. S.B. 1273 (same).)

In *Shady Grove*, the issue was "whether Shady Grove's suit may proceed as a class action." *Id.* at 398; *accord* Pet. Br. at i (framing Question Presented as "Does a state statute limiting the *availability of class actions* in state courts restrict a federal court's power to certify a class under [Rule] 23 in an action where jurisdiction is based on diversity") (emphasis added). The United States Supreme Court found, in a plurality opinion authored by Justice Scalia, that "Rule 23 provides [the] answer," because it "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action," and held that, "[b]ecause § 901(b) attempts to answer the same question—*i.e.*, it states that Shady Grove's suit 'may *not* be maintained as a class action' because of the relief it seeks—it cannot apply...." *Shady Grove*, 559 U.S. at 398-99 (emphasis in original).

Here, by contrast, the issue is not whether the suit may proceed as a class action. The issue is whether the New York legislature's decision to limit the remedies available in a class action under sections 349/350 to actual, not statutory damages, is permissible. It is the example the Supreme Court expressly carved out from *Shady Grove*. *Simmons*, 2015 WL 4002243, at *6 n.10 (quoting *Shady Grove*, 559 U.S. at 401). And there can be no legitimate dispute that a state legislature can limit remedies in this way. *Id.* Indeed, Plaintiffs acknowledged at the pre-motion conference on this motion that some state statutes limit the recovery of statutory damages in class actions, and these limitations apply in federal court. (*See* Ex. 44 at 34:2-35:8 ("Actually, California law, the CLRA, has a thousand-dollar statutory damage, but I think that's limited to the individual claims under the CLRA. I don't think we can do—we don't have a statutory damage claim for the class in California.")); *accord Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 428 (1996) ("a statutory cap on damages would supply substantive law for *Erie* purposes"); *id.* at 439-40 (Stevens, J. dissenting) ("A state-law ceiling on allowable damages ...

is a substantive rule of decision that federal courts must apply in diversity cases governed by New York law."); *Simmons*, 2015 WL 4002243, at *6 n.10.

> **C.**    **Even if *Shady Grove* Were to Apply Here, the Legislature's Bar on Recovery of Statutory Damages in a Class Action Also Would Apply Because It Is "So Intertwined" with the Substantive Law.**

As a 4-1-4 fractured decision, the "rule" or "holding" of *Shady Grove* is not obvious. But it is valuable to understand because it shows that, even under *Shady Grove*, statutory damages are not available in a class action under sections 349/350.

In *Shady Grove*, a five-Justice majority—via a four-Justice plurality opinion of Justice Scalia and an individual concurrence by Justice Stevens—held that a court must first ask whether a federal procedural rule answers the question at issue. *Shady Grove*, 559 U.S. at 398-99.[9] A different five-Justice majority—via the opinion of Justice Stevens agreeing with a four-Justice dissent of Justice Ginsburg on this issue—held that, if a federal rule addresses the issue, a court must then consider whether a state law "is so intertwined" with the state-created right or remedy that it "function[s] as a part of the State's definition of substantive rights and remedies" and application of the Federal Rule would thereby violate the Rules Enabling Act limitation that Federal Rules not "abridge, enlarge or modify any substantive right." *Id.* at 423-24, 417-18 (citing 28 U.S.C. § 2072). Justice Stevens examined the relevant legislative history and found an insufficient basis to conclude section 901(b) was "so intertwined" with the substantive rights created by the legislature under New York Insurance Law § 5106 that permitting the case to

---

[9] Because the question presented was whether CPLR § 901(b), if applied, would impermissibly limit the *availability of class actions* in federal court, the majority found that Rule 23 answered the issue of whether a class action is available and CPLR § 901(b), if applied, would impermissibly "contradict" the Federal Rule. *Id.* at 405. The issue here is distinct, namely whether sections 349 and 350 answer the question of what *remedies* are available in a class action. (*See supra*.) Thus, this case is excluded from *Shady Grove* under the first question.

But even assuming *arguendo* that the question here were framed to focus on the role of 901(b)—which would be improper given the legislative history and intent, but which Plaintiffs surely will try to do—and satisfy the first question of *Shady Grove*, the second question yields a different answer here than in *Shady Grove*. (*See infra*.)

proceed as a class action would "abridge, enlarge or modify a[] substantive right." *Id.* at 436; 28 U.S.C. § 2072.  He therefore found CPLR § 901(b)'s general prohibition on maintenance of a class action to recover statutory penalties or damages inapplicable in a federal court diversity action.  *Shady Grove*, 559 U.S. at 435-36.

The facts here are starkly distinct.  The legislative history of the relevant substantive statutes demonstrates that when the New York legislature reached agreement to amend sections 349 and 350 to permit private rights of action, it did so on the condition that statutory damages would not be recoverable under sections 349 and 350 in a class action.  (*See supra* Part III.A.) Permitting classwide recovery of statutory damages here would impermissibly "enlarge or modify a substantive right" in violation of the Rules Enabling Act.  As such, the Rules of Decision Act and Supreme Court precedent require the Court apply in this diversity action the substantive proscription on recovery of statutory damages under GBL §§ 349 and 350 and grant summary judgment because failure to do so would invite forum shopping and yield markedly disparate litigation outcomes.  *See Gasperini*, 518 U.S. at 428; *Hanna v. Plumer*, 380 U.S. 460, 468 (1965).

**D.      If *Shady Grove* Governs the Case, *Shady Grove* Should Be Overruled.**

While not necessary to decide this case, *Shady Grove* is inconsistent with prior Supreme Court precedent and should be overturned to the extent it is read to allow recovery of statutory damages in class actions premised on GBL §§ 349 and 350.[10]  *Shady Grove* unnecessarily departed from *Gasperini*, 518 U.S. 415, *Hanna*, 380 U.S. 460, and *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99 (1945).  Operating together, GBL §§ 349 and 350 and CPLR § 901(b) merely "define the amount of recovery."  *Id.* at 420 (opinion of Stevens, J.) (citing *Gasperini*, 518 U.S.

---

[10] Scotts recognizes this Court cannot overturn U.S. Supreme Court precedent, and makes this argument to preserve it for later appeal if the Court determines that the rule announced by the Supreme Court in *Shady Grove* governs this case—but it should not (*see supra*.).

at 427). Because there is no unavoidable conflict between the state statutes and Rule 23, the

proper inquiry is "whether application of the [state] rule would have so important an effect upon

the fortunes of one or both of the litigants that failure to [apply] it would be likely to cause a

plaintiff to choose the federal court." *Hanna*, 380 U.S. at 468, n.9; *see also Gasperini*, 518 U.S.

at 428. As this case illustrates, "a plaintiff need only file in federal instead of state court to seek

a massive monetary award explicitly barred by state law." *Shady Grove*, 559 U.S. at 456

(Ginsburg, J., dissenting) (citing *Gasperini*, 518 U.S. at 431 ("*Erie* precludes a recovery in

federal court significantly larger than the recovery that would have been tolerated in state

court.")). As such, the state law proscription on statutory damages should apply in federal court.

### E. Due Process Concerns Prohibit Recovery of Statutory Damages in a Class Action Under Sections 349 and 350.

Plaintiffs allege ▮▮▮▮ containers of EZ Seed were sold in the State of New York (Ex.

14 ¶ 12) at an average price of ▮▮▮ *id.* ¶ 13 Tbl. 1) for aggregate sales of approximately ▮

▮▮▮ (*id.* ¶ 13).[11] Under Counts VIII and IX, Plaintiffs seek statutory damages of more than

$545 million (*id.* ¶¶ 45-50, Tbls 6-7), a ratio that is *more than 25:1 for a full refund measure of*

*damages, and 71:1 for the highest estimate of price premium damages*. Damages of this

magnitude would be grossly excessive and offend due process.[12]   *State Farm Mut. Auto. Ins. Co.*

---

[11] The actual damages here, if any exist, would be far less than the aggregate sales. For example, statutory damages under sections 349 and 350 should be based on the number of Plaintiffs, not the number of units. Actual damages are even lower under a price premium model. Plaintiffs' own expert's highest New York class price premium damages estimate is ▮▮▮▮ (Ex. 14 ¶ 48 Tbl. 4.)

[12] Notably, section 349 provides that, although the Court may increase damages for a willful violation of section 349, any increase may not "exceed three times the actual damages up to one thousand dollars." N.Y. Gen. Bus. Law § 349(h). Entitlement to statutory damages, would permit a recovery greatly exceeding "three times the actual damages," without even a finding of willfulness.

*v. Campbell*, 538 U.S. 408, 425 (2003).  Thus, a statutory damage claim should be stricken here.[13]

## IV.   Summary Judgment Is Warranted on Plaintiffs' Second Theory of Liability, that the 50% Thicker Claim Is False or Misleading.

Plaintiffs' second theory of liability—that the claim "50% Thicker with Half the Water** **Versus ordinary seed when each was watered at half the recommended rate. Results may vary." is false or misleading—fails for two reasons.  First, Plaintiffs have failed to establish an injury resulting from the alleged falsity, an essential element of every cause of action and a requirement for Article III standing.  Second, Plaintiffs cannot establish that the claim is actually false or misleading.

### A.   Plaintiffs Have Not Adduced Evidence of a Classwide Injury Resulting from the Allegedly False and Misleading 50% Thicker Claim.

Each claim asserted by the Plaintiffs requires a finding of actual injury.  *See, e.g.*, *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000) (GBL §§ 349, 350); *Ackerman v. Coca-Cola Co.*, 2013 WL 7044866, at *4, *20 n.32 (E.D.N.Y. July 18, 2013) (UCL, FAL, CLRA). Plaintiffs appear to argue two theories of actual injury stemming from the alleged falsity of the 50% Thicker claim:  (1) that they were injured by paying a price premium for EZ Seed attributable to the 50% Thicker claim, and (2) that Plaintiffs would not have bought EZ Seed

---

[13] *See Due Process Forgotten: The Problem of Statutory Damages and Class Actions*, 74 Mo. L. Rev. 103, 147 (2009) (explaining that, unlike with punitive damages where court must await jury verdict to know amount of award, calculation of statutory damages is mere mathematical exercise rendering it reasonable to assess constitutionality of statutory award before liability and judgment are determined). *See also Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 22 (2d Cir. 2003) ("combining … statutory damages awards on a per-consumer basis…with the class action mechanism" can raise Due Process violation where "the potential statutory damages [are] so far beyond the actual damages suffered").  *See Shady Grove*, 559 U.S. at 445 n.3 (2010) (Ginsburg, J. concurring) ("When representative plaintiffs seek statutory damages … a class action poses the risk of massive liability unmoored to actual injury."); *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 276 (1989) ("the Due Process Clause places outer limits on the size of a civil damages award made pursuant to a statutory scheme"); *Waters-Pierce Oil Co. v. Texas*, 212 U.S. 86, 111 (1909) (statutory damages unconstitutional if "grossly excessive"); *State Farm*, 538 U.S. at 425 (indicating awards exceeding single-digit ratio between punitive and compensatory damages are grossly excessive); *Grimes v. Rave Mot. Pictures, Birmingham, LLC*, 552 F. Supp. 2d 1302, 1308 (N.D. Ala. 2008) (finding statutory damages not recoverable in class action on constitutional due process grounds).

without the 50% Thicker claim.  (ECF No. 211 at 2-3.)  Each fails as a matter of law and/or for

lack of evidentiary support.

### 1.    Plaintiffs Present No Evidence of a "Price Premium" Injury.

"Plaintiffs allege they suffered economic harm when ... they paid a premium for EZ Seed

based on the [allegedly] false 50% thicker claim." *EZ Seed*, 304 F.R.D. at 409.  Only a price

premium attributable solely to the claim is actionable. *Id.* at 413-14.  Plaintiffs have no evidence to

support this injury theory.

A "price premium" injury is the difference (if any) between the price at which EZ Seed

was sold to consumers with the 50% Thicker claim and the price at which EZ Seed would have

been sold had Scotts not included the 50% Thicker claim. *In re NJOY*, 120 F. Supp. 3d 1050,

1118, 1122 (C.D. Cal. 2015) ("*NJOY I*") (price-premium calculated "by taking 'the difference

between *the market price actually paid* by consumers and the *true market price* that reflects the

impact of the unlawful, unfair, or fraudulent business practices'") (emphasis in original)

(citations omitted); *In re NJOY*, 2016 WL 787415, at *5-7 (C.D. Cal. Feb. 2, 2016) ("*NJOY II*")

(same); *Brazil v. Dole Packaged Foods, LLC*, 2014 WL 2466559, at *15 (N.D. Cal. May 30,

2014) (mislabeling premium calculated "by taking the difference between the market price

actually paid by consumers and the true market price that reflects the impact of the unlawful,

unfair, or fraudulent business practices"); *see also In re POM Wonderful LLC*, 2014 WL

1225184, at *5 (C.D. Cal. Mar. 25, 2014); *Rodriguez v. It's Just Lunch, Int'l*, 2010 WL 685009,

at *9 (S.D.N.Y. Feb. 23, 2010) ("price premium" injury exists where consumer actually paid a

"higher price" than the true market price "absent deceptive acts").

Distilled to its essence, Plaintiffs' price-premium theory alleges that Scotts' MSRP for

EZ Seed with the 50% Thicker claim was higher than it would have been in a but-for world,

where Scotts did not include the claim on its packaging.  And as a result, Plaintiffs allege they

paid more for EZ Seed than they would have in the but-for world, where Scotts did not use the

50% Thicker claim. Of course, if Scotts would have charged the same (or more) for EZ Seed in

the but-for world without the 50% Thicker claim, then Plaintiffs did not pay any "premium" for

the claim; they paid the exact same price (or less than) the product would have sold for without

the 50% Thicker claim.[14] Accordingly, a price premium injury exists only if Scotts would have

charged less for EZ Seed had it not been able to make the 50% Thicker claim.[15] Plaintiffs bear

the burden of making this showing.

To meet their burden of proof, Plaintiffs must put forth evidence that absent the 50%

Thicker claim, EZ Seed would have sold for less. *NJOY I*, 120 F. Supp. 3d at 1118-22; *NJOY II*,

2016 WL 787415, at *5-7; *Astiana*, 2014 WL 60097, at *12; *Saavedra v. Eli Lilly & Co.*, 2014

WL 7338930, at *5 (C.D. Cal. Dec. 18, 2014); *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 460

(S.D. Cal. 2014) ("[T]he premium represents the amount consumers overpaid for the [allegedly

false/misleading] claim.... Plaintiffs have failed to produce any expert testimony that

---

[14] While under some (but not all) of Plaintiffs' claims it is possible that a given person could be injured by having purchased EZ Seed that they would not have otherwise purchased, this is not *classwide* injury. Plaintiffs have no corresponding damages theory, and this injury theory is replete with individualized issues as established by Plaintiffs' own expert. (*See* Ex. 11 at p.28 (identifying a spectrum of prices at which people would have purchased EZ Seed without the 50% Thicker claim, including ▇▇▇ who would have purchased the product without the claim for more than the product sold with the claim); *see also* Ex. 1 ¶ 23.)

[15] An overarching defect in Plaintiffs' price-premium injury theory is that Scotts did not sell EZ Seed directly to *any* consumer or class member. Rather, Scotts sells EZ Seed at a wholesale price to retailers, who in turn set their own retail prices for EZ Seed, factoring in the retailers' markup over the wholesale price. Retailers did not usually charge consumers Scotts' recommended market price of $▇▇▇ Plaintiffs assert EZ Seed sold for an average of ▇▇▇ and was advertised for an average price of $▇▇▇. (Ex. 11 ¶ 34.) Even assuming *arguendo* that, in the absence of the 50% Thicker claim, the retail price would have been lower than it actually was—*i.e.*, there was a "price premium" associated with the 50% Thicker claim—there exists no evidence that class members actually paid any part of that premium, since consumers did not pay ▇▇▇ for EZ Seed. Indeed consumers—like Plaintiff Arcuri— paid as little as ▇▇▇ (Compl. ¶ 69, ECF No. 14; *see also* Ex. 1 ¶¶ 30-31.) To prove class members were injured by paying additional money because of the 50% Thicker claim, Plaintiffs need to prove that both Scotts *and* retailers would have charged less for EZ Seed without the 50% Thicker claim. If, for example, Scotts would have lowered its *wholesale* price in the but-for world where it had not made the 50% Thicker claim (and there exists no evidence Scotts would have), there exists no evidence that retailers would have also, and uniformly, lowered their *retail* price for EZ Seed, as opposed to keeping the *retail* price the same and earning additional profit. None of Plaintiffs' experts provide any analysis of how retailers set the price of EZ Seed or of the relationship between wholesale and retail prices. Therefore, since *retail* price fluctuated greatly, at least from $▇▇▇ (Compl. ¶ 69; Ex. 11 ¶ 34), Plaintiffs have no *classwide* evidence of some uniform "price premium."

-16-

demonstrate a gap between the market price of the SuperStay 24 HR products and the price they purportedly should have sold at without the 24 hour/no transfer representations."); (Ex. 1 ¶¶ 44-51; Ex. 44 at 36:13-14 (Plaintiffs' Counsel describing price premium as "did putting that claim on the package enhance the price of this product and, if so, by how much")). After three years of party and third-party discovery, Plaintiffs have not adduced any such evidence.

With EZ Seed, a branded product, Scotts decides the price at which it is "willing to sell." (*See, e.g.*, SMF ¶¶ 17, 18; Ex. 1 ¶ 28; Ex. 37 at 98:22-99:1 ("                    ").) Scotts' willingness to sell a product at a particular price, and the factors that go into that decision are known as supply-side considerations. *See Saavedra*, 2014 WL 7338930, at \*5. Plaintiffs have no evidence—expert or otherwise—that Scotts was willing to sell EZ Seed for less, absent the 50% Thicker claim. Indeed, the *only* evidence of what happened to EZ Seed's price when the 50% Thicker claim was removed from the label is that the price *increased*.[16] (SMF ¶ 21) Indeed, the only *evidence* adduced in this case suggests that, if Scotts had not made the 50% Thicker claim beginning in 2009, Scotts' price for EZ Seed would not have changed in any way.[17] (SMF ¶¶ 19, 20; Ex. 38 ¶ 5; Ex. 40 ¶ 5).

Plaintiffs' experts uniformly testified that they neither calculated nor knew the MSRP Scotts would have set for EZ Seed absent the claim:



---

[16] As Dr. David calculated using the expert methodology known as "Difference in Difference," the price of EZ Seed, after the claim was removed,
 (Ex. 1 ¶¶ 52-55 (emphasis in original).)

[17] As the Court recognized, and as Plaintiffs conceded, Plaintiffs did not ask Scotts' witnesses the crucial question—what price would Scotts have set for EZ Seed if Scotts did not make the 50% Thicker claim. (Ex. 44 at 36:25-37:5 ("THE COURT: Wait, wait. And then the next question is, well, what would you price it at if you didn't put it on there? Did you ask that? MR. BURSOR: No, but, I mean, that's a pretty complicated question.").) To avoid any doubt, Scotts provides declarations from its witnesses who were responsible for EZ Seed's pricing. (Exs. 38, 40.)

(Ex. 18 (Sukumar) at 60:25-61:8, 61:19-62:4);



(Ex. 12 (Dennis) at 98:18-99:4; *id.* at 100:13-18);



(Ex. 16 (Weir) at 286:4-9).

At best, Plaintiffs present evidence only of consumers' "willingness to pay," which is a

subjective and speculative measure of what a consumer would be willing to pay for a product.[18]

(Ex. 11 ¶¶ 26-27 & n.1-2, 48-53; Ex. 18 at 37:14-19; Ex. 52 at 1-4; Ex 5 ¶ 109.)

Absent evidence of Scotts' "willingness to sell," evidence of class members' "willingness

to pay" is insufficient for Plaintiffs to meet their burden of proving a "price premium."

*Saavedra*, 2014 WL 7338930, at *5 ("The Court has found no case holding that a consumer may

recover based on consumers' willingness to pay irrespective of what would happen in a

---

[18] Because of the realities of the market, in the short term willingness to pay determines only whether or not a person buys a unit, not the actual selling price of a good. (Ex. 1 ¶ 31.) This is because, quite simply, consumers cannot negotiate the price of most consumer goods. (*See id.*) Thus the price is either one the consumer is willing to pay, or it is not. (*See id.*)

functioning market (i.e. what could be called sellers' willingness to sell)."); *see also NJOY I*, 120

F. Supp. 3d at 1120 (same.)

EZ Seed's price was not set based on any individual claim, none of which—including

50% Thicker—caused Scotts to charge more than it would have otherwise:



(Ex. 39 at 33:8-18; SMF ¶¶ 19, 20; *see also id.* at 72:7-13 ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮).) Plaintiffs have no evidence to the contrary.

### a. Scotts' Internal Calculation of a Premium over Separately Purchased Seed, Soil, and Fertilizer Does Not Establish Injury.

Despite the lack of expert evidence, Plaintiffs claim that a Scotts internal document

concedes the existence of a "price premium" by stating, "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮Ex. 43 (emphasis added).) They are incorrect.

First, Scotts' calculation is a comparison between the price of EZ Seed and competing

products, which is not a "price premium" as courts use that term to describe injury in class

actions. *See, e.g., Algarin, LLC*, 300 F.R.D. at 460; (*see also* Ex. 44 at 35:22-36:5 ("[The Court]:

Is [a price premium] the difference between the price a consumer would pay for this grass seed

with the claim on it versus this grass seed without the claim on it ... [o]r is it a difference

between that grass seed and somebody else's grass seed? MR. BURSOR: No. It's ... the first of

those, your Honor.")).

Second, this alleged calculation does not control for a number of differences between EZ Seed and its physical components sold separately—most importantly, convenience. (Ex. 1 ¶ 40.) There is no suggestion in the Scotts document that the ▇▇▇▇ is related, or tied to, the 50% Thicker claim, *which is not even mentioned in the document at issue.* (Ex. 43.)

Even Plaintiffs' proffered expert, Mr. Weir, concedes the ▇▇ "premium" is not a measure of the "price premium" caused by the 50% Thicker claim. (*See* Ex. 14 ¶ 29 ("▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇").) Thus, by Weir's own admission, this ▇▇ premium as ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇" fails to match Plaintiffs' liability theory. *EZ Seed*, 304 F.R.D. at 413 ("[F]or plaintiffs' price premium model adequately to match their second theory of liability—that they were damaged when they paid a premium associated with the 50% thicker claim—[Plaintiffs] *must control for product features other than the 50% thicker claim when calculating the price premium.*") (emphasis added).[19]

As this Court already recognized, "Courts routinely reject price premium methodologies … when the proposed methodologies do not attempt to isolate the premium due only to the allegedly misleading marketing statement." *Id.*

### b. Empirical Data Disproves Plaintiffs' Price Premium Theory.

Plaintiffs bear the burden of establishing a price premium, and they cannot meet that burden. But the story does not end there. Hard data actually *disproves* Plaintiffs' argument,

---

[19] As the Court recognized, Plaintiffs seek to establish injury through their damages methodologies. *EZ Seed*, 304 F.R.D. at 410 n.7 ("[P]laintiffs have proposed suitable damages methodologies for establishing injury on a classwide basis—at least at this early stage of the litigation.")); *see also Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *6 (S.D.N.Y. Aug. 5, 2010) ("Only by showing that plaintiffs in fact paid more for Snapple beverages as a result of Snapple's 'All Natural' labeling can plaintiffs establish the requisite elements of causation and actual injury.").

demonstrating that when Scotts removed the 50% Thicker claim from its packaging, *the price went up*, not down. (SMF ¶ 21)

Dr. Jesse David, Scotts' economics expert, conducted a Difference in Difference analysis of the EZ Seed prices before and after the removal of the 50% Thicker claim. (Ex. 1 ¶ 52-57.) His calculations and analysis demonstrate that, even accounting for rising grass seed prices, EZ Seed's price

(*Id.*) Basically, Dr. David looked at the increase in prices of each product, and determined that

(*Id.*) Pennington 1 Step Complete's price increased

. (*Id.*) The

(*Id.*) There is absolutely no indication that the removal of the 50% Thicker claim caused the price to drop.[20]

### 2. Plaintiffs' Claim that Class Members Would Not Have Purchased EZ Seed But For the 50% Thicker Claim Was Not Certified And Cannot Establish Classwide Injury.

Plaintiffs' final theory of injury is that at least some class members would not have purchased EZ Seed had the 50% Thicker claim not been on the package. (ECF No. 211.) As an initial matter, this theory of injury was not certified by the Court. *EZ Seed*, 304 F.R.D. at 412-15 (identifying full-compensatory damages model to remedy allegation EZ Seed is "worthless," and "price premium" damages to remedy allegation 50% Thicker claim commanded price premium).

---

[20] Plaintiffs' response to Scotts' pre-motion letter disputes Dr. David's finding because a different 50% Thicker claim was made in secondary marketing. This argument does not impact Dr. David's analysis. Plaintiffs have not even alleged, let alone established, that the other claim ("50% Thicker with Less Water** **versus ordinary seed when both were watered at less than the recommended rate after 21 days. Results may vary.") is false or misleading. (*See* Ex. 14 ¶¶ 17-18.) Absent such a showing, that claim cannot be used to refute an increase in price after removing the 50% Thicker claim, because Scotts would have been permitted to make the new claim in the "but for world" even if Scotts could not make the 50% Thicker claim.

Regardless, Plaintiffs' theory does not prevent summary judgment. First, to be a *classwide* theory of injury, by definition Plaintiffs would have to prove that *no one* in the class would have purchased EZ Seed had the 50% Thicker claim not been made. But there is no such evidence. In fact, Plaintiff's own expert shows that ▮▮▮▮▮▮ of surveyed consumers would have been willing to pay more than the average selling price for EZ Seed, *even without the 50% Thicker claim*.[21] (Ex. 11 ¶ 34 & p.28 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); Ex. 12 at 210:18-23.)

Second, even if some class members might have been injured in this way, Plaintiffs have not, nor could they ever, prove who among EZ Seed's purchasers would not have purchased EZ Seed but for the presence of the 50% Thicker claim. Significant individual questions and ascertainability issues would, therefore, also preclude a class recovery.

Finally, this theory of injury has been expressly considered and rejected by New York courts at least as to GBL §§ 349 and 350 claims. *See Rodriguez*, 2010 WL 685009, *9; *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999). *Rodriguez* specifically held that while an allegation that consumers would not have purchased a product but for the allegedly deceptive claim is evidence of deception, a showing that they paid a higher price than they otherwise would have is necessary to satisfy the injury requirement under §349 and §350: "'[C]onsumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices,' have not suffered an injury cognizable under NYGBL § 349 [and § 350]." *Rodriguez*, 2010 WL 685009, *9. *Rodriguez* is not an outlier; it follows and quotes the New York Court of Appeals, which articulated this rule. *Small*, 94 N.Y.2d at 56. In *Small*, the court

---

[21] Scotts does not credit Dennis's survey (there is no price premium associated with the 50% Thicker claim), but it clearly demonstrates the flaw in Plaintiffs' theory.

held, "[Plaintiffs] posit that consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business Law § 349.  We disagree." *Id.  Small* noted that "a plaintiff may have a claim for the higher price the consumer paid for the product as a result of the misrepresentation" but the injury is cognizable only where the alleged misrepresentation "caused an inflated price." *Id.* at 56 & n.5.  At a minimum, this theory cannot support Plaintiffs' § 349 and § 350 claims.

### B.    Plaintiffs Lack Evidence from Which a Reasonable Juror Could Conclude the 50% Thicker Claim Is False or Misleading.

Plaintiffs bear the burden of demonstrating that the 50% Thicker claim is false or misleading.  They have not adduced admissible evidence from which a reasonable juror could conclude the claim is false or misleading.  As Plaintiffs recently confirmed, they rely on three scientific studies to disprove the 50% Thicker claim: Dr. Karcher's trial, Dr. Kruse's trial, and Mr. Hignight's trial.  (*See* ECF No. 211.)  None reliably demonstrate that the 50% Thicker claim is false or misleading.

### 1.    Dr. Karcher's Grass Seed Trial

Plaintiffs rely on the grass seed trial conducted by their proffered expert Dr. Douglas Karcher.  (*See* Ex. 19.)  As explained in detail in the concurrently filed Motion to Exclude Dr. Karcher, his trial is fundamentally flawed and must be excluded.  But even if Dr. Karcher's test and opinions are not excluded, they should be given so little weight that they cannot create a material question of fact.  Dr. Karcher's trial suffered from at least the following fatal flaws:

- Dr. Karcher did not even bother to include a positive control testing EZ Seed at full water rates to confirm the viability of that particular package of EZ Seed.

- Dr. Karcher's trial tested only a single package of a single variety of EZ Seed, in a climate where it was not sold or intended to be grown because the seed is not adapted to that climate.

- Dr. Karcher's trial failed to account for differences in grass seed species between the selected formulation of EZ Seed and the chosen "ordinary seed," even though the ordinary seed was comprised of a drought tolerant species ideally suited to Arkansas, but the EZ Seed sample was comprised of species adapted to cooler regions.

- Dr. Karcher failed to give EZ Seed a deep and thorough initial watering, which the package boldly identifies as "the key to success."

- Dr. Karcher did not test the claim at issue: The claim compares EZ Seed to "ordinary seed," which Scotts and Dr. Karcher define as seed *without* mulch and fertilizer. Without any basis for deviating from the claim language, Dr. Karcher elected to test EZ Seed versus ordinary seed *with* mulch and fertilizer.

- Dr. Karcher failed to water at half the recommended rate as required by the claim. Dr. Karcher used "reference Evapotranspiration" ("ETo" or "reference ET") – a theoretical estimate of water lost to the atmosphere from an area of vegetation – to determine how much water to apply to his test. But reference Evapotranspiration is intended to guide watering of fully established mature turf, so it assumes complete coverage of dense, actively growing turf. As a result, Dr. Karcher significantly underestimates water lost to the atmosphere from the mostly bare soil of a seeding project, leading to under watering.

(*See generally* Motion to Exclude Douglas Karcher; SMF ¶¶ 23-33.) These flaws render Dr. Karcher's trial inadmissible and incapable of creating a material question of fact regarding the accuracy of the 50% Thicker claim.

Even if Dr. Karcher's trial were admissible, Scotts would still be entitled to summary judgment. Dr. Karcher's test proves only that a single bag of a single variety of EZ Seed, planted in the wrong climate, and watered at half of reference ET (not half the recommended rate) did not grow 50% thicker as compared to *ordinary seed plus fertilizer and mulch* planted in its ideal environment. That is not the claim on the package or at issue in this case. Moreover, the 50% Thicker claim includes a statement, "Results may vary." As this Court has noted, grass is a living thing that may respond unpredictably to differing conditions and treatment. (Ex. 49 at 20:13-21:14; Ex. 44 at 50:13-51:3.) In light of the unpredictable nature of growing grass, a single data point does not form a reasonable basis for a jury to conclude that the 50% Thicker claim is false or misleading as to EZ Seed generally.

### 2. Jason Kruse Study

Plaintiffs also rely on a study conducted at Scotts' request by a professor at the

University to Florida named Jason Kruse. But Dr. Kruse's study substantiates rather than

disproves the claim. Dr. Kruse tested bermudagrass in Gainesville, Florida under four different

watering frequencies (two times per day, one time per day, one time every other day, and one

time every third day). ██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████ (Ex. 46 at 94:12-20, 96:22-97:1; Ex. 45.) Once

daily watering was half that amount, and thus represented the half the water claim.

As expected, EZ Seed dramatically outperformed ordinary seed at the half water rates.

Presenting his results, Dr. Kruse reported ███████████████████████████████

████████ (Ex. 45.) ████████████████████████████████████████

██████████████████████████████████████▀██████████████████████

██████████████████████████████████████, demonstrating that those conditions

were not suitable to grass growth of any kind, and therefore clearly did not represent the half

water rate. (Id.)

### 3. The Hignight Grass Seed Trial

Plaintiffs also rely on a trial conducted by Mr. Kenneth Hignight for Pennington Seed,

Inc. in September 2010, but the summary of the trial is not admissible, and does not provide

classwide evidence of any certified issue.[23]  (Ex. 29.)

---

[22] Dr. Karcher misapplies reference ET to contend that even Dr. Kruse's every other day watering regimen exceeded 50% of the recommended rate. Once again, Dr. Karcher does not account for the absence of a crop cover on the test plots, rendering his use of reference ET completely unreliable.

[23] Mr. Hignight is employed by NexGen Turf Research, which is a wholly owned subsidiary of Central Garden and Pet. (See SMF ¶¶ 34; Ex. 29; Ex. 20 at 21:1-5.) Central Garden and Pet also owns Pennington Seed, Scotts' primary competitor in the consumer grass seed market. (SMF ¶ 36) Interestingly, Dr. Karcher, Plaintiffs' turfgrass

First, Mr. Hignight's test summary clearly offers technical information that is properly expert testimony under Rule 703. Mr. Hignight, however, was not disclosed by Plaintiffs as part of their expert disclosures, nor has he prepared an expert report in this case. (SMF ¶¶ 40, 41; Regan Decl. ¶¶ 95-96.) Plaintiffs' failure to designate Mr. Hignight as a part of their expert disclosures should preclude Plaintiffs from relying on his trial summary.[24]

Second, Mr. Hignight's methodology purports to be based on EZ Seed directions for use that were changed as of the 2012 spring season. *See Scotts Co. LLC v. Pennington Seed, Inc.*, No. 3:12-CV-168, ECF No. 169, 8-9 (E.D. Va. Feb. 26, 2014) (Ex. 73) ("The parties agree that [Mr. Hignight's application] rate is inconsistent with the current EZ Seed directions for use. Because all the relief requested in this case is prospective, that fact alone invalidates [Mr. Hignight's] testing."); (SMF ¶¶ 37, 38; Ex. 48 ¶¶ 13-16). 

Mr. Hignight's test cannot defeat summary judgment.

In sum, none of the scientific trials relied upon by Plaintiffs are sufficient to create a material question of fact regarding the truth or falsity of the 50% Thicker claim, and summary judgment on the issue is appropriate.

---

expert, has been identified as key personnel at NexGen, has an ongoing retainer agreement with Central Garden and Pet, and works regularly with Mr. Hignight. (SMF ¶ 35; Ex. 77, Ex. 20 at 22:20-24:11.)

[24] "A party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ.P. 37(c)(1); *DVL, Inc. v. Gen. Elec. Co.*, 811 F. Supp. 2d 579 (N.D.N.Y. 2010), *aff'd sub nom. DVL, Inc. v. Niagara Mohawk Power Corp.*, 490 F. App'x 378 (2d Cir. 2012) (striking the plaintiff's expert's testimony for failing to disclose the expert because defendants did not have the opportunity to anticipate, challenge, or counter the expert's statements, assessments, methods, or conclusions).

### 4.   While Plaintiffs Bear the Burden of Proof on Falsity, Scotts' and Other Third Party Trials Substantiate the 50% Thicker Claim.

Scotts or its representatives have conducted no fewer than 18 trials to substantiate the

50% Thicker claim.  These trials were conducted under diverse conditions, with a multitude of

watering methodologies, using multiple competitive products and forms of "ordinary seed."  One

thing has remained constant: the outcome.  Throughout virtually every replication of every trial,

EZ Seed has grown 50% thicker with half the water versus ordinary seed when each was watered

at half the recommended rate.  The trials are summarized below:

### a.   Scotts' EZ Seed Claim Book (Pre-Release testing).

Prior to release of the product, Scotts conducted 11 trials of EZ Seed at its own facilities

to confirm the validity of the 50% Thicker claim.  (SMF ¶ 42; Ex. 45; Ex. 78; Ex. 80.) ▮

Ex. 45; Ex. 78; Ex. 80.)

### b.   University of Florida, University of Georgia, and University of California Riverside's Bermudagrass Tests (Pre-Release Testing).

In addition to its own testing, Scotts retained professors at three separate universities in

warm-weather climates to verify the 50% thicker claim for bermudagrass:

-27-



**c.**     **Subsequent In-House Testing**

**d.**     **Dr. Bryan G. Hopkins's Study**

For this litigation, Scotts retained Bryan G. Hopkins, a full professor in the Department Plant and Wildlife Sciences at Brigham Young University, to further test the 50% Thicker claim's validity.  Dr. Hopkins developed a comprehensive study protocol that tested virtually every permutation of the claim and even tested EZ Seed outside the conditions of the claim. (SMF ¶ 48; Ex. 9 ¶¶ 165-81.)  Dr. Hopkin's study included five separate watering regimens, three types of soil, indoor and outdoor plantings, raked in and not raked in ordinary seed, and

-28-

fertilized and not fertilized ordinary seed, resulting in more than 800 total plantings of EZ Seed

and ordinary seed. (*Id.*) This comprehensive approach permitted Dr. Hopkins to compare data

across methodologies, conditions, and treatments. The results were clear and compelling. ▉



*d.* ¶ 169)

Considering the weight of Scotts' evidence, and Plaintiff's lack of reliable testing, there

is no material question of fact regarding the truth of the 50% Thicker claim.

## CONCLUSION

For the forgoing reasons, Scotts respectfully requests entry of summary judgment in its

favor:

- On Plaintiffs' first theory of liability that EZ Seed cannot grow grass at all and is worthless; [25]
- On all California claims as a result of safe harbor;
- On Plaintiffs' claims for class-wide statutory damages under GBL §§ 349 and 350;
- On all claims for lack of an injury; and
- On all claims for failure to establish that the 50% Thicker claim is false or misleading.

---

[25] On May 20, 2016, Defendants served a letter requesting that Plaintiffs voluntarily discontinue claims based on this theory and, pursuant to FRCP 11(c)(2), a motion Defendants intend to file in the event Plaintiffs continue to advocate these claims. Plaintiffs have declined to do so and the 21-day safe harbor expired June 10. Scotts reserves the right to seek relief under Rule 11 for Plaintiffs' continued advocacy of claims based on this theory.

Dated:  June 30, 2016          By:    /s/ Shawn Patrick Regan_____
        New York, New York          Shawn Patrick Regan
                                          Joshua S. Paster
                                          HUNTON & WILLIAMS LLP
                                          200 Park Avenue
                                          New York, New York 10166
                                          Telephone: (212) 309-1000
                                          Facsimile: (212) 309-1100
                                          Email:  sregan@hunton.com
                                          Email:  jpaster@hunton.com

                                          - and -

                                          Samuel A. Danon (*pro hac vice*)
                                          Jason B. Sherry
                                          HUNTON & WILLIAMS LLP
                                          1111 Brickell Avenue, Suite 2500
                                          Miami, Florida  33131
                                          Telephone:  (305) 810-2500
                                          Facsimile:  (305) 810-2460
                                          Email:  sdanon@hunton.com
                                          Email:  jsherry@hunton.com

                                          - and -

                                          Joshua M. Kalb (*pro hac vice*)
                                          HUNTON & WILLIAMS LLP
                                          600 Peachtree Street NE, Suite 4100
                                          Atlanta, Georgia 30307
                                          Telephone:  (404) 888-4000
                                          Facsimile:  (404) 602-9077
                                          Email:  jkalb@hunton.com

                                          -and-

                                          Neil K. Gilman (*pro hac vice*)
                                          2200 Pennsylvania Avenue, NW
                                          Washington, DC  20037
                                          Telephone:      (202) 955-1674
                                          Facsimile:      (202) 862-3629
                                          Email:  ngilman@hunton.com

                                          *Counsel for Defendants The Scotts Miracle-Gro Company and The Scotts Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2016 I served a copy of the foregoing, on all counsel of record at the addresses listed below, by email and FTP site.

/s/ Shawn Patrick Regan_____
Shawn Patrick Regan

Scott A. Bursor, Esq.
Joseph L. Marchese, Esq.
Neal Deckant, Esq.
Joseph Ignatius Marchese, Esq.
Yitzchak Kopel, Esq.
Bursor & Fisher, P.A.
888 Seventh Avenue
New York, NY 10019
Telephone:  (212) 989-9113
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
        jmarchese@bursor.com
        ndeckant@bursor.com
        ykopel@bursor.com

Adam Richard Gonnelli, Esq.
Nadeem Faruqi, Esq.
Faruqi & Faruqi, LLP
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone:  (212) 983-9330
Fax: (212) 983-9331
Email:  agonnelli@faruqilaw.com
        nfaruqi@faruqilaw.com

Timothy Peters, Esq.
Faruqi & Faruqi, LLP
101 Greenwood Avenue, Suite 600
Jenkintown, PA  19046
Telephone: (215) 277-5770
Fax: (215) 277-5771
Email:   tpeters@faruqilaw.com

Antonio Vozzolo, Esq.
Vozzolo LLC
Email: avozzolo@vozzolo.com