UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
                               :
In re Scotts EZ Seed Litigation  :    12-CV-4727 (VB)
                               :
                               :
                               :
                               :
                               :
-------------------------------X


# SCOTTS' MOTION FOR RECONSIDERATION OF
# THE COURT'S AUGUST 7, 2017 OPINION AND ORDER

HUNTON & WILLIAMS LLP
Shawn Patrick Regan
Joshua S. Paster
200 Park Avenue
New York, NY 10166

- and -

Samuel Danon (*pro hac vice*)
1111 Brickell Avenue, Suite 2500
Miami, FL 33131

Joshua M. Kalb (*pro hac vice*)
600 Peachtree Street NE, Suite 4100
Atlanta, Georgia 30307

Neil K. Gilman (*pro hac vice*)
2200 Pennsylvania Avenue, NW
Washington, DC 20037

*Counsel for Defendants The Scotts Miracle-Gro Company and The Scotts Company LLC*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

LEGAL STANDARD............................................................................................................ 1

ARGUMENT ......................................................................................................................... 1

    A.    The Order erred in concluding Scotts did not address the California express warranty and unjust enrichment claims in its safe-harbor arguments. ........................................... 1

    B.    The Order erred in finding an absence of EZ Seed market transactions without the 50% Thicker claim during the relevant time period. ................................................................. 4

    C.    The Order erred in finding Dr. David's Difference-in-Difference analysis "looked at only one variety of EZ Seed that was sold in California, not New York."....................... 4

CONCLUSION...................................................................................................................... 6

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal.4th 163 (1999) ............................................................................................3

*Cruz v. Anheuser-Busch, LLC*,
    2015 WL 3561536 (C.D. Cal. June 3, 2015) .........................................................3

*Medisim Ltd. v. BestMed LLC*,
    2012 WL 1450420 (S.D.N.Y. Apr. 23, 2012) ........................................................1

*Shrader v. CSX Transp., Inc.*,
    70 F.3d 255 (2d Cir. 1995) ....................................................................................1

**Statutes & Rules**

California UCC § 2313 ................................................................................................2, 3

L.R. 6.3 ............................................................................................................................1

Defendants The Scotts Miracle-Gro Company and The Scotts Company LLC (collectively "Scotts") respectfully request reconsideration, in part, of the Court's August 7, 2017 Opinion & Order [ECF No. 317] ("Order" or "Op. & Order") as set forth below.

Scotts recognizes and appreciates the Court's comprehensive opinion addressing 15 separate motions; however, Scotts believes the Order misapprehended three factual issues in ruling on those motions. Scotts further believes that correction of those three issues would be helpful to the Court and the Parties as this case moves forward.

## LEGAL STANDARD

Reconsideration should be granted where a court has overlooked controlling decisions or facts, "to correct a clear error or prevent manifest injustice." L.R. 6.3; *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *Medisim Ltd. v. BestMed LLC*, 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012) (internal quotation marks and citations omitted).

## ARGUMENT

A.   ***The Order erred in concluding Scotts did not address the California express warranty and unjust enrichment claims in its safe-harbor arguments.***

The August 7 Order properly held that the California safe harbor applies here and bars Plaintiffs' California UCL, FAL, and CLRA claims. (Op. & Order at 6-10.) The Order further stated that "neither party addressed in their briefing what affect this has on the California express warranty claim or the California unjust enrichment claim, both of which the Court previously determined to be appropriate for class treatment. Accordingly, at least for now, those claims may proceed." (*Id.* at 9-10 (internal citation omitted).) Scotts respectfully requests the Court reconsider this finding and hold the safe harbor also bars the California UCC express warranty and unjust enrichment claims.

First, Scotts' safe-harbor arguments were not limited to the UCL, FAL and CLRA claims. The safe-harbor section of Scotts' opening brief was entitled "Review and Approval of the 50% Thicker Claim by the CDFA Creates a Safe Harbor That Bars Liability *on Plaintiffs' California Claims*" (Scotts MSJ at 5, ECF No. 308 (emphasis added)), and Scotts concluded that section stating, "[f]or these reasons, a safe harbor applies and summary judgment should be granted *against Plaintiffs' California state law claims*" (*id.* at 7 (emphasis added)).  Plaintiffs opposed application of safe-harbor *in toto*, on two grounds: (i) that "Scotts defrauded the CDFA by submitting falsified data" and (ii) that "the CDFA's review … was not sufficiently formal to trigger" the application of the safe harbor. (Pls. MSJ Opp'n at 1-4 ECF No. 257.)  Plaintiffs did not challenge application of the safe harbor to any particular causes of action—that is, they never argued that, even if the safe harbor applies to the UCL, FAL, and CLRA claims, it does not apply to the California UCC § 2313 express warranty claim and the common law unjust enrichment claim.  And they cited no authority suggesting the safe harbor does not extend to those claims. (*Id.*)  To the contrary, Plaintiffs' opposition brief acknowledged that "Scotts contends it is entitled to summary judgment on *each* California cause of action" under the safe harbor.  (*Id.* at 1 (emphasis added).)  As such, there was no need for Scotts to counter on reply a hypothetical proposition that the safe harbor does not apply to the UCC express warranty claim and/or the common law unjust enrichment claim even if it applies to the statutory claims.  Rather than consume space and judicial attention addressing arguments Plaintiffs never made, Scotts properly limited its reply to the arguments Plaintiffs actually made.  (*See* Scotts MSJ Reply at 1-3, ECF No. 308.)  But lest there be any doubt, Scotts' Reply brief requested "summary judgment in its favor:  On *all* California claims as a result of safe harbor …." (*Id.* at 15 (emphasis added).)

Second, it is clear that when the safe harbor applies, as the Court correctly found it does here, it bars express warranty claims and common law unjust enrichment claims that arise out of conduct held to be within the safe harbor. As to the UCC express warranty claim, *Cruz*, one of the centerpiece cases in Scotts' moving brief (Scotts MSJ at 5-6), found UCC § 2313 express warranty claims barred by the safe harbor. *Cruz v. Anheuser-Busch, LLC*, 2015 WL 3561536, at *9 (C.D. Cal. June 3, 2015) (applying safe harbor to UCC breach of express warranty claim: "The Court has already determined that the safe harbor doctrine bars Plaintiffs claims [which included a claim for breach of express warranty] ….") *aff'd sub nom. Cruz v. Anheuser-Busch Cos.*, 2017 WL 1019084 (9th Cir. Mar. 16, 2017).

And as to common law unjust enrichment claims, it is axiomatic that if the safe harbor applies to bar statutory claims it would certainly bar common law claims as well. The safe harbor is premised on the principle that "[i]f the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 182 (1999). It would be contrary to first principles of law and fundamental notions of judicial power to hold that, while safe harbor applies and prohibits the judicial branch from interpreting a statue to bar the permitted conduct, the judiciary may interpret common law to bar that conduct. Because the Legislature has permitted the sale of fertilizer materials like EZ Seed so long as they comply with California's regulatory regime, the Court's opinion may not override that determination by virtue of the common law. Scotts is aware of no authority otherwise.

For these reasons, Scotts respectfully requests the Court reconsider its finding and hold the safe harbor also bars the California express warranty and unjust enrichment claims.

B.   ***The Order erred in finding an absence of EZ Seed market transactions without the 50% Thicker claim during the relevant time period.***

The Order found Dennis's use of CVM is appropriate here because, "no version of EZ Seed was sold on the market during the relevant period without the 50% thicker claim (other than the EZ Seed Dog-Spot Repair …), and thus there was an 'absence of actual market transactions that would reveal the value that consumers place on the product without the "50% thicker" label.'"  (Op. & Order at 18-19.)  This was a factual error.

Both Scotts EZ Seed Dog-Spot Repair and Scotts EZ Seed Winter Lawn Mix were sold during the relevant period without the 50% Thicker claim.[1]  (Scotts Ex. 47 at 325:23-25; Scotts Ex. 153 at Rog. 10.)  And Scotts set the same MSRP for EZ Seed Winter Lawn Mix in the same sized containers during that period as EZ Seed varieties with the 50% Thicker claim.  (Scotts Ex. 152 at Rog. 4; *see also* Scotts Opp'n to Mot. Strike Peoples/Winters at 8.)

Insofar as the Court found CVM appropriate here because "no version of EZ Seed was sold on the market during the relevant period without the 50% thicker claim" (Op. & Order at 18-19), that finding should be reconsidered.  CVM is not appropriate, and it should have been excluded.

C.   ***The Order erred in finding Dr. David's Difference-in-Difference analysis "looked at only one variety of EZ Seed that was sold in California, not New York."***

In its Order, the Court stated that Dr. Jesse David's price-premium analysis "only looked at one variety of EZ Seed" and this variety "was sold in California, not in New York."  (*Id.*

---

[1] To the extent the Order disregarded market sales of EZ Seed Dog-Spot Repair on the ground that the Dog-Spot Repair variety "is not at issue in this case" (*see* Op. & Order at 18-19) based on Plaintiffs' argument (*id.* at 2 n.1), Plaintiffs' argument was a red-herring and the Order's finding plainly erroneous.  "This case" includes all EZ Seed sales *with the claim*.  (*Id.* at 3 (citing ECF No. 127).)  To find sales of EZ Seed *without the claim* during the period, one must necessarily look *outside the case, i.e.*, at EZ Seed Winter Lawn Mix and EZ Seed Dog Spot Repair.

-4-

at 33.) This finding—based on an assertion made only in Plaintiffs reply briefs[2] that Dr. David's conclusion was based on Exhibit 2—was mistaken and should be reconsidered.

Dr. David's Difference-in-Difference ("DiD") analysis actually relied on data from all three relevant varieties of EZ Seed (including at least 19 different EZ Seed SKUs sold in California, New York, or both), and from 18 non-EZ Seed products. (Scotts Ex. 1 at p. 31 Ex. 3.)[3] Plaintiffs' argument to the contrary was based on Exhibit 2 to Dr. David's report (Pls. Opp. at 26, n.14), *but Exhibit 2 is not even part of his DiD analysis*. That analysis is actually summarized in Exhibit 3. (Scotts Ex. 1 at p. 31 Ex. 3.)

The Order further found that rising market prices "undermine" Dr. David's DiD analysis. (Op. & Order at 33.) That finding was also mistaken. Dr. David recognized the general increase in grass-seed market pricing and employed a DiD analysis to control for that fact. (Scotts Ex. 1 ¶¶ 35, 54.) Indeed, that is the primary purpose of a DiD analysis:

> "[M]arket-wide" price increases are quite easy to control for.… *"[D]ifference in differences" ("DiD") [ ] isolate a change in price for a single product relative to broader market trends.* This method compares the change in a "treatment" group (in this case, the prices of EZ Seed products) over time against the change in a "benchmark" group (the prices of other grass seed products) exposed to the same general market conditions. *The difference between the differences represents an estimate of the unique change in the treatment group.* The DiD method is a common approach used for calculating damages in legal proceedings.… I

---

[2] Because Plaintiffs' argument was first raised on reply (Pls. MSJ Reply at 9 [ECF No. 266] ("Scotts' argument that the price increased is based exclusively on sales data from California for a single flavor, EZ Seed Tall Fescue, which was not even sold in New York."); *see also* Pls. Price Premium Reply at 4 [ECF No. 271]), Scotts never had the opportunity to rebut it. Plaintiffs were aware that Dr. David's DiD analysis included 19 different EZ Seed SKUs and multiple varieties; they possessed Dr. David's raw data and notes which were emailed to Plaintiffs' counsel by Scotts' counsel Joshua Kalb on March 11, 2016 as "Exh. 3.xlsx." as part of expert discovery.

[3] Dr. David's chart at Ex. 3 listed the "Sources" he used, which included the same Home Depot data Plaintiffs' own expert, Dr. Weir used in his analysis, (*see* Scotts Ex. 1 at Ex. 3 (referencing HOME DEPOT_EZ_SEED_000010_IN STORE_FY2012.xlsl, HOME DEPOT_EZ_SEED_000011_IN STORE_FY2013.xlsl, and HOME DEPOT_EZ_SEED_000012_IN STORE_FY2014.xlsl; *and* Scotts Ex. 14 (Weir Report) at Ex. 2 (including same data).) As Dr. David pointed out in his "Notes" at p. 31 Ex. 3, the data he used from these sources to develop his "EZ Seed category" only "exclude[d] Dog Spot Repair and Winter Lawn Mix, which I understand have never included the 50% Claim."

perform such an analysis to isolate the change in EZ Seed prices *relative to other grass seed products*.

(*Id.* ¶ 35 (emphases added and footnotes omitted); *see also* Scotts 56.1 Counterstmt. ¶ 846, ECF No. 265.)

Dr. David's DiD analysis demonstrated that EZ Seed prices increased after the 50% Thicker Claim was removed even relative to a general market increase, and therefore there was no price premium associated with the 50% Thicker Claim. (Scotts Ex. 1 at p.31 Ex. 3 and ¶ 55 ("In sum, I find that subsequent to the label change the prices of the accused EZ Seed products increased more than the prices of competing combination products and noncombination grass seed products. That is, **after controlling for general trends across the market for grass seed products, I find no reduction in prices caused by removal of the 50% Claim**.") (emphasis added); *id.* at p.31 & ¶ 57.) Thus, Mr. Weir's simplistic observation that market prices were rising does not undermine Dr. David's analysis; rather, it reinforces that DiD is the proper method for addressing whether a price premium exists.[4]

Given this irrefutable empirical evidence of what *actually* occurred with *EZ Seed prices* after removal of the claim, there is no evidence from which a reasonable jury could conclude there was a price premium *on EZ Seed associated with the 50% Thicker Claim*. And absent a price premium, there is no evidence of injury.

## CONCLUSION

Scotts respectfully requests the Court reconsider its August 7, 2017 Opinion and Order and: (i) find safe harbor bars Plaintiffs' California express warranty and unjust enrichment claims (ii) exclude Dennis's CVM, and (iii) accept Dr. David's DiD analysis.

---

[4] Mr. Weir is not qualified to offer a critique of Dr. David's DiD analysis as he admittedly had never heard of this technique. (Ex. 16 at 198:7-13 ("Q. Do you know what difference-in-differences is? A. Not without greater context. Q. Have you ever heard of a difference-in-differences analysis in the context of damages? A. No.").)

Dated: August 17, 2017  
New York, New York

By: /s/ Shawn Patrick Regan
Shawn Patrick Regan
Joshua S. Paster
HUNTON & WILLIAMS LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 309-1000
Facsimile: (212) 309-1100
Email: sregan@hunton.com
Email: jpaster@hunton.com

- and -

Samuel A. Danon (*pro hac vice*)
HUNTON & WILLIAMS LLP
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-2460
Email: sdanon@hunton.com

- and -

Joshua M. Kalb (*pro hac vice*)
HUNTON & WILLIAMS LLP
600 Peachtree Street NE, Suite 4100
Atlanta, Georgia 30307
Telephone: (404) 888-4000
Facsimile: (404) 602-9077
Email: jkalb@hunton.com

-and-

Neil K. Gilman (*pro hac vice*)
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 955-1674
Facsimile: (202) 862-3629
Email: ngilman@hunton.com

*Counsel for Defendants The Scotts Miracle-Gro Company and The Scotts Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2017, I served a copy of the foregoing, on all counsel of record at the addresses listed below, by filing with the Court's CM/ECF system.

/s/ Shawn Patrick Regan
Shawn Patrick Regan

Scott A. Bursor, Esq.
Joseph L. Marchese, Esq.
Neal Deckant, Esq.
Yitzchak Kopel, Esq.
Bursor & Fisher, P.A.
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
Email: scott@bursor.com
jmarchese@bursor.com
ndeckant@bursor.com
ykopel@bursor.com

Nadeem Faruqi, Esq.
Faruqi & Faruqi, LLP
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: (212) 983-9330
Fax: (212) 983-9331
Email: nfaruqi@faruqilaw.com

Timothy Peters, Esq.
Faruqi & Faruqi, LLP
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046
Telephone: (215) 277-5770
Fax: (215) 277-5771
Email: tpeters@faruqilaw.com

Antonio Vozzolo, Esq.
Vozzolo LLC
Email: avozzolo@vozzolo.com