UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                      :
In re Scotts EZ Seed Litigation      :          12-CV-4727 (VB)
                      :
                      :
                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

# SCOTTS' RENEWED MOTION FOR RECONSIDERATION OF
## THE COURT'S AUGUST 7, 2017 OPINION AND ORDER

HUNTON & WILLIAMS LLP
Shawn Patrick Regan
Joshua S. Paster
200 Park Avenue
New York, NY 10166

- and -

Samuel Danon (*pro hac vice*)
1111 Brickell Avenue, Suite 2500
Miami, FL 33131

Joshua M. Kalb (*pro hac vice*)
600 Peachtree Street NE, Suite 4100
Atlanta, Georgia 30307

Neil K. Gilman (*pro hac vice*)
2200 Pennsylvania Avenue, NW
Washington, DC 20037

*Counsel for Defendants The Scotts
Miracle-Gro Company and The
Scotts Company LLC*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

ARGUMENT ........................................................................................................... 2

    A.    The Order erred in concluding Scotts did not address the California express warranty and unjust enrichment claims in its safe-harbor arguments. ........................................... 2

    B.    The Order erred in finding an absence of EZ Seed market transactions without the 50% Thicker claim during the relevant time period. .................................................. 4

    C.    The Order erred in finding Dr. David's Difference-in-Difference analysis "looked at only one variety of EZ Seed that was sold in California, not New York." ..................... 5

    D.    The Order erred in finding the Court was "constrained" by Shady Grove. ..................... 7

CONCLUSION ......................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ...........................................................................................4

*Cruz v. Anheuser-Busch, LLC*,
   2015 WL 3561536 (C.D. Cal. June 3, 2015) ...........................................................3

*Cruz v. Anheuser-Busch Cos.*,
   2017 WL 1019084 (9th Cir. Mar. 16, 2017)............................................................4

*Davenport v. Charter Commc'ns, LLC*,
   35 F. Supp. 3d 1040 (E.D. Mo. 2014).....................................................................9

*Delgado v. Ocwen Loan Servicing, LLC*,
   2017 WL 5201079 (E.D.N.Y. Nov. 9, 2017)........................................................7, 9

*Espinosa v. Bluemercury, Inc.*,
   2017 WL 1079553 (N.D. Cal. Mar. 22, 2017).........................................................9

*Gasperini v. Cntr. for Humanities, Inc.*,
   518 U.S. 415 (1996).......................................................................................1, 8, 10

*Greene v. Gerber Prod. Co.*,
   262 F. Supp. 3d 38 (E.D.N.Y. 2017) .......................................................................9

*Grochowski v. Phoenix Const.*
   318 F.3d 80 (2d Cir. 2003).......................................................................................9

*Medisim Ltd. v. BestMed LLC*,
   2012 WL 1450420 (S.D.N.Y. Apr. 23, 2012)..........................................................1

*Parmar v. Jeetish Imports, Inc.*,
   180 F.3d 401 (2d Cir. 1999).....................................................................................1

*Racher v. Westlake Nurs. Home Ltd. P'ship*,
   871 F.3d 1152 (10th Cir. 2017) ....................................................................7, 8, 10

*Ragan v. Merchants Transfer & Warehouse Co.*,
   337 U.S. 530 (1949)..................................................................................................9

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   466 F. Supp. 2d 467 (E.D.N.Y. 2006) ...................................................................10

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ................................................................................ *passim*

*Shervington v. Vill. of Piermont*,
    732 F. Supp. 2d 423 (S.D.N.Y. 2010) ............................................................1

*Shrader v. CSX Transp., Inc.*,
    70 F.3d 255 (2d Cir. 1995) ..............................................................................1

*Simmons v. Author Sols., LLC*,
    2015 WL 4002243 (S.D.N.Y. July 1, 2015) ...................................................9

*United States v. LoRusso*,
    695 F.2d 45 (2d Cir. 1982) ..............................................................................1

**Statutes**

28 U.S.C. § 2072(b) ...............................................................................................8

Cal. UCC § 2313 ....................................................................................................3

N.Y. Gen. Bus. L. § 349 ............................................................................... *passim*

N.Y. Gen. Bus. L. § 350 ............................................................................... *passim*

N.Y. Ins. L. § 5106 .......................................................................................2, 9, 10

**Other Authorities**

CPLR 901(b) ................................................................................................. *passim*

CPLR 5501(c) .........................................................................................................1

Fed. R. Civ. P. 23 .......................................................................................... *passim*

Fed. R. Civ. P. 54(b) ..............................................................................................1

Fed. R. Civ. P. 59 ...................................................................................................8

L.R. 6.3 ...................................................................................................................1

Defendants The Scotts Miracle-Gro Company and The Scotts Company LLC (collectively "Scotts") seek reconsideration, pursuant to Local Rule 6.3, of three factual findings in the Court's August 7, 2017 Opinion & Order [ECF No. 317] ("Order" or "Op.") Order.[1]

Scotts further respectfully requests, pursuant to Fed. R. Civ. P. 54(b), that the Court revisit and revise its predicate findings and legal conclusion that *Shady Grove*[2] "constrains" the Court to find the remedy of statutory damages under GBL §§ 349 and 350 is available in a federal court class action.[3] Respectfully, the Court's *Erie/Shady Grove* analysis, and its conclusions, are manifestly wrong. First, neither Rule 23 nor any other Federal Rule addresses the question of what *remedies* are to be available in federal court under state law. Nor could a Federal Rule be construed to do so without violating the Rules Enabling Act. *See Gasperini v. Cntr. for Humanities, Inc.*, 518 U.S. 415, 428, 430 (1996) (holding CPLR 5501(c) is a substantive state law defining recoverable damages that federal courts sitting in diversity must apply, explaining "*Erie* precludes a recovery in federal court significantly larger than the

---

[1] These aspects of the motion derive from the Court's August 31, 2017 Order, which denied reconsideration "without prejudice to renewal once the stay is lifted." (ECF No. 326 at 2; *see also* ECF No. 329.) Under L.R. 6.3, reconsideration should be granted where a court has overlooked controlling decisions or facts, or "to correct a clear error or prevent manifest injustice." L.R. 6.3; *Medisim Ltd. v. BestMed LLC*, 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012) (internal quotation marks and citations omitted); *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

[2] *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010).

[3] Under Rule 54(b) a court may revise an interlocutory order "*at any time* before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." (emphasis added). *Parmar v. Jeetish Imports, Inc.*, 180 F.3d 401, 402 (2d Cir. 1999) ("All interlocutory orders remain subject to modification or adjustment prior to the entry of a final judgment adjudicating the claims …") (citing Rule 54(b)); *United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982) ("whether the case *sub judice* be civil or criminal[,] so long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them …."). To the extent Plaintiffs assert Scotts' argument is untimely under L.R. 6.3 (notwithstanding the Court's August 31, 2017 Order), for the reasons articulated by the Court in that August 31 Order, good cause exists for, and justice requires, the Court to reconsider its holding. *E.g.*, *Shervington v. Vill. of Piermont*, 732 F. Supp. 2d 423, 425 (S.D.N.Y. 2010) ("Under Fed. R. Civ. P. 54(b) as well as the inherent power of the court to reconsider a prior decision at any time before the entry of final judgment, the major grounds justifying reconsideration [include] … the need to correct a clear error or prevent manifest injustice. The Court has 'discretion to consider a motion for reargument notwithstanding the movant's failure to comply with Local Rule [6.3]'s requirements, but it will only exercise this discretion when justice so requires.'"). Here, Scotts did not sleep on its rights, but rather moved the Court within 14 days to certify the *Shady Grove* issue for relief through interlocutory appeal.

recovery that would have been tolerated in state court"). *Shady Grove* does not hold otherwise.

Second, assuming *arguendo* the Court could reach the second step of the *Erie/Shady Grove* analysis, the Court erred in concluding that the fact the legislature "relied on" CPLR 901(b) to "prohibit" recovery of statutory damages renders those damages available in federal court. The operative question, as explained in *Shady Grove*, is whether 901(b) was "so intertwined with" the legislature's creation of the substantive remedy in §§ 349/350 as to define that state-provided remedy. That the Supreme Court found 901(b) was not so intertwined with N.Y. Insurance Law § 5106 does not constrain this Court from finding 901(b) *is* intertwined with §§ 349/350 with respect to the *remedies* provided for in §§ 349/350 actions, especially where the legislative history shows an unmistakable intent to intertwine the two statutes to define the available remedy.

## **ARGUMENT**

A.   ***The Order erred in concluding Scotts did not address the California express warranty and unjust enrichment claims in its safe-harbor arguments.***

The August 7 Order held the California safe harbor bars Plaintiffs' California UCL, FAL, and CLRA claims. (Op. at 6-10.) The Order further stated that "neither party addressed in their briefing what affect this has on the California express warranty claim or the California unjust enrichment claim …." (*Id.* at 9-10 (internal citation omitted).)  The safe harbor, however, also bars the California UCC express warranty and unjust enrichment claims.

First, Scotts' safe-harbor arguments were not limited to the UCL, FAL and CLRA claims. The safe-harbor section of Scotts' opening brief was entitled "Review and Approval of the 50% Thicker Claim by the CDFA Creates a Safe Harbor That Bars Liability *on Plaintiffs' California Claims*" (Scotts MSJ at 5, ECF No. 308 (emphasis added)), and Scotts concluded that section stating, "[f]or these reasons, a safe harbor applies and summary judgment should be granted

*against Plaintiffs' California state law claims*" (*id.* at 7 (emphasis added)). Plaintiffs opposed

application of safe-harbor *in toto*, on two grounds: (i) that "Scotts defrauded the CDFA by

submitting falsified data" and (ii) that "the CDFA's review … was not sufficiently formal to

trigger" the application of the safe harbor. (Pls. MSJ Opp'n at 1-4 ECF No. 257.)  Plaintiffs did

not challenge application of the safe harbor to any particular causes of action—that is, they never

argued that, even if the safe harbor applies to the UCL, FAL, and CLRA claims, it does not apply

to the California UCC § 2313 express warranty claim and the common law unjust enrichment

claim. And they cited no authority suggesting the safe harbor does not extend to those claims.

(*Id.*) To the contrary, Plaintiffs' opposition brief acknowledged that "Scotts contends it is entitled

to summary judgment on ***each*** California cause of action" under the safe harbor. (*Id.* at 1

(emphasis added).) As such, there was no need for Scotts to counter on reply a hypothetical

proposition that the safe harbor does not apply to the UCC express warranty claim and/or the

common law unjust enrichment claim even if it applies to the statutory claims. Rather than

consume space and judicial attention addressing arguments Plaintiffs never made, Scotts

properly limited its reply to the arguments Plaintiffs did make. (*See* Scotts MSJ Reply at 1-3,

ECF No. 286.) But lest there be any doubt, Scotts' Reply brief requested "summary judgment in

its favor: On *all* California claims as a result of safe harbor …." (*Id.* at 15 (emphasis added).)

Second, it is clear that, when the safe harbor applies, it bars express warranty claims and

common law unjust enrichment claims. As to the UCC express warranty claim, *Cruz*, one of the

centerpiece cases in this part of Scotts' moving brief (Scotts MSJ at 5-6), found UCC § 2313

express warranty claims barred by the safe harbor. *Cruz v. Anheuser-Busch, LLC*, 2015 WL

3561536, at *9 (C.D. Cal. June 3, 2015) (applying safe harbor to UCC breach of express

warranty claim: "The Court has already determined that the safe harbor doctrine bars Plaintiffs

claims [which included a claim for breach of express warranty] ....") *aff'd sub nom. Cruz v. Anheuser-Busch Cos.*, 2017 WL 1019084 (9th Cir. Mar. 16, 2017).

And as to common law unjust enrichment claims, it is axiomatic that if the safe harbor applies to bar statutory claims it would certainly bar common law claims as well. The safe harbor is premised on the principle that "[i]f the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999). It would be contrary to first principles of law and fundamental notions of judicial power to hold that, while safe harbor applies and prohibits the judicial branch from interpreting a statue to bar the permitted conduct, the judiciary may interpret its own common law to bar that conduct. Because the Legislature has permitted the sale of fertilizer materials like EZ Seed so long as they comply with California's regulatory regime, the Court's opinion may not override that determination by virtue of the common law. Scotts is aware of no authority otherwise.

For these reasons, Scotts respectfully requests the Court reconsider its finding and hold the safe harbor also bars the California express warranty and unjust enrichment claims.

B.     ***The Order erred in finding an absence of EZ Seed market transactions without the 50% Thicker claim during the relevant time period.***

The Order found Dennis's use of CVM is appropriate here because, "no version of EZ Seed was sold on the market during the relevant period without the 50% thicker claim (other than the EZ Seed Dog-Spot Repair ...), and thus there was an 'absence of actual market transactions that would reveal the value that consumers place on the product without the "50% thicker" label.'" (Op. at 18-19.) This was a factual error.

Both Scotts EZ Seed Dog-Spot Repair and Scotts EZ Seed Winter Lawn Mix were sold during the relevant period without the 50% Thicker claim.[4] (Scotts Ex. 47 at 325:23-25; Scotts Ex. 153 at Rog. 10.) And Scotts set the same MSRP for EZ Seed Winter Lawn Mix in the same sized containers during that period as EZ Seed varieties with the 50% Thicker claim. (Scotts Ex. 152 at Rog. 4; *see also* Scotts Opp'n to Mot. Strike Peoples/Winters at 8.)

Insofar as the Court found CVM appropriate here because "no version of EZ Seed was sold on the market during the relevant period without the 50% thicker claim" (Op. at 18-19), that finding should be reconsidered.  CVM is not appropriate, and it should have been excluded.

C.   ***The Order erred in finding Dr. David's Difference-in-Difference analysis "looked at only one variety of EZ Seed that was sold in California, not New York."***

In its Order, the Court stated that Dr. Jesse David's price-premium analysis "only looked at one variety of EZ Seed" and this variety "was sold in California, not in New York." (*Id.* at 33.) This finding—based on an assertion made only in Plaintiffs reply briefs that Dr. David's conclusion was based on Exhibit 2—was erroneous and should be reconsidered.[5]

Dr. David's Difference-in-Difference ("DiD") analysis actually relied on data from all three relevant varieties of EZ Seed (including at least 19 different EZ Seed SKUs sold in California, New York, or both), and from 18 non-EZ Seed products. (Scotts Ex. 1 at p. 31 Ex.

---

[4] To the extent the Order disregarded market sales of EZ Seed Dog-Spot Repair on the ground that the Dog-Spot Repair variety "is not at issue in this case" (*see* Op. at 18-19) based on Plaintiffs' argument (*id.* at 2 n.1), Plaintiffs' argument was a red-herring and the Order's finding plainly erroneous. "This case" includes all EZ Seed sales with the claim. (*Id.* at 3 (citing ECF No. 127).) To find sales of EZ Seed without the claim during the period, one must necessarily look outside the case, *i.e.*, at EZ Seed Winter Lawn Mix and EZ Seed Dog Spot Repair.

[5] Because Plaintiffs' argument was first raised on reply (Pls. MSJ Reply at 9 [ECF No. 266] ("Scotts' argument that the price increased is based exclusively on sales data from California for a single flavor, EZ Seed Tall Fescue, which was not even sold in New York."); *see also* Pls. Price Premium Reply at 4 [ECF No. 271]), Scotts never had the opportunity to rebut it. Plaintiffs were aware that Dr. David's DiD analysis included 19 different EZ Seed SKUs and multiple varieties; they possessed Dr. David's raw data and notes which were emailed to Plaintiffs' counsel by Scotts' counsel Joshua Kalb on March 11, 2016 as "Exh. 3.xlsx." as part of expert discovery.

3.)[6] Plaintiffs' argument to the contrary was based on Exhibit 2 to Dr. David's report (Pls. Opp.

at 26, n.14), *but Exhibit 2 is not even part of his DiD analysis*. That analysis is actually

summarized in Exhibit 3. (Scotts Ex. 1 at p. 31 Ex. 3.)

The Order further found that rising market prices "undermine" Dr. David's DiD analysis.

(Op. at 33.) That finding was also mistaken. Dr. David recognized the general increase in grass-

seed market pricing and employed a DiD analysis specifically to control for that fact. (Scotts Ex.

1 ¶¶ 35, 54.) Indeed, that is the primary purpose of a DiD analysis:

> "[M]arket-wide" price increases are quite easy to control for....
> *"[D]ifference in differences" ("DiD") [ ] isolate a change in price*
> *for a single product relative to broader market trends.* This
> method compares the change in a "treatment" group (in this case,
> the prices of EZ Seed products) over time against the change in a
> "benchmark" group (the prices of other grass seed products)
> exposed to the same general market conditions. *The difference*
> *between the differences represents an estimate of the unique*
> *change in the treatment group.* The DiD method is a common
> approach used for calculating damages in legal proceedings.... I
> perform such an analysis to isolate the change in EZ Seed prices
> *relative to other grass seed products.*

(*Id.* ¶ 35 (emphases added, footnotes omitted); Scotts 56.1 Counterstmt. ¶ 846, ECF No. 265.)

Dr. David's DiD analysis demonstrated that EZ Seed prices increased after the 50%

Thicker Claim was removed *even relative to a general market increase*, and therefore there was

no price premium associated with the 50% Thicker Claim. (Scotts Ex. 1 at p. 31 Ex. 3 and ¶ 55

("In sum, I find that subsequent to the label change the prices of the accused EZ Seed products

increased more than the prices of competing combination products and noncombination grass

---

[6] Dr. David's chart at Ex. 3 listed the "Sources" he used, which included the same Home Depot data Plaintiffs' own expert, Dr. Weir used in his analysis, (*see* Scotts Ex. 1 at Ex. 3 (referencing HOME DEPOT_EZ_SEED_000010_IN STORE_FY2012.xlsl, HOME DEPOT_EZ_SEED_000011_IN STORE_FY2013.xlsl, and HOME DEPOT_EZ_SEED_000012_IN STORE_FY2014.xlsl; and Scotts Ex. 14 (Weir Report) at Ex. 2 (including same data).) As Dr. David pointed out in his "Notes" at p. 31 Ex. 3, the data he used from these sources to develop his "EZ Seed category" only "exclude[d] Dog Spot Repair and Winter Lawn Mix, which I understand have never included the 50% Claim."

seed products. That is, ***after controlling for general trends across the market for grass seed products, I find no reduction in prices caused by removal of the 50% Claim***.") (emphasis added); *id.* at p.31 & ¶ 57.) Thus, Mr. Weir's simplistic observation that market prices were rising does not undermine Dr. David's analysis; rather, it reinforces that DiD is the proper method for addressing whether a price premium exists.[7]

Given this irrefutable empirical evidence of what *actually* occurred with *EZ Seed prices* after removal of the claim, there is no evidence from which a reasonable jury could conclude there was a price premium *on EZ Seed associated with the 50% Thicker Claim*. And absent a price premium, there is no evidence of injury.

D.      ***The Order erred in finding the Court was "constrained" by Shady Grove.***

Finally, the Order erred in failing to apply the proper *Erie/Shady Grove* analysis. (Op. at 12.)

The *Erie/Shady Grove* framework requires the Court to address two specific questions: (i) whether a federal rule answers the question at issue and, if so, (ii) whether application of the federal rule "exceeds statutory authorization or Congress's rulemaking power." *Shady Grove*, 559 U.S. at 398, 421-24.[8] The Order erred in answering both questions.

First, under step one, the Court erred in finding a federal rule controls the question of what remedies are available under state law.[9] (*See* Op. at 10-12.) *Shady Grove* held that "Rule 23

---

[7] Mr. Weir is not qualified to offer a critique of Dr. David's DiD analysis as he admittedly had never even heard of this technique despite the fact that he claims he is a damages expert, and DiD analysis is a standard method for measuring damages. (Ex. 16 at 198:7-13 ("Q. Do you know what difference-in-differences is? A. Not without greater context.  Q. Have you ever heard of a difference-in-differences analysis in the context of damages? A. No.").)

[8] *Shady Grove* is a 4-1-4 fractured decision. While the Second Circuit has not ruled, "the majority of district and circuit courts" hold Justice Stevens's opinion controls. *Delgado v. Ocwen Loan Servicing, LLC*, 2017 WL 5201079, at *9 (E.D.N.Y. Nov. 9, 2017) (citing cases). Scotts has and continues to rely on Justice Stevens's opinion.

[9] The Court must determine if a federal rule displaces a state law only if there exists a "direct collision" between the two. *Shady Grove*, 559 U.S. at 421; *Racher v. Westlake Nurs. Home Ltd. P'ship*, 871 F.3d 1152, 1162-63 (10th Cir. 2017) ("we follow the framework described by the Supreme Court in *Shady Grove*, as laid out by Justice Stevens ….

… answers" the procedural question of "whether the suit may **proceed** as a class action." *Shady Grove*, 559 U.S. at 398 (emphasis added). *Shady Grove* expressly carved out, and did "not decide whether a state law that limits the **remedies** available in an existing class action would conflict with Rule 23." *Id*. at 401 (emphasis added).

No federal rule—certainly not Rule 23—answers the question of what *remedies* are available in a class action. No federal law or rule could or does allow a federal court to make available to a class *remedies* for state-law claims that the underlying *substantive* law (here GBL §§ 349/350) has not made available. To do so would violate the Rules Enabling Act. *Shady Grove*, 559 U.S. at 420, 422; 28 U.S.C. § 2072(b); *Gasperini*, 518 U.S. at 428 (holding Rule 59 cannot displace CPLR's definition of recoverable damages, which was substantive law that federal courts sitting in diversity must apply); *Racher*, 871 F.3d at 1162 (analyzing *Shady Grove*, observing "[i]t is undisputed that a state's statutory limit on damages is substantive law that federal courts sitting in diversity must apply"); Scotts MSJ Reply at 4-5. As the Court correctly found, the legislature's intent was that §§ 349/350 would provide for the recovery of only actual damages in class actions. (Op. at 10.)

Second, even assuming the first *Erie/Shady Grove* question could be answered in the affirmative (and it cannot), the Order erred with respect to the second question—by failing to address the fact that the legislature's creation of remedies under §§ 349/350 was "sufficiently intertwined with" CPLR 901(b) that it "function[s] as a part of the State's definition of substantive rights and remedies." *Shady Grove*, 559 U.S. at 423-24, 417-18. On this issue, the Court found that "the legislative history [of §§ 349/350] shows the legislators' intent was specifically to rely on CPLR 901(b)" to "prohibit" recovery of statutory damages in a class

---

There is a conflict only if there is a 'direct collision' between federal and state law—one that is 'unavoidable.' If the state and federal rules 'can exist side by side, ... each controlling its own intended sphere of coverage,' there is no conflict.") (citations omitted).

action.[10] (Op. at 12; *accord* Scotts MSJ at 7-12; Scotts MSJ Reply at 5.) Applying the federal rule to "abridge, enlarge or modify" such a substantive right or remedy, however, would violate the Rules Enabling Act. *Shady Grove*, 559 U.S. at 423-24, 417-18; Scotts MSJ at 11-12; Scotts MSJ Reply at 4-5.

The judgment in *Shady Grove* hinged on Justice Stevens's determination that 901(b) was not "sufficiently interwoven with … the substantive right or remedy" created ***in N.Y. Ins. Law § 5106***. *Shady Grove*, 559 U.S. at 429. That conclusion does not dictate, constrain, or have any relevance to this Court's determination whether 901(b) is so intertwined ***with GBL §§ 349/350*** as to define the ***remedies*** available thereunder. To the contrary, all the available evidence shows §§ 349/350 and CPLR 901(b) are indeed "so intertwined" as to function as a part of New York's "definition of substantive rights and remedies."[11] *See id.* at 420-21 ("When a State chooses to use a traditionally procedural vehicle as a means of defining the scope of substantive rights or remedies, federal courts must recognize and respect that choice.") (citing *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 533 (1949) ("Since th[e] cause of action is created by local law, the measure of it is to be found only in local law .... Where local law qualifies or abridges it, the federal court must follow suit") (alterations in original)).

\*     \*     \*

---

[10] Whether the legislature intended to *prohibit* statutory damages is not the proper question. (Op. at 12.) Rather, the Court must determine the threshold question whether the legislature in §§ 349/350 *provided for* the recovery of statutory damages in an otherwise proper class action. *Grochowski v. Phoenix Const.*, 318 F.3d 80, 85 (2d Cir. 2003) ("It is an 'elemental canon' of statutory construction that where a statute expressly provides a remedy, 'courts must be especially reluctant to provide additional remedies.'") (citation omitted). Plainly, it did not. (Scotts Exs. 30-34.)

[11] Indeed, courts narrowly construe *Shady Grove*, enforcing state statutes that limit remedies—or even the ability to maintain class actions—where the limits are within or intertwined with substantive statutes. *Delgado*, 2017 WL 5201079, at \*9 (distinguishing between "pan-statutory" class-action bans and limitations on particular statutes); *Simmons v. Author Sols., LLC*, 2015 WL 4002243, at \*6 n.10 (S.D.N.Y. July 1, 2015); *Espinosa v. Bluemercury, Inc.*, 2017 WL 1079553, at \*3 (N.D. Cal. Mar. 22, 2017); *see also Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 60 (E.D.N.Y. 2017); *Davenport v. Charter Commc'ns, LLC*, 35 F. Supp. 3d 1040, 1051 (E.D. Mo. 2014) (enforcing "class action restriction in Section 337.385 of the Kentucky Act [because it] is 'so intertwined' with that statute's rights and remedies").

The issue raised by Scotts is not a question of class certification; it therefore is not a Rule 23 question.[12] It is a question of a legislatively defined scope of substantive remedies and whether federal courts will enforce that legislatively defined scope under *Erie*. There simply is no conflict between §§ 349/350 and Rule 23, and the Court must "recognize and respect" New York's substantive choices. *Shady Grove*, 559 U.S. at 420-21; *Gasperini*, 518 U.S. at 428; *Racher*, 871 F.3d at 1162.

## CONCLUSION

Scotts respectfully requests the Court reconsider and revise its August 7, 2017 Opinion and Order to: (i) find safe harbor bars Plaintiffs' California express warranty and unjust enrichment claims (ii) exclude Dennis's CVM, (iii) accept Dr. David's DiD analysis; and (iv) find GBL statutory damages unavailable to the class.

Dated: January 18, 2018
New York, New York

By: /s/ Shawn Patrick Regan

Shawn Patrick Regan
Joshua S. Paster
HUNTON & WILLIAMS LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 309-1000
Facsimile: (212) 309-1100
Email: sregan@hunton.com
Email: jpaster@hunton.com

- and -

---

[12] In *Shady Grove*, the district court dismissed "the class action aspect of plaintiffs' § 5106(a) claim" under 901(b) and then dismissed the suit for lack of jurisdiction. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 466 F. Supp. 2d 467, 471-76 (E.D.N.Y. 2006). That is not the result §§ 349/350 dictate. Rather, Plaintiffs' class action may continue, wherein they may seek actual damages (assuming *arguendo* Rule 23 remains satisfied). *Accord* Scotts Ex. 31 (explaining the private-right-of-action amendments to §§ 349/350 "do[] not bar class actions," but rather only "limit[] the damages recoverable by the class")).

Samuel A. Danon (*pro hac vice*)
HUNTON & WILLIAMS LLP
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-2460
Email: sdanon@hunton.com

- and -

Joshua M. Kalb (*pro hac vice*)
HUNTON & WILLIAMS LLP
600 Peachtree Street NE, Suite 4100
Atlanta, Georgia 30307
Telephone: (404) 888-4000
Facsimile: (404) 602-9077
Email: jkalb@hunton.com

-and-

Neil K. Gilman (*pro hac vice*)
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 955-1674
Facsimile: (202) 862-3629
Email: ngilman@hunton.com

*Counsel for Defendants The Scotts Miracle-Gro Company and The Scotts Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2018, I served a copy of the foregoing, on all counsel

of record at the addresses listed below, by filing with the Court's CM/ECF system.

/s/ Shawn Patrick Regan
Shawn Patrick Regan

Scott A. Bursor, Esq.
Joseph L. Marchese, Esq.
Neal Deckant, Esq.
Yitzchak Kopel, Esq.
Bursor & Fisher, P.A.
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
Email: scott@bursor.com
jmarchese@bursor.com
ndeckant@bursor.com
ykopel@bursor.com

Nadeem Faruqi, Esq.
Faruqi & Faruqi, LLP
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: (212) 983-9330
Fax: (212) 983-9331
Email: nfaruqi@faruqilaw.com

Timothy Peters, Esq.
Faruqi & Faruqi, LLP
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046
Telephone: (215) 277-5770
Fax: (215) 277-5771
Email: tpeters@faruqilaw.com

Antonio Vozzolo, Esq.
Vozzolo LLC
Email: avozzolo@vozzolo.com