UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In re Scotts EZ Seed Litigation : 12-CV-4727 (VB)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**REPLY MEMORANDUM IN FURTHER SUPPORT OF SCOTTS' MOTION FOR RECONSIDERATION**
**OF THE COURT'S AUGUST 7, 2017 OPINION AND ORDER**

HUNTON & WILLIAMS LLP
Shawn Patrick Regan
Joshua S. Paster
200 Park Avenue
New York, NY 10166

- and -

Samuel Danon (*pro hac vice*)
1111 Brickell Avenue, Suite 2500
Miami, FL 33131

Joshua M. Kalb (*pro hac vice*)
600 Peachtree Street NE, Suite 4100
Atlanta, Georgia 30307

Neil K. Gilman (*pro hac vice*)
2200 Pennsylvania Avenue, NW
Washington, DC 20037

*Counsel for Defendants The Scotts Miracle-Gro Company and The Scotts Company LLC*

# TABLE OF CONTENTS

Page

A. Plaintiffs' arguments regarding *Shady Grove* misstate the applicable law...................... 1

B. Plaintiffs' safe-harbor arguments misrepresent both the law and Scotts' arguments...... 4

C. Plaintiffs ask the Court to ignore identical, contemporaneous MSRPs for EZ Seed both with and without the 50% Thicker Claim. ......................................................................... 6

D. The Court should correct its undisputed error of fact in concluding that Dr. David's Difference-in-Difference analysis analyzed only one EZ Seed SKU. ............................. 8

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ....................4, 5

*Chuang v. Dr. Pepper Snapple Grp., Inc.*,
2017 WL 4286577 (C.D. Cal. Sept. 20, 2017) ....................5, 6

*Cruz v. Anheuser-Busch, LLC*,
2015 WL 3561536 (C.D. Cal. June 3, 2015) ....................4, 6

*Delgado v. Ocwen Loan Servicing, LLC*,
2017 WL 5201079 (E.D.N.Y. Nov. 9, 2017) ....................2

*Gasperini v. Ctr. for Humanities, Inc.*,
518 U.S. 415 (1996) ....................3

*Greene v. Gerber Prod. Co.*,
262 F. Supp. 3d 38 (E.D.N.Y. 2017) ....................2

*Hughes v. United States*,
No. 17-155 (U.S.) ....................2

*James River Ins. Co. v. Rapid Funding, LLC*,
658 F.3d 1207 (10th Cir. 2011) ....................2

*Racher v. Westlake Nurs. Home Ltd. P'ship*,
871 F.3d 1152 (10th Cir. 2017) ....................2

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ....................1, 2, 3

*Shin v. Campbell Soup Co.*,
2017 WL 3534991 (C.D. Cal. Aug. 9, 2017) ....................5, 6

*U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A. Petrobras*,
2005 WL 736149 (S.D.N.Y. Mar. 29, 2005) ....................8

*Usov v. Marc Lazar, Inc.*,
2017 WL 5495357 (S.D.N.Y. Nov. 15, 2017) ....................8

*Whitlock v. FSL Mgmt., LLC*,
843 F.3d 1084 (6th Cir. 2016) ....................2

**Other Authorities**

CPLR 901(b) ........................................ 1, 2, 3, 4

Fed. R. Civ. P. 23 ........................................ 2, 3

N.Y. Gen Bus. L. § 349 ........................................ 1, 2, 3, 4

N.Y. Gen Bus. L. § 350 ........................................ 1, 2, 3, 4

Defendants The Scotts Miracle-Gro Company and The Scotts Company, LLC (collectively "Scotts") respectfully submit this Reply Memorandum in further support of their Motion for Reconsideration of the Court's August 7, 2017 Opinion & Order [ECF No. 317] ("Order" or "Op.").

**A. *Plaintiffs' arguments regarding* Shady Grove *misstate the applicable law.***

Plaintiffs' Opposition ("Opp'n") is notable for what it does *not* do—apply the *Erie/Shady Grove* framework. Plaintiffs avoid doing so because they cannot meet the first step: to identify a federal rule that answers the question of what remedies are available. Nor can they counter the facts relevant to the second step, because CPLR 901(b) and GBL §§ 349/350 (unlike the laws in *Shady Grove*) *are* "sufficiently intertwined" to "function as a part of the State's definition of substantive rights and remedies." Applying *Shady Grove* is not easy. (*See* Aug. 31, 2017 Order at 3 (finding this "issue is difficult and of first impression"), ECF No. 326.[1]) That several other courts have misapplied *Shady Grove* does not mean this Court should perpetuate the error.

Plaintiffs' errors stem primarily from their reliance on the wrong *Shady Grove* opinion. They quote and repeatedly cite Justice Scalia's opinion as authoritative. (Opp'n at 12, 13.) But five Justices expressly rejected that opinion on the ground that Justice Scalia ignored the second limitation in the Rules Enabling Act—that federal rules "not abridge, enlarge or modify *any* substantive right." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 424-25 (2010) (Stevens, J.) (emphasis in original). Therefore, as almost all district and circuit courts recognize, Justice Stevens's opinion is controlling because it is the narrowest opinion with which

[1] Plaintiffs' cited cases do not address the two-step *Shady Grove/Erie* analysis or the issue that Scotts presents. (*See* cases cited in Opp'n at 10-11 (not addressing issue Scotts presents).) Moreover, a majority of Plaintiffs' cited cases rely on *Sykes*, which as this Court recognizes, looked at this issue "only in passing, and never in this procedural context," and "has not grappled with the fundamental—and entirely legitimate—concern raised by defendants here." (Aug. 31, 2017 Order at 3.)

a majority of the Justices agreed.[2] *Delgado v. Ocwen Loan Servicing, LLC*, 2017 WL 5201079, at *9 (E.D.N.Y. Nov. 9, 2017) (citing cases); *see also Racher v. Westlake Nurs. Home Ltd. P'ship*, 871 F.3d 1152, 1162-64 (10th Cir. 2017); *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1091 (6th Cir. 2016); *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217 (10th Cir. 2011) (citing cases); *Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 60 (E.D.N.Y. 2017).[3]

As to the first step in the *Erie/Shady Grove* framework, Plaintiffs argue "the Court did not find that Rule 23 controls what remedies are available under state law." (Opp'n at 11.) But Plaintiffs' observation merely highlights the Court's first error in applying the *Shady Grove/Erie* framework—failing to identify a *federal* rule that answers the question, *i.e.*, that itself provides for the statutory damages Plaintiffs seek. Under *Erie*, unless there is a federal rule that answers that question, there is no federal-state conflict and the state law (substantive or procedural) is to be applied. Properly applying this first prong here, there is no federal rule answering the question, there is no conflict, and state law applies as to remedies. (Mot. at7-8.)

As to the second step, Plaintiffs argue §§ 349/350 and 901(b) are not intertwined because the *Shady Grove* Court found *the insurance law there* was not intertwined with 901(b). (Opp'n at 13-14). That argument is a *non sequitur* because it involves very different laws (New York's insurance law versus New York's consumer protection laws). Beyond this, Plaintiffs simply regurgitate the Court's observation that the legislature "relied on" CPLR 901(b) to prevent

---

[2] A majority of Justices held procedural limits defining substantive rights and remedies must be enforced in federal court. 559 U.S. at 420-21. That has been the law since *Erie*, and remains the law under *Shady Grove*.

[3] *Lisk,* cited by Plaintiffs on page 12, "has not been widely followed outside of the Eleventh Circuit … with most courts outside of that circuit implicitly or explicitly disagreeing with its interpretation of *Shady Grove* …." *Delgado*, 2017 WL 5201079, at *10. It is also notable that a pending Supreme Court case, *Hughes v. United States*, No. 17-155 (U.S.), may change even further the *Marks* "narrowest ground" rule traditionally applied by circuit and district courts to a rule that, where the judgment of the Supreme Court is based on a plurality of disparate opinions from which no common rule or analysis is clear, the result is non-precedential. *See* https://www.law360.com /legalindustry/articles/1007979 (noting brief arguing "This court should abandon the *Marks* rule in favor of a simple majority rule: Precedents of this court should form only when a single rule of decision 'enjoys the assent' of a court majority."). In that case, the analysis here would be governed only by *Erie.* Scotts understands that, at present, *Marks* binds this Court to apply Justice Stevens's opinion but reserves its arguments on this issue.

recovery of statutory damages in a class action. (*See* Op. at 11.) But the facts that led the Court to find the legislature "relied" on 901(b) compel a conclusion that there exists here the intertwining that Justice Stevens's opinion found would require application of the state's law (substantive and procedural) in federal court. *Shady Grove*, 559 U.S. at 417-18, 423 ("A federal rule … cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right."). The legislative history leaves no doubt of that intent.[4] To the extent Plaintiffs expend ink emphasizing that 901(b) is "procedural," the point is misplaced. *Shady Grove* makes clear that ***where the state uses "a traditionally procedural vehicle as a means of defining the scope of substantive rights or remedies," the Court "must recognize and respect that choice."*** *Id.* at 420 (Stevens, J.) (emphasis added). And finally, to the extent Plaintiffs attempt to suggest that *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 426 (1996) is no longer good law post-*Shady Grove* (Opp'n at 13), that argument has no support. It merely repeats Plaintiffs' attempt to obfuscate the core distinction between the issue here and the issue in *Shady Grove*, an issue that the Court in *Shady Grove* carved out. The question in *Shady Grove* was whether a class could be certified, and the Court held Rule 23 governs that question. The question in *Gasperini* was what remedies were available, and the Court held state law governs. That distinction is at the core of *Erie*.

Ultimately, the Court erred in holding it was "constrained" by *Shady Grove*. (Op. at 12.) *Shady Grove*'s holding has no "implication" for §§ 349/350 other than to establish the *Erie* analysis this Court must apply. (Mot. at 9; *accord* Scotts Exs. 31, 32.) *Shady Grove* does not

[4] *See* Scotts Ex. 31 (GBL "does not bar class actions…; rather class actions, for actual damages (not satutory [*sic*] damages) would still lie…. [T]he compromise limits the damages recoverable by the class under a § 349 suit …."); Scotts Ex. 32 ("This bill does not diminish a parties [*sic*] right to initiate a class action. However, in a class action suit the plaintiffs could recover only actual damages….").

answer the questions here; namely, (1) whether a federal rule answers the question here and, if so, whether application of 901(b) would conflict with that federal rule, and (2) even if so, whether §§ 349/350 and 901(b) are "sufficiently intertwined" to, together, "function as a part of the State's definition of substantive rights and remedies." The Court should correct this error and find statutory damages unavailable to the New York class.

**B. *Plaintiffs' safe-harbor arguments misrepresent both the law and Scotts' arguments.***

Plaintiffs assert that Scotts' contention that the safe-harbor applies to all of their California claims is a new argument and Scotts cites no California cases. (Opp'n at 2.) Both are incorrect.[5]

First, Scotts has maintained consistently that "*all* California claims" must be dismissed under the safe-harbor defense.[6] (Mot. at 2-4 (citing Scotts MSJ & MSJ Reply).)

Second, Scotts does cite California caselaw, namely *Cruz v. Anheuser-Busch, LLC*, 2015 WL 3561536, at *9 (C.D. Cal. June 3, 2015) and *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999). (Mot at 3-4.) Plaintiffs argue that "*Cruz* contains no mention of any application of the safe harbor doctrine to warranty claims." (Opp'n at 3.) Not true. The court there *expressly stated* that the safe harbor barred the plaintiff's warranty claim, and then went on, *in addition*, to find there was no promise supporting a contract or breach: "The Court has already determined that the safe harbor doctrine bars Plaintiffs claims but if the doctrine were inapplicable here, then it is still appropriate for this Court to dismiss Plaintiffs' claim for breach of express warranty." *Cruz*, 2015 WL 3561536, at *9.

---

[5] *In fact, Plaintiffs* cite no law holding that safe harbor does not apply to the remaining claims.

[6] Plaintiffs seek to turn Scotts' motion on its head, stating they would have responded to Scotts' arguments had Scotts made them. (Opp'n at 4.) But Scotts unambiguously stated in its opening summary-judgment brief that it sought dismissal as to all California claims. (Scotts MSJ at 5-7; *see also* Scotts MSJ Reply at 1-3, 15.) As the Motion demonstrates, Plaintiffs never challenged Scotts' assertion the safe harbor applied to *all* California claims. (Mot. at 3.) Plaintiffs had an opportunity to respond but elected not to.

Finally, Plaintiffs argue that the safe harbor does not apply to unjust enrichment because, they contend, "there is a difference between declaring conduct unfair versus unjust." (Opp'n at 3.) This argument is wrong under California law; unjust enrichment claims fail where the conduct at issue cannot sustain a claim under the UCL, FAL, or CLRA (the claims the Court already held are subject to safe harbor in this case). *Shin v. Campbell Soup Co.*, 2017 WL 3534991, at *8 (C.D. Cal. Aug. 9, 2017) (dismissing unjust-enrichment claim because "Shin's claim for unjust enrichment is based on the same allegedly 'deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales' conduct that she alleges as the basis for her other [UCL, FAL, and CLRA] claims. Shin's unjust enrichment claim fails for the same reason that her UCL, FAL, and CLRA claims fail: it is contingent upon the allegation that Shin relied to her detriment on Campbell's fraudulent misrepresentations or misleading statements to the benefit of Campbell."); *see also Chuang v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 4286577, at *8 (C.D. Cal. Sept. 20, 2017) (determining unjust enrichment does not "reach more broadly" than statutory claims, and "[b]ecause Plaintiff has failed to state claims under the California consumer protection statutes, the unjust enrichment claim fails as well.").[7]

Plaintiffs seek an end-run around the safe harbor by repackaging the allegations underlying their statutory claims as common-law claims. Plaintiffs' now-dismissed UCL, FAL, CLRA claims, as well as their unjust enrichment and express warranty claims, all derive from the allegation that the 50% Thicker claim is false or misleading. (Op. at 6 ("The only remaining theory of liability is that the 50% thicker claim was false or misleading").) Because the safe

---

[7] Nor does Scotts argue that the safe harbor alters, repeals, or supersedes common law. (Opp'n at 4-5.) Scotts does not contend that *no* plaintiff may file an unjust enrichment or express-warranty claim. Rather, the safe harbor provides that where, as here, "the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, ***courts may not override that determination***." *Cel-Tech Commc'ns*, 20 Cal. 4th at 182 (emphasis added). California created a regulatory framework for sale of fertilizer products, approved EZ Seed for sale after reviewing substantiation data for the 50% Thicker claim, and the safe harbor applies to preclude Plaintiffs from challenging the 50% Thicker claim under California law.

harbor precludes Plaintiffs from maintaining UCL, FAL, CLRA claims, their remaining claims must also be dismissed. *See Shin*, 2017 WL 3534991, at *8; *Chuang*, 2017 WL 4286577, at *8; *Cruz*, 2015 WL 3561536, at *9.

### C. *Plaintiffs ask the Court to ignore identical, contemporaneous MSRPs for EZ Seed both with and without the 50% Thicker Claim.*

Plaintiffs' only remaining alleged class injury is that EZ Seed with the 50% Thicker claim on the package cost class members more than EZ Seed without the claim would have cost. (*See* Op. at 32-34.) What the Court overlooked, and Plaintiffs now ask the Court to ignore (Opp'n at 5-7), is that EZ Seed Winter Lawn Mix was sold without the 50% Thicker claim at the same time, and with the same MSRP, as EZ Seed flavors bearing the claim (Mot. at 4-5).

Rather than considering real-world data, Plaintiffs' expert Dr. Dennis used a contingent valuation method ("CVM") to claim a price premium. But ironically, CVM is intended to establish a market comparison *when there is no real-world data on the price of an alternative*. (Dennis Mot. at 11-14, ECF No. 245.) Indeed, the Court rejected Scotts' attack on CVM specifically because:

> …there was an 'absence of actual market transactions that would reveal the value that consumers place on the product without the '50% thicker' label.' (Dennis Report ¶ 30). Therefore, the CVM survey 'creates such a hypothetical marketplace where consumers can compare the two products.' (*Id.*). As a result, the Court concludes CVM was 'a reasonable, reliable methodology' for Dr. Dennis to have used.

(Op. at 19.) But this was error, because there was no need for a hypothetical marketplace. EZ Seed without the claim and EZ Seed with the claim *were sold at the same time, and with identical MSRPs*. (Scotts' Ex. 52 at Rog. 4.) This empirical, contemporaneous evidence of how Scotts would have priced EZ Seed had it not made the allegedly false 50% Thicker claim, cuts

right to the heart of the "fit" of CVM. The existence of real world data renders CVM unnecessary and unreliable. (Dennis Mot. at 11-14.)

Plaintiffs' opposition to correcting this clear error of fact repeats their frivolous argument that Winter Lawn Mix cannot be relevant because it is "not in the case." By *definition* an EZ Seed product without the 50% Thicker claim is "not in the case." (Jan. 26, 2015 Order at 3, ECF No. 127.) But that does not make Winter Lawn Mix irrelevant. Quite the opposite. It provides the precise point of comparison that CVM only simulates, and on which Plaintiffs' entire case hinges; namely, what would the cost of EZ Seed *without* the 50% Thicker claim have been? (Ex. 44 at 35:22-36:5 ("[The Court]: Is [a price premium] the difference between the price a consumer would pay for this grass seed with the claim on it versus this grass seed without the claim on it . . . [o]r is it a difference between that grass seed and somebody else's grass seed? MR. BURSOR: No. It's ... the first of those, your Honor.").)

Finally, Plaintiffs allege that Scotts' motion regarding Winter Lawn Mix is "new facts and argument." This is simply wrong. (*See* Scotts Reply in Support of Mot. to Strike 56.1 at n.6, ECF No. 296; Scott's Opp'n Mot. Strike Winters and Peoples at 8; Scotts Ex. 153 at Rog. 10; Scotts Ex. 152 at Rog. 4.) Sales of Winter Lawn Mix were before the Court but were overlooked. The Court should correct this error, and in conjunction with Dr. Jesse David's Difference in Difference ("DiD") analysis discussed below, find (1) that Dr. Dennis' CVM analysis is unnecessary and unreliable and, (2) that no reasonable juror could find a price premium associated with the 50% Thicker claim in light of Scotts' identical pricing for EZ Seed with and without the 50% Thicker claim.

**D. *The Court should correct its undisputed error of fact in concluding that Dr. David's Difference-in-Difference analysis analyzed only one EZ Seed SKU.***

Plaintiffs argue that the Court should not correct its erroneous findings regarding Dr. David's Difference-in-Difference analysis ("DiD"), (Opp'n at 7-9), yet Plaintiffs do not deny—because they cannot—that the Court's adoption of their argument that Dr. David's DiD considered only a single EZ Seed SKU sold only in California was an error. (*Id.*) There is no dispute that Dr. David's DiD analysis calculated the change in price of EZ Seed post-50% Thicker claim across a multitude of SKUs sold in New York and California.

Despite the manifest error, Plaintiffs ask the Court effectively to affirm its erroneous finding by doing nothing. Plaintiffs support this request by arguing (1) this type of error is not grounds for reconsideration, and (2) that Scotts relies on evidence outside the pleadings. Both arguments are incorrect.[8]

First, this type of manifest error of fact is precisely the type of decision the Court should reconsider. *Usov v. Marc Lazar, Inc.*, 2017 WL 5495357, at *1 (S.D.N.Y. Nov. 15, 2017) (granting reconsideration where facts were overlooked); *U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A. Petrobras*, 2005 WL 736149, at *1 (S.D.N.Y. Mar. 29, 2005) (reconsideration proper to provide court "opportunity to correct manifest errors of law or fact").

Second, Plaintiffs' contention that Scotts is relying on new evidence ignores that Dr. David's report is in the record and speaks for itself. (Scotts Ex. 1 at 30-32 (noting DiD excluded only two "flavors" of EZ Seed (ones without the 50% Thicker Claim), and DiD analyzed

[8] Plaintiffs also assert that Scotts should have addressed this point on reply. Plaintiffs correctly note that they raised this issue in one line of a footnote in their opposition to summary judgment. Scotts gave Plaintiffs' fallacious argument the same treatment on reply, citing to Dr. David's report to support his DiD analysis in a footnote. (Scotts MSJ Reply at 10 n.18.) As discuss *infra*, Dr. David's report is self-explanatory on this issue.

"SKUs" (plural).) The Court overlooked a key fact from this report, and in so doing made a clear error of fact that should be corrected.[9]

But this motion is not ***only*** about correcting the facts. The Court's rejection of Scotts' Motion for Summary Judgment arguing that Plaintiffs cannot prove injury was based, in part, on the erroneous conclusion that Dr. David had not established that EZ Seed's price increased when the 50% thicker claim was removed. (Op. at 33 (finding Dr. David's analysis "of only limited relevance or weight, especially now that the Court has dismissed most of the California claims.").) But once the Court accepts that Dr. David's analysis was applicable across all EZ Seed SKUs bearing the 50% Thicker claim, the DiD must be seen as empirical evidence, proving the absence of a price premium associated with the 50% Thicker Claim.

The existence of an injury in this case turns entirely on whether the price consumers actually paid for EZ Seed would have been lower had Scotts not been able to make the 50% Thicker claim. (Scotts MSJ Reply at 7-9.) Dr. David's DiD analysis, demonstrating that EZ Seed's prices increased after the claim was removed (even accounting for an overall increase in grass-seed prices), and contemporaneous MSRP data for Winter Lawn Mix without the claim, end the guess work. Analysis of real-world data conclusively establishes that Scotts set the same price for EZ Seed with and without the claim when both were on the market at the same time, and the price for EZ Seed *increased*, even compared to the market as a whole, after Scotts removed the claim. Plaintiffs have suffered no injury and summary judgment is therefore appropriate.

[9] The additional material cited by Scotts may be considered, but is not necessary, especially in light of the Plaintiffs' tacit admission that the Court erred.

## CONCLUSION

For the reasons set forth in the Motion and above, Scotts respectfully requests the Court reconsider and revise its August 7, 2017 Opinion and Order.

Dated: February 15, 2018
New York, New York

By: /s/ Shawn Patrick Regan

Shawn Patrick Regan
Joshua S. Paster
HUNTON & WILLIAMS LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 309-1000
Facsimile: (212) 309-1100
Email: sregan@hunton.com
Email: jpaster@hunton.com

- and -

Samuel A. Danon (*pro hac vice*)
HUNTON & WILLIAMS LLP
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-2460
Email: sdanon@hunton.com

- and -

Joshua M. Kalb (*pro hac vice*)
HUNTON & WILLIAMS LLP
600 Peachtree Street NE, Suite 4100
Atlanta, Georgia 30307
Telephone: (404) 888-4000
Facsimile: (404) 602-9077
Email: jkalb@hunton.com

-and-

Neil K. Gilman (*pro hac vice*)
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 955-1674
Facsimile: (202) 862-3629
Email: ngilman@hunton.com

*Counsel for Defendants The Scotts Miracle-Gro Company and The Scotts Company LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 15, 2018, I served a copy of the foregoing, on all counsel of record at the addresses listed below, by filing with the Court's CM/ECF system.

/s/ Shawn Patrick Regan
Shawn Patrick Regan

Scott A. Bursor, Esq.
Joseph L. Marchese, Esq.
Neal Deckant, Esq.
Yitzchak Kopel, Esq.
Bursor & Fisher, P.A.
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
Email: scott@bursor.com
jmarchese@bursor.com
ndeckant@bursor.com
ykopel@bursor.com

Nadeem Faruqi, Esq.
Faruqi & Faruqi, LLP
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: (212) 983-9330
Fax: (212) 983-9331
Email: nfaruqi@faruqilaw.com

Timothy Peters, Esq.
Faruqi & Faruqi, LLP
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046
Telephone: (215) 277-5770
Fax: (215) 277-5771
Email: tpeters@faruqilaw.com

Antonio Vozzolo, Esq.
Vozzolo LLC
Email: avozzolo@vozzolo.com