**IN THE UNITED STATES COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                    :

In re Scotts EZ Seed Litigation       :     12-CV-4727 (VB)
                                    :
                                    :
                                    :
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION**
<u>**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**</u>

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................... 3

III.    THE TERMS OF THE PROPOSED SETTLEMENT ....................................... 6

        A.     The Class Definition ............................................................................. 6

        A.     Monetary Relief .................................................................................... 7

        B.     Release Of Claims ................................................................................ 7

        C.     Notice, Claims Process, And Settlement Administration ...................... 8

               1.     Costs, Fees, And Representative Awards .................................... 8

IV.     ARGUMENT ..................................................................................................... 8

        A.     The Proposed Settlement Is Fair, Reasonable, And Adequate .............. 8

               1.     Standard For Preliminary Approval Of Class Action Settlement .............. 9

               2.     The Settlement Is Procedurally Fair And Not A Product Of Collusion ... 10

               3.     The *Grinnell* Factors For Settlement Approval Are Satisfied ................. 12

                      a.     Litigation Through Trial Would Be Complex, Expensive, And
                             Lengthy ...................................................................... 12

                      b.     The Class' Reaction Will Likely Be Positive ............................... 13

                      c.     Discovery Has Advanced To A Stage At Which The Parties Can
                             Responsibly Resolve The Case .................................................... 13

                      d.     The Continued Litigation Risks Related To Establishing Liability,
                             Damages, And Maintaining A Class Action Through Trial Support
                             Settlement ................................................................................... 14

                      e.     Whether Defendants Can Withstand A Substantially Greater
                             Judgment ................................................................................. 15

                      f.     The Settlement Amount Is Reasonable In Light Of The Possible
                             Recovery And Attendant Risks Of Litigation............................... 16

        B.     Certification Of The Settlement Class Is Appropriate ........................... 17

               1.     Rule 23(a) Is Met ..................................................................... 18

|   |   | a. | Joinder Of All Members Is Impracticable ................................... 18 |
|   |   | b. | There Are Questions Of Law Or Fact Common To The Class..... 18 |
|   |   | c. | Plaintiffs' Claims Are Typical Of The Claims Of The Class ....... 19 |
|   |   | d. | Plaintiffs Will Fairly And Adequately Protect Class Interests ..... 19 |
|   |   | e. | Class Members Are Readily Identifiable And Ascertainable ....... 20 |
|   | 2. | | The Settlement Class Satisfies Rule 23(b)(3) ........................................... 21 |
|   |   | a. | Common Questions Predominate Over Individual Issues ............ 21 |
|   |   | b. | A Class Action Is Superior To Alternative Methods Of Adjudication.................................................................................. 22 |
| C. | | | The Proposed Class Notice And Notice Plan Are Reasonable ............................ 22 |
| D. | | | Plaintiffs' Counsel Should Be Appointed As Settlement Class Counsel ............ 25 |

## <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

**CASES**

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ....................................................................................... 21, 22

*Ayzelman v. Statewide Credit Servs. Corp.,*
   238 F.R.D. 358 (E.D.N.Y. 2006) ........................................................................... 17

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
   222 F.3d 52 (2d Cir. 2000) ................................................................................... 20

*Bildstein v. MasterCard Int'l Inc.,*
   329 F. Supp. 2d 410 (S.D.N.Y. 2004) .................................................................. 19

*Charron v. Pinnacle Grp. N.Y.,*
   874 F. Supp. 2d 179 (S.D.N.Y. 2012) .................................................................. 10

*City of Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974) ........................................................................... 10, 16

*City of Providence v. Aeropostale, Inc.,*
   2014 WL 1883494 (S.D.N.Y. May 9, 2014) ........................................................ 12

*Consol. Rail Corp. v. Town of Hyde Park,*
   47 F.3d 473 (2d Cir. 1995) ................................................................................... 18

*D'Alauro v. GC Servs. Ltd. P'ship,*
   168 F.R.D. 451 (E.D.N.Y. 1996) .......................................................................... 19

*D'Amato v. Deutsche Bank,*
   236 F.3d 78 (2d Cir. 2001) ................................................................................... 11

*Denney v. Deutsche Bank AG,*
   443 F.3d 253 (2d Cir. 2006) ................................................................................. 17

*Denney v. Jenkens & Gilchrist,*
   230 F.R.D. 317 (S.D.N.Y. 2005) .......................................................................... 15

*Frank v. Eastman Kodak Co.,*
   228 F.R.D. 174 (W.D.N.Y. 2005) .................................................................... 10, 16

*Heerwagen v. Clear Channel Commc'ns,*
   435 F.3d 219 (2d Cir. 2006) ................................................................................. 21

*In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.,*
   271 F. App'x 41 (2d Cir. 2008) ............................................................................ 23

*In re Air Cargo Shipping Servs. Antitrust Litig.,*
  2014 U.S. Dist. LEXIS 180914 (E.D.N.Y. Oct. 15, 2014)........................................ 18

*In re Am. Bank Note Holographics, Inc. Sec. Litig.,*
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ...................................................................... 15

*In re Am. Int'l Grp., Inc. Sec. Litig.,*
  689 F.3d 229 (2d Cir. 2012) ..................................................................................... 21

*In re AMF Bowling,*
  334 F. Supp. 2d 462 (S.D.N.Y. 2004) ...................................................................... 11

*In re AOL Time Warner, Inc.,*
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .............................................................. 14

*In re Austrian & German Bank Holocaust Litig.,*
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) .............................................................. 10, 12, 15

*In re EVCI Career Colls. Holding Corp. Sec. Litig.,*
  2007 WL 2230177 (S.D.N.Y. July 27, 2007)........................................................... 10

*In re Ferrero Litigation,*
  583 F. App'x 665 (9th Cir. 2014)............................................................................. 10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
  574 F.3d 29 (2d Cir. 2009) ....................................................................................... 19

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)............................................................ 16

*In re Global Crossing Sec. & ERISA Litig.,*
  225 F.R.D. 436 (S.D.N.Y. Nov. 24, 2004) .............................................................. 14

*In re Initial Pub. Offerings Sec. Litig.,*
  471 F.3d 24 (2d Cir. 2006) ....................................................................................... 20

*In re Petrobras Secs.,*
  862 F.3d 250 (2d Cir. 2017) ..................................................................................... 20

*In re Prudential Sec. Inc. Ltd. P'ships Litig,*
  163 F.R.D. 200 (S.D.N.Y. 1995).............................................................................. 13

*In re Scotts EZ Seed Litig.,*
  304 F.R.D. 397 (S.D.N.Y. 2015)........................................................................ passim

*In re Scotts EZ Seed Litig.,*
  2017 WL 3396433 (S.D.N.Y. Aug. 8, 2017)................................................. 18, 21, 24

*In re Traffic Exec. Ass'n E. R.R.'s,*
  627 F.2d 631 (2d Cir. 1980) ....................................................................................... 9

iv

*In re Vitamin C Antitrust Litig.*,
  2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ........................................................ 14

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985) ....................................................................... 15

*Jankowski v. Castaldi*,
  2006 U.S. Dist. LEXIS 4237 (E.D.N.Y. Jan. 13, 2006) ....................................... 22

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................................. 14

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997) ................................................................................. 17

*McReynolds v. Richards-Cantave*,
  588 F.3d 790 (2d Cir. 2009) ................................................................................... 9

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) ................................................................................. 16

*Reade–Alvarez v. Eltman, Eltman & Cooper, P.C.*,
  237 F.R.D. 26 (E.D.N.Y. 2006) ...................................................................... 17, 23

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ................................................................................. 19

*TBK Partners, Ltd. v. Western Union Corp.*,
  517 F. Supp. 380 (S.D.N.Y. 1981) ...................................................................... 12

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
  2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) ..................................................... 17

*Torres v. Gristede's Operating Corp.*,
  2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ..................................................... 13

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011)......................................................................................... 18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ............................................................................... 9, 10

*Weigner v. New York*,
  852 F.2d 646 (2d Cir. 1988) ................................................................................. 23

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982) ..................................................................................... 9

*Yang v. Focus Media Holding Ltd.*,
  2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ................................................. 11, 12

**STATUTES**

15 U.S.C. § 2301 ............................................................................................................ 3

28 U.S.C. § 1715(b) ........................................................................................................ 8

Cal. Bus. & Prof. Code § 17200 ..................................................................................... 4

Cal. Bus. & Prof. Code § 17500 ..................................................................................... 4

Cal. Civil Code § 1750 .................................................................................................... 4

Cal. Com. Code § 2313 .................................................................................................... 4

Cal. Com. Code § 2314 .................................................................................................... 4

N.Y. Gen. Bus. Law § 349 .............................................................................................. 4

N.Y. Gen. Bus. Law § 350 .............................................................................................. 4

N.Y. U.C.C. § 2-313 ....................................................................................................... 4

N.Y. U.C.C. § 2-314 ....................................................................................................... 4

**RULES**

Fed. R. Civ. P. 23 ................................................................................................... passim

**OTHER AUTHORITIES**

Manual for Complex Litigation (Third) (1995) ............................................................ 10

*Newberg on Class Actions* ("Newberg") (4th ed. 2002) ................................................. 9

Plaintiffs Michael Arcuri, David Browne, Gwen Eskinazi, Stacy Lonardo, Lance Moore, Vance Smith, and Nancy Thomas (collectively, "Plaintiffs") submit this memorandum of law in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (the "Motion").

## I.    INTRODUCTION

Plaintiffs commenced this class action lawsuit against defendants the Scotts Miracle-Gro Company, Inc., and The Scotts Company LLC (collectively, "Defendants" or "Scotts") arising out the advertising and sale of Defendants' EZ Seed combination mulch-grass seed product ("EZ Seed" or "Products").[1] EZ Seed's package label included the claims "50% Thicker With Half The Water* *Versus ordinary seed when each was watered at half the recommended rate.  Results may vary." as well as an alternative version of that claim stating, "50% Thicker With Half The Water†† ††Results 32 days after planting; each watered at half the recommended rate for ordinary seed. Results may vary." (together, the "50% Thicker" Claim).  EZ Seed was sold at retail beginning in 2009.  *See* Declaration of Joseph I. Marchese In Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Marchese Decl.") ¶ 30.  The average retail price for EZ Seed Products from 2009 to 2013 was calculated by Plaintiffs' damages expert as $20.79 in California, and $21.35 in New York, and less than one-third of the purchase price has been attributed to the "50% Thicker" Claim.  *Id.* ¶ 31.  Scotts removed the 50% Thicker Claim from EZ Seed's packaging in 2014, and the last ship date for EZ Seed Products bearing that claim was March 4, 2014.  *Id.* ¶ 32.  Here, Plaintiffs allege that EZ Seed's "50% Thicker" Claim is false and misleading, and that Defendants misrepresented the ability of EZ Seed to grow grass as advertised by the "50% Thicker" Claim.  *See* Consolidated Class Action Complaint ("CCAC") ¶¶ 40, 42, 45

---

[1] The EZ Seed Products at issue are limited to the following varieties or flavors:  EZ Seed Revolutionary Seeding Mix (no other designation), EZ Seed Tall Fescue, and EZ Seed Bermudagrass.

(ECF No. 14).  Defendants deny these allegations.

After six years of vigorous litigation, the Parties agreed to a settlement that provides substantial monetary benefits to the Settlement Class.[2]  Without any admission of liability, for Settlement Class Members who submit valid Claim Forms along with Proof of Purchase showing the purchase price for EZ Seed products bearing the "50% Thicker" Claim that were bought in the states of New York and California from January 1, 2009 through September 30, 2014, Scotts will provide a full refund of the purchase price for up to six (6) unit purchases.  Because certain packages of EZ Seed sold at retail for approximately $50 each, this equates to a potential approximate recovery of up to $300 per Class Member.  Marchese Decl. ¶ 33.  For Settlement Class Members who submit a valid Claim Form along with Proof of Purchase that does not reveal the actual purchase price for the Scotts EZ Seed purchases at issue, Scotts will provide a refund of $15.00 for each unit of Product up to six (6) units, or up to $90.  For Settlement Class Members who submit a valid Claim Form without Proof of Purchase, but who attest under penalty of perjury to their purchase of EZ Seed bearing the "50% Thicker" Claim in New York or California from January 1, 2009 through September 30, 2014, Scotts will pay up to $45, *i.e.*, $15.00 each for up to three (3) such unit purchases.  Further, the costs of notice and administration, and any incentive awards or attorney's fees, costs, and expenses that may be awarded will be paid by Scotts separately from the monetary refunds paid to Class Members.  Thus, those costs will not derogate from the amount of refunds that will be paid to Class Members under the Settlement.

The proposed Settlement, which was reached with the assistance of the Hon. Wayne R. Andersen (ret.), is fair, reasonable, and falls within the range of permissible approval.  The Settlement is the product of extensive arm's-length negotiations between experienced attorneys familiar with the

---

[2] All capitalized terms used and not otherwise defined herein have the definitions set forth in the Settlement Agreement.

legal and factual issues of this case.  Moreover, the Parties have litigated this action vigorously for six years, engaging in exhaustive motion practice and discovery, and have ample knowledge of the legal claims and defenses, the risks presented by the case, and the value achieved by the proposed Settlement.  The Settlement is an exceptional result for the Class because, despite the significant risks of further litigation, Plaintiffs secured substantial monetary relief for Class Members' EZ Seed purchases (including the opportunity to be refunded their full purchase price), and the "50% Thicker" Claim was removed from EZ Seed packaging during the course of the litigation.

Accordingly, Plaintiffs respectfully submit that preliminary approval of the Settlement is appropriate.  For the Court's review, Class Counsel has filed a true and correct copy of the Stipulation of Settlement, attached as Exhibit A to the Declaration of Joseph I. Marchese In Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Marchese Decl."), along with a proposed Order Granting Preliminary Approval of Class Settlement (the "proposed Preliminary Approval Order").  Entry of the proposed Preliminary Approval Order will: (1) grant preliminary approval of the Settlement; (2) conditionally certify the Settlement Class; (3) designate Plaintiffs as Class Representatives; (4) designate the law firms of Bursor & Fisher, P.A., and Faruqi & Faruqi, LLP as Class Counsel; (5) establish procedures for giving notice to members of the Settlement Class; (6) approve forms of notice to Class Members; (7) mandate procedures and deadlines for class exclusion requests and objections; and (8) set a date, time, and place for a final approval hearing.

## II.       FACTUAL AND PROCEDURAL BACKGROUND

On June 15, 2012, Plaintiffs Arcuri, Moore, Thomas, Browne and Smith commenced a proposed class action in the Southern District of New York against Scotts, the Home Depot, Inc., and Lowe's HIW, Inc., captioned *Arcuri et al. v. The Scotts Miracle-Gro Company, Inc. et al.*, Case No. 12-CV-4727-VB (the "*Arcuri*" Action), alleging causes of action for violation of the federal Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*; California's

Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq.*; California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; California's Breach of Express Warranty, Cal. Com. Code § 2313; California's Breach of Implied Warranty of Merchantability, Cal. Com. Code § 2314; New York's Unfair and Deceptive Practices Law, N.Y. Gen. Bus. Law § 349; New York's Breach of Express Warranty, N.Y. U.C.C. § 2-313; New York's Breach of Implied Warranty of Merchantability, N.Y. U.C.C. § 2-314; breach of contract; and unjust enrichment.  (ECF No. 1.)

On June 19, 2012, Plaintiffs Eskinazi and Lonardo commenced a proposed class action in the Southern District of New York against Scotts, Home Depot, Inc. ("Home Depot"), and the True Value Company ("True Value"), captioned *Eskinazi et al. v. The Scotts Miracle-Gro Company, Inc. et al.*, Case No. 12-CV-4787-VB (the "*Eskinazi*" Action), alleging causes of action for violation of the MMWA; Breach of Express Warranty; Unjust Enrichment; New York's Unfair and Deceptive Practices Law, N.Y. Gen. Bus. Law § 349; and New York's False Advertising Law, N.Y. Gen. Bus. Law § 350.

On July 9, 2012, the Court entered a Stipulation and Order to Consolidate Related Action, consolidating the *Eskinazi* and *Arcuri* Actions "for all purposes" under the caption:  *In re Scotts EZ Seed Litigation*, Case No. 12-4727 (VB) (S.D.N.Y.).  (ECF No. 2.)

On August 9, 2012, Plaintiffs filed a Consolidated Class Action Complaint ("CCAC") against Scotts, Home Depot, Lowe's Home Centers, Inc. ("Lowe's), and True Value.  In the CCAC, Plaintiffs bring causes of action under the MMWA; California's UCL, FAL, and CLRA; California's Commercial Code for breach of express and implied warranties; New York's Unfair and Deceptive Practices Law, N.Y. Gen. Bus. Law § 349; and New York's False Advertising Law, N.Y. Gen. Bus. Law § 350; the New York Commercial Code for breach of express and implied

warranties; and unjust enrichment.  Specifically, the CCAC alleged, *inter alia*, that the "50% Thicker" Claim on the Scotts EZ Seed package label was false or misleading.

On September 21, 2012, the Court entered a Partial Stipulation and Order dismissing True Value from the Action.  (ECF No. 19.)

Since 2012, this matter has been litigated extensively by the Parties, including but not limited to completing all discovery; engaging in various of motion practice in the district court such as motions to dismiss, a motion for class certification, cross motions for summary judgment, and a motion to decertify the class; engaging in appellate briefing; and working on pretrial items in furtherance of a joint pretrial order to the Court.  Marchese Decl. ¶¶ 8-9, 11-13, 15-20.

Notably, in a Memorandum Opinion dated January 26, 2015, the Court granted, in part, and denied, in part, Plaintiffs' Motion to Certify Class.  *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015).  The motion was denied with respect to the Rule 23(b)(2) class, and with respect to the claims for express and common law breach of warranty under New York law. Plaintiffs' Motion to Certify was otherwise granted.  *Id.* at 416.  The Court appointed the law firms of Bursor & Fisher, P.A., and Faruqi & Faruqi, LLP as Class Counsel, and Plaintiffs Michael Arcuri, David Browne, Gwen Eskinazi, Stacy Lonardo, Lance Moore, Vance Smith, and Nancy Thomas as Class Representatives.  *Id.* at 406-07.  Scotts' motions to decertify the Class and for reconsideration were denied.  Marchese Decl. ¶¶ 13-14.

At various stages of the case, Parties attempted resolution of the matter with the help of various mediators and Magistrate Judge Paul E. Davison.  Marchese Decl. ¶¶ 21-25.  On April 9, 2018, the Parties participated in their second full-day, in-person mediation session with the Hon. Wayne R. Andersen (ret.).  The Parties made substantial progress toward resolution at that mediation, and they agreed to all material terms to the proposed class action settlement at a follow up, in-person meeting the following day, April 10, 2018.  *Id.* ¶ 25.  Prior to and during the

mediation and follow-up settlement meeting, the Parties engaged in protracted, informed, and hard-fought settlement negotiations. *Id.* As a result of those negotiations, the Parties agreed to settle pursuant to the terms set forth in the Settlement Agreement. *Id.* ¶¶ 26-29, 34.

Throughout the Litigation, Plaintiffs by and through their respective counsel, conducted a thorough examination and investigation of the facts and law relating to the matters in this case, including, but not limited to, completing merits and expert discovery, review and analysis of Scotts' documents and data, and extensive research and assessment of the claims at issue and the Scotts EZ Seed product. *Id.* ¶¶ 20, 27. Class Counsel also evaluated the merits of all Parties' contentions and evaluated this Settlement, as it affects all Parties, including Settlement Class Members. *Id.* Plaintiffs and Class Counsel, after taking into account the foregoing, along with the risks and costs of further litigation, are satisfied that the terms and conditions of this Settlement are fair, reasonable and adequate, and this Settlement is in the best interest of the Settlement Class.

## III.     THE TERMS OF THE PROPOSED SETTLEMENT

The Parties reached agreement on the proposed Settlement after spirited debate of legal and factual theories by counsel, the assistance of the Hon. Wayne R. Andersen (ret.), and extensive arm's-length negotiations over a five-month period beginning in December, 2017. *Id.* ¶ 24. The key terms of the Settlement are as follows:

### A.     The Class Definition

The proposed Settlement Class (the "Settlement Class") consists of:  All persons who purchased Scotts EZ Seed in the states of New York and California containing the label statement "50% Thicker" Claim.[3]  Excluded from the Settlement Class are: (a) Scotts' employees, officers and directors, (b) persons or entities who purchased the Products for the purpose of re-sale, (c)

---

[3] For the purposes of this definition, individuals living in the same household shall be deemed to be a single class member.

retailers or re-sellers of the Products, (d) governmental entities, (e) persons who timely and properly exclude themselves from the Settlement Class as provided herein, (f) the Court, the Court's immediate family, and Court staff, and (g) counsel of record for the Parties. *See* Marchese Decl. Ex. A ("Stipulation of Settlement") ¶ 65.

### A.    Monetary Relief

If the Settlement is approved, Defendants shall provide a full monetary refund of the actual purchase price for up to six units of Product to any Settlement Class Members who purchased the Scotts EZ Seed at issue in New York or California during the Settlement Class Period and who submit a valid Claim Form along with a Proof of Purchase that shows the actual price paid. *Id.* ¶ 69. For Settlement Class Members who submit a valid Claim Form along with a Proof of Purchase that does not indicate the actual price paid for their Scotts EZ Seed, Defendants will provide a monetary refund of $15.00 for each such unit, up to six units. *Id.* For Settlement Class Members who submit a valid Claim Form without Proof of Purchase, but who attest under penalty of perjury to their purchase of EZ Seed bearing the "50% Thicker" Claim in New York or California from January 1, 2009 through September 30, 2014, Scotts will pay up to $45, *i.e.*, $15.00 each for up to three such unit purchases. *Id.*[4] Notably, there is no limit to the total number of refunds that Defendants will pay to the Class as a whole, and Class Members' full refunds will not be prorated for any reason.

### B.    Release Of Claims

In exchange for the foregoing relief, the Settlement Class Members who do not opt out of the Settlement will release Defendants and all Released Parties from all Released Claims asserted in this Action and any related claims which could be asserted arising out of or relating to the

---

[4] Individuals residing in the same household shall not be permitted to submit multiple claims for each member of the household. *Id.*

marketing, advertising, promoting, sale or distributing of Scotts EZ Seed.  *Id.* ¶¶ 59-60, 105.

C.     **Notice, Claims Process, And Settlement Administration**

Defendants have agreed to bear the costs of providing notice[5] and administration of the Settlement, including processing Claim Forms and requests for exclusion.  *Id.* ¶ 79.

1.     **Costs, Fees, And Representative Awards**

Class Counsel will petition the Court for fees, costs, and expenses not to exceed $9,700,000.00 (Nine Million Seven Hundred Thousand Dollars and Zero Cents), the payment of which is separate from and in addition to the monetary relief afforded to the Settlement Class Members.  *Id.* ¶ 91.  Similarly, Class Counsel will petition the Court for incentive award payments to each Class Representative in the amount of ten thousand dollars ($10,000), for their service on behalf of the Settlement Class.  *Id.* ¶ 95.  The Stipulation of Settlement and Plaintiffs' support of the Settlement are not conditioned upon the Court's approval of the amounts listed in this paragraph.  *Id.* ¶ 96.

IV.     **ARGUMENT**

A.     **The Proposed Settlement Is Fair, Reasonable, And Adequate**

This Court should approve the Stipulation of Settlement.  The Settlement is the result of five months of arm's-length negotiations among the Parties and their counsel and informed by the exchange of significant information through the settlement process and the assistance of an experienced mediator.  Marchese Decl. ¶¶ 24-25.  The Settlement provides favorable monetary benefits to Class Members considering the record evidence, Plaintiffs' burden to prove their theory of liability, and all of the risks associated with continued litigation.  Prior to reaching resolution, Class Counsel thoroughly investigated and litigated the case, and in doing so, gathered ample

---

[5] Defendants will separately provide notification of the Attorney General of the United States, and the attorneys general of each state or territory in which a Settlement Class Member resides in accordance with the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b).

information to assess the strengths and weaknesses of the Parties' positions.  Having weighed the likelihood of success and inherent risks and expense of litigation, Plaintiffs and Class Counsel strongly believe that the proposed settlement is "fair, reasonable, and adequate" as required by Fed. R. Civ. P. 23(e)(2).  *Id.* ¶¶ 20-27.

### 1.      Standard For Preliminary Approval Of Class Action Settlement

Courts encourage, and public policy favors, compromise and settlement of class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (emphasizing the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks omitted); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg") § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").  It is within the Court's discretion to approve a proposed class action settlement upon determination that the proposed settlement is fair, reasonable, and adequate. *McReynolds v. Richards-Cantave*, 588 F.3d 790, 800 (2d Cir. 2009).  "The central question raised by the proposed settlement of a class action is whether the compromise is fair, reasonable, and adequate.  There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation[.]"  *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).

Preliminary approval is the first step in a settlement process.  It may be granted if the court finds there is "'probable cause' to submit the [proposed settlement] to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Exec. Ass'n E. R.Rs.*, 627 F.2d 631, 634 (2d Cir. 1980); Newberg § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose the grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).

"Fairness is determined upon review of both the terms of the settlement agreement and the

negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005).  "A 'presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Wal-Mart Stores*, 396 F.3d at 116 (quoting Manual for Complex Litigation (Third) § 30.42 (1995)).  Where a settlement is achieved through arm's-length negotiations by experienced counsel and there is no evidence of fraud or collusion, "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).[6]

When evaluating the terms of a proposed class settlement, courts in this Circuit are guided by the factors enumerated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).  These factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*Id.* at 463 (citations omitted).

## 2.    The Settlement Is Procedurally Fair And Not A Product Of Collusion

The Settlement here is the product of intense arm's-length negotiations over a five-month period and conducted by experienced counsel who are knowledgeable in complex consumer class actions.  *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74

---

[6] Moreover, where, as here, the Settlement was reached after the Class was certified by the court, concerns over potential for collusion are ameliorated, and heightened scrutiny of the Settlement is not required.  *See In re Ferrero Litigation*, 583 F. App'x 665, 668 (9th Cir. 2014); *see also Charron v. Pinnacle Grp. N.Y.*, 874 F. Supp. 2d 179, 198 (S.D.N.Y. 2012).

(S.D.N.Y. 2000) (a settlement will enjoy a presumption of fairness if the court finds that it is the product of "arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation"), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). The Settlement was reached six years into the case, on the cusp of trial, and after the Parties completed extensive merits and expert discovery, including reviewing and analyzing a rolling production of more than 190,000 pages of documents and conducting thirty-three depositions. Marchese Decl. ¶ 8.

Moreover, the Parties were only able to reach the Settlement with the assistance of the experienced mediator, the Hon. Wayne R. Andersen (ret.). Judge Andersen is a highly respected and experienced class action mediator, who joined JAMS following more than twenty-six years on the bench. *Id.* ¶ 24. Prior to and during mediation, the Parties engaged in protracted, hard-fought negotiations to reach a final agreement on the terms of the Settlement. *See Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at \*5 (S.D.N.Y. Sept. 4, 2014) (noting that "the participation of this highly qualified mediator strongly supports a finding that negotiations were conducted at arm's length and without collusion."); *In re AMF Bowling*, 334 F. Supp. 2d 462, 465 (S.D.N.Y. 2004) (the participation of a respected mediator "gives [the court] confidence that [the negotiations] were conducted in an arm's-length, non-collusive manner").

Moreover, Plaintiffs' Counsel involved in the negotiations have considerable experience in handling consumer class actions and are clearly capable of assessing the strengths and weaknesses of their respective positions. *See infra* at § IV.D, Exs. B-C to Marchese Decl. Bursor & Fisher and Faruqi & Faruqi, and/or their partners, regularly engage in major complex litigation and have extensive experience in consumer class actions that are similar in size, scope, and complexity to this case. Marchese Decl. ¶ 38. The combined experience of the firms and attorneys involved demonstrate that the Settlement Class Members were well-represented at the bargaining

11

table.  *See Focus Media Holding Ltd.*, 2014 WL 4401280, at *5.

### 3.    The *Grinnell* Factors For Settlement Approval Are Satisfied

The *Grinnell* factors weigh in favor granting preliminary approval.

#### a.    Litigation Through Trial Would Be Complex, Expensive, And Lengthy

The Stipulation of Settlement provides favorable monetary benefits to the Settlement Class while avoiding the significant expenses and delays associated with litigation.  Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 174.  Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results.  *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd*, 675 F.2d 456 (2d Cir. 1982).

This case is no exception.  Plaintiffs understand that proceeding to trial is a risky and labor-intensive undertaking, including completing pretrial procedures like the joint pretrial order and briefing motions *in limine*.  Plaintiffs anticipate that Defendants would continue to contest the matter at every opportunity and on all fronts.  While Plaintiffs believe that the Action has merit and that they would ultimately prevail at trial, continued litigation would last for an extended period before a final judgment might be entered in favor of the Class.  Any trial would likely last at least three weeks, and involve numerous fact witnesses, experts and the introduction of voluminous documentary evidence.  Moreover, any judgment favorable to the Class would be the subject of post-trial motions and appeals, which could significantly prolong the lifespan of this Action.  *See, e.g., City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014) (finding that "[e]ven if the Class could recover a judgment at trial, the additional delay through trial, post-trial motions, and the appellate process could prevent the Class from

obtaining any recovery for years.").   By settling, Plaintiffs avoid the expenditure of resources and risk associated with trial, and they guarantee a quicker recovery to the Class.  Because the risks of proceeding to trial are substantial, this bird in hand is worth two in the proverbial bush, and the settlement warrants preliminary approval.  *See e.g., In re Prudential Sec. Inc. Ltd. P'ships Litig,*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) ("[I]t may be preferable to take the bird in the hand instead of the prospective flock in the bush.") (internal quotation marks omitted).

### b.      The Class' Reaction Will Likely Be Positive

At this stage, it is not possible to measure the reaction of the Settlement Class conclusively because Notice of Settlement has yet to be issued to the Class.   However, the Stipulation of Settlement proposes to offer meaningful cash refunds of between $15.00 and approximately $50.00 per unit (depending on which size Product was purchased) for up to six (6) unit purchases of Scotts EZ Seed.  Moreover, Plaintiffs' and their Counsel's support for the Stipulation of Settlement is a strong indication that the Settlement Class will likely view the terms of the Settlement positively.

### c.      Discovery Has Advanced To A Stage At Which The Parties Can Responsibly Resolve The Case

Under this factor, "[t]he pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating."  *See Torres v. Gristede's Operating Corp.,* 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) (internal quotation omitted).   Here, the settlement was reached on the cusp of trial, after six years of litigation, during which time Plaintiffs completed extensive merits and expert discovery, including substantial document review and thirty-three depositions.  Marchese Decl. ¶¶ 8, 20.  Notably, the average retail price for EZ Seed Products from 2009 to 2013 was calculated by Plaintiffs' damages expert as $20.79 in California, and $21.35 in New York, and the "50% Thicker" Claim was responsible for less than one-third of the purchase price.  *Id.* ¶ 31.  Class Counsel had sufficient information to make an informed decision about the merits of this case relative to the benefits provided by the proposed Settlement.

> **d.**     **The Continued Litigation Risks Related To Establishing Liability, Damages, And Maintaining A Class Action Through Trial Support Settlement**

"The fourth, fifth, and sixth *Grinnell* factors all relate to continued litigation risks," *i.e.*, the risks of establishing liability, damages and maintaining the class action through trial.  *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *5 (E.D.N.Y. Oct. 23, 2012).  One purpose of a settlement is to avoid the uncertainty of a trial on the merits.  Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement."  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. Nov. 24, 2004); *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006).  In other words, "the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation."  *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002).

Notwithstanding Plaintiffs' confidence in the strength of their position, they recognize that factual issues, evidence of competing, complex scientific concepts, and/or legal defenses could pose a substantial risk of non-recovery.  Plaintiffs must establish that Defendants' "50% Thicker" Claim is false, misleading, and deceptive and/or that members of the public are likely to be deceived by Defendants' advertising and labeling.  In contrast, Defendants point to their own and other third party trials that they claim "substantiate" the "50% Thicker" Claim.  While Plaintiffs are confident that their evidence will prove that EZ Seed Products do not deliver the promised benefits of the "50% Thicker" Claim, there is a real risk that a jury may see it differently.

Apart from the uncertainties regarding proof of Defendants' liability, there are also uncertainties in establishing damages.  Unlike the anticipated claims process in the proposed Settlement, Plaintiffs must meet certain burdens to prove damages at trial.  Plaintiffs' reliance on

expert testimony to establish damages, as well as a jury's acceptance of that expert testimony is far from certain, especially when Defendants will offer competing expert testimony to the contrary. *See In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Class Defendants, who could minimize or eliminate the amount of Plaintiffs' losses."); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985) ("In this 'battle of the experts' it is virtually impossible to predict with any certainty which testimony would be credited . . . ."). By contrast, the Settlement avoids the risks inherent in protracted litigation, and provides a prompt and favorable resolution to the Class.

> **e.    Whether Defendants Can Withstand A Substantially Greater Judgment**

The seventh *Grinnell* factor considers whether a defendant could withstand a judgment substantially higher than the proposed settlement amount if the case were to proceed to trial. *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 338 (S.D.N.Y. 2005). While Defendants have the ability to meet their obligations under the Stipulation of Settlement, the enormously large statutory damages award, which could be assessed if the case was to proceed through trial and survive challenge on appeal, could have a material impact on Scotts. In a February, 2018, quarterly report on Form 10-Q filed with the SEC, Scotts discussed this lawsuit stating, "[t]here can be no assurance that this action will not have a material adverse effect on our financial condition, results of operations or cash flows." 2/8/18 Form 10-Q, *available at* https://www.sec.gov/Archives/edgar/data/825542/000154638018000005/0001546380-18-000005-index.htm. Nonetheless, even if Defendants could withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9.

15

> **f.      The Settlement Amount Is Reasonable In Light Of The Possible Recovery And Attendant Risks Of Litigation**

Courts typically analyze the last two Grinnell factors together.  *See Grinnell*, 495 F.2d at 463. In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010) (quoting *Grinnell*, 495 F.2d at 462).  The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank*, 228 F.R.D. at 186 (internal quotation marks omitted).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.*  (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972), *cert. denied*, 409 U.S. 1039 (1972)).  Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought.  As the Second Circuit stated in *Grinnell*, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery."  495 F.2d at 455 n.2.

Here, each Class Member is able to recover cash refunds of between $15.00 and approximately $50.00 per unit for up to six (6) unit purchases of the Scotts EZ Seed at issue purchased in New York or California during the Settlement Class Period.  Given the complexity of the action and potential of a non-recovery, the Settlement provides a favorable resolution of this Action, including the potential for full refunds to consumers with Proof of Purchase and meaningful refunds to consumers without documentation of their purchases.  Accordingly, this recovery falls well within the range that courts have traditionally found to be fair and adequate.

Moreover, the fact that the Stipulation of Settlement provides for a prompt payment to

claimants favors approval of the Settlement. *See Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 2997957, at *5 (S.D.N.Y. Dec. 27, 2004) ("[T]he proposed Settlement provides for payment to Class members now, not some speculative payment of a hypothetically larger amount years down the road . . . . Given the obstacles and uncertainties attendant to this complex litigation, the proposed Settlement is within the range of reasonableness, and is unquestionably better than the other likely possibility – little or no recovery.") (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985), *modified on other grounds*, 818 F.2d 179 (2d Cir. 1987) ("[M]uch of the value of a settlement lies in the ability to make funds available promptly.")). Therefore, these factors militate in favor of preliminarily approving the Settlement.

### B.   Certification Of The Settlement Class Is Appropriate

Under Federal Rule 23(c)(1), "the court can make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date."[7] *Ayzelman v. Statewide Credit Servs. Corp.*, 238 F.R.D. 358, 362 (E.D.N.Y. 2006) (internal quotation marks omitted). "Certification of a class for settlement purposes only is permissible and appropriate[.]" *Reade–Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006). Where a class is proposed in connection with a motion for preliminary approval, "a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Deutsche Bank*, 443 F.3d at 270. Courts employ a "'liberal rather than restrictive construction'" of Rule 23, "'adopt[ing] a standard of flexibility'" in deciding certification. *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997).

---

[7] On January 26, 2015, this Court granted in part Plaintiffs' motion for class certification, certifying two classes consisting of: (1) all persons who purchased EZ Seed in the state of California labeled with the "50% Thicker" Claim, excluding persons who purchased for purpose of resale (the "California Class"); and (2) all persons who purchased EZ Seed in the state of New York labeled with the "50% Thicker" Claim, excluding persons who purchased for purpose of resale (the "New York Class"). *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 404.

Because the proposed Settlement Class satisfies requirements under Rule 23(a) and at least one of the subsections of Rule 23(b), and the Court has already certified Classes of consumers in this Action, and Defendants consent to conditional certification for settlement purposes only, Plaintiffs respectfully request that the Court provisionally certify the Settlement Class.

### 1.   Rule 23(a) Is Met

#### a.   Joinder Of All Members Is Impracticable

Numerosity is met if "the class is so numerous that joinder of all members is impracticable[.]"[8] Fed. R. Civ. P. 23(a)(1). Here, from January 2009 through 2013, approximately 1,524,812 packages of EZ Seed were sold in California and approximately 992,338 packages of EZ Seed were sold in New York. *In re Scotts EZ Seed Litig.*, 2017 WL 3396433, at *2 (S.D.N.Y. Aug. 8, 2017). Given the number and geographic dispersion of potential Class Members, joinder would be impracticable.

#### b.   There Are Questions Of Law Or Fact Common To The Class

To be certified as a class action, there must be "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). The requirement of commonality does not require identical claims and arguments. "To satisfy commonality, 'even a single common question will do.'" *In re Air Cargo Shipping Servs. Antitrust Litig.*, MDL No. 1775, No. 06-MD-1175 (JG)(VVP), 2014 U.S. Dist. LEXIS 180914, at *178 (E.D.N.Y. Oct. 15, 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011)).

Here, the criterion is satisfied because there are numerous issues of fact and law common to the Settlement Class, including: (a) whether the "50% Thicker" Claim is false and/or misleading, and (b) whether the Settlement Class Members were all injured by being overcharged for Scotts

---

[8] *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members[.]").

EZ Seed.  *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 405.

       **c.**      **Plaintiffs' Claims Are Typical Of The Claims Of The Class**

Rule 23(a)(3) is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)).  "When the same unlawful conduct was directed at both the named plaintiff and the class to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." *Labbate-D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 456-57 (E.D.N.Y. 1996) (internal quotation marks omitted).

Here, Plaintiffs allege that Defendants made false and misleading representations concerning the ability of EZ Seed to grow grass as advertised by the "50% Thicker" Claim . CCAC ¶ 28.  Plaintiffs allege that these material misrepresentations caused them injury because they would not have purchased Scotts EZ Seed or because they overpaid for Products that could not deliver the promised benefits.  *Id.* ¶¶ 71, 76, 81, 86, 91, 95, 100.  Defendants' conduct caused similar injury to members of the Settlement Class.  Moreover, Plaintiffs contend that Defendants' alleged misrepresentations regarding Scotts EZ Seed would be material to any reasonable consumer.  *See Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004) ("[A] material claim is one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.") (internal quotation marks omitted).  Because Plaintiffs will seek to prove that they were harmed by the same overall course of conduct and in the same way as the Class, their claims are typical of the Class Members.  *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 405-06.

       **d.**      **Plaintiffs Will Fairly And Adequately Protect Class Interests**

The final prerequisite mandates that "representative parties will fairly and adequately

protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The requirement is met if the plaintiff: (1) is represented by counsel who is "qualified, experienced and able to conduct the litigation[;]" and (2) does not possess interests "antagonistic to the interest of other members of the class[.]" *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

Plaintiffs' interests are consistent with, and not antagonistic to, the interests of other Settlement Class Members.  Here, Plaintiffs' claims are co-extensive with those of the Settlement Class.  Plaintiffs and each Class Member were injured in the same manner, and Plaintiffs assert the same legal claims as those of the Class.  Thus, they share a common interest in establishing liability and securing the maximum possible recovery.  Plaintiffs have taken their obligations to the Settlement Class seriously.  They engaged in the prosecution of this matter, have consistently conferred with their counsel, reviewed the various pleadings, sat for multiple depositions, and consulted with Class Counsel regarding the propriety of the Settlement.  *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 406-07.   Moreover, Plaintiffs' Counsel have considerable experience in consumer class actions, and their experience demonstrates that the Settlement Class Members at all times were, and are, well-represented.  *Id.* ¶ 38; *see In re Scotts EZ Seed Litig.*, 304 F.R.D. at 407.

### e.     Class Members Are Readily Identifiable And Ascertainable

Rule 23 also contains an "implied requirement of ascertainability." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006).  The ascertainability doctrine in the Second Circuit requires "only that a class be defined using objective criteria that establish a membership with definite boundaries."  *In re Petrobras Secs.*, 862 F.3d 250, 264 (2d Cir. 2017).  Here, the Class is readily identifiable because it consists of all persons who purchased Scotts EZ Seed containing the label statement "50% Thicker" Claim in the states of New York and California from January 1, 2009 through September 30, 2014.  All Class Members are able to determine their membership in the Class through objective criteria.  *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at

408.

## 2. The Settlement Class Satisfies Rule 23(b)(3)

To qualify for certification under Rule 23(b)(3), the class must meet two criteria. First, common questions of law or fact must "predominate" over any purely individual questions. Fed. R. Civ. P. 23(b)(3). Second, the class must demonstrate that class treatment is superior to other available methods for the fair and efficient adjudication of the controversy. *Id*. In the context of a settlement class, the issue of manageability "drop[s] out of the predominance analysis because the proposal is that there be no trial." *In re Am. Int'l Grp., Inc. Sec. Litig*., 689 F.3d 229, 240 (2d Cir. 2012) (internal quotation marks omitted). Instead, the court must determine the legal or factual questions in each class member's case "are sufficiently similar to yield a cohesive class." *Id*.

### a. Common Questions Predominate Over Individual Issues

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). To meet this requirement, "a plaintiff must show that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof." *Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219, 226 (2d Cir. 2006).

Predominance is satisfied here, where the pertinent issues center on whether Defendants' representations concerning Scotts EZ Seed are false, misleading, and/or likely to deceive the public. Every Class Member's claim may be proven by the same common evidence regarding the efficacy of Scotts EZ Seed. Indeed, the resolution of whether Scotts EZ Seed, as a matter of scientific fact, can deliver the benefits of the "50% Thicker" Claim is integral to each Class Member's case, and can be achieved through generalized proof. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409; *In re Scotts EZ Seed Litig.*, 2017 WL 3396433, at *18-19.

**b.**     **A Class Action Is Superior To Alternative Methods Of Adjudication**

For certification under Rule 23(b)(3), the court must determine that class treatment is superior to other available methods of adjudication.  *See* Fed. R. Civ. P. 23(b)(3).  Class treatment is appropriate where, as here, "the proposed class members are sufficiently numerous and seem to possess relatively small claims unworthy of individual adjudication due to the amount at issue [and] there is reason to believe that class members may lack familiarity with the legal system, discouraging them from pursuing individual claims."  *Jankowski v. Castaldi*, 2006 U.S. Dist. LEXIS 4237, at *13 (E.D.N.Y. Jan. 13, 2006) (internal quotation marks omitted).

Class treatment is not merely superior, but is the only manner in which to ensure fair and efficient adjudication of this Action.  Given that each Class Member's claim, individually, is of a relatively low value, individual Class Members will likely have little incentive to pursue their claims on an individual basis.  A class action will allow individual Class Members to bring together claims that would be economically infeasible to litigate otherwise.  Class treatment in the settlement context is also superior to individual suits or piecemeal litigation because it facilitates favorable resolution of all Settlement Class Members' claims and conserves scarce judicial resources.  Also, there has been no other litigation concerning this controversy, and there is no reason why this case should not be concentrated in this Court.  Further, because we are in the context of a proposed Settlement, whether the case would be manageable at trial is not of consequence.  *See Amchem*, 521 U.S. at 620. Therefore, a class action is a superior method of adjudicating this case.  *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 415-16.

**C.**     **The Proposed Class Notice And Notice Plan Are Reasonable**

The Notice to be provided to the Settlement Class satisfies the requirements of Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P.

23(c)(2)(B).  However, the "best practicable" notice standard does not require that every class member actually receive notice.  *In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271 F. App'x 41, 44 (2d Cir. 2008) (holding that the fact that some class members may not actually receive timely notice does not render the notice inadequate so long as the notice was reasonably calculated to reach all members) (quoting *Weigner v. New York*, 852 F.2d 646, 649 (2d Cir. 1988) ("It is clear that for due process to be satisfied, not every class member need receive actual notice, as long as class counsel 'acted reasonably in selecting means likely to inform persons affected.'"). Additionally, the proposed forms of notice should "fairly apprise the prospective members of the class of the pendency of the class action, the terms of the proposed settlement, and the options that are open to them in connection with the proceedings, including the option to withdraw from the settlement." *Reade-Alvarez*, 237 F.R.D. at 34.

The proposed forms of notice, attached as Exhibits 1-2 to the Stipulation of Settlement and discussed at Section IV of the Stipulation of Settlement, satisfy the criteria in Rule 23(c)(2)(B). The notice contains all the necessary information, including: (1) a summary of the action and the claims asserted; (2) a plain definition of the Settlement Class; (3) a clear and concise description of the terms of the Settlement; (4) information regarding the claim criteria and instructions on how to make a claim; (5) disclosure of the release of claims by Class Members who do not opt out of the Settlement; (6) an explanation of opt-out rights and information on how to do so; (7) instructions on how and when to object to the Settlement; (8) the date, time and location of the final approval hearing; (9) the address for the Settlement Website; and (10) the names and contact information for Class Counsel representing the Settlement Class.

Under the Stipulation of Settlement, Settlement Notice will be sent in multiple formats consisting of:  (1) E-mail notice to all class members for whom email addresses have previously been identified through Defendants' and EZ Seed retailer records; (2) Post Card Notice, via,

regular mail to all Class Members for whom the Parties do not have a valid email address but do have a mailing address from Defendants' and EZ Seed retailer records; (3) Website Notice via a dedicated case-specific Settlement Website where the Notices and other court filings will be posted;[9] (3) Internet banner ads, with embedded hyperlinks to the Settlement Website, directed towards users in California and New York who perform related keyword or topic searches[10]; (4) an informational press release issued to approximately 2,000 press outlets through California and New York; and (5) a toll-free telephone number which Class Members can call the Claims Administrator to get information about the Settlement.  Stipulation of Settlement ¶ 79.  The aforementioned notice provides information to the Settlement Class Members concerning, among other things: (1) terms of the Settlement; (2) instructions on submitting a claim; (3) objection and opt-out rights; and (4) the date, time, and location of the final approval hearing.

Due to the nature of the consumer product at issue, the proposed notice plan is particularly appropriate.  First, the proposed Notice Plan is substantially identical to the Notice Plan in the Court's July 23, 2015 Order approving the Notice of Pendency of Class Action.  Second, Class Counsel has obtained records of contact information for approximately 736,819 purchasers of the EZ Seed Product at issue for purposes of direct notice.  This amount, intended for direct notice, represents a significant percentage of the Class when considering the total sales of the EZ Seed product are estimated to be approximately two million units.  *In re Scotts EZ Seed Litig.*, 2017 WL

---

[9] The Settlement Website, which will be established within 45 days of the preliminary approval, will provide (among other information): documents and information concerning the Settlement and the litigation, electronic or printable versions of the Claim Form, instructions for filing a claim, opting out of the Settlement, or objecting to the Settlement, deadlines related to the Settlement, and other information as agreed to by the Parties.  Stipulation of Settlement ¶ 68.

[10] Ads will also be targeted to people in California or New York who shop at Home Depot, Wal-Mart, Lowe's and True Value with an interest in gardening, as well as targeting mobile devices whose IP addresses are identified as physically being in or around the same stores.  *Id.* ¶ 79.

3396433, at *2.

In sum, the proposed notices are clear and straightforward.  Further, the Notice Plan, designed by a respective expert on the means of providing effective class notice, is calibrated to provide broad and effective dissemination of the Notice to the consumers of Scotts EZ Seed. Therefore, the content of the notices and the Notice Plan satisfies the requirement under Rule 23.

### D.        Plaintiffs' Counsel Should Be Appointed As Settlement Class Counsel

Rule 23(g) requires a court to appoint class counsel when it certifies a class.  In appointing class counsel, the court considers several factors: (1) work done by counsel in identification or investigation of the claims in the action; (2) counsel's experience; (3) counsel's knowledge of the applicable law; and (4) counsel's resources committed to representing the proposed class.  Fed. R. Civ. P. 23(g)(1)(A).  All of these factors militate in favor of appointing Bursor & Fisher and Faruqi & Faruqi as Settlement Class Counsel.

First, the Court has already found Bursor & Fisher and Faruqi & Faruqi to be qualified to be appointed Class Counsel.  *See In re Scotts EZ Seed Litig.*, 304 F.R.D at 407.  Second, proposed Settlement Class Counsel spent a significant amount of time identifying and investigating Plaintiffs' claims before filing these cases.  Marchese Decl. ¶ 20.  Third, proposed Settlement Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of multi-state consumer class action cases like the instant Action.  Marchese Decl. Exs. B & C (Firm Resumes of Class Counsel).  In negotiating this Settlement, proposed Class Counsel had the benefit of years of relevant experience and a familiarity with the facts of this case and the substantive case law at issue.  *Id.* ¶¶ 20, 27.  Finally, both firms have well-regarded practices that are currently litigating dozens of cases in state and federal courts throughout the nation, and they have devoted substantial resources to representing the Class.  *Id.* ¶ 38.  Thus, the Court should appoint Plaintiffs' Counsel to act as Settlement Class Counsel for this Settlement.

Dated:  June 4, 2018                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Joseph I. Marchese*
    Joseph I. Marchese

Scott A. Bursor
Joseph I. Marchese
888 Seventh Avenue
New York, New York 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
Email: scott@bursor.com
       jmarchese@bursor.com

-and-

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
685 Third Avenue, 26th Floor
New York, New York 10017
Telephone:  (212) 983-9330
Facsimile:  (212) 983-9331
Email:  nfaruqi@faruqilaw.com

*Co-Class Counsel*

**VOZZOLO LLC**
Antonio Vozzolo
345 Route 17 South
Upper Saddle River, New Jersey 07458
Telephone: (201) 630-8820
Facsimile:  (201) 604-8400
Email: avozzolo@vozzolo.com

*Additional Counsel for Plaintiffs*