**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Scotts EZ Seed Litigation | Civil Action No. 12-cv-04727-VB |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**ATTORNEYS' FEES, COSTS, EXPENSES, AND INCENTIVE AWARDS**

Dated: October 5, 2018

**BURSOR & FISHER, P.A.**

Scott A. Bursor
Joseph I. Marchese
888 Seventh Avenue
New York, New York 10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
       jmarchese@bursor.com

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
Timothy J. Peter
685 Third Avenue, 26th Floor
New York, New York 10017
Telephone:  (212) 983-9330
Facsimile: (212) 983-9331
Email: nfaruqi@faruqilaw.com
      tpeter@faruqilaw.com

*Co-Class Counsel*

**VOZZOLO LLC**
Antonio Vozzolo
345 Route 17 South
Upper Saddle River, New Jersey 07458
Telephone: (201) 630-8820
Facsimile:  (201) 604-8400
Email: avozzolo@vozzolo.com

*Additional Counsel for Plaintiffs*

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ........................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND......................................................... 2

SUMMARY OF THE SETTLEMENT ............................................................................. 4

ARGUMENT ................................................................................................................... 4

I.     THE ATTORNEYS' FEES, COSTS, AND EXPENSES PROVIDED
       UNDER THE SETTLEMENT AGREEMENT ARE FAIR AND
       REASONABLE ................................................................................................... 4

       A.     The Agreed-Upon Attorneys' Fees Represent Approximately 18%
              Of The Total Settlement Value ................................................................. 6

       B.     The Reasonableness Of The Requested Agreed-Upon Attorneys'
              Fees, Costs, And Expenses Is Supported By This Circuit's Six-
              Factor *Goldberger* Test........................................................................... 7

              1.     Time And Labor Expended By Counsel ........................................ 8

              2.     Magnitude And Complexity Of The Litigation .............................. 8

              3.     The Risk Of Litigation ................................................................. 9

              4.     The Quality Of Representation ..................................................... 10

              5.     The Requested Fee In Relation To The Settlement ...................... 11

              6.     Public Policy Considerations ....................................................... 11

       C.     The Agreed-Upon Attorneys' Fees, Costs, And Expenses Are Also
              Reasonable Under A Lodestar Cross-Check................................................. 12

II.    CLASS COUNSEL'S LITIGATION COSTS AND EXPENSES ARE
       REASONABLE AND WERE NECESSARILY INCURRED TO
       ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE CLASS...................... 15

III.   THE AGREED-UPON INCENTIVE AWARDS REFLECT THE CLASS
       REPRESENTATIVES' ACTIVE INVOLVEMENT IN THIS ACTION
       AND SHOULD BE APPROVED ......................................................................... 16

CONCLUSION ................................................................................................................ 17

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Asare v. Change Grp. Of N.Y., Inc.*,
    2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ......................................................................... 14

*Blum v. Stenson*,
    465 U.S. 886 (1984) ........................................................................................................ 12, 13

*Cassese v. Williams*,
    503 F. App'x 55 (2d Cir. 2012) ............................................................................................ 12

*Dornberger v. Metro. Life Ins. Co.*,
    203 F.R.D. 118 (S.D.N.Y. 2001) .......................................................................................... 17

*Dupler v. Costco Wholesale Corp.*,
    705 F. Supp. 2d 231 (E.D.N.Y. 2010) ................................................................................... 5

*Ebin v. Kangadis Food Inc.*,
    297 F.R.D. 561 (S.D.N.Y. Feb. 25, 2014) ............................................................................ 10

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) .............................................................................................................. 12

*Goldberger v. Integrated Resources, Inc.*,
    209 F.3d 43 (2d Cir. 2000) ............................................................................................ 6, 7, 12

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ............................................................................................................ 4, 5

*In re Avon Prods., Inc. Sec. Litig.*,
    1992 WL 349768 (S.D.N.Y. Nov. 6, 1992) ............................................................................ 6

*In re Beacon Assocs. Litig.*,
    2013 WL 2450960 (S.D.N.Y. May 9, 2013) ........................................................................... 6

*In re Citigroup Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013) .................................................................................... 6

*In re Lloyd's Am. Trust Fund Litig.*,
    2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .................................................................... 14

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ...................................................................................... 9, 11

*In re MetLife Demutalization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) .................................................................................. 11

*In re Nasdaq Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................................................ 8

*In re Scotts EZ Seed Litig.*,
304 F.R.D. 397 (S.D.N.Y. 2015) ............................................................................ 10

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008) ....................................................................... 9

*In re Visa Check/Mastermoney Antitrust Litig.*,
297 F. Supp. 2d 503 (E.D.N.Y. 2003) ...................................................................... 15

*Jermyn v. Best Buy Stores, L.P.*,
2012 WL 2505644 (S.D.N.Y. June 27, 2012) ............................................................ 5

*Johnson v. Ga. Hwy. Exp., Inc.*,
488 F.2d 714 (5th Cir. 1974) ................................................................................... 4

*LeBlanc-Sternberg v. Fletcher*,
143 F. 3d 748 (2d Cir. 1998) ................................................................................... 13

*Luciano v. Olsten Corp.*,
109 F.3d 111 (2d Cir. 1997) ................................................................................... 13

*Massiah v. MetroPlus Health Plan, Inc.*,
2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ................................................... 11, 16

*Masters v. Wilhelmia Model Agency, Inc.*,
473 F.3d 423 (2d Cir. 2007) ................................................................................. 6, 7

*McBean v. City of N.Y.*,
233 F.R.D. 377 (S.D.N.Y. 2006) .............................................................................. 5

*McDaniel v. County of Schenectady*,
595 F.3d 411 (2d Cir. 2010) ..................................................................................... 6

*McMahon v. Oliver Cheng Catering and Events, LLC*,
2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ..................................................... 7, 15

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ............................................................................................... 13

*Parker v. Jekyll & Hyde Entm't Holdings, LLC*,
2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ............................................................. 14

*Parker v. Time Warner Entertainment Co., L.P.*,
631 F. Supp. 2d 242 (E.D.N.Y. 2009) ............................................................... 12, 13

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
478 U.S. 546 (1986) ............................................................................................... 12

*Raniere v. Citigroup Inc.*,
310 F.R.D. 211 (S.D.N.Y. 2015) ............................................................................ 17

*Reyes v. Altamarea Grp., LLC*,
2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) ............................................... 16

*Shapiro v. JPMorgan Chase & Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ............................................. 9, 11, 13

*Sony Corp. SXRD Rear Projection TV Class Action Litig.*,
  2008 U.S. Dist. LEXIS 36093, at *43 (S.D.N.Y. May 1, 2008) ............................... 5

*Spicer v. Pier Sixty LLC*,
  2012 WL 4364503 (S.D.N.Y. Sept. 14, 2012) .......................................... 14

*Steinberg v. Nationwide Mut. Ins. Co.*,
  612 F. Supp. 2d 219 (E.D.N.Y. 2009) ................................................. 5

*Torres v. Gristede's Operating Corp.*,
  519 F. App'x 1 (2d Cir. 2013) ...................................................... 7

*Velez v. Novartis Pharm. Corp.*,
  2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) .......................................... 7

*Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ...................................................... 12, 15

*Yuzary v. HSBC Bank USA, N.A.*,
  2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ......................................... 7, 15

**STATUTES**

15 U.S.C. §§ 2301 ................................................................. 2

Cal. Bus. & Prof. Code §§ 17200 .................................................... 2

Cal. Bus. & Prof. Code §§ 17500 .................................................... 2

Cal. Civil Code §§ 1750 ............................................................ 2

Cal. Com. Code § 2313 ............................................................. 2

Cal. Com. Code § 2314 ............................................................. 2

N.Y. Gen. Bus. Law § 349 ......................................................... 2, 3

N.Y. Gen. Bus. Law § 350 ........................................................... 3

N.Y. U.C.C. § 2-313 ............................................................... 3

N.Y. U.C.C. § 2-314 ............................................................... 3

**RULES**

Federal Rule of Civil Procedure 23(h) ............................................... 1

## INTRODUCTION

The class action settlement between Plaintiffs Michael Arcuri, David Browne, Gwen Eskinazi, Stacy Lonardo, Lance Moore, Vance Smith, and Nancy Thomas ("Plaintiffs" or the "Class Representatives") and Defendants The Scotts Miracle-Gro Company and The Scotts Company LLC ("Defendants" or "Scotts") resolves this case after more than six years of litigation and provides exceptional relief for Settlement Class Members.  Under the terms of the settlement, Settlement Class Members who purchased the Scotts EZ Seed at issue, and have proof of purchase, can recover the full purchase price for up to six units purchased.  Settlement Class Members without proof of purchase can recover a monetary refund of $15 per unit purchased, up to three units, *i.e.*, $45.

Obtaining this exceptional relief did not come easily.  Plaintiffs shouldered significant risk and battled through more than six years of hard-fought litigation, involving complex factual investigation into turf grass science, marketing, and economics, contested motions for class certification, case-dispositive motions on novel legal issues, and completing fact and expert discovery, including substantial document review and thirty-three depositions of the Parties, experts, and third parties.  Indeed, the Settlement was not reached until the Parties were in the midst of preparing their Joint Pretrial Order.

Moreover, the Settlement was not reached until the Parties participated in a settlement conference before Magistrate Judge Paul E. Davison and three mediations with well-respected mediators, including with former United States District Judge Wayne Andersen (of the U.S. District Court for the Northern District of Illinois), who is a neutral mediator affiliated with JAMS.

In light of this exceptional result, Plaintiffs respectfully request, pursuant to Federal Rule of Civil Procedure 23(h), that the Court approve the agreed-upon attorneys' fees, costs, and

expenses totaling $9,700,000, as well as incentive awards of $10,000 each for Plaintiffs for their services as Class Representatives.  Critically, the agreed-upon attorneys' fees, costs, and expenses, as well as the incentive awards, will be paid by Defendants in addition to (and not from) the relief made available to the Settlement Class.  Thus, approving these awards will not derogate from the payments or relief to any other Settlement Class Member.

Moreover, as explained herein, the agreed-upon attorneys' fees represent approximately 18% of the $47,952,250 total value of the Settlement, which is well within the approved norms of class ligation in this Circuit.  *See infra* Argument § I.A.  And the agreed-upon attorneys' fees represent a 1.3 multiplier on Class Counsel's lodestar, which is also well within the accepted range in this Circuit.  *See infra* Argument § I.C.

For these reasons, and as explained further below, this Court should approve the agreed-upon attorneys' fees, costs, and expenses, and incentive awards.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 15, 2012, Plaintiffs Arcuri, Moore, Thomas, Browne, and Smith commenced a proposed class action in the Southern District of New York against Scotts, the Home Depot, Inc. ("Home Depot"), and Lowe's HIW, Inc., captioned *Arcuri et al. v. The Scotts Miracle-Gro Company, Inc. et al.*, Case No. 12-CV-4727-VB (the "*Arcuri*" Action), alleging causes of action for violation of the federal Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*; California's Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq.*; California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; California's Breach of Express Warranty, Cal. Com. Code § 2313; California's Breach of Implied Warranty of Merchantability, Cal. Com. Code § 2314; New York's Unfair and Deceptive Practices Law, N.Y. Gen. Bus. Law § 349; New York's Breach of Express Warranty,

N.Y. U.C.C. § 2-313; New York's Breach of Implied Warranty of Merchantability, N.Y. U.C.C. § 2-314; breach of contract; and unjust enrichment.  (ECF No. 1.).

On June 19, 2012, Plaintiffs Eskinazi and Lonardo commenced a proposed class action in the Southern District of New York against Scotts, Home Depot, and the True Value Company ("True Value"), captioned *Eskinazi et al. v. The Scotts Miracle-Gro Company, Inc. et al.*, Case No. 12-CV-4787-VB (the "*Eskinazi*" Action), alleging causes of action for violation of the MMWA; Breach of Express Warranty; Unjust Enrichment; New York's Unfair and Deceptive Practices Law, N.Y. Gen. Bus. Law § 349; and New York's False Advertising Law, N.Y. Gen. Bus. Law § 350.

On July 9, 2012, the Court entered a Stipulation and Order to Consolidate Related Action, consolidating the *Eskinazi* and *Arcuri* Actions "for all purposes" under the caption:  *In re Scotts EZ Seed Litigation*, Case No. 12-4727 (VB) (S.D.N.Y.).  (ECF No. 2.).

On August 9, 2012, Plaintiffs filed a Consolidated Class Action Complaint ("CCAC") against Scotts, Home Depot, Lowe's Home Centers, Inc. ("Lowe's), and True Value.   In the CCAC, Plaintiffs bring causes of action under the MMWA; California's UCL, FAL, and CLRA; California's Commercial Code for breach of express and implied warranties; New York's Unfair and Deceptive Practices Law, N.Y. Gen. Bus. Law § 349; and New York's False Advertising Law, N.Y. Gen. Bus. Law § 350; the New York Commercial Code for breach of express and implied warranties; and unjust enrichment.  Specifically, the CCAC alleged, *inter alia*, that the "50% Thicker" Claim on the Scotts EZ Seed package label was false or misleading.

A detailed history of the litigation, a description of Class Counsel's work, and the arms'-length settlement negotiations between the Parties, are set forth in the Declaration of Joseph I. Marchese ("Marchese Decl.") submitted herewith.  *See* Marchese Decl. ¶¶ 5-41.

## SUMMARY OF THE SETTLEMENT

Class Counsel's efforts resulted in exceptional relief for the Settlement Class. Defendants will provide a full monetary refund of the actual purchase price for up to six units of Product to any Settlement Class Members who purchased the Scotts EZ Seed at issue in New York or California during the Settlement Class Period and who submit a valid Claim Form along with a Proof of Purchase that shows the actual price paid. *See* Stipulation of Settlement ¶ 69 (ECF No. 343-1). For Settlement Class Members who submit a valid Claim Form along with a Proof of Purchase that does not indicate the actual price paid for their Scotts EZ Seed, Defendants will provide a monetary refund of $15.00 for each such unit, up to six units. *Id.* For Settlement Class Members who submit a valid Claim Form without Proof of Purchase, but who attest under penalty of perjury to their purchase of EZ Seed bearing the "50% Thicker" Claim in New York or California from January 1, 2009 through September 30, 2014, Scotts will pay up to $45, *i.e.*, $15.00 each for up to three such unit purchases. *Id.* Notably, there is no limit to the total number of refunds that Defendants will pay to the Settlement Class as a whole, and Settlement Class Members' full refunds will not be prorated for any reason.

## ARGUMENT

## I.    THE ATTORNEYS' FEES, COSTS, AND EXPENSES PROVIDED UNDER THE SETTLEMENT AGREEMENT ARE FAIR AND REASONABLE

The agreed-upon fee, cost, and expense award of $9,700,000 is reasonable and merits approval. Federal courts at all levels encourage litigants to resolve fee issues by agreement whenever possible. As the United States Supreme Court has stated, "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also Johnson v. Ga. Hwy. Exp., Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally

arrive at a settlement as to attorney's fees.").  Accordingly, "[i]n a case where the attorneys' fees are to be paid directly by defendant and, thus, 'money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members.'" *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 243 (E.D.N.Y. 2010) (quoting *McBean v. City of N.Y.*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006)); *see also Jermyn v. Best Buy Stores, L.P.*, 2012 WL 2505644, at *9 (S.D.N.Y. June 27, 2012) ("'Thus regardless of the size of the fee award, class members . . . will receive the same benefit; the fee award does not reduce the recovery to the class. Under these circumstances, the danger of conflicts of interest between attorneys and class members is diminished.'") (quoting *In re Sony Corp. SXRD Rear Projection TV Class Action Litig.*, 2008 U.S. Dist. LEXIS 36093, at *43 (S.D.N.Y. May 1, 2008)); *Steinberg v. Nationwide Mut. Ins. Co.*, 612 F. Supp. 2d 219, 224 (E.D.N.Y. 2009) (noting "with approval that the fee award will not be drawn from the common fund but will be paid directly by [defendant].  In this regard, the fee award, however substantial, will have no effect on the monetary relief afforded to class members.").

Here, the Parties negotiated the payment at arms'-length, through sophisticated counsel. Marchese Decl. ¶¶ 35-40.  The agreement on fees, costs, and expenses reflects the risks for both sides, the nature of the result obtained for the Class, and the magnitude of the fee the Court might award if the case was tried to verdict.  *Id.* ¶¶ 41, 58-65.

This fee agreement was negotiated under the best of market conditions – an arms'-length negotiation – a process which the courts have encouraged.  *See Eckerhart*, 461 U.S. at 437.  The virtue of a fee negotiated by the Parties at arms'-length is that it is, essentially, a market-set price.  Defendants have an interest in minimizing the fee; Class Counsel have an interest in maximizing the fee to compensate themselves (as the case law encourages) for their risk,

5

innovation, and creativity; and the negotiations are informed by the Parties' knowledge of the work done and result achieved as well as their views on what the Court may award if the attorneys' fees award were litigated.  Because the fee agreement was negotiated by experienced and well-informed counsel at arms'-length, judicial deference to the Parties' fee agreement is warranted.  Thus, the negotiated fee is entitled to a presumption of reasonableness.

### A.    The Agreed-Upon Attorneys' Fees Represent Approximately 18% Of The Total Settlement Value

Courts in the Second Circuit apply one of two fee calculation methods – the "percentage of the fund" method or the "lodestar" method.  *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  The Court has discretion in choosing which method to employ.  *See McDaniel v. County of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010) (holding that "the decision as to the appropriate method [is left] to the 'district court, which is intimately familiar with the nuances of the case'") (quoting *Goldberger*, 209 F.3d at 48).  "[T]he trend in this Circuit has been toward the use of a percentage of recovery as the preferred method of calculating the award for class counsel in common fund cases." *In re Beacon Assocs. Litig.*, 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013); *see also, e.g., In re Avon Prods., Inc. Sec. Litig.*, 1992 WL 349768 (S.D.N.Y. Nov. 6, 1992).   In fact, the "trend" of using the percentage of the fund method to compensate class counsel is now "firmly entrenched in the jurisprudence of this Circuit."  *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388 (S.D.N.Y. 2013).

Although the Settlement does not, strictly speaking, create a common fund, it does provide for cash payments to class members exceeding $37.75 million, plus an additional estimated $425,000 in notice and administration costs, plus $9.7 million in attorneys' fees, costs, and expenses, plus $70,000 in incentive awards for the Class Representatives, for an estimated total value of $47.95 million (the "Settlement Amount").  *See* Marchese Decl. ¶¶ 43-45.  As the Second Circuit has held, "[a]n allocation of fees by percentage should therefore be awarded on

the basis of the total funds made available, whether claimed or not." *Masters v. Wilhelmia Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007); *see also Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 5 (2d Cir. 2013) (calculating fee award "'on the basis of the total funds made available,' … *i.e.*, as if it were a common settlement fund") (quoting *Masters*, 473 F.3d at 437); *Adler v. Bank of America, N.A.*, Case No. 7:13-cv-04866-VB, ECF No. 128, at 19:9-13 (S.D.N.Y. July 20, 2016) (calculating fee award based on "the aggregate settlement value," rather than value of funds claimed); *id.* at 8:12-16 ("In other words, potentially Bank of America would be on the hook for 5.7 million dollars to be paid to the class and on top of that would be on the hook for the attorney's fees of 1.5 million dollars.").

Class Counsel's fee request is approximately 18% of the total available Settlement Amount.  Marchese Decl. ¶ 45.  That is well within the approved norms of class ligation in this Circuit.  *See Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *10 (S.D.N.Y. Oct. 2, 2013) ("Class Counsel's request for 31.7% of the Fund is reasonable and 'consistent with the norms of class litigation in this circuit.'") (quoting *McMahon v. Oliver Cheng Catering and Events, LLC*, 2010 WL 2399328, at *7 (S.D.N.Y. Mar. 3, 2010)); *Velez v. Novartis Pharm. Corp.*, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) ("District courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater.") (citing cases).

**B.    The Reasonableness Of The Requested Agreed-Upon Attorneys' Fees, Costs, And Expenses Is Supported By This Circuit's Six-Factor *Goldberger* Test**

The Second Circuit has articulated six factors that should be considered when determining the reasonableness of a requested fee:  "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation…; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy

considerations." *Goldberger*, 209 F.3d at 50.  A review of these factors support Class Counsel's fee request.

### 1.    Time And Labor Expended By Counsel

For more than six years, Class Counsel and Vozzolo LLC has devoted more than 11,394 hours to investigating, litigating, and resolving this complex case.  *See* Marchese Decl. ¶ 67; Declaration of Timothy J. Peter ("Peter Decl.") ¶ 13; Declaration of Antonio Vozzolo ("Vozzolo Decl.") ¶ 14.  Class Counsel's work began in 2012 when they started investigating the advertising, labeling, and efficacy of Scotts EZ Seed.  Class Counsel then drafted the complaints; served and responded to multiple sets of discovery requests; reviewed hundreds of thousands of pages of documents; litigated multiple discovery disputes; engaged in third-party document and deposition discovery; participated in thirty-three depositions; and fully litigated *Daubert* motions as well as motions to dismiss, for class certification, for summary judgment, for decertification, for interlocutory appeal (both before this Court and the Second Circuit), and for reconsideration of many of the same.  Additionally, Class Counsel participated in multiple settlement conferences and/or mediation sessions, including with Judge Andersen.  Marchese Decl. ¶¶ 5-41.

Moreover, this was not a garden variety case.  Instead, Class Counsel had to develop expertise related to turfgrass science, grass seed irrigation, steps for the care of ordinary grass seed, and consumer survey methodologies for isolating the alleged price premium solely attributed to the "50% Thicker" Claim.  *Id.* ¶ 62.

Thus, the work performed by Class Counsel to date has been comprehensive, complex, and wide ranging.  This factor supports a substantial fee award.

### 2.    Magnitude And Complexity Of The Litigation

"[C]lass actions have a well deserved reputation as being most complex."  *In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) (internal citation and

quotations omitted).  This case was no exception, both factually and legally.  This litigation has

been pending for over six years and has involved complex legal and factual issues including

matters of turfgrass science, irrigation methods and related concepts, steps for the ordinary care

of grass seed, and consumer survey methodologies for isolating the alleged price premium solely

attributable to the "50% Thicker" Claim.  *See* Marchese Decl. ¶ 62.  The Parties exchanged and

reviewed hundreds of thousands of pages of documents and took a combined thirty-three

depositions.  *See id.* ¶¶ 13-23.  The Parties also fully litigated *Daubert* motions as well as

motions to dismiss, for class certification, for summary judgment, for decertification, for

interlocutory appeal (both before this Court and the Second Circuit), and for reconsideration of

many of the same.  *See id.* ¶¶ 11, 24-32.  Indeed, the Settlement was only reached after the

Parties began preparing their Joint Pretrial Order.  *See id.* ¶¶ 33-34, 39-41.  These efforts

required substantial work and significant risk that Class Counsel's time (and out-of-pocket costs

and expenses) would go uncompensated because of the contingent nature of the representation.

*See id.* ¶¶ 60-64.  The magnitude and complexity of this action supports a substantial fee award.

### 3.    The Risk Of Litigation

This factor recognizes the risk of non-payment in cases prosecuted on a contingency

basis where claims are not successful, which can justify higher fees.  *See, e.g., In re Marsh*

*ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment

in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully

overcome that risk."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008)

(noting risk of non-payment in cases brought on contingency basis).  "It is well settled that class

actions are notoriously complex and difficult to litigate."  *Shapiro v. JPMorgan Chase & Co.*,

2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) (internal citation omitted).  This case

presented a substantial risk of non-payment for Class Counsel.

Had the case not settled, the next steps would have been pretrial briefing, a pretrial conference, and then a jury trial, which would have been costly, time-consuming, and very risky for Class Members and Class Counsel.  *See* Marchese Decl. ¶ 58.  Class Counsel undertook this representation understanding that the risk of losing on class certification, or summary judgment, or at trial were significant.  Defendants are well-heeled with excellent counsel who vigorously litigated every stage of the case, and would have continued to do so through trial, and through appeals.  *See id.* ¶ 61.  The fact that Class Counsel undertook this representation, despite the significant risk of non-payment, supports a substantial fee award.  *See id.* ¶ 60.

### 4.      The Quality Of Representation

Class action litigation presents unique challenges, and Class Counsel proved that they have the ability and resources to litigate this case zealously and effectively.  In addition, Class Counsel are well-respected attorneys with significant experience litigation consumer class actions of similar size, scope, and complexity.  Marchese Decl. ¶¶ 77-79, Ex. A (Bursor & Fisher, P.A. Firm Resume); Peter Decl. ¶ 2, Ex. A (Faruqi & Faruqi, LLP Firm Resume). Indeed, Class Counsel has been recognized by courts across the country – including this Court – for their expertise.  *See* Firm Resumes, Marchese Decl. Ex. A; Peter Decl. Ex. A; *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 407 (S.D.N.Y. 2015) (appointing Bursor & Fisher, P.A. and Faruqi & Faruqi, LLP as Class Counsel); *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. Feb. 25, 2014) (Rakoff, J.) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008."); *Bates v. Kashi Co., et al.*, Case No. 11-CV-1967-H BGS, ECF No. 242 at 14 (S.D. Cal. 2014) (approving settlement and stating that "[Faruqi &

Faruqi] has extensive experience acting as class counsel in consumer class action cases, including cases involving false advertising claims")

Furthermore, "[t]he quality of the opposition should be taken into consideration in assessing the quality of the plaintiffs' counsel's performance." *In re MetLife Demutalization Litig.*, 689 F. Supp. 2d 297, 362 (E.D.N.Y. 2010). Class Counsel achieved a positive result in this case while facing well-resourced and experienced defense counsel. *See Marsh ERISA Litig.*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement.").

Class Counsel litigated this case efficiently, effectively, and civilly. The excellent result is a function of the high quality of that work, which supports a substantial fee award. *See* Marchese Decl. ¶¶ 5-59.

### 5.   The Requested Fee In Relation To The Settlement

Class Counsel seek attorneys' fees, costs, and expenses totaling $9.7 million. Marchese Decl. ¶ 65. The $9.7 million is comprised of $8,614,689.56 in attorneys' fees, plus $1,085,310.44 in costs and expenses. *See infra* at 14 (Table). The requested attorneys' fees represent approximately 18% of the total Settlement Amount. Marchese Decl. ¶ 45. As aforementioned, courts in this Circuit routinely approve fee requests for 30% or greater of the total Settlement Amount. *See supra* cases cited in Argument § I. This factor strongly supports the reasonableness of the fee.

### 6.   Public Policy Considerations

The final *Goldberger* factor is public policy. "Skilled counsel must be incentivized to pursue complex and risky claims [that protect the public on a contingency basis]." *Shapiro*, 2014 WL 1224666, at *24. As such, reasonable fee awards must be provided in order to ensure that attorneys are incentivized to litigate class actions, which serve as private enforcement tools

to police defendants who allegedly engage in misconduct and/or unfair competition. *See id.*

"Attorneys who fill the private attorney general role must be adequately compensated for their

efforts," otherwise the public risks an absence of a "remedy because attorneys would be

unwilling to take on the risk." *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *7

(E.D.N.Y. Nov. 20, 2012) (citing *Goldberger*, 209 F.3d at 51).

Society undoubtedly has a strong interest in incentivizing lawyers to bring complex

litigation that is necessary to protect consumers from false or misleading advertising. In fact,

class action litigation in this area is the most realistic means of protecting consumers from false

or misleading advertising because, when individual class members seek a relatively small

amount of damages, "economic reality dictates that [their] suit proceed as a class action or not at

all." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974). Thus, the alternative to a class

action in this case would have been no enforcement at all, and Defendants' allegedly unlawful

conduct would have continued unabated. This factor thus supports a substantial fee award.

### C.     The Agreed-Upon Attorneys' Fees, Costs, And Expenses Are Also Reasonable Under A Lodestar Cross-Check

The lodestar cross-check tests the reasonableness of a percentage-based fee. *See*

*Goldberger*, 209 F.3d at 50 ("[T]he lodestar remains useful as a baseline even if the percentage

method is eventually chosen. Indeed, we encourage the practice of requiring documentation of

hours as a 'cross check' on the reasonableness of the requested percentage.") (internal citations

omitted). Courts applying the lodestar method generally apply a multiplier to take into account

the contingent nature of the fee, the risks of non-payment, the quality of representation, and the

results achieved. *See Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir.

2005). Where the lodestar is "used as a mere cross-check, the hours documented by counsel

need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50; *see also*

*Cassese v. Williams*, 503 F. App'x 55, 59 (2d Cir. 2012) (noting the "need for exact [billing] records [is] not imperative" where the lodestar is used as a "mere cross-check").

To calculate lodestar, counsel's reasonable hours expended on the litigation are multiplied by counsel's reasonable rates. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Parker v. Time Warner Entertainment Co., L.P.*, 631 F. Supp. 2d 242, 264 (E.D.N.Y. 2009). The resulting figure may be adjusted at the court's discretion by a multiplier, taking into account various equitable factors. *See Parker*, 631 F. Supp. 2d at 264; *Shapiro*, 2014 WL 1224666, at *24 ("Additionally, under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors.") (internal quotations and citations omitted).

The hourly billing rate to be applied is the hourly rate that is normally charged in the community where the counsel practices, *i.e.*, the "market rate." *See Blum*, 465 U.S. at 895; *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 115-116 (2d Cir. 1997) ("The 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation'") (alteration in original and citation omitted). Here, the hourly rates used by Class Counsel are comparable to rates charged by attorneys with similar experience, skill, and reputation, for similar services in the New York legal market. *See* Marchese Decl. ¶¶ 71-76. [1] And they are the rates paid by hourly-paying clients of Class Counsel in non-contingent representations. *See id.* ¶ 71.

_____

[1] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) (recognizing "an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise"); *LeBlanc-Sternberg v. Fletcher,* 143 F. 3d 748, 764 (2d Cir. 1998) ("The lodestar should be based on 'prevailing market

The hours worked, lodestar fee, and expenses for each of the three firms representing the Class are set forth in the declarations of Mr. Marchese, Mr. Peter, and Mr. Vozzolo, submitted herewith.  They can be summarized as follows:

| Summary Of Class And Additional Plaintiffs' Counsel's Time, Lodestar And Expenses | | | |
|---|---|---|---|
| **Firm** | **Hours** | **Lodestar** | **Expenses** |
| Bursor & Fisher, P.A. | 7,436.7 | $4,332,425.00 | $843,015.96 |
| Faruqi & Faruqi, LLP | 3,698.6 | $1,994,244.00 | $242,001.92 |
| Vozzolo LLC | 258.9 | $205,825.50 | $292.56 |
| **Total** | **11,394.2** | **$6,532,494.50** | **$1,085,310.44** |

The total attorneys' fees, costs, and expenses provided for by the Parties' agreement is $9,700,000.  After reimbursement for the $1,085,310.44 of litigation costs and expenses, *see* Marchese Decl. ¶ 69, Ex. C; Peter Decl. ¶ 16, Ex. D; Vozzolo Decl. ¶ 21; Ex. C, the remainder for the attorneys' fees is $8,614,689.56.  Therefore, the requested fee award reflects a 1.3 multiplier for Class and Additional Plaintiffs' Counsel's regular hourly rates.  This multiplier is well within the accepted range in this Circuit.  *See Asare v. Change Grp. Of N.Y., Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar."); *Spicer v. Pier Sixty LLC*, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) ("The attorneys' fees awarded are a 3.36 multiplier of lodestar, which is well within the range of reasonableness."); *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit").

The multiplier is also reasonable because it will diminish over time.  "[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed

rates' … and current rates, rather than historical rates, should be applied in order to compensate for the delay in payment") (citation omitted).

upon for collecting and distributing the settlement funds, the multiplier will diminish over time." *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, 2010 WL 532960, at * 2 (S.D.N.Y. Fed. 9, 2010). Here, "[t]he fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request." *Yuzary*, 2013 WL 5492998, at *11 (quoting *McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 WL 2399328, at *8 (S.D.N.Y. Mar. 3, 2010)); *see also* Marchese Decl. ¶ 68.

## II.   CLASS COUNSEL'S LITIGATION COSTS AND EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE CLASS

To date, Class Counsel incurred out-of-pocket costs and expenses in the aggregate amount of $1,085,310.44. *See* Marchese Decl. ¶ 69, Ex. C; Peter Decl. ¶ 16, Ex. D; Vozzolo Decl. ¶ 21; Ex. C. These expenses are categorized in the declarations submitted to the Court herewith. The incurred costs include court fees, courier charges, legal research charges, travel costs, postage fees, court reporting fees, expert fees, and other related costs. *See id.*

"Courts typically allow counsel to recover their reasonable out-of-pocket expenses." *McMahon*, 2010 WL 2399328, at *8. The expenses categorized in the attorney declarations submitted herewith reflect commonly reimbursed expenses. *See Yuzary*, 2013 WL 5492998, at *11 ("Class Counsel's unreimbursed expenses, including court and process server fees, postage and courier fees, transportation, working meals, photocopies, electronic research, expert fees, and Plaintiffs' share of the mediator's fees, are reasonable and were incidental and necessary to the representation of the class."); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 525 (E.D.N.Y. 2003) ("I award Lead Counsel reimbursement from the Fund for … costs and expenses. … [T]hese expenses reflect[] the costs of … litigation and trial support services, document imaging and copying, deposition costs, online legal research, and travel expenses. …

I see no reason to depart from the common practice in this circuit of granting expense requests."), *aff'd*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005).

Each of these costs and expenses was necessarily and reasonably incurred to bring this case to a successful conclusion, and no separate payment is requested for such costs and expenses, which are included in the total requested amount for fees, costs, and expenses.

## III. THE AGREED-UPON INCENTIVE AWARDS REFLECT THE CLASS REPRESENTATIVES' ACTIVE INVOLVEMENT IN THIS ACTION AND SHOULD BE APPROVED

Incentive awards are common in class action cases and serve to "compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff[s]." *Reyes v. Altamarea Grp., LLC*, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011). Incentive awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take. *Massiah*, 2012 WL 5874655, at *8.

Here, the participation of the Class Representatives was critical to the ultimate success of the case. *See* Marchese Decl. ¶¶ 80-83. Each of the Class Representatives spent approximately 50-60 hours protecting the interest of the Class through their involvement in this case. *See* Declaration of Michael Arcuri ¶ 11; Declaration of David A. Browne ¶ 11; Declaration of Gwen Eskinazi ¶ 11; Declaration of Stacy Lonardo ¶ 11; Declaration of Lance Moore ¶ 11; Declaration of Vance Smith ¶ 11; Declaration of Nancy Thomas ¶ 11. The Class Representatives assisted Class Counsel in investigating their claims, by detailing their purchase and use of Scotts EZ Seed and aiding in drafting the CCAC. *Id.* ¶¶ 3-4. During the course of this litigation, the Class Representatives kept in regular contact with their lawyers to receive updates on the progress of the case and to discuss strategy. *Id.* ¶ 5. Further, the Class Representatives preserved and produced documents in discovery. *Id.* ¶ 6. And the Class Representatives prepared for and sat

16

for two depositions each.  *Id.* ¶ 7.  Finally, the Class Representatives were actively consulted during the settlement process.  *Id.* ¶ 8.

On these facts, the agreed-upon $10,000 incentive payments are fair and reasonable. Indeed, this amount is well within the range of incentive awards that have been approved by other courts in this Circuit.  *See, e.g.*, *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 220 (S.D.N.Y. 2015) (approving incentive awards ranging from $7,500 to $20,000); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (noting case law supports payments of between $2,500 and $85,000).  Most importantly, the agreed-upon incentive awards to the Class Representatives will be paid entirely by Defendants, and will not derogate from the payments or relief to any other Class Member.  *See* Marchese Decl. ¶ 80.

## CONCLUSION

For the foregoing reasons, Plaintiffs' respectfully request that the Court (1) approve attorneys' fees, costs, and expenses in the amount of $9,700,000, (2) grant the Class Representatives incentive awards of $10,000 each in recognition of their efforts on behalf of the Class, and (3) award any such other and further relief as the Court deems reasonable and just.

Dated:  October 5, 2018                          Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Joseph I. Marchese*
      Joseph I. Marchese

Scott A. Bursor
Joseph I. Marchese
888 Seventh Avenue
New York, New York 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: scott@bursor.com
          jmarchese@bursor.com

-and-

17

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
Timothy J. Peter
685 Third Avenue, 26th Floor
New York, New York 10017
Telephone:  (212) 983-9330
Facsimile:  (212) 983-9331
Email: nfaruqi@faruqilaw.com
          tpeter@faruqilaw.com

*Co-Class Counsel*


**VOZZOLO LLC**
Antonio Vozzolo
345 Route 17 South
Upper Saddle River, New Jersey 07458
Telephone: (201) 630-8820
Facsimile:  (201) 604-8400
Email: avozzolo@vozzolo.com

*Additional Counsel for Plaintiffs*