# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Scotts EZ Seed Litigation | Case No. 12-cv-4727 (VB) (PED) |

### DECLARATION OF JEANNE C. FINEGAN, APR CONCERNING IMPLEMENTATION OF CLASS MEMBER NOTIFICATION PROGRAM

### INTRODUCTION

1. I am President and Chief Media Officer of HF Media, LLC, Inc. ("HF") a division of Heffler Claims Group LLC ("Heffler"). This Declaration is based upon my personal knowledge as well as information provided to me by my associates and staff, including information reasonably relied upon in the fields of advertising media and communications.

2. Pursuant to the Settlement Agreement (Dkt 343-1), dated June 4, 2018, paragraph 31, Heffler was retained by the Parties, and appointed by this Court, to develop and implement a Media Notice Program as part of the parties' proposed class action settlement in the above-captioned matter. This task has been successfully accomplished.

3. I submit this Declaration in order to provide the Court and the parties to the Action a report regarding the successful implementation of the Notice Program as it relates to the Publication and Internet/Media Notice portion (herein referred to for simplicity as "Media Notice"), the overall reach of the Notice Program in accordance with the Court's Order, and the total number of Persons who have submitted timely and valid Requests for Exclusion from the

Settlement Class and/or Objections to the Settlement.

4. Importantly, I have been informed by Defendants that many consumers, *e.g.,* Class Members, likely purchase two or more packages of this product. This is borne out in the claim filing pattern, where, we see class members filed claims for an average of nearly three packages each. At just under three packages per customer, an estimated 900,000 consumers would have purchased the 2,500,000 packages at issue.

5. The deadline for Class Members to file a claim is December 4, 2018. As of December 4, 2018 a total of 61,944 claims have been filed.

6. The deadline for Class Members to request to be excluded from the class or object was a postmarked deadline of October 19, 2018. We have received eight requests to opt out of the settlement. A list of the Class Members requesting to be excluded attached hereto as **Exhibit A.** (Note we have not included the address and contact details of opt-outs to avoid creating a risk of identity theft for these individuals. We have provided unredacted copies available to Counsel and will make unredacted copies available to the Court on request).

7. Heffler has not received any Objections. I understand that one Objection was filed, but it has since been withdrawn.

8. This Declaration explains how this Notice Program is estimated to have reached[1] through a combination of direct notice, online and social media, approximately 90 percent of the target audience, that is, Lawn Seed Purchasers in California and New York with an average

---

[1] Net Reach measures the number of people exposed (unduplicated), and Frequency is a report of the number of exposures. In advertising, this is commonly referred to as a "Reach and Frequency" analysis, where "Reach" refers to the estimated percentage of the unduplicated audience exposed to the campaign, and "Frequency" refers to how many times, on average, the target audience had the opportunity to see the message. The calculations are used by advertising and communications firms worldwide and have become a critical element to help provide the basis for determining adequacy of notice in class actions.

frequency of 3.2 times.

9. As described more fully below, the Notice Plan was successfully and timely implemented. In compliance with the Court's Order, the Notice Program commenced on August 3, 2018 and was substantially completed on September 1, 2018.

## QUALIFICATIONS

10. A comprehensive description of my credentials is attached as **Exhibit B**. In summary, I have served as an Expert, directly responsible for the design and implementation of over 1,000 legal notice programs, including Federal Trade Commission Enforcement actions, some of which are the largest and most complex programs ever filed in both the United States and Canada, and I am a board member for the Alliance for Audited Media[2]. In addition, I was a lead author for Duke University's School of Law, "*Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions.*"

11. My work as an Expert includes a wide range of class actions and regulatory and consumer matters that include product liability, construction defect, antitrust, asbestos, medical pharmaceutical, human rights, civil rights, telecommunications, media, environmental, securities, banking, insurance and bankruptcy.

12. Further, I have been at the forefront of modern notice, including plain language as noted in a RAND study[3], and importantly, integrating digital media and social media into court-approved legal notice programs such as:

- *Carter v Forjas Taurus S.S., Taurus International Manufacturing, Inc.*, Case No.

---

[2] Alliance for Audited Media ("AAM") is the recognized leader in cross-media verification. It was founded in 1914 as the Audit Bureau of Circulations (ABC) to bring order and transparency to the media industry. Today, more than 4,000 publishers, advertisers, agencies and technology vendors depend on its data-driven insights, technology certification audits and information services to transact with trust.
[3] Deborah R. Hensler, et al., *Class Action Dilemmas, Pursuing Public Goals for Private Gain* (Rand 2000).

1:13-CV-24583 PAS (S.D. Fl. 2016);

- *In re: Blue Buffalo Marketing and Sales Practices Litigation*, No. 14-md-02562-RWS (E.D. Mo. 2016);
- *In re: TracFone Unlimited Service Plan Litigation,* No. C-13-3440 EMC *(*N.D.CA 2015); and
- *In re: Skechers Toning Shoes Products Liability Litigation*, No. 3:11-MD-2308-TBR (W.D. Ky. 2012).

13. In evaluating the adequacy and effectiveness of my notice programs, courts have repeatedly recognized my work as an Expert. For example, in:

a. **Carter v Forjas Taurus S.S., Taurus International Manufacturing, Inc., Case No. 1:13-CV-24583 PAS (S.D. Fl. 2016).** In her Final Order and Judgment Granting Plaintiffs Motion for Final Approval of Class Action Settlement, the Honorable Patricia Seitz stated:

*"The Court considered the extensive experience of Jeanne C. Finegan and the notice program she developed. ...There is no national firearms registry and Taurus sale records do not provide names and addresses of the ultimate purchasers... Thus the form and method used for notifying Class Members of the terms of the Settlement was the best notice practicable. ...The court-approved notice plan used peer-accepted national research to identify the optimal traditional, online, mobile and social media platforms to reach the Settlement Class Members."*

14. Additionally, on January 20, 2016, Transcript of Class Notice Hearing, p. 5 Judge Seitz, complemented me, noting:

*"I would like to compliment Ms. Finegan and her company because I was quite impressed with the scope and the effort of communicating with the Class."*

(a) **In Re: Blue Buffalo Company, Ltd., Marketing and Sales Practices Litigation, Case No. 4:14-MD-2562 RWS (E.D. Mo. 2015)** (Hearing for Final Approval, May 19, 2016 transcript p. 49). During the Hearing for Final Approval, the Honorable Rodney Sippel said:

4

Declaration of Jeanne C. Finegan, APR
Concerning Implementation of Notice Program

> *"It is my finding that notice was sufficiently provided to class members in the manner directed in my preliminary approval order and that notice met all applicable requirements of due process and any other applicable law and considerations."*

(b) ***In re: Skechers Toning Shoes Products Liability Litigation*, No. 3:11-MD-2308-TBR (W.D. Ky. 2012).** In his Final Order and Judgment granting the Motion for Preliminary Approval of Settlement, the Honorable Thomas B. Russell stated:

> *"... The comprehensive nature of the class notice leaves little doubt that, upon receipt, class members will be able to make an informed and intelligent decision about participating in the settlement."*

(c) ***Quinn v. Walgreen Co., Wal-Mart Stores Inc.,* 7:12 CV-8187-VB (S.D.N.Y.)** (Jt Hearing for Final App, March. 5, 2015, transcript page 40-41). During the Hearing on Final Approval of Class Action, the Honorable Vincent L. Briccetti stated:

> *"The notice plan was the best practicable under the circumstances. ... [and] the proof is in the pudding. ... So, the notice has reached a lot of people and a lot of people have made claims."*

## NOTICE PROGRAM SUMMARY

15. Pursuant to the Settlement Agreement, paragraph 65, the class includes: All persons who purchased Scotts EZ Seed in the states of New York and California containing the label statement "50% Thicker" Claim. Accordingly, the Notice Program included the following elements:

- Email and postcard notice to all reasonably ascertainable Class Members;
- Online display banner advertising specifically targeted to reach Class Members;

- Social media through Facebook and Instagram;
- An informational website, www.GrassSeedSettlement.com, on which the notices and other important Court documents have been posted; and
- A toll-free information line, 1-844-271-4786, by which Class Members can call 24/7 for more information about the Settlement, including, but not limited to, requesting copies of the Long Form Notice or Claim Form.

## DIRECT NOTICE

16. On May 16, 2018, Defendants' Counsel provided Heffler a data file containing a total of 1,022,427 records of information for Class Members, including contact names, email addresses and mailing addresses. Heffler performed an analysis of the data and determined there to be 660,501 unique records. Heffler's analysis consisted of standardizing the data into a clean consistent format and then combining records or removing duplicates based on name and address or name and email. Of the 660,501 unique records; 270,638 unique records had one or more email addresses totaling 334,629 different emails and 389,863 records had a mailing address but no email address.

17. On August 3, 2018, Heffler caused mailing of Notices to 389,863 identified Class Members.

18. On August 6, 2018, Heffler caused the emailing of Notices to 334,629 emails for the 270,638 identified Class Members.

19. As of December 4, 2018, 41,392 Class Members in the emailing had their email returned as a bounce and 2,023 Class Members unsubscribed from receiving any future emails regarding the settlement. Of the 41,392 Class Members who had their email bounce, 31 did not have a valid mailing address. Of the 2,023 Class Members who unsubscribed, 2 did not have a valid mailing address.

20. On September 13, 2018, Heffler caused the mailing of Notices to 43,361 identified Class Members whose email was returned as a bounce for which we had a valid mailing address and the 2,021 identified Class Members who unsubscribed for which we had a valid mailing address.

21. As of December 4, 2018, 14,386 Notices in the mailings have been returned as undeliverable. No further action was taken in regard to these 14,386 returned Notices.

22. As of December 4, 2018, 505 Notices in the mailing have been returned with a forwarding address by the Post Office. Heffler has updated the address and remailed 497 records. Of the 497 records remailed, 4 Notices were returned with a forwarding address a second time. Heffler will continue to update the address and remail Notices received with a forwarding address.

23. As of December 4, 2018, 646,158 unique Class Members had a method of Notice that was not returned to Heffler. Using an estimated total class size of 900,000, the 646,158 unique Class Members Noticed directly represents approximately 72 percent of Class Members.[4]

## MEDIA NOTICE - ONLINE

24. The Notice Program included online notice, serving more than 37,000,000 impressions geotargeted to California and New York. Banner ads targeted keywords and topics including Scotts EZ Seed, Scotts Dog Spot Repair, grass seed Home Depot and similar, as well as people who shop at Home Depot, Lowe's and True Value with an interest in gardening. A portion of online and mobile ads targeted Home Depot, Lowe's and True Value customers in

---

[4] According to the Declaration of Joseph Marchese, Dkt 350, Dated October 5, 2018, page 9 citing Declaration of Colin B. Weir, Dkt. 232, Ex. H, dated January 8, 2016 ("Weir Decl."), at ¶¶ 11 & 12. an estimated 2,517,150 EZ Seed packages were sold during the class period. I have been informed by Defendants that many consumers, *e.g.,* Class Members, likely purchase two or more bags of this product. This is borne out in the claim filing pattern of class members filing claims for just under 3 bags each.

California and New York who were physically at any of the affected retail locations. Social media ads targeted followers of Scotts Lawn Care, Home Depot, Lowe's and True Value, as well as people with an interest in gardening.

25. Online ads were served across a whitelist[5] of sites including comScore top sites and sites with contextually relevant content. Online ads were served largely across approximately 3,500 websites, including social media platforms Facebook and Instagram. Attached hereto as **Exhibit C** are true and correct copies of the online display and social media notices.

## OFFICIAL SETTLEMENT WEBSITE

26. On July 20, 2018, Heffler established a dedicated website (www.GrassSeedSettlement.com) to provide additional information to Class Members, to answer frequently asked questions, and to enable Class Members to submit claims online. The website served as a landing page for the banner and social media advertising, where Class Members may continue to obtain further information about the class action, their rights, and related information, including case documents such as the Settlement Agreement, Court Orders, and Plaintiffs' Motion for Approval of Fees, Expenses, and Incentive Awards and online filing of claims. The website address was prominently displayed in the publication notice and is accessible 24-hours a day, 7-days a week. As of December 4, 2018 over 180,368 users[6] have visited the website with, more

---

[5] The whitelist is a custom group of comScore top 3,000 websites, plus a premium whitelist of contextually relevant websites. All websites have been pre-vetted for brand safety standards.

[6] User: The first time a device (desktop, laptop, smart phone etc.) or a browser (like chrome, internet explorer) loads website content, Google Analytics ("GA") tracking code creates a random, unique id called the **client id** and sends it the GA server. This unique ID is counted as a new unique user in GA. Every time a new ID is detected, GA counts a new user. When GA detects an existing client ID in a new session, it recognizes it as a returning user.

than 214,151 total sessions[7] and over 484,887 page views.

## TOLL-FREE HELP LINE

27. In compliance with the Court's Order, a dedicated toll-free telephone helpline, 1-844-271-4786, was established on July 20, 2018 and continues to be maintained by Heffler. It is available 24-hours a day where callers may obtain information about the class action. As of December 4, 2018 1,499 calls have been made to the IVR.

## QUALITY CONTROLS, ACTIVE CAMPAIGN MANAGEMENT AND AD FRAUD MITIGATION

28. Importantly, to ensure the highest degree of transparency and digital advertising quality, HF Media employed cutting edge technology from Integral Ad Science[8] ("IAS") and a cyber security firm to actively monitor, mitigate and cull ad fraud or non-human traffic ("NHT") from the reported campaign results. In today's complex digital advertising environment, measuring and mitigating ad fraud is critical to ensure Due Process. It requires third-party verification: serving digital ads by real publishers, shown to real people and reaching the right target audiences. For this Notice Program, we employed a multi-layered approach to detect invalid fraudulent activity, which included active, day-to-day behavioral, publisher, browser and device analysis.

## CONCLUSION

29. Through a multi-media channel approach to notice, which employed direct mail via email and U.S. mail, digital, and social media, an estimated 90 percent of targeted Class Members

---

[7] Sessions are a combination of all new and returning visitors.

[8] Integral Ad Science is a global technology and data company, accredited by the Media Ratings Counsel to monitor and mitigate ad fraud. For this campaign, IAS identified .95 percent of the digital impressions as NHT. These impressions have been culled, as invalid traffic, and removed from the reach calculations reported to this Court.

were reached by the media program, on average approximately 3.2 times. In my opinion, the efforts used in this notice program are reasonably calculated to provide notice, and are consistent with best practicable court-approved notice programs in similar matters and the Federal Judicial Center's guidelines concerning appropriate reach.

30. I declare under the penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct. Executed on December 5, 2018 in Tigard, Oregon.

*Jeanne C. Finegan*

Jeanne C. Finegan, APR