| | |
|---|---|
| In re Scotts EZ Seed Litigation | Civil Action No. 12-cv-04727-VB |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR <u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

Dated: December 5, 2018

**BURSOR & FISHER, P.A.**
Scott A. Bursor
Joseph I. Marchese
888 Seventh Avenue
New York, New York 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: scott@bursor.com
        jmarchese@bursor.com

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
Timothy J. Peter
685 Third Avenue, 26th Floor
New York, New York 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
Email: nfaruqi@faruqilaw.com
        tpeter@faruqilaw.com

*Co-Class Counsel*

**VOZZOLO LLC**
Antonio Vozzolo
345 Route 17 South
Upper Saddle River, New Jersey 07458
Telephone: (201) 630-8820
Facsimile: (201) 604-8400
Email: avozzolo@vozzolo.com

*Additional Counsel for Plaintiffs*

INTRODUCTION ......................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................... 2

TERMS OF THE SETTLEMENT ............................................................................... 5

    A.    Class Definition ................................................................................ 5

    B.    Monetary Relief .............................................................................. 5

    C.    Release Of Claims ........................................................................... 6

    D.    Notice, Claims Process, And Settlement Administration ................ 6

    E.    Costs, Fees, And Representative Award ......................................... 6

ARGUMENT ................................................................................................................ 7

    I.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE ................................................................................. 7

        A.    The Requirements of Rule 23(a) Are Met ..................................... 8

            1.    Numerosity ......................................................................... 8

            2.    Commonality ...................................................................... 8

            3.    Typicality ........................................................................... 9

            4.    Adequacy ........................................................................... 9

            5.    The Settlement Class Is Ascertainable ......................... 11

        B.    The Settlement Class Meets the Requirements of Rule 23(b)(3) ...................................................................................... 11

            1.    Common Questions Predominate .................................. 12

            2.    A Class Action Is A Superior Mechanism For Adjudication ................................................................... 12

    II.    THE NOTICE PLAN SATISFIES DUE PROCESS ............................. 13

    III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT ............................................................................................. 15

        A.    The Proposed Settlement Is Procedurally Fair ........................... 16

        B.    The Proposed Settlement Is Substantively Fair .......................... 17

            1.    Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1) ............................ 18

            2.    The Reaction Of The Class Is Overwhelmingly Positive (*Grinnell* Factor 2) ......................................... 19

            3.    Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3) .......................................................... 20

4.  The Continued Litigation Risks Related To Establishing Liability, Damages, And Maintaining A Class Action Through Trial Support Settlement (*Grinnell* Factors 4, 5, And 6) ........................................................................................................ 20

5.  The Ability Of Defendants To Withstand A Greater Judgment (*Grinnell* Factor 7) ...................................................................... 22

6.  The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9) .......................................................................... 23

CONCLUSION ................................................................................................................ 24

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*,
  271 F. App'x 41 (2d Cir. 2008) ........................................................ 14

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) .............................................................. 12, 13

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000) ............................................................ 10

*Bildstein v. MasterCard Int'l Inc.*,
  329 F. Supp. 2d 410 (S.D.N.Y. 2004) .................................................... 9

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ............................................. 17, 18, 19, 23

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014) ............................................... 18

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) ............................................................. 8

*Denney v. Jenkens & Gilchrist*,
  230 F.R.D. 317 (S.D.N.Y. 2005) ....................................................... 22

*D'Alauro v. GC Servs. Ltd. P'ship*,
  168 F.R.D. 451 (E.D.N.Y. 1996) ........................................................ 9

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ........................................................... 16

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) .................................................................. 13

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ............................................. 15, 23, 24

*Hanlon v. Chrysler*,
  150 F.3d 1011 (9th Cir. 1998) ........................................................ 19

*Heerwagen v. Clear Channel Commc'ns*,
  435 F.3d 219 (2d Cir. 2006) .......................................................... 12

*In re "Agent Orange" Prod. Liab. Litig.*,
  611 F. Supp. 1396 (E.D.N.Y. 1985) .................................................... 24

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) ............................................. 8

iii

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................................................. 21

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    689 F.3d 229 ............................................................................................... 11, 12

*In re AMF Bowling*,
    334 F. Supp. 2d 462 (S.D.N.Y. 2004) ................................................................. 17

*In re AOL Time Warner, Inc.*,
    2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ........................................................... 21

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ...................................................... 16, 18, 22

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...................................................... 16

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009) .................................................................................. 9

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ....................................................... 23

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................ 21

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ..................................................... 13

*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................................ 19

*In re Petrobras Secs.*,
    862 F.3d 250 (2d Cir. 2017) .............................................................................. 11

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ........................................................................ 19

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) ................................................................. passim

*In re Scotts EZ Seed Litig.*,
    2017 WL 3396433 (S.D.N.Y. Aug. 8, 2017) ..................................................... 8, 12

*In re Vitamin C Antitrust Litig.*,
    2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ........................................... 17, 19, 20

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) .................................................................... 22

*Jankowski v. Castaldi*,
    2006 WL 118973 (E.D.N.Y. Jan. 13, 2006) ....................................................... 12

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000)............................................................................ 24

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)........................................................... 21

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997)............................................................................. 8

*Massiah v. MetroPlus Health Plan, Inc.*,
   2012 WL 5874655 (E.D.N.Y. 2012)............................................................. 20

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972)........................................................................... 23

*Offerings Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006)............................................................................. 11

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)............................................................................. 9

*Rossini v. Ogilvy & Mather, Inc.*,
   798 F.2d 590 (2d Cir. 1986)........................................................................... 12

*TBK Partners, Ltd. v. Western Union Corp.*,
   517 F. Supp. 380 (S.D.N.Y. 1981) ................................................................ 18

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
   2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) .............................................. 24

*Tiro v. Public House Invs., LLC*,
   2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013).............................................. 15

*Torres v. Gristede's Operating Corp.*,
   2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) .............................................. 20

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ..................................................................................... 8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)................................................................... 14, 15, 16

*Weigner v. City of N.Y.*,
   852 F.2d 646 (2d Cir. 1988)..................................................................... 14, 15

*Yang v. Focus Media Holding Ltd.*,
   2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014)........................................... 16, 17

**STATUTES**

15 U.S.C. §§ 2301 ................................................................................................ 2

28 U.S.C. § 1715(b) ............................................................................................. 6

Cal. Bus. & Prof. Code § 17200 ......................................................................... 3

Cal. Bus. & Prof. Code § 17500 ...................................................................... 3

Cal. Civil Code § 1750 ...................................................................................... 2

Cal. Com. Code § 2313 ...................................................................................... 3

Cal. Com. Code § 2314 ...................................................................................... 3

N.Y. Gen. Bus. Law § 349 ................................................................................. 3

N.Y. Gen. Bus. Law § 350 ................................................................................. 3

N.Y. U.C.C. § 2-313 .......................................................................................... 3

N.Y. U.C.C. § 2-314 .......................................................................................... 3

**RULES**

Fed. R. Civ. P. 23 ..................................................................................... passim

# INTRODUCTION

On June 21, 2018, this Court preliminarily approved the Stipulation of Settlement (the "Settlement") between Plaintiffs Michael Arcuri, David Browne, Gwen Eskinazi, Stacy Lonardo, Lance Moore, Vance Smith, and Nancy Thomas (collectively, "Plaintiffs" or the "Class Representatives") and Defendants Scotts Miracle-Gro Company, Inc., and The Scotts Company LLC (collectively, "Defendants" or "Scotts") and directed that notice be sent to the Settlement Class. (ECF No. 347). The settlement administrator, Heffler Claims Group ("Heffler") has implemented the Court-approved notice plan and notice has reached the vast majority of the certified Settlement Class. The reaction from the Class has been overwhelmingly positive. Specifically, <u>zero</u> Settlement Class members have objected[1], and only 8 requested to be excluded. As of December 4, 2018, 61,944 claims were submitted (representing a claim rate of approximately 6.8%).

The Settlement provides significant economic relief in the form of cash payments to Settlement Class Members. Specifically, Settlement Class Members who submit valid Claim Forms along with Proof of Purchase showing the purchase price for EZ Seed products bearing the "50% Thicker" Claim that were bought in the states of New York and California from January 1, 2009 through September 30, 2014, will receive a full refund of the purchase price for up to six unit purchases. For Settlement Class Members who submit a valid Claim Form along with Proof of Purchase that does not reveal the actual purchase price for the Scotts EZ Seed purchases at issue, Scotts will provide a refund of $15.00 for each unit of Product up to six units, or up to $90. For Settlement Class Members who submit a valid Claim Form without Proof of

---

[1] On November 5, 2018, Mark Gullickson filed an untimely *pro se* objection to the Settlement. (ECF No. 361). However, after conferring with Class Counsel regarding his objection, Mr. Gullickson determined that the settlement is "fair and reasonable, and is a good deal for class members," and thus voluntarily withdrew his objection. Declaration of Mark Gullickson ("Gullickson Decl.") ¶¶ 1-3. Mr. Gullickson did not receive, and will not receive, any money or other consideration in exchange for withdrawing his objection. *Id.* ¶ 4.

Purchase, but who attest under penalty of perjury to their purchase of EZ Seed bearing the "50% Thicker" Claim in New York or California from January 1, 2009 through September 30, 2014, Scotts will pay up to $45, *i.e.*, $15.00 each for up to three such unit purchases. Further, the costs of notice and administration, and any incentive awards or attorney's fees, costs, and expenses that may be awarded will be paid by Scotts separately from the monetary refunds paid to Class Members. Thus, those costs will not derogate from the amount of refunds that will be paid to Class Members under the Settlement.

The Settlement reflects an excellent resolution of the parties' respective claims and defenses, and is fair and reasonable. The Settlement is the product of extensive arm's-length negotiations between experienced attorneys familiar with the legal and factual issues of this case. Moreover, the Settlement was reached with the assistance of a highly respected and experienced class action mediator, the Hon. Wayne R. Andersen (ret.). And the Settlement and was not reached until after the Parties vigorously litigated this action for six years, engaging in exhaustive motion practice and discovery, and thus acquiring ample knowledge of the legal claims and defenses, the risks presented by the case, and the value achieved by the Settlement.

For these reasons, and as explained further below, the Settlement is fair, reasonable, and adequate, and warrants this Court's final approval.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 15, 2012, Plaintiffs Arcuri, Moore, Thomas, Browne and Smith commenced a proposed class action in the Southern District of New York against Scotts, the Home Depot, Inc., and Lowe's HIW, Inc., captioned *Arcuri et al. v. The Scotts Miracle-Gro Company, Inc. et al.*, Case No. 12-CV-4727-VB (the *"Arcuri"* Action), alleging causes of action for violation of the federal Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301*, et seq.*; California's Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq.*; California's Unfair

Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; California's False

Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; California's Breach of

Express Warranty, Cal. Com. Code § 2313; California's Breach of Implied Warranty of

Merchantability, Cal. Com. Code § 2314; New York's Unfair and Deceptive Practices Law, N.Y.

Gen. Bus. Law § 349; New York's Breach of Express Warranty, N.Y. U.C.C. § 2-313; New

York's Breach of Implied Warranty of Merchantability, N.Y. U.C.C. § 2-314; breach of contract;

and unjust enrichment.  (ECF No. 1.)

On June 19, 2012, Plaintiffs Eskinazi and Lonardo commenced a proposed class action in

the Southern District of New York against Scotts, Home Depot, Inc. ("Home Depot"), and the

True Value Company ("True Value"), captioned *Eskinazi et al. v. The Scotts Miracle-Gro*

*Company, Inc. et al.*, Case No. 12-CV-4787-VB (the "*Eskinazi*" Action), alleging causes of

action for violation of the MMWA; Breach of Express Warranty; Unjust Enrichment; New

York's Unfair and Deceptive Practices Law, N.Y. Gen. Bus. Law § 349; and New York's False

Advertising Law, N.Y. Gen. Bus. Law § 350.

On July 9, 2012, the Court entered a Stipulation and Order to Consolidate Related

Action, consolidating the *Eskinazi* and *Arcuri* Actions "for all purposes" under the caption:  *In re*

*Scotts EZ Seed Litigation*, Case No. 12-4727 (VB) (S.D.N.Y.).  (ECF No. 2.)

On August 9, 2012, Plaintiffs filed a Consolidated Class Action Complaint ("CCAC")

against Scotts, Home Depot, Lowe's Home Centers, Inc. ("Lowe's), and True Value.  In the

CCAC, Plaintiffs bring causes of action under the MMWA; California's UCL, FAL, and CLRA;

California's Commercial Code for breach of express and implied warranties; New York's Unfair

and Deceptive Practices Law, N.Y. Gen. Bus. Law § 349; and New York's False Advertising

Law, N.Y. Gen. Bus. Law § 350; the New York Commercial Code for breach of express and

implied warranties; and unjust enrichment.  Specifically, the CCAC alleged, *inter alia*, that the

"50% Thicker" Claim on the Scotts EZ Seed package label was false or misleading.

On September 21, 2012, the Court entered a Partial Stipulation and Order dismissing True Value from the Action. (ECF No. 19.)

Since 2012, this matter has been litigated extensively by the Parties, including but not limited to completing all discovery (including fact, expert, and third-party discovery); engaging in motion practice including motions to dismiss, a motion for class certification, cross motions for summary judgment, and a motion to decertify the class; engaging in appellate briefing; and working on pretrial items in furtherance of a joint pretrial order to the Court. 10/5/18 Declaration of Joseph I. Marchese (ECF No. 350) ("Marchese Decl.") ¶¶ 11, 13-34.

In a Memorandum Opinion dated January 26, 2015, the Court granted, in part, and denied, in part, Plaintiffs' Motion to Certify Class. *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015). The motion was denied with respect to the Rule 23(b)(2) class, and with respect to the claims for express and common law breach of warranty under New York law.

Plaintiffs' Motion to Certify was otherwise granted. *Id.* at 416. The Court appointed the law firms of Bursor & Fisher, P.A., and Faruqi & Faruqi, LLP as Class Counsel, and Plaintiffs Michael Arcuri, David Browne, Gwen Eskinazi, Stacy Lonardo, Lance Moore, Vance Smith, and Nancy Thomas as Class Representatives. *Id.* at 406-07. Scotts' motions to decertify the Class and for reconsideration were denied. Marchese Decl. ¶¶ 29-32.

At various stages of the case, Parties attempted resolution of the matter with the help of various mediators and Magistrate Judge Paul E. Davison. *Id.*¶¶ 35-38. On April 9, 2018, the Parties participated in their second full-day, in-person mediation session with the Hon. Wayne R. Andersen (ret.). *Id.* ¶ 39. The Parties made substantial progress toward resolution at that mediation, and they agreed to all material terms to the proposed class action settlement at a follow up, in-person meeting the following day, April 10, 2018. *Id.* ¶¶ 35-40. Prior to and

during the mediation and follow-up settlement meeting, the Parties engaged in protracted, informed, and hard-fought settlement negotiations. *Id.* As a result of those negotiations, the Parties agreed to settle pursuant to the terms set forth in the Stipulation of Settlement. *Id.* ¶ 42. The Court granted preliminary approval to the Settlement on June 21, 2018. (ECF No. 347).

## TERMS OF THE SETTLEMENT

The key terms of the Stipulation of Settlement (ECF No. 343-1) are briefly summarized as follows:

### A.    Class Definition

As part of preliminary approval, the Court conditionally certified a class for settlement purposes of: "[a]ll persons who purchased Scotts EZ Seed in the states of New York and California containing the label statement "50% Thicker" Claim (the "Settlement Class").[2] (ECF No. 347) ¶ 9. Excluded from the Settlement Class are: (a) Scotts' employees, officers and directors, (b) persons or entities who purchased the Products for the purpose of re-sale, (c) retailers or re-sellers of the Products, (d) governmental entities, (e) persons who timely and properly exclude themselves from the Settlement Class as provided herein, (f) the Court, the Court's immediate family, and Court staff, and (g) counsel of record for the Parties. *See* (ECF No. 343-1) ("Stipulation of Settlement" or "Settlement") ¶ 65.

### B.    Monetary Relief

The Settlement Agreement provides a full monetary refund of the actual purchase price for up to six units of Product to any Settlement Class Members who purchased the Scotts EZ Seed at issue in New York or California during the Settlement Class Period and who submit a valid Claim Form along with a Proof of Purchase that shows the actual price paid. *Id.* ¶ 69. For Settlement Class Members who submit a valid Claim Form along with a Proof of Purchase that

---

[2] For the purposes of this definition, individuals living in the same household shall be deemed to be a single class member.

does not indicate the actual price paid for their Scotts EZ Seed, Defendants will provide a monetary refund of $15.00 for each such unit, up to six units.  *Id.*  For Settlement Class Members who submit a valid Claim Form without Proof of Purchase, but who attest under penalty of perjury to their purchase of EZ Seed bearing the "50% Thicker" Claim in New York or California from January 1, 2009 through September 30, 2014, Scotts will pay up to $45, i.e., $15.00 each for up to three such unit purchases.  *Id.*[3]  Notably, there is no limit to the total number of refunds that Defendants will pay to the Class as a whole, and Class Members' full refunds will not be prorated for any reason.

### C.    Release Of Claims

In exchange for the foregoing relief, the Settlement Class Members who do not opt out of the Settlement will release Defendants and all Released Parties from all Released Claims asserted in this Action and any related claims which could be asserted arising out of or relating to the marketing, advertising, promoting, sale or distributing of Scotts EZ Seed.  *Id.* ¶¶ 59-60, 105.

### D.    Notice, Claims Process, And Settlement Administration

Defendants have paid, and will continue to pay, all costs of providing notice[4] and administration of the Settlement.  *Id.* ¶ 79.

### E.    Costs, Fees, And Representative Award

In recognition of their efforts on behalf of the Settlement Class, Defendants have agreed that the Class Representatives may receive, subject to Court approval, incentive awards of $10,000 each, as appropriate compensation for their time and efforts serving as Class Representatives and as parties to the Action.  *Id.* ¶ 95.  Defendants have also agreed that Class

---

[3] Individuals residing in the same household shall not be permitted to submit multiple claims for each member of the household.  *Id.*

[4] Defendants have separately provided notification of the Settlement to the Attorney General of the United States, and the Attorneys General of each state or territory in which a Settlement Class Member resides in accordance with the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b).  *See* (ECF Nos. 345 & 346).

Counsel may petition the Court for fees, costs, and expenses not to exceed $9,700,000.00, the payment of which are separate from and in addition to the monetary relief afforded to the Settlement Class Members. *Id.* ¶ 91. Payment of attorneys' fees, costs, and expenses is due within 10 days following final approval. *Id.* ¶ 93. The Stipulation of Settlement and Plaintiffs' support of the Settlement are not conditioned upon the Court's approval of the amounts listed in this paragraph. *Id.* ¶ 96. These awards are subject to this Court's approval, which Plaintiffs have moved for separately. (ECF No. 349). That motion is unopposed.

## ARGUMENT

## I. CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

The Court's Preliminary Approval Order conditionally certified a class for settlement purposes of: "All persons who purchased Scotts EZ Seed in the states of New York and California containing the label statement '50% Thicker' Claim." (ECF No. 347) ¶ 9 (the "Settlement Class").

Under Federal Rule of Civil Procedure 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the Court to find that:

> questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification.

7

*Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (internal citation omitted).

The Court should now grant final certification because the Settlement Class meets all of the requirements of Rule 23(a) and Rule 23(b)(3). *See In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015) (granting motion for class certification of same class).

## A. The Requirements of Rule 23(a) Are Met

### 1. Numerosity

Numerosity is met if "the class is so numerous that joinder of all members is impracticable[.]"[5] Fed. R. Civ. P. 23(a)(1). Here, from January 2009 through 2013, approximately 1,524,812 packages of EZ Seed were sold in California and approximately 992,338 packages of EZ Seed were sold in New York. *See In re Scotts EZ Seed Litig.*, 2017 WL 3396433, at *2 (S.D.N.Y. Aug. 8, 2017). Given the number and geographic dispersion of potential Class Members, joinder would be impracticable.

### 2. Commonality

To be certified as a class action, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The requirement of commonality does not require identical claims and arguments. "To satisfy commonality, 'even a single common question will do.'" *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 WL 7882100, at *30 (E.D.N.Y. Oct. 15, 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011)).

Here, the criterion is satisfied because there are numerous issues of fact and law common to the Settlement Class, including: (a) whether the "50% Thicker" Claim is false and/or misleading, and (b) whether the Settlement Class Members were all injured by being overcharged for Scotts EZ Seed. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 405.

---

[5] *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members[.]").

### 3. Typicality

Rule 23(a)(3) is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)). "When the same unlawful conduct was directed at both the named plaintiff and the class to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." *Labbate-D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 456-57 (E.D.N.Y. 1996) (internal quotation marks omitted).

Here, Plaintiffs allege that Defendants made false and misleading representations concerning the ability of EZ Seed to grow grass as advertised by the "50% Thicker" Claim. CCAC ¶ 28. Plaintiffs allege that these material misrepresentations caused them injury because they would not have purchased Scotts EZ Seed or because they overpaid for Products that could not deliver the promised benefits. *Id.* ¶¶ 71, 76, 81, 86, 91, 95, 100. Defendants' conduct caused similar injury to members of the Settlement Class. Moreover, Plaintiffs contend that Defendants' alleged misrepresentations regarding Scotts EZ Seed would be material to any reasonable consumer. *See Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004) ("[A] material claim is one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.") (internal quotation marks omitted). Because Plaintiffs will seek to prove that they were harmed by the same overall course of conduct and in the same way as the Class, their claims are typical of the Class Members. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 405-06.

### 4. Adequacy

The final prerequisite mandates that "representative parties will fairly and adequately

protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The requirement is met if the plaintiff: (1) is represented by counsel who is "qualified, experienced and able to conduct the litigation[;]" and (2) does not possess interests "antagonistic to the interest of other members of the class[.]" *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

Plaintiffs' interests are consistent with, and not antagonistic to, the interests of other Settlement Class Members. Here, Plaintiffs' claims are co-extensive with those of the Settlement Class. Plaintiffs and each Class Member were injured in the same manner, and Plaintiffs assert the same legal claims as those of the Class. Thus, they share a common interest in establishing liability and securing the maximum possible recovery. Plaintiffs have taken their obligations to the Settlement Class seriously. They engaged in the prosecution of this matter, have consistently conferred with their counsel, reviewed the various pleadings, sat for multiple depositions, and consulted with Class Counsel regarding the propriety of the Settlement.

Likewise, Class Counsel – Bursor & Fisher, P.A. and Faruqi & Faruqi, LLP – are qualified Class Counsel. First, the Court has already found Bursor & Fisher and Faruqi & Faruqi to be qualified to be appointed Class Counsel. *See In re Scotts EZ Seed Litig.*, 304 F.R.D at 407. Second, proposed Settlement Class Counsel spent a significant amount of time identifying and investigating Plaintiffs' claims before filing these cases. Marchese Decl. ¶¶ 5-6. Third, proposed Settlement Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of multi-state consumer class action cases like the instant Action. Marchese Decl. Ex. A (Bursor & Fisher Firm Resume); 10/5/18 Declaration of Timothy J. Peter (ECF No. 351) ("Peter Decl.") Ex. A (Firm Resumes of Faruqi & Faruqi). In negotiating this Settlement, proposed Class Counsel had the benefit of years of relevant experience and a familiarity with the facts of this case and the substantive case law at issue. Marchese Decl. ¶¶ 13-34, 54-59. Finally, both firms have well-regarded practices that are currently litigating dozens of cases in state and

federal courts throughout the nation, and they have devoted substantial resources to representing the Class. *Id.* ¶ 77.

Accordingly, since Plaintiffs and Class Counsel have demonstrated their commitment to representing the Settlement Class and neither have interests antagonistic to the Settlement Class, the adequacy requirement is satisfied. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 406-07.

### 5. The Settlement Class Is Ascertainable

Rule 23 also contains an "implied requirement of ascertainability." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006). The ascertainability doctrine in the Second Circuit requires "only that a class be defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Secs.*, 862 F.3d 250, 264 (2d Cir. 2017). Here, the Class is readily identifiable because it consists of all persons who purchased Scotts EZ Seed containing the label statement "50% Thicker" Claim in the states of New York and California from January 1, 2009 through September 30, 2014. (ECF No. 347) ¶ 9. All Class Members are able to determine their membership in the Class through objective criteria. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 408.

## B. The Settlement Class Meets the Requirements of Rule 23(b)(3)

To qualify for certification under Rule 23(b)(3), the class must meet two criteria. First, common questions of law or fact must "predominate" over any purely individual questions. Fed. R. Civ. P. 23(b)(3). Second, the class must demonstrate that class treatment is superior to other available methods for the fair and efficient adjudication of the controversy. *Id.* In the context of a settlement class, the issue of manageability "drop[s] out of the predominance analysis because the proposal is that there be no trial." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012) (internal quotation marks omitted). Instead, the court must determine the legal or factual questions in each class member's case "are sufficiently similar to yield a cohesive class."

*Id.* Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

### 1. Common Questions Predominate

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). To meet this requirement, "a plaintiff must show that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof." *Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219, 226 (2d Cir. 2006).

As discussed above, the same common questions relevant to the Rule 23(a)(2) analysis predominate, including whether Defendants' representations concerning Scotts EZ Seed are false, misleading, and/or likely to deceive the public. Every Class Member's claim may be proven by the same common evidence regarding the efficacy of Scotts EZ Seed. Indeed, the resolution of whether Scotts EZ Seed, as a matter of scientific fact, can deliver the benefits of the "50% Thicker" Claim is integral to each Class Member's case, and can be achieved through generalized proof. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409; *In re Scotts EZ Seed Litig.*, 2017 WL 3396433, at *18-19. Since common questions present a significant aspect of the case and can be resolved in a single adjudication, Rule 23(b)(3)'s predominance requirement is met.

### 2. A Class Action Is A Superior Mechanism For Adjudication

For certification under Rule 23(b)(3), the court must determine that class treatment is superior to other available methods of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Class treatment is appropriate where, as here, "the proposed class members are sufficiently numerous and seem to possess relatively small claims unworthy of individual adjudication due to the amount at issue [and] there is reason to believe that class members may lack familiarity with the legal system, discouraging them from pursuing individual claims." *Jankowski v. Castaldi*, 2006

WL 118973, at *4 (E.D.N.Y. Jan. 13, 2006) (internal quotation marks omitted).

Class treatment is not merely superior, but is the only manner in which to ensure fair and efficient adjudication of this Action. Given that each Class Member's claim, individually, is of a relatively low value, individual Class Members will likely have little incentive to pursue their claims on an individual basis. A class action will allow individual Class Members to bring together claims that would be economically infeasible to litigate otherwise. Class treatment in the settlement context is also superior to individual suits or piecemeal litigation because it facilitates favorable resolution of all Settlement Class Members' claims and conserves scarce judicial resources. Also, there has been no other litigation concerning this controversy, and there is no reason why this case should not be concentrated in this Court. Further, because we are in the context of a proposed Settlement, whether the case would be manageable at trial is not of consequence. *See Amchem*, 521 U.S. at 620. Therefore, a class action is a superior method of adjudicating this case. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 415-16.

## II.     THE NOTICE PLAN SATISFIES DUE PROCESS

Before final approval can be granted, due process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). "Such notice to class members need only be reasonably calculated under the circumstances to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *12 (S.D.N.Y. Dec. 23, 2009). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B). At its core, all that notice must do is "fairly apprise the

prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (citation omitted).

"It is clear that for due process to be satisfied, not every class member need receive actual notice, as long as counsel 'acted reasonably in selecting means likely to inform persons affected.'" *In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*, 271 F. App'x 41, 44 (2d Cir. 2008) (quoting *Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988)). The Federal Judicial Center notes that a notice plan is reasonable if it reaches at least 70% of the class. *See* FED. JUDICIAL CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* 3 (2010). The notice plan here easily meets these standards, as it has an estimated reach of 90%. *See* Declaration of Jeanne C. Finegan, APR Concerning Implementation Of Class Member Notification Program ("Finegan Decl.") ¶ 8.

At preliminary approval, the Court approved the proposed Notice, finding it met the requirements of Rule 23 and due process. (ECF No. 347) ¶ 12. The Notice has now been fully carried out by professional settlement administrator Heffler. Specifically, Heffler (1) sent email and postcard notice to all reasonably ascertainable Class Members; (2) published online display banner advertising specifically targeted to reach Class Members; (3) published advertisements on social media through Facebook and Instagram; (4) published a settlement website (www.GrassSeedSettlement.com) with online claim filing capability and on which the notices and other Court documents were posted; and (5) established a toll-free information line, by which Class members were able to call 24/7 for more information about the Settlement, including, but not limited to, requesting copies of the notices and claim form. *See* Finegan Decl. ¶ 15. With respect to direct notice, on May 16, 2018, Defendants' Counsel provided Heffler with a data file containing a total of 1,022,427 records of information for Class Members. *Id.* ¶ 16.

Heffler then performed an analysis and determined that 660,501 were unique records. *Id.* Heffler successfully delivered the Court-approved notice via email or postcard to 646,176 unique Class Members, or 97.8%. *Id.* ¶¶ 16-23. These notices also directed Class Members to the Settlement Website and toll-free telephone number. *Id.* ¶¶ 26-27.

Given the broad reach of the Notice, and the comprehensive information provided to the Settlement Class, the requirements of due process and Rule 23 are easily met.

## III. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

Final approval of the Settlement is appropriate here because it is procedurally and substantively fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2).[6] To determine whether to approve a settlement, "[c]ourts examine procedural and substantive fairness in light of the 'strong judicial policy in favor of settlement' of class action suits." *Tiro v. Public House Invs., LLC*, 2013 WL 4830949, at *5 (S.D.N.Y. Sept. 10, 2013). "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (internal quotations omitted).

Importantly, courts and public policy considerations favor settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. "The compromise of complex litigation is encouraged by the courts and favored by public policy," and is particularly encouraged for the

---

[6] Effective December 1, 2018, Rule 23(e) was amended. The 2018 amendment to Rule 23(e) provides factors for the Court to consider for approval of a proposed class action settlement. *See* Fed. R. Civ. P. 23(e)(2). The new Rule 23(e)(2) factors are already addressed by the Second Circuit's *Grinnell* factors, which are set forth and discussed below.

compromise of class actions. *Id.* at 117 (internal quotations omitted). If the settlement was achieved through arms'-length negotiations by experienced counsel, "[a]bsent fraud or collusion … [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

### A.    The Proposed Settlement Is Procedurally Fair

The Settlement here is the product of intense arm's-length negotiations over a five-month period and conducted by experienced counsel who are knowledgeable in complex consumer class actions. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000) (a settlement will enjoy a presumption of fairness if the court finds that it is the product of "arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation"), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). The Settlement was reached six years into the case, on the cusp of trial, and after the Parties completed extensive merits and expert discovery, including reviewing and analyzing a rolling production of more than 190,000 pages of documents and conducting thirty-three depositions. Marchese Decl. ¶¶ 13-34.

Moreover, the Parties were only able to reach the Settlement with the assistance of the experienced mediator, the Hon. Wayne R. Andersen (ret.). Judge Andersen is a highly respected and experienced class action mediator, who joined JAMS following more than twenty-six years on the bench. *Id.* ¶¶ 38-39. Prior to and during mediation, the Parties engaged in protracted, hard fought negotiations to reach a final agreement on the terms of the Settlement. *See Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014) (noting that "the participation of this highly qualified mediator strongly supports a finding that negotiations were

conducted at arm's length and without collusion."); *In re AMF Bowling*, 334 F. Supp. 2d 462, 465 (S.D.N.Y. 2004) (the participation of a respected mediator "gives [the court] confidence that [the negotiations] were conducted in an arm's-length, non-collusive manner").

Moreover, Class Counsel involved in the negotiations have considerable experience in handling consumer class actions and are clearly capable of assessing the strengths and weaknesses of their respective positions. *See* Marchese Decl. Ex. A (Bursor & Fisher Firm Resume); Peter Decl. Ex. A (Faruqi & Faruqi Firm Resume). Bursor & Fisher and Faruqi & Faruqi, and/or their partners, regularly engage in major complex litigation and have extensive experience in consumer class actions that are similar in size, scope, and complexity to this case. Marchese Decl. ¶ 77. The combined experience of the firms and attorneys involved demonstrate that the Settlement Class Members were well-represented at the bargaining table. *See Focus Media Holding Ltd.*, 2014 WL 4401280, at *5.

## B. The Proposed Settlement Is Substantively Fair

In addition to being procedurally fair, the Settlement is also substantively fair, reasonable, and adequate. "Courts in the Second Circuit evaluate the substantive fairness, adequacy, and reasonableness of a settlement according to the factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)." *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012). The nine *Grinnell* factors include: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant

risks of litigation." *Id*. at *4 (quoting *Grinnell*, 495 F.2d at 463). However, in reviewing and approving a settlement, "a court need not conclude that all of the *Grinnell* factors weigh in favor of a settlement," rather courts "should consider the totality of these factors in light of the particular circumstances." *Id.* Here, the *Grinnell* factors weigh in favor of final approval.

### 1. Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1)

The Stipulation of Settlement provides favorable monetary benefits to the Settlement Class while avoiding the significant expenses and delays associated with litigation. Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 174. Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *See TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd*, 675 F.2d 456 (2d Cir. 1982).

This case is no exception. Plaintiffs understand that proceeding to trial is a risky and labor-intensive undertaking, including completing pretrial procedures like the joint pretrial order and briefing motions *in limine*. Plaintiffs anticipate that Defendants would continue to contest the matter at every opportunity and on all fronts. While Plaintiffs believe that the Action has merit and that they would ultimately prevail at trial, continued litigation would last for an extended period before a final judgment might be entered in favor of the Class. Any trial would likely last at least three weeks, and involve numerous fact witnesses, experts and the introduction of voluminous documentary evidence. Moreover, any judgment favorable to the Class would be the subject of post-trial motions and appeals, which could significantly prolong the lifespan of this Action. *See, e.g.*, *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014) (finding that "[e]ven if the Class could recover a judgment at trial, the

additional delay through trial, post-trial motions, and the appellate process could prevent the Class from obtaining any recovery for years."). By settling, Plaintiffs avoid the expenditure of resources and risk associated with trial, and they guarantee a quicker recovery to the Class. Because the risks of proceeding to trial are substantial, this bird in hand is worth two in the proverbial bush, and the settlement warrants final approval. *See e.g.*, *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) ("[I]t may be preferable to take the bird in the hand instead of the prospective flock in the bush.") (internal quotation marks omitted).

## 2. The Reaction Of The Class Is Overwhelmingly Positive (*Grinnell* Factor 2)

With the second *Grinnell* factor, the Court judges "the reaction of the class to the settlement." *In re Vitamin C Antitrust Litig*, 2012 WL 5289514, at *4 (quoting *Grinnell*, 495 F.2d at 463). "It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (internal quotation marks omitted). This "significant" factor weighs heavily in favor of final approval.

Here, the reaction of the Class Members to the Settlement has been overwhelmingly positive. Class Notice has been provided to the Settlement Class Members in accordance with the requirements of Rule 23(c)(2)(B) and the Preliminary Approval Order (ECF No. 347 ¶¶ 12-14), and notice reached approximately 90% of the Settlement Class, including direct notice to 72% of the Settlement Class. *See* Finegan Decl. ¶¶ 8, 23. As of December 4, 2018, 61,944 people have already filed claims, <u>zero</u> objected to the Settlement, and only 8 opted-out. *Id.* ¶¶ 5-7. This exceptional participation rate and lack of objections from the Settlement Class leaves no question that the class members view the Settlement favorably, which weighs heavily in favor of final approval and further supports the "presumption of fairness." *See, e.g., Hanlon v. Chrysler*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class

willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness.").

Consequently, this *Grinnell* factor weighs in favor of final approval of the Settlement.

### 3. Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3)

Under this factor, "[t]he pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *See Torres v. Gristede's Operating Corp.*, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) (internal quotation omitted). Here, the settlement was reached on the cusp of trial, after six years of litigation, during which time Plaintiffs completed extensive merits and expert discovery, including substantial document review and thirty-three depositions. Marchese Decl. ¶¶ 13-34. Notably, the average retail price for EZ Seed Products from 2009 to 2013 was calculated by Plaintiffs' damages expert as $20.79 in California, and $21.35 in New York, and the "50% Thicker" Claim was responsible for less than one-third of the purchase price. *Id.* ¶ 54. Class Counsel had sufficient information to make an informed decision about the merits of this case relative to the benefits provided by the proposed Settlement.

Consequently, this *Grinnell* factor weighs in favor of final approval of the Settlement.

### 4. The Continued Litigation Risks Related To Establishing Liability, Damages, And Maintaining A Class Action Through Trial Support Settlement (*Grinnell* Factors 4, 5, And 6)

"The fourth, fifth, and sixth *Grinnell* factors all relate to continued litigation risks," i.e., the risks of establishing liability, damages and maintaining the class action through trial. *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *5 (E.D.N.Y. Oct. 23, 2012). One purpose of a

settlement is to avoid the uncertainty of a trial on the merits. Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004); *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006). In other words, "the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002).

Notwithstanding Plaintiffs' confidence in the strength of their position, they recognize that factual issues, evidence of competing, complex scientific concepts, and/or legal defenses could pose a substantial risk of non-recovery. Plaintiffs must establish that Defendants' "50% Thicker" Claim is false, misleading, and deceptive and/or that members of the public are likely to be deceived by Defendants' advertising and labeling. In contrast, Defendants point to their own and other third party trials that they claim "substantiate" the "50% Thicker" Claim. While Plaintiffs are confident that their evidence will prove that EZ Seed Products do not deliver the promised benefits of the "50% Thicker" Claim, there is a real risk that a jury may see it differently.

Apart from the uncertainties regarding proof of Defendants' liability, there are also uncertainties in establishing damages. Unlike the anticipated claims process in the proposed Settlement, Plaintiffs must meet certain burdens to prove damages at trial. Plaintiffs' reliance on expert testimony to establish damages, as well as a jury's acceptance of that expert testimony is far from certain, especially when Defendants will offer competing expert testimony to the contrary. *See In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("Plaintiffs' Counsel recognize the possibility that a jury could be swayed by

experts for Class Defendants, who could minimize or eliminate the amount of Plaintiffs' losses."); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985) ("In this 'battle of the experts' it is virtually impossible to predict with any certainty which testimony would be credited . . . ."). By contrast, the Settlement avoids the risks inherent in protracted litigation, and provides a prompt and favorable resolution to the Class.

Consequently, these *Grinnell* factors weigh in favor of final approval of the Settlement.

### 5. The Ability Of Defendants To Withstand A Greater Judgment (*Grinnell* Factor 7)

The seventh *Grinnell* factor considers whether a defendant could withstand a judgment substantially higher than the proposed settlement amount if the case were to proceed to trial. *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 338 (S.D.N.Y. 2005). While Defendants have the ability to meet their obligations under the Stipulation of Settlement, the enormously large statutory damages award, which could be assessed if the case was to proceed through trial and survive challenge on appeal, could have a material impact on Scotts. In a February, 2018, quarterly report on Form 10-Q filed with the SEC, Scotts discussed this lawsuit stating, "[t]here can be no assurance that this action will not have a material adverse effect on our financial condition, results of operations or cash flows." 2/8/18 Form 10-Q, available at https://www.sec.gov/Archives/edgar/data/825542/000154638018000005/0001546380-18 000005-index.htm. Nonetheless, even if Defendants could withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9.

Consequently, this *Grinnell* factor weighs in favor of final approval of the Settlement, or, at worst, is neutral regarding final approval.

6. **The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9)**

Courts typically analyze the last two *Grinnell* factors together. *See Grinnell*, 495 F.2d at 463. In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010) (quoting *Grinnell*, 495 F.2d at 462). The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank*, 228 F.R.D. at 186 (internal quotation marks omitted). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972), cert. denied, 409 U.S. 1039 (1972)). Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought. As the Second Circuit stated in *Grinnell*, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2.

Here, each Class Member is able to recover cash refunds of between $15.00 and approximately $50.00 per unit for up to six unit purchases of the Scotts EZ Seed at issue purchased in New York or California during the Settlement Class Period. Given the complexity of the action and potential of a non-recovery, the Settlement provides a favorable resolution of this Action, including the potential for full refunds to consumers with Proof of Purchase and

meaningful refunds to consumers without documentation of their purchases. This is especially true given that, on average, the alleged actual damages for one of the challenged units of EZ Seed purchased in California was approximately $6.80, and in New York was approximately $6.87. *See* Marchese Decl. ¶ 55. But here the Settlement provides for a $15 cash recovery per unit, without any proof of purchase. Accordingly, this recovery falls well within the range that courts have traditionally found to be fair and adequate.

Moreover, the fact that the Stipulation of Settlement provides for a prompt payment to claimants favors approval of the Settlement. *See Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 2997957, at *5 (S.D.N.Y. Dec. 27, 2004) ("[T]he proposed Settlement provides for payment to Class members now, not some speculative payment of a hypothetically larger amount years down the road…Given the obstacles and uncertainties attendant to this complex litigation, the proposed Settlement is within the range of reasonableness, and is unquestionably better than the other likely possibility – little or no recovery.") (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985), *modified on other grounds*, 818 F.2d 179 (2d Cir. 1987) ("[M]uch of the value of a settlement lies in the ability to make funds available promptly.")). Therefore, these factors militate in favor of granting final approval to the Settlement.

* * *

All of the *Grinnell* factors weigh in favor of approval, and the Settlement on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)). The Court should therefore grant final approval.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Final Approval of the Settlement and enter the Final Approval Order in the form

submitted herewith.


Dated:  December 5, 2018                    Respectfully submitted,

                                            **BURSOR & FISHER, P.A.**

                                            By: */s/ Joseph I. Marchese*
                                                  Joseph I. Marchese

                                            Scott A. Bursor
                                            Joseph I. Marchese
                                            888 Seventh Avenue
                                            New York, New York 10019
                                            Telephone: (646) 837-7150
                                            Facsimile: (212) 989-9163
                                            Email: scott@bursor.com
                                                      jmarchese@bursor.com

                                            -and-

                                            **FARUQI & FARUQI, LLP**
                                            Nadeem Faruqi
                                            Timothy J. Peter
                                            685 Third Avenue, 26th Floor
                                            New York, New York 10017
                                            Telephone:  (212) 983-9330
                                            Facsimile:  (212) 983-9331
                                            Email: nfaruqi@faruqilaw.com
                                                      tpeter@faruqilaw.com

                                            *Co-Class Counsel*

                                            **VOZZOLO LLC**
                                            Antonio Vozzolo
                                            345 Route 17 South
                                            Upper Saddle River, New Jersey 07458
                                            Telephone: (201) 630-8820
                                            Facsimile:  (201) 604-8400
                                            Email: avozzolo@vozzolo.com

                                            *Additional Counsel for Plaintiffs*